**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>BRAZOS ELECTRIC POWER<br>COOPERATIVE, INC.,<br><br>Debtor.[1] | Chapter 11<br><br>Case No. 21-30725 (DRJ) |
| BRAZOS ELECTRIC POWER<br>COOPERATIVE, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ELECTRIC RELIABILITY COUNCIL OF<br>TEXAS, INC.,<br><br>Defendant. | Adv. Proc. No. 21-03863 (DRJ) |

**ERCOT'S RESPONSE TO DEBTOR'S EMERGENCY**
**MOTION TO ESTABLISH DISCOVERY FRAMEWORK FOR ERCOT**

Subject to and without waiver of its answer or response to the Complaint [D.E. #1], Electric Reliability Council of Texas, Inc. ("ERCOT") files this response in opposition to Brazos Electric Power Cooperative, Inc.'s ("Brazos" or the "Debtor") Emergency Motion to Establish Discovery Framework for ERCOT [D.E. #6].

**INTRODUCTION**

1.      Debtor's motion acknowledges that ERCOT has worked in good faith on discovery and ESI issues; yet, Debtor seeks to have the Court impose an unachievable "discovery framework" that would require the review of hundreds of thousands of e-mails and that is not proportional to the needs of the case. As discussed below, ERCOT has agreed to collection of

---

[1] The Debtor in this chapter 11 case, along with the last four digits of its federal tax identification number is: Brazos Electric Power Cooperative, Inc. (4729).  Additional information regarding this case may be obtained on the website of the Debtor's claims and noticing agent at http://cases.stretto.com/Brazos.  The Debtor's address is 7616 Bagby Avenue, Waco, TX 76712.

relevant text messages from the agreed-upon custodians and the collection and review of e-mails sent and received by those custodians during an agreed-upon timeframe. ERCOT is committed to producing responsive texts and e-mails on a rolling basis and to strive to complete the ESI production by the Court's scheduling order deadline to produce responsive documents by September 30, 2021. However, the search terms proposed by Debtor for the first time on Wednesday, August 25, 2021, and scope of production requested in the motion would make that extremely difficult if not impossible. ERCOT respectfully requests the Court deny the motion.

## FACTUAL BACKGROUND

2.      After Debtor served the Discovery Requests, ERCOT and Debtor worked on identifying relevant custodians.

3.      By the end of July, ERCOT and the UCC agreed on 19 proposed custodians. And, subject to modifying any search terms that generated a disproportionate number of hits, ERCOT and the UCC also reached agreement on the UCC's proposed search terms.

4.      Because of the efficiency and cost-savings of collecting ESI once, ERCOT tried to agree with the Debtor on custodians and the search terms. ERCOT provided a director-level ERCOT organizational chart from February 2021 and discussed proposed custodians multiple times. Debtor was not willing to compromise on any of its proposed custodians and insisted on 18 *additional* custodians (on top of the 19 already agreed to with the UCC).

5.      As of the time of the filing of the Motion, ERCOT and the Debtor had reached an agreement on all but 6 custodians. *See also* Motion at 3, ¶ 5 ("First, the Debtor and ERCOT need to finalize a list of agreed-upon custodians for both cellphone imaging (to obtain texts and other messages) and to conduct certain e-mail searches.") and at 4 n. 3 ("The Debtor and ERCOT have reached an agreement on a number of custodians, but the parties disagree on a remaining subset of

custodians which the Debtor believes should be included. At this time, the Debtor is not seeking Court intervention on the inclusion of these individuals, but reserves the right to do so if agreement cannot be reached in advance of the August 31, 2021 status conference.").

6.      As of the filing of this Response, ERCOT and Debtor have agreed to a list of 36 ESI custodians (19 proposed by the UCC plus 17 proposed by the Debtor.)

7.      On Wednesday, August 25, 2021, at 7:54 p.m., Debtor—for the first time ever—proposed search terms for use in conjunction with the collection of e-mails. *See also* Motion at 3, ¶ 5 ("Second, the Debtor and ERCOT need to finalize a list of agreed-upon search terms to capture certain communications for both the agreed-upon custodians as well as other salaried ERCOT employees over defined time periods."). Debtor has proposed over 30 search terms and running those search terms will result in hundreds of thousands of hits.[2] Reviewing this volume of emails is time-consuming. For example, the proposed search for "Pric* AND (ancillary OR real OR scarc* OR market OR clear* OR mechanism OR ahead OR DAM OR RTM OR power OR energy OR gas OR ng OR generat* OR capacity* OR deviat* OR protocol OR signal OR emerg* OR EEA)" generates more than 120,000 hits alone. Accordingly, the list of search terms must be modified; ERCOT is of course amenable to an agreement regarding search terms that will result in a reasonable volume of relevant e-mails

8.      Two days after first providing its proposed search terms—without conferring with ERCOT—Debtor filed its "emergency" motion.

---

[2] All references to hits are to raw numbers of hits based on search terms and custodians without de-duplication. While de-duplication will reduce the number of unique e-mails, ERCOT has no way of determining the effect de-duplication will have until the emails are extracted from ERCOT's servers into a document database.

## ARGUMENT AND AUTHORITIES

### A.      Legal Standard

9.      As the Supreme Court has explained, discovery is subject to limits based on expense and burden:

> But the discovery provisions, like all of the Federal Rules of Civil Procedure, are subject to the injunction of Rule 1 that they "be construed to secure the just, *speedy*, and *inexpensive* determination of every action." (Emphasis added.) To this end, the requirement of Rule 26 (b) (1) that the material sought in discovery be "relevant" should be firmly applied, and the district courts should not neglect their power to restrict discovery where "justice requires [protection for] a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . . ."

*Herbert v. Lando*, 441 U.S. 153, 176 (1979) (citing FED. R. CIV. P. 26(c)).

10.      Rule 26(b)(1) permits the discovery of "any nonprivileged matter that is relevant to any party's claim or defense *and proportional to the needs of the case*, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1) (emphasis added). Rule 26 was amended in 2015 to emphasize the importance of proportionality in what information is discoverable. FED. R. CIV. P. 26  2015 advisory committee's note ("Information is discoverable under revised Rule 26(b)(1) if it is relevant to any party's claim or defense and is proportional to the needs of the case. . . . The present amendment restores the proportionality factors to their original place in defining the scope of discovery.").

### B.      Production of Text Messages

11.      Debtor requests that ERCOT complete the process of imaging the cellphones by September 10, 2021 and produce all text messages by September 24, 2021.[3] This timetable is

---

[3] Debtor multiple times makes reference to "imaging" cellphones but simultaneously makes clear that it only seeks "to obtain texts and other messages." *See* Motion at 3, ¶ 5;  *see also* Motion at 4,

unworkable for two major reasons.

12.     First, Debtor has requested text messages from 36 different custodians. To extract text messages from these custodians' cell phones will require that each person come to ERCOT's offices and meet with ERCOT's IT and Information Governance ("IG") departments to go through that process. And, due to ERCOT's COVID-19 Pandemic Plan, only limited employees (not the custodians) are working from the ERCOT office. ERCOT commits to having the custodians go through the text extraction process for all responsive text messages sent or received between February 8 and March 8, 2021, beginning this week and will complete that process as quickly as feasible. The proposed deadline is also inconsistent with the Court's Scheduling Order requiring that documents be produced by September 30, 2021.

13.     Second, without knowing how many responsive or relevant text messages exist and need to be reviewed through the text-extraction process for the 36 custodians, ERCOT can only commit to producing those text messages on a weekly rolling basis and to complete the process by no later than September 30, 2021.

**C.      Custodian Emails for February 8 to March 8**

14.     Debtor next requests that ERCOT review **all emails** sent or received by the 36 custodians from February 8 to March 8, 2021. *See* Motion at 4, ¶ 7. Debtor further requests that ERCOT *complete* the production of all responsive documents by September 17. *Id*. Both this request and the proposed timetable are not feasible. The proposed deadline is also inconsistent with the Court's Scheduling Order requiring that documents be produced by September 30, 2021.

---

¶ 7. As discussed with Debtor's counsel and during hearings before the Court, ERCOT is not imaging the entire contents of its employees' personal phones or collecting private and personal information from their cell phones. Instead, ERCOT is satisfying Debtor's request by only extracting responsive texts and other messages.

15.     The production of ESI is usually accomplished through the use of search terms or other means like predictive coding. The vast amounts of data compiled as a result of this process is one of the primary reasons for doing so. *See* FED. R. CIV. P. 26 2015 advisory committee's note ("The burden or expense of proposed discovery should be determined in a realistic way. This includes the burden or expense of producing electronically stored information. Computer-based methods of searching such information continue to develop, particularly for cases involving large volumes of electronically stored information. Courts and parties should be willing to consider the opportunities for reducing the burden or expense of discovery as reliable means of searching electronically stored information become available."). Yet, Debtor proposes that for each of the 36 custodians, ERCOT pull and review every email and have them reviewed by attorneys for responsiveness and privilege (three of Debtor's custodians are in-house counsel for ERCOT, including ERCOT's General Counsel, Chad Seely).

16.     ERCOT searched its servers for all emails sent and received from February 8 to March 8, 2021 for all 37 proposed custodians and returned **566,764** hits. Even with de-duplication, Debtor's request will still require ERCOT's counsel to review hundreds of thousands e-mails, many of which have no relevance to this adversary proceeding. Debtor cannot show why reviewing *each and every* email a person sent is relevant and proportional to the needs of this case. FED. R. CIV. P. 26(b)(1). The cost to ERCOT of having counsel review hundreds of thousands of emails that have no relevance to this proceeding is the type of undue burden and expense the Court should protect against. *Id*.

17.     ERCOT also searched its servers for emails sent and received from February 8 to March 8, 2021 for all 37 proposed custodians against Debtor's proposed search terms and returned **272,229** hits. In addition, ERCOT searched its servers for emails sent and received from February

10, 2021 to March 31, 2021 (the UCC's proposed date range) for the UCC's proposed custodians against the UCC's proposed search terms and returned over **100,000** hits. These numbers do *not* include running the UCC's proposed search terms for the additional 17 custodians agreed to by ERCOT and the Debtor. *See* Motion at 5 (referencing "using the search terms provided by the UCC and additional search terms provided by the Debtor").

18.     Even with de-duplication, the number of unique emails to be collected and reviewed will still require hundreds of hours of attorney-review time. Moreover, those attorneys must have a specific security clearance to access ERCOT's systems so that ERCOT can comply with federal and state regulations. Based on ERCOT's experience, a document reviewer can review 60-100 emails per hour.

19.     ERCOT proposes using the Debtor's and the UCC's proposed search terms (subject to modifications from search terms that result in unworkable or irrelevant hits) against the agreed-upon custodians and reviewing the emails located through that process for the relevant time frames (February 8-March 8, 2021 & February 1-March 30, 2021). The collection process would begin this week, and, barring unforeseen circumstances, the review process would begin by the end of the week. ERCOT would begin producing relevant emails on a rolling basis beginning September 10, 2021, again, barring any problems in review or any confidentiality issues,[4] and will strive to complete the production of these emails by September 30, 2021. This is the same timing requested

---

[4] As previously discussed with Debtor and the UCC as well as the Court, ERCOT is in possession of confidential and protected material provided to it by hundreds of market participants, which it cannot disclose without complying with the notice provisions of the ERCOT Nodal Protocols. *See, e.g.*, ERCOT Nodal Protocols at § 1.3.1 ("A Receiving Party may not disclose Protected Information received from a Disclosing Party to any other Entity except as specifically permitted in this Section and in these Protocols."), available at http://www.ercot.com/mktrules/nprotocols/current. To the extent that Protected Information is implicated by the ESI searches, ERCOT may need to provide notice to those market participants. *See generally* ERCOT Nodal Protocols at § 1.3.

by Debtor with respect to the production of custodian emails for a different time period. *See* Motion at 5 ("begin a rolling production of documents responsive to Debtor's document requests by September 10, 2021, and complete production of all such responsive documents by September 30, 2021").

**D.      Custodian Emails for February 1 to present**

20.      Debtor next proposes that ERCOT produce emails for the 36 custodians from February 1, 2021 to present. Debtor's request for emails through present is unduly burdensome and implicates issues of relevance, privilege, and work product.

21.      ERCOT searched its servers for emails sent and received from February 1 to the present for all 37 proposed custodians against Debtor's proposed search terms and returned **1,151,745** hits (272,229 of those 1,151,745 hits are for the search for the 37 custodians' emails from February 8 to March 8, 2021 as discussed in paragraph 15 above). The over 1,000,000 hits does *not* include running the UCC's proposed search terms for the additional 17 custodians agreed to by ERCOT and the Debtor. *See* Motion at 5 (referencing "using the search terms provided by the UCC and additional search terms provided by the Debtor"). Thus, running just Debtor's proposed search terms for that extended time period results in an unwieldy and burdensome number of emails to be reviewed. That number of documents cannot be reviewed by the specific attorneys with the necessary security clearance within a month or even longer.

22.      Given that the adversary proceeding is about the amounts charged by ERCOT to Brazos during one-week of Winter Storm Uri in February 2021 and that Debtor filed its bankruptcy case on March 1, 2021, the documents after March 1 are of limited relevance to this proceeding. *See* Motion at 4, ¶ 7 (calling February 8 to March 8, 2021 the "Critical Time Period").

23.     And, many of the communications authored by ERCOT representatives regarding Brazos after the filing of its bankruptcy case (not to mention the filing of its claim objection and this adversary proceeding) to the present implicate documents protected by the attorney-client privilege and the attorney work-product doctrine. *See* FED. R. CIV. P. 26(b)(3)(A) ("Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."). The cost and burden for ERCOT to review over 1,000,000 email hits and to carefully weed-out documents protected by privilege and work product is unduly burdensome. As discussed in the section above, review and production of the emails during what Debtor calls the "Critical Time Period" and using appropriate search terms is the only reasonable and proportional ESI-collection method.

**E.     ERCOT Salaried Employee Electronic Data**

24.     Debtor finally proposes that ERCOT devise a set of search terms to run against the emails of every single ERCOT salaried employee from February 8 to March 8, 2021. This request is unduly burdensome and defeats the purpose of agreeing to custodians. Moreover, Debtor has failed to show how the emails of salaried employees in all departments and holding a variety of job titles is relevant to this adversary proceeding. Debtor does not tie this proposal to its specific requests for production and instead requests the Court impose an unreasonable fishing expedition.

25.     As of today, ERCOT has **713** salaried employees and 48 hourly employees for a total of 761 employees.

26.     ERCOT searched its servers for all emails sent and received from February 8 to March 8, 2021 for all employees and returned **4,385,806** hits.

9

27.     Putting aside the unworkability of reviewing emails for hundreds of employees while also reviewing and producing the text messages of 36 custodians and hundreds of thousands email hits for 36 custodians by September 30, 2021, Debtor's request is also not proportional to the needs of the case.

## CONCLUSION AND REQUEST FOR RELIEF

28.     The volume of emails and text messages sought by the Debtor's "discovery framework" are neither relevant nor proportional to the case, especially with a November fact discovery deadline and February 2022 trial date.

29.     ERCOT has agreed to more than a reasonable numbers of custodians and search terms and has agreed to review text messages of 36 custodians as well as review hundreds of thousands of email hits. If, after the production of all that information, Debtor thinks it can still show the need for additional ESI, it can attempt to do so.

30.     ERCOT respectfully requests that the Court deny Debtor's Motion.

Dated: August 29, 2021

Respectfully submitted,

**MUNSCH HARDT KOPF & HARR, P.C.**

By: */s/ Jamil N. Alibhai*
    Kevin M. Lippman
    Texas Bar No. 00784479
    klippman@munsch.com
    Deborah Perry
    Texas Bar No. 24002755
    dperry@munsch.com
    Jamil N. Alibhai
    Texas Bar No. 00793248
    jalibhai@munsch.com
    3800 Ross Tower
    500 N. Akard Street
    Dallas, Texas 75201-6659
    Telephone: (214) 855-7500
    Facsimile: (214) 855-7584

**COUNSEL FOR THE ELECTRIC
RELIABILITY COUNCIL OF TEXAS,
INC.**