**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| BRAZOS ELECTRIC POWER COOPERATIVE, INC., | Case No. 21-30725 (DRJ) |
| Debtor.[1] | |
| BRAZOS ELECTRIC POWER COOPERATIVE, INC., | |
| Plaintiff, | Adv. Proc. No. 21-03863 (DRJ) |
| v. | |
| ELECTRIC RELIABILITY COUNCIL OF TEXAS, INC., | |
| Defendant. | |

**INDIVIDUAL MEMBERS OF THE AD HOC GROUP
OF MEMBER-OWNER DISTRIBUTION COOPERATIVES'
MOTION TO INTERVENE AS PLAINTIFFS UNDER BANKRUPTCY RULE 7024**

**If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ on or before October 4, 2021.** *See* **Adv. Docket No. 13 (Scheduling Order).  If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk on or before October 4, 2021. Otherwise, the Court may treat this pleading as unopposed and grant the relief requested.**

**A hearing will be conducted on this matter on October 18, 2021, at 2:00 p.m. CT. Participation at the hearing will only be permitted by an audio and video connection. Audio communication will be by use of the Court's dial-in facility. You may access the facility at 832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Jones's conference room number is 205691. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge**

---

[1]     The Debtor in this chapter 11 case, along with the last four digits of its federal tax identification number, is: Brazos Electric Power Cooperative, Inc. (4729). Additional information regarding this case may be obtained on the website of the Debtor's claims and noticing agent at http://cases.stretto.com/Brazos. The Debtor's address is 7616 Bagby Avenue, Waco, TX 76712.

**Jones's home page. The meeting code is "JudgeJones". Click the settings icon in the upper right corner and enter your name under the personal information setting. Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Jones's home page. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

Each individual member of the Ad Hoc Group of member-owner distribution cooperatives (each, a "***Co-Op Member***")[2] respectfully submits this motion (this "***Motion***") for an order pursuant to Rule 24 of the Federal Rules of Civil Procedure (the "***Federal Rules***"), as made applicable to this proceeding by Rule 7024 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), allowing such Co-Op Member to intervene as a plaintiff in the above-captioned adversary proceeding (the "***Adversary Proceeding***").

## FACTUAL BACKGROUND

1.  In February 2021, the State of Texas experienced a catastrophic energy crisis resulting from Winter Storm Uri, including power shortages and extreme pricing of both natural gas and wholesale electricity.  The Electric Reliability Council of Texas, Inc. ("***ERCOT***") compounded the crisis by deviating from the market-based pricing mechanisms in its nodal protocols, causing large pricing anomalies and extreme electric power costs.

2.  On March 1, 2021, Brazos Electric Power Cooperative, Inc. ("***Brazos***," or the "***Debtor***") filed a voluntary petition for relief under title 11 of the United States Code (the "***Bankruptcy Code***") in the United States Bankruptcy Court for the Southern District of Texas.

3.  ERCOT filed a proof of claim in the Debtor's bankruptcy case for

---

[2]     The Co-Op Members comprising the "***Ad Hoc Group***" are: (1) Bartlett Electric Cooperative, Inc.; (2) Comanche County Electric Cooperative Association; (3) Cooke County Electric Cooperative Association, Inc. d/b/a PenTex Energy; (4) Hamilton County Electric Cooperative Association; (5) Heart of Texas Electric Cooperative, Inc.; (6) J-A-C Electric Cooperative, Inc.; (7) Navasota Valley Electric Cooperative, Inc.; and (8) Wise Electric Cooperative, Inc.

$1,899,152,990.64 (the "**ERCOT Claim**"), almost all of which ERCOT asserts is entitled to administrative priority pursuant to section 503(b)(9) of the Bankruptcy Code,[3] and almost all of which allegedly relates to the time period around Winter Storm Uri.  In response, the Debtor initiated this Adversary Proceeding seeking to reduce and reclassify the ERCOT Claim.

4.        In its Adversary Complaint (defined below), the Debtor alleges that the ERCOT Claim should be reduced and reclassified because, among other things, ERCOT demands an inflated amount from the Debtor resulting from its deviation from the market-based pricing mechanisms in the ERCOT nodal protocols, and the ERCOT Claim does not qualify for administrative priority under section 503(b)(9) of the Bankruptcy Code.  *See Debtor's Complaint Objecting to Electric Reliability Council of Texas, Inc.'s Proof of Claim and Other Relief* [Adv. Docket No. 1] (the "**Adversary Complaint**").  Each Co-Op Member agrees.

5.        The Co-Op Members filing this motion are eight of the sixteen Brazos member cooperatives.  In simple terms, the Debtor generates and purchases electric power, which it sells to its sixteen member cooperatives under substantially identical "all-requirements" wholesale power contracts (the "**ARCs**").  The member cooperatives then use the electric power purchased from the Debtor to supply the thousands of residential, commercial, and industrial customers who depend on the member cooperatives for affordable, reliable electricity.

6.        The Debtor procures a substantial portion of the electric power that it sells to the Co-Op Members by purchasing it in the ERCOT market.  Although the Co-Op Members are not liable to ERCOT, they are greatly affected by the ERCOT Claim because section 5(a) of each ARC provides that "[t]he Member shall pay the [Debtor] for all electric power and energy furnished

---

[3]        ERCOT asserts that $1,877,591,506.10 of its claim is a section 509(b) priority claim.  *See Addendum to ERCOT's Proof of Claim*, p. 4 [Stretto Claim No. 403].

hereunder at the rates and on the terms and conditions set forth in the [Debtor's] tariffs . . . ."  The pricing methodology under the ARCs and the Debtor's tariffs is complex, but for purposes of this Motion can be summarized as requiring the sixteen member cooperatives to pay the Debtor for, among other things: (i) the cost of the electricity generated and purchased for resale by the Debtor, (ii) certain operation, maintenance, administrative, and general overhead expenses, and (iii) the establishment and maintenance of reasonable reserves.

7.      Most relevant to this Adversary Proceeding, the Debtor pays ERCOT, the Co-Op Members pay the Debtor, and what the Debtor charges the Co-Op Members is heavily impacted by what the Debtor owes ERCOT.  In turn, because the Co-Op Members' costs play a significant role in the rates they charge to their own customers, this Adversary Proceeding is central to preserving affordable, reliable electric power for the thousands of retail customers who purchase it from the Co-Op Members.

8.      The Debtor has already invoiced the Co-Op Members for February, March, and April of 2021 (the "***Disputed Invoices***").  The Disputed Invoices allegedly include each Co-Op Member's proportionate share of the Debtor's ERCOT charges and other costs arising from Winter Storm Uri, along with other amounts chargeable to the Co-Op Members under the Debtor's tariffs. In aggregate, the Debtor appears to have assessed over 20% of the ERCOT charges giving rise to the ERCOT Claim to the eight Co-Op Members who file this Motion (and assessed the balance of such charges to the eight other member cooperatives) – albeit with a line item for a "Temporary Affordability Adjustment" (the "***TAA***") which temporarily withheld, but did not eliminate, the Co-Op Members' alleged obligation to pay the entire amount of the Disputed Invoices.  Although the Co-Op Members disagree with these Disputed Invoices and the TAAs, these invoices and the structure of the electric cooperative system—in which each Co-Op Member ordinarily pays its

share of the Debtor's procurement costs—only underscore the Co-Op Members' interest in this Adversary Proceeding.[4]

9.      These facts warrant intervention by each Co-Op Member.  The Co-Op Members' clear interest in reducing and reclassifying the ERCOT Claim, as well as the identical nature of the relief sought by the Co-Op Members and the Debtor, entitles the Co-Op Members to intervene as of right, and, at a minimum, by permission.  FED. R. CIV. P. 24(a) and (b).

10.      Absent intervention, the Co-Op Members may be left unaware of important details that could shape this Court's determination of the ERCOT Claim – including information produced in discovery and the negotiations among parties that are attendant to all major litigation.  The Co-Op Members, from which the Debtor is likely to demand significant payments on account of the ERCOT Claim, should have full access to this information and these negotiations.  The Co-Op Members also need to intervene in order to participate in discovery (*e.g.*, by questioning witnesses) and file motions.  And most importantly, if the Co-Op Members are not parties, they will be deprived of an opportunity to directly challenge the ERCOT Claim – and left with only an indirect ability to challenge the Disputed Invoices and TAAs.  To promote the fair and efficient resolution of the ERCOT Claim, this Court therefore should allow the Co-Op Members to intervene by filing their proposed Complaint in Intervention (the "***Proposed Complaint***"), attached hereto as Exhibit A, which largely adopts the Debtor's Adversary Complaint.

---

[4]      Each Co-Op Member has filed a proof of claim that, among other things, reserves defenses against the Debtor regarding the TAAs and all other charges arising from Winter Storm Uri.  Proofs of Claim for the Co-Op Members are located at Stretto Claim Numbers 411, 412, 414, 425, 426, 427, 428, and 429.  For the avoidance of doubt, the Co-Op Members are not seeking to prosecute any claims or Proofs of Claim against the Debtor in this Adversary Proceeding, and are not seeking to litigate the TAAs in this Adversary Proceeding.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 1334 and 157.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The Adversary Proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (H), and (O).

12.     The statutory predicates for the relief sought herein are sections 105 and 1109 of the Bankruptcy Code and Bankruptcy Rule 7024.

13.     The Co-Op Members consent to the entry of a final judgment or order with respect to this Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## RELIEF REQUESTED AND ARGUMENT

14.     Pursuant to Federal Rule 24(a) and (b), made applicable here by Bankruptcy Rule 7024, the Co-Op Members respectfully seek to intervene in the Adversary Proceeding to ensure that their interests are represented and their voices are heard.  For the reasons set forth below, the Court should grant this Motion and authorize the Co-Op Members file their Proposed Complaint.

### A.     The Co-Op Members Are Entitled to Intervention of Right.

15.     Federal Rule 24(a)(2) requires courts to "permit anyone to intervene" who satisfies the Rule's four requirements:

    a.  the motion must be timely;

    b.  the movant must claim an interest relating to the property or transaction that is the subject of the action;

    c.  the movant must be so situated that the disposition of the action may, as a practical matter, impair or impede its ability to protect that interest; and

    d.  the movant's interest must be inadequately represented by the existing parties to the suit.

*See* FED. R. CIV. P. 24(a)(2).

16.      Here, Rule 24(a)(2) is plainly satisfied: (i) this Motion is "timely"; (ii) the Co-Op Members have an interest in the resolution of the ERCOT Claim, which is likely to determine the amount the Debtor will seek to collect from the Co-Op Members and, in turn, impacts what the Co-Op Members will have to charge their customers; (iii) the determination of the ERCOT Claim will impair or impede the Co-Op Members' ability to protect their interests since it is unlikely that the Co-Op Members will be able to directly or effectively challenge the ERCOT Claim after the judgment in this Adversary Proceeding; and (iv) only the individual Co-Op Members can adequately represent their interests, because only the individual Co-Op Members answer to the ultimate ratepayers: the consumers.  FED. R. CIV. P. 24(a)(2); *see also Effjohn Int'l Cruises v. A&L Sales, Inc.*, 346 F.3d 552 (5th Cir. 2003); *Edwards v. City of Houston*, 78 F.3d 983, 999 (5th Cir. 1996).

17.      In the Fifth Circuit, the test for intervention of right is a "flexible" one, conferring courts with a range of reasonable discretion in applying the elements of Rule 24(a)(2).  *United States v. Allegheny–Ludlum Indus., Inc.*, 517 F.2d 826, 841 (5th Cir. 1975) ("[T]he inquiry under subsection (a)(2) is a flexible one, which focuses on the particular facts and circumstances surrounding each application . . . [and] intervention as of right must be measured by a practical rather than technical yardstick.").  A court's discretion ends, however, where an intervenor satisfies each element under Rule 24(a)(2); in such a case, the court *must* permit intervention.  *See* FED. R. CIV. P. 24(a)(2) (stating that "the court must permit" intervention).  As demonstrated below, the Co-Op Members meet each requirements under Rule 24(a)(2).

i.      *The Motion is "timely."*

18.     This Motion is timely because it is filed by the intervention deadline set by this Court: September 20, 2021.[5]  FED. R. CIV. P. 24(a).

ii.     *The Co-Op Members have an interest relating to the property or transaction which is the subject of the action.*

19.     An entitlement to intervene under Rule 24(a)(2) requires a "direct, substantial, legally protectable interest in the proceedings." *Edwards*, 78 F.3d at 1004.  The "interest" test "is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process."  *Sierra Club v. Espy*, 18 F.3d 1202, 1207 (5th Cir. 1994) (citing *Ceres Gulf v. Cooper*, 957 F.2d 1199, 1203 n.10 (5th Cir. 1992)).

20.     The Co-Op Members have the requisite interests.  The Debtor has already invoiced each Co-Op Member for a portion of the ERCOT charges underlying the ERCOT Claim by way of the TAAs; accordingly, the Co-Op Members' interest inherently concerns rights and obligations regarding the same transaction and/or property at issue in the Adversary Proceeding.  As noted above, resolving the ERCOT Claim will determine how much the Debtor owes ERCOT, which will largely drive the amount the Debtor seeks to collect from the Co-Op Members (whether through the TAAs or otherwise).  This, in turn, heavily impacts the Co-Op Members' cost structure and the rates they will need to charge their ultimate ratepayers.  Accordingly, the Co-Op Members have an interest in the ERCOT Claim determination at least equal to that of the Debtor and should be allowed to intervene.  *See Peckham v. Family Loan Co.*, 212 F.2d 100, 106–07 (5th Cir. 1954) (reversing district court's denial of intervention motion when intervenor asserted an interest in the debtor's property that was also the subject of the pending action); *see also Foster v. Gueory*, 655

---

[5]      *Scheduling Order*, at 2 [Adv. Docket No. 13].

F.2d 1319, 1324 (D.C. Cir. 1981) ("An intervenor's interest is obvious when he asserts a claim to property that is the subject matter of the suit.").

> ### iii.    The Co-Op Members' ability to protect their interests, as a practical matter, may be impaired or impeded.

21.     A right to intervene under Rule 24(a)(2) requires that the disposition of the action may, as a practical matter, impair or impede the intervenor's ability to protect its interests.  In the Fifth Circuit, an intervenor does not need to demonstrate that it will be *bound* by the disposition of a suit; instead, only a "generous measure of impairment" must be established.  *Edwards*, 78 F.3d at 1004–05 (emphasis added); *see also Espy*, 18 F.3d at 1207 (holding that "an intervenor's interest 'is impaired by the stare decisis effect of the district court's judgment.'") (quoting *Ceres Gulf v. Cooper*, 957 F.2d 1199, 1204 (5th Cir. 1992)).  *See also Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014) ("The impairment requirement does not demand that the movant be bound by a possible future judgment . . . ."); *Sierra Club*, 18 F.3d at 1207 ("[A]n intervenor's interest is impaired by the stare decisis effect of the district court's judgment.").

22.     Litigating this case to judgment without intervention by the Co-Op Members will hamper the Co-Op Members' ability to protect their interests.  As explained above, the ERCOT Claim determines the amount that the Debtor will likely seek to collect from the Co-Op Members. At some level and in some manner, the Co-Op Members will have to incorporate these costs into the rates they charge their customers, which may result in higher rates for consumers across Texas. Stare decisis and other factors are likely to impair the Co-Op Members' ability to protect their members from rate increases if the amount and classification of the ERCOT Claim are resolved without participation by the Co-Op Members.  Because this Adversary Proceeding likely presents the *only* shot at reducing the ERCOT Claim for which the Debtor will likely charge the Co-Op Members, the Co-Op Members' ability to protect their interest, as a practical matter, would be

impaired or impeded if the court denies intervention.

    **iv.**  *The Co-Op Members' interests are inadequately represented.*

  23.  The final element of a right to intervene under Fed. R. Civ. P. 24(a)(2) is that the existing parties in the suit do not adequately represent the intervenor's interest.   This requirement "is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972).  Although some courts in the Fifth Circuit have found adequate representation where the intervenor's "ultimate objectives" are the same as an existing party's, *see, e.g.*, *City Bank v. Compass Bank*, No. EP-09-CV-96, 2010 WL 1424275, at *7 (W.D. Tex. Apr. 6, 2010), other courts, including the Fifth Circuit itself, have found inadequate representation if the interests of the parties *may* diverge in the future.  *See Team Worldwide Corp. v. Wal-Mart Stores, Inc.*, No. 17-CV-00235, 2017 WL 6059303, at *6 (E.D. Tex. Dec. 7, 2017) ("The Court agrees that Walmart's interest in this suit may diverge from that of each individual proposed intervenor's interest, and, as a result, finds that Walmart may not adequately represent each proposed intervenor's interest."); *Heaton v. Monogram Credit Card Bank of Ga.*, 297 F.3d 416, 425 (5th Cir. 2002) ("That the FDIC's interests and Monogram's may diverge in the future, even though, at this moment, they appear to share common ground, is enough to meet the FDIC's burden on this issue [of inadequate representation].").

  24.  Here, this requirement is plainly satisfied since only the Debtor and the Official Committee of Unsecured Creditors (the "***Committee***") are currently opposing ERCOT, and neither one of them is able to represent the Co-Op Members' interests.  To be sure, both the Debtor and the Committee have *an* interest in the ERCOT Claim; however, only the Co-Op Members are faced with the prospect of having to pass some portion of the excessive ERCOT Claim on to *retail Texas*

*consumers*.  Since the Debtor and Committee lack direct relationships with the Texas consumers, they *may* be less responsive to the impact of increased rates on these consumers, and they *may* be unable to adequately represent those interests for that reason.  Therefore, only the Co-Op Members are able to adequately represent the specific interest of achieving an outcome from this Adversary Proceeding that is conducive to stability for the Co-Op Members themselves *and* their thousands of consumers.  Certainty is not required:  because the Co-Op Members' burden is "minimal," it is enough to show that the Committee and Debtor "*may be*" unable to adequately represent their interests.  *Trbovich*, 404 U.S. at 538 n.10 (emphasis added).

> **B.**     **The Co-Op Members Should Be Granted Permissive Intervention.**

25.     In the alternative, this Court should exercise its discretion by granting the Co-Op Members' request for permissive intervention under Federal Rule 24(b).

26.     Federal Rule 24(b), made applicable through Bankruptcy Rule 7024, is satisfied: (i) this Motion is "timely"; (ii) the Co-Op Members' claims share "a common question of law or fact" with the Debtor's claims, because the propriety and amount of the ERCOT Claim is likely to drive the amounts the Debtor will charge the Co-Op Members; and (iii) intervention will not "unduly delay or prejudice the adjudication of the original parties' rights" because the Co-Op Members do not seek relief different from that which the Debtor already seeks, and fact discovery does not close until November 23, 2021.  *See* FED. R. CIV. P. 24(b) ("On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact. . . . In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.").

> **i.**     ***The Motion is "timely."***

27.     This Motion is timely because it is filed by the intervention deadline set by this

Court:  September 20, 2021.[6]  FED. R. CIV. P. 24(b)(1).

> ### ii.    The Co-Op Members' Claims share a "common question of law or fact" with the Debtor's claims.

28.     The "fundamental requirement for allowing permissive intervention" is whether the intervenors' "claim or defense and the main action have a question of law or fact in common." *In re Today's Destiny, Inc.*, 2007 WL 2028111, at *2 (Bankr. S.D. Tex. July 6, 2007).  "While the decision to permit intervention is discretionary with the Court, the determination of the commonality of the intervenor's claim and the claims in the main case is not discretionary, but rather a question of law." *Id.*  (citing *Newby v. Enron Corp,* 443 F.3d 416, 421 (5th Cir. 2006)). This legal determination of commonality "has been construed liberally," *id.*, because the intervention rule "is aimed at preventing multiple lawsuits when common questions of law or fact are involved." *Reid v. Gen. Motors Corp.*, 240 F.R.D. 257, 259 (E.D. Tex. 2006).

29.     Here, the relief sought by the Co-Op Members is legally identical to the Debtor's requested relief in its Adversary Complaint.  *See In re Charter Co.,* 50 B.R. 57, 63 (W.D. Tex. 1985) (where the intervenor "has aligned itself with and adopted the Complaint . . . as its proposed pleading," it is "beyond question . . . that there are common legal and factual questions.").  As in *Charter*, the Co-Op Members have adopted and incorporated by reference the Debtor's Complaint. *See* Exhibit A.  Accordingly, the commonality element for permissive intervention is satisfied.

> ### iii.    Allowing the Co-Op Members to intervene will not "unduly delay or prejudice the adjudication of the original parties' rights."

30.     If an intervention motion is timely and there is commonality of law or fact, the court then "consider[s] whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *In re Today's Destiny*, 2007 WL 2028111, at *2; *see also Veve v.*

---

[6]     *Scheduling Order*, at 2 [Adv. Docket No. 13].

*Bolt Exp. LLC*, 2009 WL 1546086, at *1 (S.D. Tex. 2009) (same); *In re Charter,* 50 B.R. at 63 (same); *Reid v. Gen. Motors Corp.*, 240 F.R.D. 257, 260 (E.D. Tex. 2006) ("Having found common questions of law and fact and no undue delay or prejudice, the Court allows permissive intervention of Microsoft as a defendant pursuant to Rule 24(b)(2).").

31.     Here, intervention will neither unduly delay the proceedings nor prejudice adjudication of the rights of the original parties.  The Scheduling Order contemplates parties intervening until the intervention deadline of September 20, 2021.  Furthermore, document production has only recently begun in earnest, and fact discovery does not close until November 23, 2021—a full *two months* after the intervention deadline.  The Co-Op Members' claims do not seek any relief beyond that requested by the Debtor.  *See In re Charter*, 50 B.R. at 63 (granting request for permissive intervention where, among other things, applicant "proposes to raise no new issues" and "no discovery has been taken").  Likewise, the Co-Op Members intend to work closely with the Debtor, Committee, and other aligned intervenors (if any) to avoid duplication of efforts and filings.

32.     Far from unduly delaying or prejudicing adjudication of the rights of the original parties, permitting the Co-Op Members to intervene will instead assist in efficient resolution of this case.  As the Debtor has plainly acknowledged, the Co-Op Members are "integral to the Debtor's on-going operations." *Debtor's Emergency Motion to Allow Member Cooperatives to Use Prepetition Credits for Postpetition Invoices*, at 2 [Docket No. 196].  Involving the Co-Op Members and allowing them to participate will generate additional input from parties "integral" to the Debtor's operations, thereby facilitating a more efficient reorganization process overall.  By way of example, if the Debtor pursues securitization as part of its restructuring, it would need the consent of the Co-Op Members to securitize the Co-Op Members' portion of the cost.  The Co-Op

Members, however, should not be asked to take a position regarding securitization without ready access to information, including information relevant to the ERCOT Claim that may come from discovery and negotiations in this Adversary Proceeding.

33.     In sum, the Co-Op Members have filed a timely motion to intervene, and there is significant overlap between the Debtor's claims and the Co-Op Members' claims.  The Debtor and Co-Op Members both seek to reduce and reclassify the ERCOT Claim for the same reasons.  That said, the Debtor and the Co-Op Members serve different constituencies, and only the Co-Op Members have direct relationships with the thousands of ratepayers who will be most affected by the result in this Adversary Proceeding.  If allowed to intervene, neither ERCOT nor the Debtor would be prejudiced by the Co-Op Members' intervention, and to the contrary, the Co-Op Members' input would add significant perspective and value to the litigation, and to the ultimate restructuring of the Debtor.

**WHEREFORE**, the Co-Op Members respectfully request that this Court (a) enter the Proposed Order authorizing each Co-Op Member to intervene in the Adversary Proceeding pursuant to Federal Rule 24, as incorporated by Bankruptcy Rule 7024, (b) authorize the Co-Op Members to file the Complaint in Intervention, attached hereto as Exhibit A, and (c) grant such other and further relief as is just and proper.

Dated: September 20, 2021                    Respectfully submitted,

                                            */s/ Harry A. Perrin*
                                            Harry A. Perrin (Texas Bar No. 15796800)
                                            Michael A. Garza
                                            (S.D. Tex. Fed. I.D. No. 3174861)
                                            Kiran Vakamudi (Texas Bar No. 24106540)
                                            **VINSON & ELKINS LLP**
                                            1001 Fannin Street, Suite 2500
                                            Houston, Texas 77002
                                            Tel: (713) 758-2222
                                            Fax: (713) 758-2346
                                            hperrin@velaw.com
                                            mgarza@velaw.com
                                            kvakamudi@velaw.com

                                            *-and-*

                                            Jordan W. Leu (Texas Bar No. 24070139)
                                            **VINSON & ELKINS LLP**
                                            2001 Ross Avenue, Suite 3900
                                            Dallas, Texas 75201
                                            Tel: (214) 220-7700
                                            Fax: (214) 220-7716
                                            jleu@velaw.com

                                            **COUNSEL FOR THE AD HOC GROUP OF
                                            MEMBER-OWNER DISTRIBUTION
                                            COOPERATIVES**

## CERTIFICATE OF SERVICE

I certify that on September 20, 2021, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                             */s/ Harry A. Perrin*
                                            Harry A. Perrin

US 8282964

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| BRAZOS ELECTRIC POWER COOPERATIVE, INC., | Case No. 21-30725 (DRJ) |
| Debtor.[1] | |
| BRAZOS ELECTRIC POWER COOPERATIVE, INC., | |
| Plaintiff, | Adv. Proc. No. 21-03863 (DRJ) |
| v. | |
| ELECTRIC RELIABILITY COUNCIL OF TEXAS, INC., | |
| Defendant. | |

**ORDER GRANTING THE INDIVIDUAL MEMBERS OF THE AD
HOC GROUP OF MEMBER-OWNER DISTRIBUTION COOPERATIVES'
MOTION TO INTERVENE AS PLAINTIFFS UNDER BANKRUPTCY RULE 7024**

Upon consideration of the motion (the "***Motion***") of the individual members of the Ad Hoc

Group of member-owner distribution cooperatives (each, individually, a "***Co-Op Member***")[2] for

an order pursuant to Rule 24 of the Federal Rules of Civil Procedure (the "***Federal Rules***"), as

made applicable by Rule 7024 of the Federal Rules of Bankruptcy Procedure, granting the Co-Op

Members authority to intervene in this Adversary Proceeding; it appearing that the Court has

---

[1]     The Debtor in this chapter 11 case, along with the last four digits of its federal tax identification number is: Brazos Electric Power Cooperative, Inc. (4729). Additional information regarding this case may be obtained on the website of the Debtor's claims and noticing agent at http://cases.stretto.com/Brazos. The Debtor's address is 7616 Bagby Avenue, Waco, TX 76712.

[2]     The Co-Op Members comprising the "***Ad Hoc Group***" are: (1) Bartlett Electric Cooperative, Inc.; (2) Comanche County Electric Cooperative Association; (3) Cooke County Electric Cooperative Association, Inc. d/b/a PenTex Energy; (4) Hamilton County Electric Cooperative Association; (5) Heart of Texas Electric Cooperative, Inc.; (6) J-A-C Electric Cooperative, Inc.; (7) Navasota Valley Electric Cooperative, Inc.; and (8) Wise Electric Cooperative, Inc.

jurisdiction and authority to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334; the Court having determined that the relief requested in the Motion is in the best interests of the Debtor, its estate, and its creditors; it appearing that due and adequate notice and disclosure of the Motion has been given; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY ORDERED THAT:

1. The Motion is granted.

2. The Co-Op Members are authorized to file their Complaint in Intervention (defined in the Motion) and intervene as plaintiffs in the Adversary Proceeding.

3. The caption of the Adversary Proceeding shall be amended to include each Co-Op Member as an intervenor.

4. The Court shall retain jurisdiction over any and all matters arising from or relating to the interpretation or implementation of this Order.

Dated: _____, 2021
          Houston, Texas

_____
**THE HONORABLE DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

## EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| BRAZOS ELECTRIC POWER COOPERATIVE, INC., | Case No. 21-30725 (DRJ) |
| Debtor.[1] | |
| BRAZOS ELECTRIC POWER COOPERATIVE, INC., | |
| Plaintiff, | Adv. Proc. No. 21-03863 (DRJ) |
| v. | |
| ELECTRIC RELIABILITY COUNCIL OF TEXAS, INC., | |
| Defendant. | |

**COMPLAINT IN INTERVENTION BY THE INDIVIDUAL MEMBERS OF THE**
**AD HOC GROUP OF MEMBER-OWNER DISTRIBUTION COOPERATIVES**

The individual members of the Ad Hoc Group of member-owner distribution cooperatives

(each, a "***Co-Op Member***")[2] hereby file this Complaint in Intervention against the Electric

Reliability Council of Texas, Inc. ("***ERCOT***"), and respectfully state as follows:

---

[1]     The Debtor in this chapter 11 case, along with the last four digits of its federal tax identification number is: Brazos Electric Power Cooperative, Inc. (4729). Additional information regarding this case may be obtained on the website of the Debtor's claims and noticing agent at http://cases.stretto.com/Brazos. The Debtor's address is 7616 Bagby Avenue, Waco, TX 76712.

[2]     The Co-Op Members comprising the "***Ad Hoc Group***" are: (1) Bartlett Electric Cooperative, Inc.; (2) Comanche County Electric Cooperative Association; (3) Cooke County Electric Cooperative Association, Inc. d/b/a PenTex Energy; (4) Hamilton County Electric Cooperative Association; (5) Heart of Texas Electric Cooperative, Inc.; (6) J-A-C Electric Cooperative, Inc.; (7) Navasota Valley Electric Cooperative, Inc.; and (8) Wise Electric Cooperative, Inc.

## PARTIES

1.      Bartlett Electric Cooperative, Inc. is a Texas electric cooperative corporation with its principal place of business located at 27492 State Highway 95, Bartlett, Bell County, Texas 76511.

2.      Comanche County Electric Cooperative Association is a Texas electric cooperative corporation with its principal place of business located at 349 Industrial Blvd, Comanche, Comanche County, Texas 76442.

3.      Cooke County Electric Cooperative, Inc. d/b/a PenTex Energy is a Texas electric cooperative corporation with its principal place of business located at 11799 W. U.S. Highway 82, Muenster, Cooke County, Texas 76252.

4.      Hamilton County Electric Cooperative Association is a Texas electric cooperative corporation with its principal place of business located at 112 East Gentry St., Hamilton, Hamilton County, Texas 76531.

5.      Heart of Texas Electric Cooperative, Inc. is a Texas electric cooperative corporation with its principal place of business located at 1111 Johnson Drive, McGregor, McLennan County, Texas 76657.

6.      J-A-C Electric Cooperative, Inc. is a Texas electric cooperative corporation with its principal place of business located at 1784 FM 172, Henrietta, Clay County, Texas 76365-7108.

7.      Navasota Valley Electric Cooperative, Inc. is a Texas electric cooperative corporation with its principal place of business located at 2281 US-79, Franklin, Robertson County, Texas 77856.

8.      Wise Electric Cooperative, Inc. is a Texas electric cooperative corporation with its principal place of business located at 1900 North Trinity Street, Decatur, Wise County, Texas 76234.

9.      The Co-Op Members adopt and incorporate the statements as to the original parties set out in the *Debtor's Complaint Objecting to Electric Reliability Council of Texas, Inc.'s Proof of Claim and Other Relief* [Adv. Docket No. 1] (the "***Debtor's Complaint***"), ¶¶ 5-6.  *See* FED. R. CIV. P. 10(c), made applicable by FED. R. BANKR. P. 7010.

## JURISDICTION AND VENUE

10.      The Co-Op Members adopt and incorporate the statements as to Jurisdiction, Venue, and Authority set out in the Debtor's Complaint, ¶¶ 7-10.

11.      This Complaint in Intervention is filed in accordance with FED. R. CIV. P. 24(c), made applicable by FED. R. BANKR. P. 7024.

12.      This Court has constitutional authority to enter final orders with respect to the relief requested herein.  The Co-Op Members consent to the entry of a final judgment or order with respect to this Complaint in Intervention if it is determined the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## FACTUAL BACKGROUND AND GROUNDS FOR OBJECTION TO ALLOWANCE AND CLASSIFICATION

13.      In February 2021, the State of Texas experienced a catastrophic energy crisis resulting from Winter Storm Uri, including power shortages and extreme pricing of both natural gas and wholesale electricity.  ERCOT compounded the crisis by deviating from the market-based pricing mechanisms in its nodal protocols, causing large pricing anomalies and extreme electric power costs.

14.      On March 1, 2021, Brazos Electric Power Cooperative, Inc. ("***Brazos***," or the

"**Debtor**") filed a voluntary petition for relief under title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Texas.

15.     ERCOT filed a proof of claim in the Debtor's bankruptcy case for $1,899,152,990.64 (the "**ERCOT Claim**"), almost all of which ERCOT asserts is entitled to administrative priority pursuant to section 503(b)(9) of the Bankruptcy Code,[3] and almost all of which allegedly relates to the time period around Winter Storm Uri.  In response, the Debtor initiated this Adversary Proceeding seeking to reduce and reclassify the ERCOT Claim.

16.     In the Debtor's Complaint, the Debtor alleges that the ERCOT Claim should be reduced and reclassified because, among other things, ERCOT demands an inflated amount from the Debtor resulting from its deviation from the market-based pricing mechanisms in the ERCOT nodal protocols, and the ERCOT Claim does not qualify for administrative priority under section 503(b)(9) of the Bankruptcy Code.  Each Co-Op Member agrees.

17.     The Co-Op Members filing this motion are eight of the sixteen Brazos member cooperatives.  In simple terms, the Debtor generates and purchases electric power, which it sells to its sixteen member cooperatives under substantially identical "all-requirements" wholesale power contracts (the "**ARCs**").  The member cooperatives then use the electric power purchased from the Debtor to supply the thousands of residential, commercial, and industrial customers who depend on the member cooperatives for affordable, reliable electricity.

18.     The Debtor procures a substantial portion of the electric power that it sells to the Co-Op Members by purchasing it in the ERCOT market.  Although the Co-Op Members are not liable to ERCOT, they are greatly affected by the ERCOT Claim because section 5(a) of each ARC

---

[3]     ERCOT asserts that $1,877,591,506.10 of its claim is a section 509(b) priority claim.  *See Addendum to ERCOT's Proof of Claim*, p. 4 [Stretto Claim No. 403].

4

provides that "[t]he Member shall pay the [Debtor] for all electric power and energy furnished hereunder at the rates and on the terms and conditions set forth in the [Debtor's] tariffs . . . ." The pricing methodology under the ARCs and the Debtor's tariffs is complex, but for purposes of this Motion can be summarized as requiring the sixteen member cooperatives to pay the Debtor for, among other things: (i) the cost of the electricity generated and purchased for resale by the Debtor, (ii) certain operation, maintenance, administrative, and general overhead expenses, and (iii) the establishment and maintenance of reasonable reserves.

19.     Most relevant to this Adversary Proceeding, the Debtor pays ERCOT, the Co-Op Members pay the Debtor, and what the Debtor charges the Co-Op Members is heavily impacted by what the Debtor owes ERCOT.  In turn, because the Co-Op Members' costs play a significant role in the rates they charge to their own customers, this Adversary Proceeding is central to preserving affordable, reliable electric power for the thousands of retail customers who purchase it from the Co-Op Members.

20.     The Debtor has already invoiced the Co-Op Members for February, March, and April of 2021 (the "***Disputed Invoices***").  The Disputed Invoices allegedly include each Co-Op Member's proportionate share of the Debtor's ERCOT charges and other costs arising from Winter Storm Uri, along with other amounts chargeable to the Co-Op Members under the Debtor's tariffs. In aggregate, the Debtor appears to have assessed over 20% of the ERCOT charges giving rise to the ERCOT Claim to the eight Co-Op Members who file this Motion (and assessed the balance of such charges to the eight other member cooperatives) – albeit with a line item for a "Temporary Affordability Adjustment" (the "***TAA***") which temporarily withheld, but did not eliminate, the Co-Op Members' alleged obligation to pay the entire amount of the Disputed Invoices.  Although the Co-Op Members disagree with these Disputed Invoices and the TAAs, these invoices and the

structure of the electric cooperative system—in which each Co-Op Member ordinarily pays its share of the Debtor's procurement costs—only underscore the Co-Op Members' interest in this Adversary Proceeding.[4]

21.     Otherwise, the Co-Op Members adopt and incorporate the statements as to the Factual Background and Grounds for Objection to Allowance and Classification set out in the Debtor's Complaint, ¶¶ 11-120.

## CAUSES OF ACTION

22.     The Co-Op Members adopt and incorporate each Cause of Action and the related allegations set out in the Debtor's Complaint, ¶¶ 121-163.

## PRAYER

23.     The Co-Op Members adopt and incorporate the statements as to the Reservation of Rights, Right to Amend, and Prayer set out in the Debtor's Complaint, ¶¶ 164-165 and Art. VIII.

---

[4]     Each Co-Op Member has filed a proof of claim that, among other things, reserves defenses against the Debtor regarding the TAAs and all other charges arising from Winter Storm Uri.  Proofs of Claim for the Co-Op Members are located at Stretto Claim Numbers 411, 412, 414, 425, 426, 427, 428, and 429.  For the avoidance of doubt, the Co-Op Members are not seeking to prosecute any claims or Proofs of Claim against the Debtor in this Adversary Proceeding, and are not seeking to litigate the TAAs in this Adversary Proceeding.

Dated: _____ __, 2021

Respectfully submitted,

*[Proposed Draft]*            
Harry A. Perrin (Texas Bar No. 15796800)
Michael A. Garza
(S.D. Tex. Fed. I.D. No. 3174861)
Kiran Vakamudi (Texas Bar No. 24106540)
**VINSON & ELKINS LLP**
1001 Fannin Street, Suite 2500
Houston, Texas 77002
Tel: (713) 758-2222
Fax: (713) 758-2346
hperrin@velaw.com
mgarza@velaw.com
kvakamudi@velaw.com

*-and-*

Jordan W. Leu (Texas Bar No. 24070139)
**VINSON & ELKINS LLP**
2001 Ross Avenue, Suite 3900
Dallas, Texas 75201
Tel: (214) 220-7700
Fax: (214) 220-7716
jleu@velaw.com

**COUNSEL FOR THE AD HOC GROUP OF
MEMBER-OWNER DISTRIBUTION
COOPERATIVES**

US 8285163

7