IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>BRAZOS ELECTRIC POWER COOPERATIVE, INC.,<br><br>Debtor.[1] | Chapter 11<br><br>Case No. 21-30725 (DRJ) |
| BRAZOS ELECTRIC POWER COOPERATIVE, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ELECTRIC RELIABILITY COUNCIL OF TEXAS, INC.,<br><br>Defendant. | Adv. Proc. No. 21-03863 (DRJ) |

**ELECTRIC RELIABILITY COUNCIL OF TEXAS, INC.'S COMPLIANCE REPORT**
[Relates to Docket No. 13]

TO THE HONORABLE DAVID R. JONES, CHIEF U.S. BANKRUPTCY JUDGE:

Electric Reliability Council of Texas, Inc. ("ERCOT") files its Compliance Report (the "Report") and respectfully states as follows:

## I.   INTRODUCTION

1. The Court entered its Scheduling Order on August 30, 2021 [Dkt. No. 13].

2. The Scheduling Order set a September 30, 2021 deadline for Parties to respond and produce documents responsive to document requests served by August 31, 2021.

3. In addition to convening regularly-scheduled status conferences, the Court also set a compliance hearing for October 1, 2021.

---

[1] The Debtor in this chapter 11 case, along with the last four digits of its federal tax identification number is: Brazos Electric Power Cooperative, Inc. (4729).  Additional information regarding this case may be obtained on the website of the Debtor's claims and noticing agent at http://cases.stretto.com/Brazos.  The Debtor's address is 7616 Bagby Avenue, Waco, TX 76712.

1

4.  During the September 28 status conference, ERCOT's counsel reported on the status of ERCOT's document compilation and production. Counsel explained that the majority of materials responsive to those Requests for Production served by the UCC and the Debtor on or before August 31, 2021 would be produced by the September 30 deadline.[2] As detailed below, ERCOT now reports that it has produced nearly all of the responsive materials.

5.  ERCOT files this Report for two purposes: (1) to apprise the Court of ERCOT's good-faith and diligent efforts to meet the current September 30 deadline, and (2) to request an extension until Tuesday, October 5, 2021, to produce the remaining emails (all responsive text messages and documents compiled in response to the requests for production have been produced; there remains a small subset of emails to produce).

## II. BACKGROUND

**A. ERCOT's efforts to compile and produce responsive materials.**

**1. The requests to which ERCOT is responding.**

6.  The Unsecured Creditors' Committee ("UCC") served a Notice of 2004 Examination and Document Production Requests to ERCOT [Main Case Dkt. No. 682]. Debtor served ERCOT with two sets of requests for production by August 31. There are a total of 59 requests for production; a number of which contain many sub-parts.

7.  Counsel for Debtors, the UCC, and ERCOT engaged in numerous discussions to narrow the scope of these various requests served upon ERCOT; however, even after this agreed-upon and more focused approach, the information requested remains broad and the production

---

[2] ERCOT's counsel conferred with Debtor's counsel on September 27 and September 28 to inform counsel of the status of completion. On September 28 and prior to the Court's Status Conference, ERCOT's counsel then engaged in a follow-up telephone conference with Debtor's counsel and the UCC's counsel regarding the same issues.

voluminous.

### 2. Custodian text messages.

8. Debtor requested text messages from 36 different custodians.

9. Due to ERCOT's COVID-19 Pandemic Plan, only limited employees (not the custodians) are working from the ERCOT office. To extract text messages from the custodians' mobile devices required twenty of these custodians to drive to ERCOT's office in Taylor, Texas and to personally meet with ERCOT's Information Governance staff for the in-person data-extraction process to be completed.

10. The remainder of the custodians have a different type of mobile-device platform that allowed the data to be remotely extracted.

11. In addition to the normal instant and text messaging tools contained in these custodians' mobile devices, many of the custodians also use the "WhatsApp" application for company text messaging.

12. ERCOT's outside counsel was tasked with reviewing all of the text and WhatsApp messages to determine responsiveness and address privilege issues.

13. All of the potentially non-privileged and responsive data from the 36 custodians' mobile devices has been compiled and the review and production process is complete.

### 3. Custodian emails.

14. As with the text messages referenced above, there are 36 email-record custodians. ERCOT's computer systems contain numerous layers of security protocols. ERCOT is subject to federal and state regulations regarding the security of its computer systems and data. The document-hosting platform that is used to compile ERCOT's responsive electronically-stored information must be hosted internally on ERCOT's servers to satisfy security requirements

mandated by the North American Electric Reliability Corporation ("NERC").[3] Only individuals with the required security authorization may directly access the ERCOT platform in order to conduct the email review.

15.   Thus, a team of outside attorneys with proper authorization were tasked with overseeing and conducting the ESI review for responsiveness and privilege. Once the de-duplication process is complete, the materials are reviewed, and then exported from the secure server to another server and prepared for production.

16.   Three of the email record custodians Debtor requested are in-house counsel for ERCOT (including ERCOT's General Counsel). Thus, the privilege review was time consuming.

17.   All responsive emails are compiled, and the review process is near completion.

18.   ERCOT anticipates that the remaining emails will be produced by no later than Tuesday, October 5.

**4. Other responsive materials.**

19.   ERCOT views the remaining responsive materials as falling into four general categories of information: (1) pricing/financial information; (2) winter weatherization, outage, and operations information and communications, including information provided to FERC in connection with the ongoing investigation into Winter Storm Uri; (3) settlement statements, invoices and related information; and, (4) media, press-releases, and publicly-communicated information. These broad categories are responsive to the 59 requests for production.

---

[3] NERC is the Electric Reliability Organization ("ERO") for North America and is subject to oversight by the Federal Energy Regulatory Commission ("FERC"). NERC's mission is to assure the effective and efficient reduction of risks to the reliability and security of the power grid and has been delegated responsibility to develop and enforce FERC-approved Reliability Standards. *See*, https://www.nerc.com/AboutNERC/Pages/default.aspx

20.     These categories include both ESI and hard-copy materials. The hard-copy materials were all reduced to electronic files.

21.     Responsive materials in these categories are compiled, the review process is complete, and the materials have been produced.

**5.  Market Participant concerns and responses.**

22.     As previously discussed with Debtor, the UCC, and the Court, ERCOT is in possession of confidential and protected material ("Protected Information") provided to it by hundreds of market participants that participate in the Texas wholesale electric market. ERCOT cannot disclose this information without complying with the notice provisions of the ERCOT Nodal Protocols. *See, e.g.*, ERCOT Nodal Protocols at § 1.3.1 ("A Receiving Party may not disclose Protected Information received from a Disclosing Party to any other Entity except as specifically permitted in this Section and in these Protocols."), available at http://www.ercot.com/mktrules/nprotocols/current.

23.     To the extent that Protected Information is implicated by ESI searches (or other discovery-compilation methods), and as required by ERCOT Nodal Protocols § 1.3.5, ERCOT has provided notice to market participants regarding the document requests and that Protected Information would be produced under the terms of a protective order. *See generally* ERCOT Nodal Protocols at § 1.3.

24.     ERCOT issued its first Market Notice on August 10, 2021 (twenty days before this Court entered its Scheduling Order) and its second Market Notice on September 21, 2021.

25.     ERCOT received many communications from market participants in response to the Market Notices. These market participants conveyed their concerns regarding the production of Protected Information and demanded that ERCOT explain the steps being taken to protect the

production of that information.  ERCOT was required to address these issues in the midst of production cycles.

26.     Additionally, and as this Court is aware, the Debtor, UCC, ERCOT, and the PUCT engaged in a weeks-long negotiation to ensure that a Protective Order is in place to govern the production of this information and to designate it such that it is protected pursuant to Court order.

27.     Market Participants were notified of the draft Protective Order and provided comments.  The Protective Order was finally submitted to the Court on the morning of September 30.

28.     ERCOT's obligations to protect market participants' highly sensitive and confidential information are codified in the ERCOT Protocols, and thus, ERCOT is contractually bound to abide by them.  ERCOT's role also necessarily means that it has access to and possesses market participants' Protected Information.  This requires a heightened sensitivity while undertaking the document compilation, review, and production process.

**6. Production Metrics.**

29.     As of the filing of this Report, ERCOT has produced the following information:

| PRODUCTION | # OF RECORDS | # OF PAGES | # OF NATIVE FILES | SIZE IN GB |
|---|---|---|---|---|
| ERCOT_B0000001-ERCOT_B0000136 | 97 | 136 | 0 | 4MB |
| ERCOT_B0000137-ERCOT_B0000330 | 194 | 194 | 194 | 4MB |
| ERCOT_B0000331-ERCOT_B0000734 | 381 | 404 | 404 | 1.7GB |
| ERCOT_B0000735-ERCOT_B0010324 | 1,918 | 9,590 | 38 | 890MB |
| ERCOT_B0010325-ERCOT_B0036340 | 5,362 | 26,016 | 360 | 9.4GB |
| ERCOT_B0036341-ERCOT_B0046644 | 3,035 | 10,304 | 51 | 3.6GB |
| ERCOT_B0046645-ERCOT_B0133223 | 16,224 | 86,579 | 8,020 | 22GB |

| PRODUCTION | # OF RECORDS | # OF PAGES | # OF NATIVE FILES | SIZE IN GB |
|---|---|---|---|---|
| ERCOT_B0133224-ERCOT_B0146225 | 3,454 | 13,002 | 84 | 4.7GB |
| ERCOT_B0146226-ERCOT_B0153428 | 488 | 7203 | 219 | 1.9GB |
| ERCOT_B0153429-ERCOT_B0266484 | 10,457 | 113,056 | 1,818 | 30.6GB |
| ERCOT_B0266485-ERCOT_B0271070 | 890 | 4,586 | 0 | 1.36GB |
| TOTALS | 42,500 | 271,070 | 11,188 | Approx. 76GB |

**B.      Request for additional time to complete remaining production.**

30.     The Scheduling Order [Dkt. No. 13], provides, "Any changes in this schedule will only be made by further order of the Court, either orally at a hearing or in writing. Motions to extend these deadlines will be granted only for good cause beyond the control of the lawyers or parties in very limited circumstances." *See* Scheduling Order at 3, ¶ 3.

31.      ERCOT has diligently engaged in its document compilation and production efforts for months. Not surprisingly, this process required dozens of ERCOT employees and outside professionals. Unfortunately, it has also not been without its share of technical glitches that delayed the compilation and review processes.

32.     Additionally, ERCOT has been undergoing an audit by NERC's regional entity, the Texas Reliability Entity, Inc. ("Texas RE"), under supervision by FERC during this same time period. These audits consist of information requests that require a 24-hour turn-around from ERCOT. Such has been the case here. This has forced ERCOT staff (and in-house counsel) to immediately respond to the FERC-audit-related inquiries during a weeks-long process. In addition, ERCOT has been the subject of an ongoing joint inquiry conducted by FERC, NERC, and Texas RE, which has further required significant time and resources. Finally, ERCOT's internal and external resources have been further constrained by implementation of legislation passed by the

7

Texas Legislature this year. Despite these competing regulatory and legislative matters (and technical issues), ERCOT was able to complete nearly all of its total production and anticipates that the remaining production will be accomplished by no later than Tuesday, October 5.

33. Federal Rule of Civil Procedure 16(b)(4) governs amendments to scheduling orders. "Modifying a Schedule. A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).

34. "There are four relevant factors to consider when determining whether there is good cause under Rule 16(b)(4): '(1) the explanation for the failure to timely [comply with the scheduling order]; (2) the importance of the [modification]; (3) potential prejudice in allowing the [modification]; and (4) the availability of a continuance to cure such prejudice." *Meaux Surface Protection, Inc. v. Fogleman*, 607 F.3d 161, 167 (5th Cir. 2010) (internal quotation marks and citation omitted); *see also Squyres v. Heico Cos., LLC*, 782 F.3d 224, 237 (5th Cir. 2015.

35. In this instance, and as explained more fully above, ERCOT has made diligent efforts to comply with this Court's Scheduling Order and to produce documents responsive to those document requests served by August 31. Indeed, it has produced the vast majority of those documents.

36. Unfortunately, and despite its efforts and attempts to make a complete production of all responsive materials, the document production is not 100% complete due to no fault of the parties or their counsel.

37. The requested brief extension of the September 30th deadline to Tuesday, October 5th will not prejudice the Debtor or the UCC.

Dated: September 30, 2021        Respectfully submitted,

**MUNSCH HARDT KOPF & HARR, P.C.**

By: */s/ Jamil N. Alibhai*
    Kevin M. Lippman
    Texas Bar No. 00784479
    klippman@munsch.com
    Deborah Perry
    Texas Bar No. 24002755
    dperry@munsch.com
    Jamil N. Alibhai
    Texas Bar No. 00793248
    jalibhai@munsch.com
    Ross H. Parker
    Texas State Bar No. 24007804
    rparker@munsch.com

    3800 Ross Tower
    500 N. Akard Street
    Dallas, Texas 75201-6659
    Telephone: (214) 855-7500
    Facsimile: (214) 855-7584

**ATTORNEYS FOR THE ELECTRIC RELIABILITY COUNCIL OF TEXAS, INC.**

## CERTIFICATE OF SERVICE

    The undersigned attorney certifies that a true and correct copy of the foregoing document was served upon the counsel for parties of record in this Adversary Proceeding, electronically through the Bankruptcy Court's Electronic Case Filing System on the 30th day of September, 2021.

    */s/Jamil N. Alibhai*
    Jamil N. Alibhai

4843-0580-8637v.2 .