# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>BRAZOS ELECTRIC POWER, COOPERATIVE, INC.[1]<br><br>    Debtor. | Chapter 11<br><br>Case No. 21-30725 (DRJ) |
| BRAZOS ELECTRIC POWER COOPERATIVE, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>ELECTRIC RELIABILITY COUNCIL OF TEXAS, INC.,<br><br>    Defendant. | Adv. Proc. No. 21-03863 (DRJ) |

**CALPINE CORPORATION, TENASKA POWER SERVICES CO., NRG ENERGY, INC., ENGIE ENERGY MARKETING NA, INC., TALEN ENERGY SUPPLY, LLC, GOLDEN SPREAD ELECTRIC COOPERATIVE, INC., SOUTH TEXAS ELECTRIC COOPERATIVE, INC., AND NEXTERA ENERGY MARKETING, LLC RESPONSE IN OPPOSITION TO MOTIONS FOR INTERVENTION OF LUMINANT ENERGY LLC, EXELON GENERATION COMPANY, LLC, MEMBERS OF THE AD HOC GROUP OF MEMBER-OWNER DISTRIBUTION COOPERATIVES, TRI-COUNTY ELECTRIC COOPERATIVE, INC., MID-SOUTH ELECTRIC COOPERATIVE ASSOCIATION, UNITED ELECTRIC COOPERATIVE SERVICES, INC., AND DENTON COUNTY <u>ELECTRIC COOPERATIVE, INC. D/B/A COSERV ELECTRIC</u>**

---

[1] The Debtor in this chapter 11 case, along with the last four digits its federal tax identification number is: Brazos Electric Power Cooperative, Inc. (4729). Additional information regarding this case may be obtained on the website of the Debtor's proposed claims and noticing agent at http://cases.stretto.com/Brazos. The Debtor's address is 7616 Bagby Avenue, Waco, TX 76712.

Calpine Corporation, on behalf of itself and each of its affiliates, including but not limited to Calpine Energy Services, L.P., Calpine Energy Solutions, LLC, and Cavallo Energy Texas, LLC (collectively, "Calpine"); Tenaska Power Services Co. ("TPS"); NRG Energy, Inc., on behalf of itself and each of its affiliates, including but not limited to Direct Energy LP, NRG Cedar Bayou Development Company, LLC, NRG South Texas LP, NRG Texas Power LLC, NRG Power Marketing LLC, and Cirro Group, Inc. (collectively, "NRG"); ENGIE Energy Marketing NA, Inc., on behalf of itself and each of its affiliates, including but not limited to Anson Solar Center LLC, Live Oak Wind Project LLC, Engie Long Draw Solar LLC, Las Lomas Wind Project LLC, Jumbo Hill Wind Project, LLC, Prairie Hill Wind Project, LLC, Solaire Holman 1 LLC, Seymour Hills Wind Project LLC and Engie Resources LLC (collectively, "ENGIE"); Talen Energy Supply, LLC, on behalf of itself and each of its affiliates, including but not limited to Talen Energy Marketing, LLC (collectively "Talen"); Golden Spread Electric Cooperative, Inc. ("GSEC"); South Texas Electric Cooperative, Inc. ("STEC"); and NextEra Energy Marketing, LLC, on behalf of itself and certain of its affiliates ("NEM") (together with Calpine, TPS, NRG, ENGIE, GSEC, and STEC, the "Defendant Intervenors"), hereby file this Response (the "Response") to Luminant Energy Company LLC and Exelon Generation Company, LLC's Motion to Intervene (Dkt. No. 29); Individual Members of the Ad Hoc Group of Member-Owner Distribution Cooperatives' Motion to Intervene as Plaintiffs Under Bankruptcy Rule 7024 (Dkt. No. 30); Motion to Intervene by Tri-County Electric Cooperative, Inc. (Dkt. No. 31); Mid-South Electric Cooperative Association's Motion to Intervene in Adversary Proceeding (Dkt. No. 32); United Electric Cooperative Services, Inc.'s Motion to Intervene in Adversary Proceeding (Dkt. No. 33); and Motion of Denton County Electric Cooperative, Inc. d/b/a Coserv Electric for Entry of an Order Pursuant to Federal Rule of Civil Procedure 24 and Federal Rule of Bankruptcy Procedure 7024

1

Authorizing Intervention in Adversary Proceeding (Dkt. No. 34) (collectively, the "Plaintiff Intervention Motions").

## INTRODUCTION

1. On September 20, 2021, fourteen parties filed five separate motions seeking to intervene as plaintiffs in this Adversary Proceeding.[2] These would-be plaintiff intervenors are comprised of two groups: First, Luminant Energy Company LLC ("Luminant") and Exelon Generation Company, LLC ("Exelon," and together with Luminant, the "Pricing Objectors"). *See* Dkt. No. 29. Second, twelve member cooperatives that are owners of the Debtor: Bartlett Electric Cooperative, Inc., Comanche County Electric Cooperative Association, Cooke County Electric Cooperative Association, Inc. d/b/a PenTex Energy, Hamilton County Electric Cooperative Association, Heart of Texas Electric Cooperative, Inc., J-A-C Electric Cooperative, Inc., Navasota Valley Electric Cooperative, Inc., Wise Electric Cooperative, Inc., Tri-County Electric Cooperative, Inc., Mid-South Electric Cooperative Association, United Electric Cooperative Services, Inc., and Denton County Electric Cooperative, Inc. d/b/a Coserv Electric (together, the "Owner Cooperatives"). *See* Dkt. Nos. 30-34.

2. Proposed pleadings attached to the Plaintiff Intervention Motions largely incorporate the allegations of the Debtor's Complaint, including through express incorporation by reference or by copying many of the Complaint's allegations and causes of action verbatim.

3. These proposed pleadings and Plaintiff Intervention Motions highlight the Defendant Intervenors' significant stake and interest in the Adversary Proceeding as creditors, further supporting the Defendant Intervenors' arguments in favor of intervention.

---

[2] Capitalized terms not otherwise defined herein shall have the same meaning assigned to them in the Defendant Intervenors' Motion. (Dkt. No. 28).

2

**ARGUMENT**

**I.   THE OWNER COOPERATIVES ARE ALREADY ADEQUATELY REPRESENTED IN THIS PROCEEDING BY THE DEBTOR.**

4.   The Owner Cooperatives are, as they admit, owners of the Debtor who directly control the Debtor through their governance structure.[3] If the Debtor settles the ERCOT Claim, then it will be because the Owner Cooperatives allowed it. If the Debtor waives a particular legal argument in the Adversary Proceeding, it will have done so with the Owner Cooperatives' consent. The Debtor's Board of Directors is, by design, representative of the Owner Cooperatives, with each Owner Cooperative having one Director on the Debtor's Board.[4] Should the Owner Cooperatives disagree with the Board of Directors' course of action as to the ERCOT Claim, securitization, or other issues in this bankruptcy, then the Debtor's bylaws empower the Owner Cooperatives ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Bylaws of Brazos Electric Power Cooperative, Inc., § 3.5.[5] Consequently, the Owner Cooperatives' representation in the Adversary Proceeding is already adequate.

5.   Moreover, the Debtor's Board of Directors—i.e., the Owner Cooperatives— granted each Owner Cooperative a "Temporary Affordability Adjustment" through which it determined not to collect on the Debtor's procurement costs that are ordinarily passed on to the Owner Cooperatives. *See* Dkt. No. 30 at ¶ 8; Dkt. No. 31 at ¶ 17; Dkt. No. 32 at ¶ 8; Dkt, No. 33

---

[3]   Mid-South Cooperative argues that the equity interests of the Owner Cooperatives create a right of mandatory intervention. *See* Dkt. No. 32 at ¶ 15. This is incorrect. Such an expansive view of intervention in an adversary proceeding would open the floodgates to intervention by any number of equity holders or, at the very least, a committee of equity holders in any adversary proceeding of consequence.

[4]   *See* http://www.brazoselectric.com/board.asp.

[5]   A copy of the Bylaws of Brazos Electric Power Cooperative, Inc. is filed under seal concurrently herewith in accordance with Paragraph 15 of the Confidentiality Agreement and Stipulated Protective Order entered in the Adversary Proceeding on October 1, 2021. (Dkt. No. 51).

at ¶ 8; Dkt. No. 34 at ¶ 12.  The full benefits of this transaction inure to the Owner Cooperatives.  Unlike the Debtor, the Owner Cooperatives have not filed for bankruptcy.  For that reason, it is improper for the Owner Cooperatives to seek protections through their Motions to Intervene, as those protections are only provided by the Bankruptcy Code to persons or entities that actually file bankruptcy petitions.

6. On the other hand, Defendant Intervenors, as creditors with no authority over ERCOT or the Debtor, are not adequately represented in the Adversary Proceeding and are entitled to intervene to protect their interests.  Certain Defendant Intervenors are creditors of the Debtor by virtue of the Debtor's non-payment to ERCOT, which is required by law to be balance sheet neutral.  Other Defendant Intervenors are creditors of the Debtor by virtue of the Debtor's non-payment under direct agreements between the Debtor and those Defendant Intervenors.  All of the Defendant Intervenors have filed valid claims in the main case—many with priority under Section 503(b)(9) of the Bankruptcy Code.  Each of the Defendant Intervenors' claims have priority over those arising from equity interests, such as the interest of the Owner Cooperatives.  Unlike the Owner Cooperatives, no party to the Adversary Proceeding is capable of adequately representing the Defendant Intervenors' interests, as further described in the Defendant Intervenors' Motion to Intervene.  *See* Dkt. No. 28.

## II.  THE OWNER COOPERATIVES' AND PRICING OBJECTORS' CONCERNS ARE MORE APPROPRIATELY ADDRESSED IN THE MAIN CASE AT CONFIRMATION OR OUTSIDE OF THE DEBTOR'S BANKRUPTCY PROCEEDING.

7. The Plaintiff Intervention Motions reveal motives and concerns that belong in the main case or regulatory channels.  *First*, the Owner Cooperatives' repeated references to concerns for securitization and their ownership interests suggest an attempt to bootstrap confirmation issues in the Adversary Proceeding.  *Second*, the Pricing Objectors seek a back-door resolution of their

regulatory appeals—involving pure third-party claims—in bankruptcy court. The Court should not countenance such tactics.

8. The Owner Cooperatives' motions for intervention are based on concerns stemming from equity interests in the Debtor, the relationship between the size of ERCOT's Claim and the Debtor's ability to implement a plan of reorganization, with or without securitization, and the effect that any plan may have on the Owner Cooperatives' equity interests. These interests pertain to the Debtor's as-yet filed plan of reorganization and the confirmability of that plan. As such, they belong in the main case and should be resolved as part of confirmation, rather than inhibiting the progress of this Adversary Proceeding.

9. Tellingly, the Owner Cooperatives seek intervention to: "facilitate a more efficient reorganization process overall," Dkt. No. 30 at ¶ 32; gain "access to information … that may come from discovery and negotiations in this Adversary Proceeding," *id.*; have "direct input into any settlement negotiations," Dkt. No. 31 at ¶ 29; challenge "[w]hat the Debtor perceives as an acceptable resolution of this Adversary Proceeding," Dkt. No. 32 at ¶ 3; ensure that the Debtor "take[s] into account the interests of all creditors in formulating its plan of reorganization," Dkt. No. 33 at p. 3; protect the "patronage capital account" as an "owner of the Debtor" because "the need for the Debtor to be able to invest in infrastructure and other operations moving forward is of paramount importance," *id.* at ¶ 19; protect "an undeniable interest in the adjudication of estate liabilities, of which the ERCOT Claim is by far the largest," Dkt. 34 at ¶ 36; "investigat[e] and potentially pursu[e] other avenues to satisfy amounts legitimately owed to ERCOT, such as the sale of the Debtor's generation assets," *id.* at ¶ 38; and because "the adjudication of the amount of the ERCOT Claim directly impacts CoServ as a *de facto* 'equity holder' in Brazos," *id.* at ¶ 3. These concerns reveal the Owner Cooperatives' true interest in intervention: addressing their

5

reorganization, confirmation, and ownership concerns through intervention in the Adversary Proceeding.

10. Furthermore, certain of the Owner Cooperatives claim a right to intervene under Section 1109(b) of the Bankruptcy Code. *See* Dkt Nos. 31, 32, 34. Yet Section 1109(b) does not grant an unconditional right to intervene in an adversary proceeding. *See Fuel Oil Supply & Terminaling v. Gulf Oil Corp.*, 762 F.2d 1283, 1286-1287 (5th Cir. 1985). The Owner Cooperatives' right to intervene under Section 1109(b) is in the main "case," not in all proceedings relating to it, including this Adversary Proceeding. Given the prominence of the Owner Cooperatives' equity interests and confirmation concerns, their participation belongs in the main case, where they may exercise their right to be heard under Section 1109(b).

11. As for the Pricing Objectors, their true interest similarly lies outside of the Adversary Proceeding. The prayer of the Pricing Objectors' proposed complaint asks this Court to enjoin ERCOT from enforcing *non-Debtor* contracts and recovering Brazos' non-payment from other market participants through uplift charges, seeking an order "that ERCOT cannot shift any reduced amount to the remaining solvent participants through the Default Uplift procedure." Dkt. No. 29-2 at pp. 13-14. This request for relief involves pure third-party, non-Debtor claims. Neither the Debtor nor the Owner Cooperatives seek such sweeping relief in the Adversary Proceeding. The Pricing Objectors' request for relief is a challenge to a regulatory scheme and is not, nor should be, before this Court.

### III. BOTH THE PRICING OBJECTORS AND OWNER COOPERATIVES SEEK TO CHALLENGE THE PUCT'S ORDERS IN THIS ADVERSARY PROCEEDING.

12. Despite the Owner Cooperatives' and Pricing Objectors' protestations to the contrary, a common thread of the Plaintiff Intervention Motions and proposed pleadings is the attack on the validity of the PUCT's Orders and rulemaking authority. But, as detailed in *Electric*

*Reliability Council of Texas, Inc.'s Motion to Dismiss and for Abstention*, the PUCT is an indispensable party that has not been joined.  *See* Dkt. No. 23.  This focus on the validity and enforceability of the PUCT's Orders is a cause of concern.

13. Whether or not the PUCT is ultimately joined in the Adversary Proceeding, the Pricing Objectors have challenged the PUCT's Orders in multiple other forums.  The Pricing Objectors are parties to ongoing litigation against the PUCT in which they allege that the PUCT's Orders are "invalid pricing rules" (the "Luminant Appeal").  *See* Dkt. No. 29 at 21-22.  The Luminant Appeal is pending before Texas's Third Court of Appeals.  Separately, Exelon, which has intervened in the Luminant Appeal, filed a motion for rehearing in the PUCT challenging the Orders, which Exelon then appealed in a petition for judicial review and declaratory action in the 201st Judicial District Court of Travis County, Texas.  *See* Dkt. No. 29 at ¶ 22.  That case, along with a similar case filed by RWE Renewables Americas LLC in which Exelon has also intervened, is pending in Travis County District Court as well.  In connection with their challenges to ERCOT's pricing pursuant to the PUCT's Orders, it is unclear whether the Pricing Objectors have availed themselves of the ERCOT ADR process.  If so, the Pricing Objectors might also add to this list of parallel proceedings with a complaint against ERCOT in the PUCT.  The Pricing Objectors contend in their state-court lawsuits that jurisdiction for such challenges to PUCT actions properly lies there, and they should not be allowed to use the Adversary Proceeding as yet another forum for seeking repricing relief.

14. The Owner Cooperatives similarly seek to use the Adversary Proceeding as a platform for challenging the PUCT's Orders and ERCOT's actions.  The Owner Cooperatives are transparent in this motive, stating that: "this Adversary Proceeding likely presents the *only* shot at reducing the ERCOT Claim for which the Debtor will likely charge the Co-Op Members," Dkt.

No. 30 at ¶ 22 (emphasis in original); "[w]ithout intervention, Mid-South will have no real ability to challenge the ERCOT Claim after the conclusion of the Adversary Proceeding," Dkt. No. 32 at ¶ 17; "the Court's determination of the Debtor's liability to ERCOT is likely to be the sole opportunity for judicial review of an unprecedented disruption to the electricity markets giving rise to an impractically outsized claim," Dkt. No. 33 at ¶ 21. Because the Owner Cooperatives concede or imply that they cannot participate (or have not participated) in direct challenges as to the validity of the PUCT's Orders or ERCOT's pricing actions (unlike Defendant Intervenors, who are parties to those processes), the Owner Cooperatives should not be granted standing to do so through the Adversary Proceeding.

15. Absent *Burford* abstention, a ruling in the Adversary Proceeding that directly implicates the validity or scope of the PUCT's Orders may draw an appeal, whether by ERCOT, the PUCT, or both. Granting the Plaintiff Intervention Motions unnecessarily creates a risk of transforming this important Adversary Proceeding into the Pricing Objectors' fast-track, end-run around the regulatory appeals processes that they have already initiated elsewhere and involving the correct parties-in-interest. It would also open a back door for the Owner Cooperatives to pursue regulatory appeals and prematurely address their plan confirmation concerns.

## **CONCLUSION**

16. For the foregoing reasons, Defendant Intervenors respectfully request that the Court deny the Plaintiff Intervention Motions.

By: */s/ Judith Ross*
**ROSS & SMITH, PC**
Judith Ross
700 North Pearl Street, Suite 1610
Dallas, TX 75201
Telephone: (214) 377-8659
Email: judith.ross@judithwross.com

*Counsel to Tenaska Power Services Co.*

By: */s/ Annapoorni R. Sankaran*
**HOLLAND & KNIGHT LLP**
Annapoorni R. Sankaran
TX Bar No. 24071918
1100 Louisiana Street, Suite 4300
Houston, TX 77002
Telephone: (713) 821-7000
Facsimile: (713) 821-7001
Email: anna.sankaran@hklaw.com

*Counsel to Golden Spread Electric Cooperative, Inc.*

By: */s/ Patrick L. Hughes*
**HAYNES AND BOONE, LLP**
Patrick L. Hughes
Texas State Bar No. 10227300
David Trausch
Texas State Bar No. 24113513
1221 McKinney, Suite 4000
Houston, TX 77010
Telephone: (713) 547-2000
Facsimile: (713) 547-2600
Email: patrick.hughes@haynesboone.com
Email: david.trausch@haynesboone.com

*Counsel to South Texas Electric Cooperative, Inc.*

By: */s/ Mark McKane*
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
David R. Seligman, P.C. (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: david.seligman@kirkland.com

-and-

Mark McKane, P.C. (admitted *pro hac vice*)
555 California Street
San Francisco, California 94104
Telephone: (415) 439-1400
Facsimile: (212) 439-1500
Email: mark.mckane@kirkland.com

-and-

Aparna Yenamandra (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: aparna.yenamandra@kirkland.com

*Counsel to Calpine Corporation*

9

By: */s/ Luckey McDowell*
**SHEARMAN & STERLING**
Luckey McDowell (SBT 24034565)
Ian E. Roberts (SBT 24056217)
2828 N. Harwood Street, Suite 1800
Dallas, Texas 75201
Telephone: (214) 403-0649
Email: luckey.mcdowell@shearman.com
Email: ian.roberts@shearman.com

-and-

Joel Moss (admitted *pro hac vice*)
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (212) 848-4693
Email: joel.moss@shearman.com

-and-

Jonathan M. Dunworth (admitted *pro hac vice*)
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 848-5288
Email: jonathan.dunworth@shearman.com

***Counsel to NRG Energy, Inc., ENGIE Energy Marketing NA, Inc., Talen Energy Supply LLC, and NextEra Energy Marketing, LLC***

10

## CERTIFICATE OF SERVICE

I certify that on October 4, 2021, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

> */s/ Mark McKane*
> Mark McKane