IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>BRAZOS ELECTRIC POWER COOPERATIVE, INC.,[1]<br><br>     Debtor. | Chapter 11<br><br>Case No. 21-30725 (DRJ) |
| BRAZOS ELECTRIC POWER COOPERATIVE, INC.,<br><br>     Plaintiff,<br><br>v.<br><br>ELECTRIC RELIABILITY COUNCIL OF TEXAS, INC.,<br><br>     Defendant. | Adv. Proc. No. 21-03863 (DRJ)<br><br>Re: Adv. D.I. 1, 29, 61, 62, 64, 65 |

**LUMINANT ENERGY COMPANY LLC AND EXELON GENERATION COMPANY, LLC'S REPLY IN SUPPORT OF MOTION TO INTERVENE**

Luminant Energy Company LLC ("Luminant") and Exelon Generation Company, LLC ("Exelon"), (collectively, "Movants") by and through their undersigned counsel hereby submit this reply ("Reply") in support of their motion to intervene [D.I. 29] (the "Motion to Intervene") and respectfully state as follows:

---

[1] The Debtor in this chapter 11 case, along with the last four digits of its federal tax identification number is: Brazos Electric Power Cooperative, Inc. (4729). Additional information regarding this case may be obtained on the website of the Debtor's claims and noticing agent at http://cases.stretto.com/Brazos. The Debtor's address is 7616 Bagby Avenue, Waco, TX 76712.

## I. PRELIMINARY STATEMENT

1. Movants, as participants in the Electric Reliability Council of Texas ("ERCOT") market and creditors of the Brazos Electric Power Cooperative, Inc. ("Brazos") estate—with Luminant holding a pending 503(b)(9) claim against Brazos—seek to intervene in this adversary proceeding to protect their substantial and unrepresented interests. Movants have demonstrated that this Court's decision could result in the dispersing of Brazos's debt among the market participants through ERCOT's Default Uplift procedures. Indeed, Brazos and ERCOT cannot agree on whether the reduction in debt could be so distributed. Movants have also demonstrated that no other party to this proceeding has an interest in preventing or reducing that Default Uplift. Finally, because any Default Uplift would potentially give rise to claims against Brazos by Movants, Movants' intervention ensures that Brazos will have complete resolution of its liability and will not be ensconced in subsequent litigation. Accordingly, Movants are entitled to protect their interests through intervention, pursuant to Federal Rule of Civil Procedure 24(a)(2).

2. Contrary to ERCOT's and Brazos's contentions, economic or monetary interests are sufficient. *Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*, 834 F.3d 562, 567 (5th Cir. 2016). Movants seek to protect their concrete interests from the particularized risk that ERCOT will attempt to charge them and other market participants for any amount disallowed in this adversary proceeding through the Default Uplift process. Moreover, Brazos asks this Court to construe its contract with ERCOT, and Movants also seek to protect their rights in their own similar contracts. *Cf. id.* (courts routinely allow "associations representing licensed business owners . . . to intervene in lawsuits challenging the regulatory scheme that governs the[ir] profession"). "[D]isposition of the [adversary proceeding] may," thus, "as a practical matter,

impair or impede [Movants'] ability to protect [their] interest[s]." *Sierra Club v. Espy*, 18 F.3d 1202, 1207 (5th Cir. 1994).

3. But even if this Court determines that Movants are not entitled to intervention as of right, Movants should still be permitted to intervene pursuant to Federal Rule of Civil Procedure 24(b)(1). Movants are substantially involved in the subject of this adversary proceeding, and seek only to ensure that the resolution of the issues already presented does not harm their interests. Movants do not intend to unduly complicate or expand the issues presented.

4. Movants have satisfied the standard for intervention as of right pursuant to Federal Rule of Civil Procedure 24(a)(2), and permissive intervention pursuant to Federal Rule of Civil Procedure 24(b). Accordingly, this Court should grant the Motion to Intervene.

## II. ARGUMENT

### A. Movants "Must" Be Allowed to Intervene in this Adversary Proceeding under Federal Rule 24(a)(2).

5. Movants satisfy each of the requirements for intervention as of right pursuant to Federal Rule 24(a)(2). *See New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th Cir. 1984) (en banc) ("*NOPSI*").[2]

### 1. Movants' Motion to Intervene is "Timely"

6. The Motion to Intervene was timely filed within the September 20, 2021, intervention deadline set by this Court in the Scheduling Order. None of the Responses in Opposition to the Motion (ERCOT's Response, Brazos's Response, UCC's Response, and Calpine, et. al's Response) argue that the Motion to Intervene was untimely.

---

[2] Movants continue to maintain that they have "an unconditional right to intervene," *see* Fed. R. Civ. P. 24(a)(1), but acknowledge that current Fifth Circuit caselaw forecloses this avenue at present. *See* Movants' Mtn. at ¶ 5 n.3.

3

   **2.   Movants Have Direct, Substantial, and Legally Protectable Interests in the Subject of this Adversary Proceeding that Will Be Impaired If They Are Not Permitted to Intervene**

   a.   *Characterizing Movants' Interests as "Generalized Preferences" or "Purely Economic" Misconstrues Fifth Circuit Law*

7.   In opposing the Motion to Intervene, ERCOT contends that a "purely economic" or "monetary interest" in the subject of an adversary proceeding is "insufficient under Fifth Circuit law" to satisfy the interest requirement for intervention.  ERCOT's Response in Opposition to Market Participant's Motions to Intervene [D.I. 63] ("ERCOT's Resp.") at ¶¶ 6, 9, 16–17 (quoting *NOPSI*, 732 F.2d at 466.[3]  This is wrong.

8.   As the Fifth Circuit has made clear, ERCOT's "argument misreads the law and facts of [*NOPSI*].  *NOPSI* did not create a bar preventing all intervention premised on 'economic interests.'  Such a rule would be inconsistent with Supreme Court precedent permitting intervention based on economic interests." *Wal-Mart Stores*, 834 F.3d at 567 (citing *Bryant v. Yellen*, 447 U.S. 352, 366–67 (1980)).  Instead, as the Fifth Circuit noted in *Texas v. United States*, only a "*generalized*, 'purely economic interest' [is] insufficient to justify intervention" under *NOPSI*.  805 F.3d 653, 658 (5th Cir. 2015) (emphasis added).

9.   Movants' interests in this adversary proceeding are not reduceable to a "generalized preference that the case come out a certain way." *Id.*, 805 F.3d at 657.  Movants seek to protect themselves from the concrete and significant risk that ERCOT will attempt to charge other market participants (including Movants) for amounts disallowed in this adversary proceeding through the Default Uplift process, which would also have potential repercussions for Movants' claims against

---

[3]   Brazos also cites *NOPSI*, for the proposition that "an economic interest that might be adversely affected by the outcome of the case alone is insufficient." Debtor's Omnibus Response to Motions to Intervene in the ERCOT Claim Objection Proceeding (D.I. 64) ("Debtor's Resp.") at ¶¶ 19, 33–36 (quoting *NOPSI*, 732 F.2d at 466) (brackets omitted); *see also id.* at ¶ 39 n.26.  As explained, this is also incorrect.

Brazos for any such payment attributable to a Brazos default.  *See* PUCT's Brief in Support of ERCOT's Motion to Dismiss and for Abstention [D.I. 69] ("PUCT MTD Brief") at ¶¶ 68–72 (identifying market participants' specific interests in the adversary proceeding).  Movants do not "merely prefer[] one outcome to the other"; rather, Movants have a particularized interest in the characterization of the outcome.  *Texas*, 805 F.3d at 657.

        b.    *That Movants' Interests <u>Could</u> Be Impaired Satisfies the Requirements of Intervention in the Fifth Circuit*

10.    Brazos and ERCOT also argue that Movants' request to intervene is not yet ripe because this Court may decide the issues in a way that does not prompt ERCOT to charge an uplift to market participants; or because, even if this Court's decision may prompt ERCOT to charge an uplift to market participants, ERCOT may choose not to do so.[4]  *See* ERCOT's Resp. at ¶ 12; Debtor's Resp. at ¶¶ 36–37.  But ERCOT and Brazos ignore the fundamental nature of intervention.  "Because intervention necessarily occurs before the litigation has been resolved," *Wal-Mart Stores*, 834 F.3d at 569, courts do not require an intervenor to show that a court's decision has already impeded or will definitely impede its interests.  The risk that the court *may* do so is sufficient.  *See Espy*, 18 F.3d at 1207 ("The third requirement of rule 24(a) is that the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect his interest.").

11.    Moreover, Brazos's "wait and see" proposal contravenes Fifth Circuit law regarding intervention and needlessly wastes judicial resources and resources of countless affected

---

[4] Notably, ERCOT does not cite a single case applying its argument in the context of intervention in a bankruptcy proceeding.  ERCOT's Resp. at ¶¶ 12–13 (citing cases about Article III standing); *cf. Wal–Mart Stores*, 834 F.3d at 566 ("[A]n interest is sufficient if it is of the type that the law deems worthy of protection, even if the intervenor does not have an enforceable legal entitlement or would not have standing to pursue her own claim.") (internal quotation marks omitted).

5

parties, market participants chiefly among them. Debtor's Resp. at ¶ 36 (uplift issue "could be resolved, if necessary, with [Movants'] counterparty, ERCOT, not the Debtor."). First, Brazos's proposal flatly ignores that Movants have a right to intervene as set forth above. Second, this litigation may very well have potential repercussions for Movants' claims against Brazos for any such payment attributable to a Brazos default. Due process requires that Movants be given a seat at the table where those issues may be decided. Third, apart from due process concerns, the Brazos "wait and see" proposal would force hundreds of individual market participants to commence individual actions against ERCOT to challenge the propriety of any uplift charges resulting from this Court's adjudication of the proof of claim filed by ERCOT on June 14, 2021 (the "ERCOT Claim"). It would also ensure that Brazos will not have complete resolution of its liability, and will be ensconced in subsequent litigation, because Movants contend that any Default Uplift would also give rise to claims against Brazos. Finally, all of this leads to the inescapable conclusion that, quite simply, adjudicating the uplift issues and claims arising from this adversary proceeding concurrently with ERCOT's claim, as Movants propose, would promote the efficient use of judicial resources, satisfy due process concerns, and reduce the risk of disparate rulings.

        c.     *Movants Have a Concrete Interest in the Adjudication of Market Participants' Rights and Obligations under the SFA*

12.     Finally, Brazos brushes off that it seeks construction of its contract with ERCOT—a contract similar, if not identical to, Movants' own contracts with ERCOT. *See* Brazos's Resp. at ¶ 38. But courts routinely allow "associations representing licensed business owners . . . to intervene in lawsuits challenging the regulatory scheme that governs the[ir] profession," *Wal-Mart Stores*, 834 F.3d at 567—lawsuits involving interpretation of the contracts that govern the Texas electricity market should be no different. *Id.* ("'Clearly the association has an interest in the transaction which is the subject of the action' because 'there can be no doubt that the challenged

6

prohibition affects the economic interests of members of the pharmacy profession.'" (quoting *N.Y. Pub. Int. Rsch. Grp., Inc. v. Regents of Univ. of State of N.Y.*, 516 F.2d 350, 351–52 (2d Cir. 1975) (cleaned up))). Perhaps ERCOT best identifies Movants' interest in the adjudication of the terms of the SFA when ERCOT characterizes the SFA as "an integral part of the pervasive regulatory scheme that *governs the interrelationships among Brazos, ERCOT, the PUCT, and the other market participants*. ERCOT's Reply in Support of its Motion to Dismiss and for Abstention [D.I. 70] at ¶ 16. There can be no doubt that the adjudication of the SFA affects the economic interests of market participants, including Movants. Clearly Movants have a sufficient interest to warrant intervention.

### 3. Existing Parties Will Not Adequately Represent Movants' Interests

13. Movants easily satisfy their "minimal" burden to show that the existing parties' "representation *may* be inadequate" to protect their interests. *Texas*, 805 F.3d at 661–62.

14. In the first instance, note that the requirement is only that the representation *may* be inadequate, not that it definitively is inadequate. Movants believe that no party to the proceeding can adequately represent Movants, much less that any present party can represent Movants, which is the actual standard for intervention. Moreover, an intervenor can demonstrate inadequate representation by showing that its interest in the basis of a court's decision differs from a party seeking the same result for different reasons. In *Wal-Mart Stores*, for example, the Fifth Circuit recognized that a trade group's interest in defending the constitutionality of a regulatory scheme that benefited its members' businesses was not adequately represented by the state Commission defending the constitutional challenge. 834 F.3d at 569. This was because, while the trade group sought "a declaratory judgment that the regulatory scheme is constitutionally valid," the

7

Commission "merely [sought] to defend the present suit and would accept a procedural victory." *Id.*

        a.    *In Fact, Movants' Interests Are Not Precisely Aligned with the Interests of Brazos*

15. While it may be true that, to an extent, Movants' "interests are aligned with [Brazos] in reducing the ERCOT Claim as much as possible," Debtor's Resp. at ¶ 50, Movants seek a narrower basis of decision than Brazos,[5] whose interests are "and always will be" "motivated by the estate's best interests," Debtor's Resp. at ¶ 51. Brazos has limited interest in narrowing or defining the authority of ERCOT to assess Default Uplift charges to other market participants based on Brazos's default; to the contrary, Movants have a particularized interest in this issue and ability to address it.

16. ERCOT contends that because Brazos's special counsel also represents Exelon in another, related matter, this ensures Exelon's interests in this matter will be "sufficiently represented." ERCOT's Resp. at ¶ 23. Notably, Brazos does not make this argument and for good reason: the duty of Brazos's counsel will be to Brazos, not Exelon, in terms of the outcome of this specific litigation.

        b.    *Brazos and ERCOT Assert Irreconcilable Positions that Squarely Establish that Existing Parties Cannot Adequately Represent Movants' Interests*

17. Brazos and ERCOT disagree about the circumstances under which ERCOT could pass any portion of disallowed amounts of the ERCOT Claim to market participants, including Movants, through the Default Uplift procedures. This discord unequivocally demonstrates that the existing parties inadequately represent Movants' interests.

---

[5] For example, Brazos asserts unique objections to ERCOT's Claim, including objections premised on the occurrence of a force majeure event and avoidance of constructively fraudulent obligations, which Movants do not assert.

18. Brazos repeatedly assures this Court that "reduction, disallowance, or reclassification of the ERCOT Claim cannot trigger market uplift, only the Debtor's failure to pay the *allowed* portion of the claim would." Debtor's Resp. at ¶ 50 n.33 (emphasis added). According to Brazos, the Court's adjudication of the ERCOT Claim "would not trigger an automatic uplift in the ERCOT market." *Id*. at ¶ 37. "Uplift could only happen if the Debtor does not later pay the ERCOT Claim in full *after such amount has been determined by this Court*." *Id*. (emphasis added); *see also* Debtor's Response in Opposition to ERCOT's Motion to Dismiss and for Abstention [D.I. 42] at ¶ 44 (same).

19. Meanwhile, ERCOT maintains that the Default Uplift procedures could be triggered by a judgment reducing what Brazos owes.[6] *See* ERCOT's Resp. at ¶ 12 ("[A]s Movants admit, this would only *potentially* become a live issue if this court were to 'reduce the amount owed to ERCOT by Brazos'" (quoting Motion to Intervene at ¶ 35)); *see also* MTD at ¶ 71 ("If Brazos *pays less than it owes pursuant to ERCOT's invoices*, the protocols require ERCOT to uplift the amount of that reduction to the rest of the ERCOT market.").

20. ERCOT never so much as hints that a judgment favorable to Brazos would not result in an uplift. In fact, ERCOT goes as far as to criticize Brazos's attempt "to downplay the market-wide impact of the relief it seeks," arguing that Brazos's assertion that ERCOT would not have the right to uplift disallowed amounts to other market participants "would only be true if the Court waded further into the [Texas] regulatory scheme by ruling on ERCOT's authority to issue Default Uplift invoices." *See* ERCOT's Reply in Support of Its Motion to Dismiss and for Abstention [D.I. 70], ¶¶ 9–10 (emphasis omitted). And, as noted in Movants' Motion to Intervene

---

[6] The PUCT has also recognized that if "the ERCOT claim against this Debtor is disallowed or reduced," then other market participants may possibly be "subject to subsequent uplift charges as well." *See* PUCT MTD Brief at ¶ 71.

(at ¶ 35), ERCOT has acknowledged that "the basis for the decision by the Court [vis-à-vis repricing the ERCOT Claim] would have an effect on" whether ERCOT may pursue Default Uplift charges from other participants. *See* 8/4 Hr'g. Tr. at p. 28–31.

21. The daylight between Brazos's and ERCOT's understandings of the consequences of this adversary proceeding for Movants is proof positive that Movants have a concrete, and otherwise unrepresented, interest in this adversary proceeding. Although Movants agree with Brazos that that any "reduction, disallowance, or reclassification of the ERCOT Claim cannot trigger market uplift," Debtor's Resp. at ¶ 50 n.33, only Movants have the incentive to ensure that the basis for this Court's decision aligns with that outcome. Brazos, while perhaps sympathetic to Movants' interests, will not and cannot be affected by the Default Uplift procedures attributable to its own short-pay, and thus has no incentive to ensure the Court's decision so aligns. Moreover, given the likelihood that this issue will impact whatever claims Movants have against ERCOT, it would be manifestly unfair not to allow Movants to have input into the resolution of this issue.

      **B.    The Court Should Permit Movants to Intervene under Federal Rule 24(b)(1).**

22. Under Federal Rule of Civil Procedure 24(b), "the court may permit" a party that brings a "timely motion" to intervene if the party "has a claim or defense that shares with the main action a common question of law or fact." Whether to permit intervention under Rule 24(b) is a matter for the court's discretion. *Stallworth v. Monsanto Co.*, 558 F.2d 257, 269 (5th Cir. 1977). For all the reasons previously described in the Motion to Intervene and this Reply in Support of that Motion, permissive intervention is appropriate.

23. ERCOT and Brazos argue that Movants' intervention will result in undue delay and prejudice to the parties, but this argument ignores Movants' involvement in both the pending bankruptcy proceeding and other proceedings involving similar questions of law and fact. *See*

Motion to Intervene, at ¶ 41. It also ignores the interests of judicial economy and reduction of the risk of inconsistent results that would follow Movants' participation in the adversary proceeding. Movants have no intention of expanding the issues or complicating the case; instead, they seek only the opportunity to ensure that resolution of the issues already squarely presented in the case do not harm their interests. *Contra* ERCOT's Resp. at ¶¶ 25–27; Debtor's Resp. at ¶¶ 1–2. Indeed, Movants' involvement in this proceeding will be targeted at and contribute to the development of the specific interests they seek to protect. And, subject to the condition that Movants will receive the benefit of any lessening of restrictions afforded another intervenor, Movants agree to the restrictions applicable to intervenors, which will ensure that Movants' intervention will not be disruptive of the resolution of the adversary proceeding.[7]

24. This Court should also deny Brazos's request to limit Movants' participation should this Court decide to grant the Motion to Intervene.

### III.  RESERVATION OF RIGHTS

25. Nothing contained herein is intended to or should be construed as: (i) an admission of the validity of any claim asserted by ERCOT or Brazos in the adversary proceeding; or (ii) a waiver of any rights of any Movant under the Bankruptcy Code or any other applicable law.

26. For the avoidance of doubt, Luminant also requests that it be authorized to intervene as a Bilateral Claimant (as defined in the Debtor's Response) to the extent that the Court authorizes intervention for Bilateral Claimants substantially upon the terms set forth in the Debtor's

---

[7] ERCOT's final argument that Movants "must establish a separate jurisdictional basis for their claims," ERCOT's Resp. at ¶ 30, tellingly cites no authority for that proposition. *See supra* ¶ 10 n.4; *cf. Wal–Mart Stores*, 834 F.3d at 566 ("[A]n interest is sufficient if it is of the type that the law deems worthy of protection, even if the intervenor does not have an enforceable legal entitlement or would not have standing to pursue her own claim.") (internal quotation marks omitted).

Response.  Brazos recommends the Court grant intervention to Bilateral Claimants for those "legal issues common to power 503(b)(9) claims."  Debtor's Resp. at ¶¶ 9, 23.

### IV.  CONCLUSION

In the light of the foregoing, Movants respectfully request that this Court grant the Motion to Intervene as of right in this adversary proceeding.

[*Remainder of Page Intentionally Blank*]

Dated: October 11, 2021                     Respectfully submitted,

/s/  *Marquel S. Jordan*                                  /s/  *Michael A. Rosenthal*
**BLANK ROME LLP**                          **GIBSON, DUNN & CRUTCHER LLP**
Marquel S. Jordan (24041870)                Michael A. Rosenthal (17281490)
717 Texas Avenue, Suite 1400                Michael L. Raiff (00784803)
Houston, TX 77002                           2001 Ross Avenue, Suite 2100
Tel:  713.228.6601                          Dallas, TX 75201
Email: Marquel.Jordan@blankrome.com         Tel:    214.698.3100
                                            Email: MRosenthal@gibsondunn.com
         *and*                                       MRaiff@gibsondunn.com

**EXELON CORPORATION**                               *and*
Carrie Hill Allen (admitted *pro hac vice*)
Vice President & Deputy General Counsel     Matthew G. Bouslog (admitted *pro hac vice*)
101 Constitution Ave, Suite 400E            3161 Michelson Dr.
Washington, DC. 20001                       Irvine, CA 92612-4412
Tel:  202.637.0344                          Tel:    949-451-3800
Email: Carrie.Allen@exeloncorp.com          Email: MBouslog@gibsondunn.com

         *and*                                       *and*

Cynthia F. Brady (admitted *pro hac vice*)  Eric T. Haitz (24101851)
Assistant General Counsel                   811 Main Street, Suite 3000
Exelon Business Services Company            Houston, TX 77002-6117
4300 Winfield Road, 2nd floor               Tel:    346-718-6600
Warrenville, IL 60555                       Email: EHaitz@gibsondunn.com
Tel:  630.657.4449
Email: Cynthia.Brady@exeloncorp.com         *Counsel to Luminant Energy Company LLC*


*Counsel for Exelon Generation
Company, LLC*

**Certificate of Service**

This is to certify that on October 11, 2021, a true and correct copy of the foregoing Reply in Support of Motion to Intervene, together with the accompanying exhibits thereto, was electronically filed with the Court using CM/ECF, which will send notification of this filing to counsel of record in the above-captioned case.

/s/ *Michael A. Rosenthal*
Michael A. Rosenthal
