**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |
|---|---|
| In re:<br><br>BRAZOS ELECTRIC POWER<br>COOPERATIVE, INC.,<br><br>        Debtor.[1] | Chapter 11<br><br>Case No. 21-30725 (DRJ) |
| BRAZOS ELECTRIC POWER<br>COOPERATIVE, INC. AND OFFICIAL<br>COMMITTEE OF UNSECURED<br>CREDITORS,<br><br>        Plaintiff / Intervenor-Plaintiff,<br><br>v.<br><br>ELECTRIC RELIABILITY COUNCIL OF<br>TEXAS, INC.,<br><br>        Defendant. | Adv. Proc. No. 21-03863 (DRJ) |

**DEBTOR'S REPLY TO THE PUBLIC UTILITY COMMISSION OF TEXAS'S BRIEF**
**IN SUPPORT OF THE ELECTRIC RELIABILITY COUNCIL OF TEXAS, INC.'S**
**MOTION TO DISMISS AND FOR ABSTENTION**
**[Relates to Adv. Dkt. Nos. 23, 42, 69]**

Brazos Electric Power Cooperative, Inc. (the "Debtor") files this Reply (the "Reply") to

the Public Utility Commission of Texas's ("PUCT") *Brief in Support* (the "PUCT Brief") [Adv.

Dkt. No. 69] of the Electric Reliability Council of Texas, Inc.'s ("ERCOT") *Motion to Dismiss*

*and for Abstention* [Adv. Dkt. No. 23] (the "Motion") and states as follows:[2]

---

[1] The Debtor in this chapter 11 case, along with the last four digits of its federal tax identification number is: Brazos Electric Power Cooperative, Inc. (4729).  Additional information regarding this case may be obtained on the website of the Debtor's claims and noticing agent at http://cases.stretto.com/Brazos.  The Debtor's address is 7616 Bagby Avenue, Waco, TX 76712.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion, the Supporting Brief, the Debtor's *Complaint Objecting to Electric Reliability Council of Texas, Inc.'s Proof of Claim and Other Relief* [Adv. Dkt. No. 1] (the "Complaint"), or the Debtor's *Response in Opposition to Electric Reliability Council of Texas, Inc.'s Motion to Dismiss and for Abstention* [Adv. Dkt. 42] (the "Response"), as applicable.

## I.      PRELIMINARY STATEMENT

1.      The PUCT has not filed a claim in the Debtor's bankruptcy case; the PUCT's Orders are not being challenged in this adversary proceeding; and the PUCT is not named as a defendant in this proceeding.  And for good reason—this adversary proceeding is about one thing: adjudicating the $1.9 billion proof of claim that ERCOT filed in this bankruptcy case, against this Debtor, before this Court, based on a contract solely between the Debtor and ERCOT.  Thus, putting aside the substantial amount in controversy involved herein, the nature of this proceeding—a claim objection proceeding—is otherwise unremarkable and is one in which this Court, exercising its exclusive jurisdiction, routinely adjudicates in every Chapter 11 case.  The PUCT knows this, and even cites cases in its own brief that supports this bedrock bankruptcy principle.  Yet, despite having no role in this two-party dispute, the PUCT has interjected itself in this proceeding (albeit not by any formal request to intervene) to request that this Court sit on the sidelines to allow some other court or agency on some other timeline to adjudicate issues that have nothing to do with the claim that ERCOT filed.  The PUCT bases its arguments on a fundamental mischaracterization of the very electricity market it purports to oversee, and on easily distinguishable and otherwise wholly inapplicable case law and legislation.  The PUCT's brief should be disregarded in its entirety.

## II.      REPLY

### A.      This Court has jurisdiction over the ERCOT Claim.

2.      The PUCT argues that the Debtor's Complaint should be dismissed, or that the Court should abstain from addressing it, because the PUCT believes that it has "exclusive original jurisdiction" over the ERCOT Claim.[3]  If that were the case, however, ERCOT presumably would

---

[3] PUCT Brief ¶ 2.

not have filed its claim in this case before this Court, but instead with the PUCT.  Regardless, it is a fundamental tenet of bankruptcy law that, by voluntary filing a proof of claim in the Chapter 11 Case, ERCOT has submitted this Court's jurisdiction, equitable powers, and authority to enter final orders with respect to that claim. [4]  The PUCT admits this bedrock principle. [5]

3.      Yet, in an attempt to undermine this Court's exclusive jurisdiction and authority to decide a claim objection, the PUCT advances two arguments.  First, the PUCT argues that the Public Utility Regulatory Act ("PURA") embodies a "pervasive regulatory scheme for the PUCT to regulate and manage Texas's electric markets and ensure system reliability." [6]  This statement is simply wrong; it completely ignores the fact of deregulation brought about through legislative changes to PURA in 1999.  While the PUCT makes passing mention of deregulation, it cites and relies on old statutes and cases that are wholly inapplicable to the current competitive wholesale energy market.  For instance, the PUCT relies on PURA § 31.001(a), which was originally enacted in 1975 when the PUCT was created to set rates for monopoly public utilities. [7]  That subsection provides:

> This subtitle is enacted to protect the public interest inherent in the rates and services of electric utilities. The purpose of this subtitle is to establish a comprehensive and adequate regulatory system for electric utilities to assure rates, operations, and services that are just and reasonable to the consumers and to the electric utilities.

TEX. UTIL. CODE § 31.001(a).

---

[4] *See Langenkamp v. Culp*, 498 U.S. 42 (1990); *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 58 (1989); *In re RGV Smiles by Rocky L. Salinas D.D.S. P.A.*, 626 B.R. 278, 289 (Bankr. S.D. Tex. 2021) ("[T]he filing of a proof of claim in a bankruptcy case subjects a creditor to a bankruptcy court's equitable power.").

[5] PUCT Brief ¶ 55 ("The PUCT does not dispute that claim litigation is, in fact, an exercise of a bankruptcy court's *in rem* jurisdiction.").

[6] PUCT Brief ¶ 27.

[7] *See* PUCT Brief ¶ 40.

4.      However, in 1997, the Texas Legislature foreshadowed the transition of the wholesale generation market toward competition with the enactment of PURA § 31.001(c):

> The wholesale electric industry, through federal legislative, judicial, and administrative actions, is becoming a more competitive industry that does not lend itself to traditional electric utility regulatory rules, policies, and principles.

5.      In 1999, the Legislature enacted Chapter 39 of PURA, through which it deregulated the generation (*i.e.,* production) segment of the Texas electricity industry.[8]  The Texas Supreme Court eloquently explained the transition to competition in a 2001 decision, *City of Corpus Christi v. PUC*:

> The Public Utility Regulatory Act (PURA) first came into being in 1975. At that time, the Legislature established a comprehensive regulatory system for electric utilities. The Legislature had concluded that these utilities were 'by definition monopolies in the areas they serve,' and that as a result 'normal forces of competition which regulate prices in a free enterprise society do not operate.' Regulation was intended to be a substitute for competition.
>
> . . .
>
> In 1999, the Legislature decided to chart a new course for the provision of electric service in Texas. In the years intervening since 1975, partial deregulation at the federal level and deregulation in other states had wrought significant changes in the electric industry on a national level. The Legislature concluded that it was in the public interest to establish a '***fully competitive electric power industry***' in Texas. . . .
>
> Underpinning the Legislature's decision to restructure the electric power industry was its finding that ***regulation was no longer warranted***, except for regulation of transmission and distribution services and regulation of the recovery of stranded costs.

51 S.W.3d 231, 236-237 (Tex. 2001) (citations omitted, emphases added).

---

[8] *See* TEX. UTIL. CODE § 39.001(a) ("The legislature finds that the production and sale of electricity is not a monopoly warranting regulation of rates, operations, and services and that the public interest in competitive electric markets requires that, except for transmission and distribution services and for the recovery of stranded costs, electric services and their prices should be determined by customer choices and the normal forces of competition. As a result, this chapter is enacted to protect the public interest during the transition to and in the establishment of a fully competitive electric power industry.").

6.     Not only does the PUCT lack jurisdiction over wholesale energy prices (which is what the ERCOT Claim is all about), state agencies generally lack exclusive original jurisdiction to adjudicate disputes.[9]  "A state agency has exclusive jurisdiction when the Legislature has granted that agency the sole authority to make an initial determination in a dispute," and whether an agency has exclusive jurisdiction "presents a question of statutory interpretation." *Oncor Elec. Delivery Co. v. Chaparral Energy, LLC*, 546 S.W.3d 133, 138 (Tex. 2018).

7.     The Legislature knows how to confer exclusive, original jurisdiction through the plain words of the PUCT's enabling statute.[10]  For instance, PURA § 32.001(a) gives the PUCT "exclusive original jurisdiction over the rates, operations, and services of an electric utility."[11]  But that section does not confer exclusive original jurisdiction on the PUCT over the ERCOT Claim, as neither ERCOT nor the Debtor are "electric utilities" subject to the PUCT's traditional jurisdiction over rates, operations, and services.[12]  The PUCT's reliance on *In re Entergy* in support of its purported "exclusive original" jurisdiction is thus entirely misplaced, as that case dealt with a traditional electric utility subject to the PUCT's historic, comprehensive jurisdiction over its rates, services, and operations.[13]

8.     Because the Legislature removed the competitive wholesale power market from the PUCT's comprehensive jurisdiction through deregulation, there is no "pervasive regulatory

---

[9] *In re Entergy Corp.*, 142 S.W.3d 316, 322 (Tex. 2004) (stating that "administrative agencies . . . may exercise only those powers the law confers upon them in clear and express statutory language and those reasonably necessary to fulfill a function or perform a duty that the Legislature has expressly placed with the agency.").

[10] *Id*.

[11] *Id*. at 323 (quoting the statutory language).

[12] TEX. UTIL. CODE § 31.002(6)(G) (Specifying that the term "electric utility . . . does not include . . . an electric cooperative.").

[13] *See Entergy Corp.*, 142 S.W.3d at 323.  Entergy Texas, Inc. remains subject to PURA's comprehensive regulatory structure, as it operates outside the competitive ERCOT market.

scheme"[14] that would support the PUCT's assertion of exclusive jurisdiction over the ERCOT Claim, which involves charges related to generation and ancillary services, not transmission or distribution services.[15]

9.      Second, the PUCT argues that it has exclusive original jurisdiction of the ERCOT Claim because it has "complete authority" over ERCOT.[16]  The PUCT's central premise is that its alleged "complete authority" gives it jurisdiction over wholesale energy prices.  But as discussed, the Legislature expressly removed wholesale energy prices from the PUCT's rate-setting authority more than 20 years ago.[17]

10.     The statute that the PUCT alleges gives it "complete authority" over ERCOT is in fact much narrower than the PUCT represents.[18]  Instead of upending the deregulated market, the statute gives the PUCT "complete authority to oversee and investigate the organization's finances, budget, and operations as necessary to ensure the organization's accountability and to ensure that the organization adequately performs the organization's functions and duties."[19]  The statute gives the PUCT authority to oversee the organization (i.e., ERCOT), not regulatory authority over the competitive market.  And the scope of that "complete authority" is spelled out in the statute:  the

---

[14] *See Chaparral Energy, LLC*, 546 S.W.3d at 138 (noting that the Legislature may confer exclusive jurisdiction on an agency through an "explicit grant" or as part of a "pervasive regulatory scheme").

[15] *See id.* at 139 (application of exclusive jurisdiction depends on whether the "claim falls within that jurisdictional scope.").

[16] *See* PUCT Brief ¶¶ 37-40.

[17] *See* TEX. UTIL. CODE § 39.001(c) (stating that the PUCT "may not make rules or issue orders regulating competitive electric services, prices, or competitors or restricting or conditioning competition except as authorized in this title").

[18] ERCOT makes similar arguments in its Reply in support of the Motion.

[19] TEX. UTIL. CODE § 39.151(d).  ERCOT is the "independent organization" certified by the Commission to "adopt and enforce rules relating to the reliability of the regional electrical network and accounting for the production and delivery of electricity among generators and all other market participants . . . ."  TEX. UTIL. CODE § 39.157(d).

PUCT can oversee and investigate ERCOT, and if ERCOT fails to perform, the PUCT can "decertify[ ] the organization or assess[ ] an administrative penalty" against it.[20]

11.     Because the competitive wholesale energy market is not subject to the PUCT's comprehensive regulatory authority, the PUCT lacks exclusive jurisdiction over the ERCOT Claim, and the Court should not abstain from or dismiss the Complaint.

**B.     The PUCT's assertion of sovereign immunity is inapplicable and erroneous.**

12.     The PUCT curiously asserts that—despite not being a party to this adversary proceeding (and not seeking to intervene)—its sovereign immunity as a state agency somehow "protects the PUCT from having its exclusive jurisdiction over the ERCOT Claim wrested away."[21]  Yet, sovereign immunity under the Eleventh Amendment only "bar suits against nonconsenting States," while Texas governmental immunity provides a state agency only "immunity from liability" or "immunity from suit."[22]  A state agency's assertion of immunity does not operate as a reservation of jurisdiction by the state agency or govern whether a state agency's jurisdiction may be infringed upon by a federal court.[23]  Rather, it simply protects a governmental agency from being sued or having a judgment enforced against it.[24]

13.     Although much of the PUCT Brief is devoted to its assertion of sovereign immunity, these arguments are inapplicable here, where there is no action or judgment against the PUCT that would concern its immunity.  Similarly, the *Hood* and *Katz* cases cited by the PUCT

---

[20] *Id.*

[21] PUCT Brief ¶ 42.

[22] *See Tercero v. Texas Southmost College District*, 989 F.3d 291, 296-97 (5th Cir. 2021) (citing *Franchise Tax Bd. of Calif v. Hyatt*, 139 S. Ct. 1485, 1496 (2019) and *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006)).

[23] *See Tercero*, 989 F.3d at 298 ("However extensive their power to create and define substantive rights, the states have no power directly to enlarge or contract federal jurisdiction") (quoting *Duchek v. Jacobi*, 646 F.2d 415, 419 (9th Cir. 1981)).

[24] *Id.* at 297.

are inapplicable to the PUCT, who is not a party to this adversary proceeding,[25] therefore the

PUCT's immunity, or lack thereof, is simply not implicated.  Therefore, the PUCT's assertions of

immunity are wholly irrelevant and serve only as an obfuscation.  The PUCT simply cannot use

the doctrine of sovereign immunity to deprive this Court of jurisdiction over a matter to which the

PUCT is not even a party.

14.     Additionally, to the extent that ERCOT has sovereign immunity, it has waived such

immunity under 11 U.S.C. § 106 by its filing of the ERCOT Claim.[26]

**C.     The Johnson Act is inapplicable and does not preclude this Court's exercise of jurisdiction.**

15.     The PUCT's reference to the Johnson Act, 28 U.S.C. § 1342, is also a red herring.

The Johnson Act states:

> The district courts shall not enjoin, suspend or restrain the operation
> of, or compliance with, any order affecting rates chargeable by a
> public utility and made by a State administrative agency or a rate-
> making body of a State political subdivision, where:
>
>> (1) Jurisdiction is based solely on diversity of citizenship or
>> repugnance of the order to the Federal Constitution; and,
>>
>> (2) The order does not interfere with interstate commerce; and,
>>
>> (3) The order has been made after reasonable notice and hearing;
>> and,

---

[25] In *Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440 (2004), the debtor filed an adversary complaint against the Tennessee Student Assistance Corporation, a state entity.  In *Central Virginia Community College v. Katz*, 546 U.S. 356 (2006), the chapter 11 trustee brought an adversary proceeding against various state institutions of higher education that were considered "arm[s] of the State."  Importantly, no matter how the *Hood* and *Katz* courts qualified their holdings' scope, those decisions leave little doubt that, even if sovereign immunity were implicated here, the PUCT is barred from asserting it to frustrate the Court's exercise of its *in rem* jurisdiction over the ERCOT Claim and the SFA.  *See Katz*, 546 U.S. at 378 ("In ratifying the Bankruptcy Clause, the States acquiesced in a subordination of whatever sovereign immunity they might otherwise have asserted in proceedings necessary to effectuate the *in rem* jurisdiction of the bankruptcy courts").

[26] *See In re Lile*, 96 B.R. 81, 84 (Bankr. S.D. Tex. 1989) ("It is well settled that it would be fair and inequitable to permit the governmental entity to file a claim and seek distribution from the estate, and make use of the remedies and powers of the bankruptcy court to pursue such a claim while at the same time asserting that the bar of sovereign immunity should apply to shield it from liability to the estate.") (citations omitted).

(4) A plain, speedy and efficient remedy may be had in the courts of such State.

28 U.S.C. § 1342.

16.     Noting that the Johnson Act "requires four conditions to be met in order to preclude federal jurisdiction," the PUCT primarily focuses on the jurisdictional requirement set forth in Section 1342(1).[27]   While conceding that diversity jurisdiction is not present here, the PUCT instead suggests that this Court's jurisdiction is based "solely" on "repugnance of the order to the Federal Constitution," without even stating what "order" it is referring to.[28]   But this Court's jurisdiction over the Complaint does not arise as a constitutional question, *i.e.*, a question of whether the PUCT Orders are "repugnant" to the Federal Constitution, but rather under bankruptcy jurisdiction set forth in 28 U.S.C. § 1334.

17.     Even under the assumption that the Complaint challenges the validity of the PUCT Orders (which it does not), there has been no allegation or suggestion by any party that the PUCT Orders are unconstitutional.  Thus, this Court's jurisdiction over the ERCOT Claim cannot be based "solely" on diversity or federal question jurisdiction, as neither basis for jurisdiction is even present here.[29]

---

[27] PUCT Brief ¶¶ 66-67.

[28] It is impossible to discern from the PUCT Brief what "order affecting rates" it alleges is subject to the Johnson Act. The PUCT incorrectly construes the Johnson Act as applying to any action (*e.g.*, this Court violating Texas's sovereignty) that is repugnant to the order *of* the Federal Constitution, rather than considering whether the order that allegedly affects rates (*e.g.*, the PUCT Orders) is repugnant *to* the Federal Constitution.  In any event, as discussed below, the PUCT Orders are not "order[s] affecting rates chargeable by a public utility," rendering the Johnson Act inapplicable on an additional basis.

[29] *See Int'l Bhd. of Elec. Workers, Loc. Union No. 1245 v. Pub. Serv. Comm'n of Nevada*, 614 F.2d 206, 211 (9th Cir. 1980) (finding that a challenge to a rate order based on constitutional preemption did not fall under the Johnson Act where federal jurisdiction also rested on general federal question jurisdiction as opposed to solely constitutional question jurisdiction); *see also In re Jefferson Cty., Ala.*, 474 B.R. 228, 275 (Bankr. N.D. Ala. 2012) (declining to consider the Johnson Act where "the jurisdiction of a bankruptcy court is premised on 28 U.S.C. § 1334 which is not within what is required by the Johnson Act.").

18.     The PUCT Orders do not fall within the Johnson Act's provisions for the independent reason that the orders do not "affect[ ] rates chargeable by a public utility." As discussed above, PURA deregulated the Texas wholesale generation market and the does not exercise ratemaking jurisdiction over the Debtor's transactions in the ERCOT wholesale energy market.[30]  Nor were the PUCT Orders issued "after reasonable notice and hearing," so the third prong is not met.  While the PUCT makes a conclusory statement in a footnote that the orders were made after "reasonable notice and hearing," fails to provide any supporting evidence or legal authority.[31]

19.     For these reasons, the Johnson Act simply does not apply.

**D.     This Court should not abstain from exercising jurisdiction.**

20.     The PUCT also asserts abstention is appropriate under 28 U.S.C. § 1334(c)(1).  As set forth in the Debtor's Response, however, the Section 1334 factors overwhelmingly favor denial of the Motion.  The PUCT focuses in particular on factors 13 and 14: comity and possible prejudice to other parties.  Specifically, the PUCT alleges that this Court's determination of the ERCOT Claim "will have lasting effects on the energy [and financial] market[s] and Texas consumers."[32]

21.     The PUCT argues that if the Debtor "fails to pay an amount owed," such amount will be uplifted to other market participants with their customers ultimately paying the short paid amount.[33]  However, as discussed in the Debtor's Response and the Debtor's *Omnibus Response to Motions to Intervene in the ERCOT Claim Objection Proceeding* (the "Intervention Response")

---

[30] *See* ¶¶ 3-11, *supra*.

[31] PUCT Brief at 25, n. 55.

[32] Factor 14 applies specifically to possible prejudice to other parties *in the proceeding.  See Houston Baseball Partners LLC v. Comcast Corp. (In re Houston Regional Sports Network, L.P.)*, 514 B.R. 211, 215 (Bankr. S.D. Tex. 2014) (J. Isgur).  The PUCT's assertion of the effects on energy and financial markets, and Texas consumers, relates to prejudice to non-parties.  Nevertheless, the Debtor addresses the PUCT's arguments under factor 14.

[33] PUCT Brief ¶ 70.

[Adv. Dkt. No. 64],[34] once the Debtor pays the amount determined by this Court to be owed, there will be no amount to uplift to market participants.[35]  Therefore, the PUCT is not affected or prejudiced by this Court's disallowance or reduction of the ERCOT Claim.

22.     The PUCT's argument that other market participants or SFA counterparties may file bankruptcy cases if this Court issues a ruling favorable to the Debtor is both unsubstantiated and ill-founded.  The Debtor understands that the vast majority of "market participants who were subject to the same $9,000 per MWh price" have already paid to ERCOT the amounts invoiced to them.  Therefore, such market participants would not file bankruptcy petitions to reduce paying such amounts.   Lastly, it is crucial to remember that ERCOT filed a claim against the Debtor in this Court; the Debtor has not asserted a claim for affirmative recoveries against ERCOT.

23.     The PUCT's assertion that any reduction in the ERCOT Claim "will have lasting effects on financial markets" is also without merit.[36]  As the Debtor repeatedly stated, it is not seeking a decision that reprices the Texas energy market.  Rather, the Court will have to determine how the ERCOT Claim, which effectively asserts a breach of contract claim under the SFA between the Debtor and ERCOT, is to be calculated, whether pursuant to the protocols in effect during Winter Storm Uri, as the Debtor alleges, or according to the PUCT Orders, as ERCOT alleges.  This determination will not affect amounts owed by any other party to ERCOT, or by ERCOT to any other party.  Further, the Court has not been asked, and will not be asked in this adversary proceeding, to rule on the validity or invalidity of the PUCT Orders; only whether they

---

[34] *See* Response  ¶¶ 44, 118; Intervention Response  ¶¶ 19-20, 37, 41.

[35] Further, pursuant to Protocol 9.19.1(4), ERCOT may not uplift a "short-paid amount greater than $2,500,000" in a 30-day period.  Even if ERCOT was able to uplift an amount to the market participants as a result of this Court's ruling, that $2,500,000 spread across the numerous market participants would not support the PUCT's argument that other market participants would be forced into bankruptcy proceedings.

[36] PUCT Brief ¶ 73.

govern the calculation of the ERCOT Claim.  The Court's decision as to how much the Debtor owes ERCOT will not bind any other court or affect pending state court proceedings.  However, if the Court abstained from hearing the ERCOT Claim, the Debtor and its constituencies would be severely prejudiced given the inevitable delay accompanying the ultimate resolution of the state court appeals and the eventual return to this Court to evaluate how such resolution affects distribution of the Debtor's assets.

24.     Accordingly, the PUCT's and ERCOT's request for abstention should be denied.

**E.     The PUCT Brief establishes that the PUCT is not an "indispensable party."**

25.     Despite ERCOT's allegations that the PUCT is an indispensable party to this adversary proceeding, the PUCT does not advance such an argument (and has not sought to intervene).  Rather, the PUCT asserts that it has exclusive, original jurisdiction over the ERCOT Claim, arguing that its administrative process is the more appropriate forum for the ERCOT Claim to be decided.  This assertion of jurisdiction over the ERCOT Claim is very different than ERCOT's claim that the PUCT is a necessary party in the participation of the adjudication of the ERCOT Claim.[37]  The allegation that a certain administrative body should be joined as a party to a lawsuit because it is a more proper forum for hearing the cause of action is nonsensical.  For the reasons set forth in the Debtor's Response,[38] the Court should find that the PUCT is not an indispensable party to this adversary proceeding and deny the Motion.

---

[37] As stated above, the PUCT has not sought to intervene in the Adversary Proceeding.

[38] As stated in the Response, the PUCT has not asserted an interest in the resolution of the ERCOT Claim.  Its assertions in the Supporting Brief are insufficient to amount to a direct, substantial, legally protectable interest in the ERCOT Claim.  *See New Orleans Public Service, Inc. v. United Gas Pipe Line Co.*, 732 F.2d. 452, 463 (5th Cir. 1984) (quoting *Diaz v. Southern Drilling Corp.*, 427 F.2d 1118, 1124 (5th Cir. 1970)).  Additionally, this adversary proceeding does not impose an obligation on or otherwise prejudice the PUCT.

### III.   PRAYER

For the foregoing reasons, the Debtor respectfully requests that this Court enter an order denying the Motion and granting to the Debtor such other and further relief as may be just and proper.

*[Remainder of Page Intentionally Left Blank]*

Dated: October 15, 2021
      Houston, Texas

Respectfully submitted,

**EVERSHEDS SUTHERLAND (US) LLP**

By: */s/ Lino Mendiola*
Lino Mendiola (SBT 00791248)
Michael Boldt (SBT 24064918)
Jim Silliman (SBT 24081416)
One American Center
600 Congress Ave., Suite 2000
Austin, TX 78701
Telephone: (512) 721-2700
Facsimile: (512) 721-2656
Email: linomendiola@eversheds-sutherland.us
Email: michaelboldt@eversheds-sutherland.us
Email: jimsilliman@eversheds-sutherland.us

*Special Counsel for the Debtor and Debtor in
Possession*

**O'MELVENY & MYERS LLP**
Louis R. Strubeck, Jr. (SBT 19425600)
Nick Hendrix (SBT 24087708)
2501 North Harwood Street
Dallas, Texas 75201
lstrubeck@omm.com
nhendrix@omm.com
(972) 360-1925

*Co-Counsel for the Debtor and Debtor in
Possession*

**NORTON ROSE FULBRIGHT US LLP**

By: */s/ Jason L. Boland*
Jason L. Boland (SBT 24040542)
Julie G. Harrison (SBT 24092434)
Maria Mokrzycka (SBT 24119994)
1301 McKinney Street, Suite 5100
Houston, TX 77010
Telephone:    (713) 651-5151
Facsimile:    (713) 651-5246
Email: jason.boland@nortonrosefulbright.com
Email: julie.harrison@nortonrosefulbright.com
Email: maria.mokrzycka@nortonrosefulbright.com

Paul Trahan  (SBT 24003075)
98 San Jacinto Boulevard, Suite 1100
Austin, TX  78701
Telephone:    (512) 536 5288
Facsimile:    (512) 536 4598
Email: paul.trahan@nortonrosefulbright.com

Steve A. Peirce (SBT 15731200)
111 West Houston Street, Suite 1800
San Antonio, TX  78205
Telephone:  (210) 270-7179
Facsimile:  (210) 270-7205
Email: steve.peirce@nortonrosefulbright.com

*Counsel for the Debtor and Debtor in Possession*