**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| BRAZOS ELECTRIC POWER COOPERATIVE, INC., | Case No. 21-30725 (DRJ) |
| Debtor. | |
| BRAZOS ELECTRIC POWER COOPERATIVE, INC., | |
| Plaintiff, | |
| v. | Adv. Proc. No. 21-03863 (DRJ) |
| ELECTRIC RELIABILITY COUNCIL OF TEXAS, INC., | |
| Defendant. | |

## ELECTRIC RELIABILITY COUNCIL OF TEXAS, INC.'S
## EMERGENCY MOTION TO DISMISS

EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

RELIEF IS REQUESTED NO LATER THAN: NOVEMBER 15, 2021

## **TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT ........................................................................................ 1

II.   PROCEDURAL BACKGROUND .................................................................................. 1

III.   LEGAL STANDARD .................................................................................................... 4

IV.   ARGUMENT AND AUTHORITIES ............................................................................. 4

   A.   The Court must ignore Brazos's legal conclusions. ...................................................... 5

   B.   The PUCT Orders issued during Winter Storm Uri control the price of energy during
       the Storm. ....................................................................................................................... 5

      1.   The PUCT Orders supersede the portion of the Protocols on which Brazos relies. ..... 6

      2.   The SFA on which Brazos relies expressly contemplates that the Protocols and the
         SFA are subject to a PUCT Order ................................................................................. 8

      3.   Brazos cannot rely on SB 1580 .................................................................................... 8

   C.   Because ERCOT properly charged $9,000/MWh in accordance with Texas law,
       Brazos's Count 1 fails to state a claim. ........................................................................ 9

V.   CONCLUSION ............................................................................................................... 9

TO THE HONORABLE DAVID R. JONES, CHIEF U.S. BANKRUPTCY JUDGE:

Pursuant to Federal Rule of Bankruptcy Procedure 7012 and Federal Rule of Civil Procedure 12(b)(6), Defendant Electric Reliability Council of Texas, Inc. ("ERCOT") moves to dismiss Count 1 of Debtor Brazos Electric Power Cooperative, Inc.'s ("Brazos") *First Amended Complaint Objecting to Electric Reliability Council of Texas, Inc.'s Proof of Claim and Other Relief* [Dkt. No. 173] (the "Amended Complaint").

## I.     PRELIMINARY STATEMENT

1.     The Court granted ERCOT's Rule 12(b)(6) motion to dismiss Count 1 of the Original Complaint [ECF No. 1] and gave Brazos the opportunity to replead.[1] But Brazos's repleaded Count 1 still suffers from the same defect as the dismissed Count 1 and should therefore be dismissed again.

2.     Brazos's addition to the Amended Complaint—the idea that "the PUCT orders . . . do not support, and cannot be used to support, the ERCOT Claim"[2]—is insufficient to state a claim because it is grounded in legal conclusions and arguments that ignore the law and the parties' contract. In substance, the amended claim is no different than the previously dismissed claim. The allegations Brazos added are not plausible, and Count 1 still fails as a matter of law.

## II.     PROCEDURAL BACKGROUND

3.     Count 1 of the Original Complaint alleged that ERCOT's claim conflicted with the Standard Form Market Participant Agreement ("SFA") and ERCOT Protocols, and requested the Court disallow "such amount of the ERCOT Claim as exceeds the amount properly charged under

---

[1] *See* Order [Dkt. No. 137].

[2] Am. Compl. ¶ 125.

the SFA and the ERCOT protocols."[3] Notably, the Original Complaint did not mention the PUCT's

Orders let alone allege any facts establishing that they do not control.[4] ERCOT previously moved

to dismiss Count 1 on the basis that Brazos failed to state a plausible claim.[5] During the hearing

on that motion, Brazos's counsel admitted ERCOT followed the PUCT's Orders:

> THE COURT: . . . So as I -- so I'm looking at Count 1 and I've read it many times
> so we're starting off Count 1 with the premise that for purposes of this proceeding
> only or this hearing only, I guess let's keep it there for a second, that the PUCT
> issued an order which ERCOT then followed, correct?
>
> MR. MENDIOLA: Yes, sir.[6]

4.      And Brazos's counsel conceded the validity (but not applicability) of the PUCT's

Orders in this proceeding:

> THE COURT: Is there any challenge to the validity as we stand here today, Mr.
> Mendiola?
>
> MR. MENDIOLA: There's no challenge to the validity of the PUCT Orders that
> we've raised, Your Honor, here in this court.[7]

5.      The Court then granted ERCOT's motion to dismiss Count 1 under Rule 12(b)(6).[8]

But the Court denied ERCOT's motion to abstain and motion to dismiss under Rule 12(b)(7).[9] To

ensure that its arguments are preserved for appeal, ERCOT expressly incorporates the abstention

and Rule 12(b)(7) arguments raised in its earlier Motion to Dismiss [Dkt. No. 23] with respect to

Brazos's First Amended Complaint.

---

[3] Compl. ¶¶ 123–26.

[4] *See generally id.*

[5] ERCOT's Mot. [Dkt. No. 23] at 17-18.

[6] Oct. 18, 2021 Hearing Tr. [Dkt. No. 131] at 70:10–15.

[7] *Id*. at 122:1–5.

[8] *See* Order.

[9] *Id.*

6.      In response, Brazos filed the Amended Complaint requesting the same relief: "disallowing the ERCOT Claim to the extent that the asserted amount exceeds the amount properly chargeable under the SFA and the protocols."[10]

7.      In its second attempt to assert a plausible claim, Brazos now acknowledges the PUCT's Orders, arguing they do not apply. But the core legal theory remains the same: going into the storm, the ERCOT Protocols contained triggers for scarcity pricing mechanisms, and firm load shed was not listed as one of them.[11] Brazos argues that because the Protocols were amended after the storm to add firm load shed as a scarcity-pricing factor (by unanimous consent, including Brazos's affirmative vote[12]), the PUCT's Orders "did not amend" the SFA or the Protocols.[13] Brazos also relies on the irrelevant Senate Bill 1580 for its argument that ERCOT's claim should be calculated according to the Protocols rather than according to the PUCT's Orders because that statute "overrides" the PUCT's Orders.[14]

8.      Brazos concedes ERCOT followed the PUCT's Orders and that it does not challenge the validity of those Orders. Brazos's reconfigured allegations and improper legal argument add nothing new. Count 1 should be dismissed again.

---

[10] Am. Compl. ¶ 132.

[11] *See* Compl. ¶¶ 56-58.

[12] *See* http://www.ercot.com/mktrules/issues/NPRR1081#keydocs at 1081 NPRR-13 TAC Ballot 062321.

[13] Am. Compl. ¶ 130. But Brazos's counsel has made the opposite legal argument. Dkt. 23-3 at 13 ("The Commission unexpectedly *amends* the ERCOT scarcity pricing rule.") (emphasis added); *id*. at 20 ("The February 15 and 16 Orders *modify* ERCOT Protocols, which are themselves 'administrative rules' that 'have the force and effect of statutes.'"); *id*. at 21 ("The Commission's directive to ERCOT to reflect firm load shed in its scarcity pricing signals thus *became 'part of the rule itself.'*") (emphasis added).

[14] *Id*. ¶¶ 126–28.

### III.   LEGAL STANDARD

9.      The Rule 12(b)(6) legal standard is set forth in ERCOT's prior motion, and ERCOT incorporates it here by reference.[15]

### IV.   ARGUMENT AND AUTHORITIES

10.     Brazos fails to state a plausible claim in Count 1. As a preliminary matter, Brazos merely moved allegations originally set forth earlier in its prior pleading to the "Count 1" section of the Amended Complaint. This, of course, does not save Count 1.[16] Brazos cannot cure its implausible claim by simply moving background allegations into the Count 1 section of its Amended Complaint.

11.     In any event, Brazos's new allegations do not save Count 1. Brazos makes legal conclusions about the interpretation of SB 1580,[17] the arguments allegedly made by the PUCT in a different proceeding,[18] and asserts that the PUCT's Orders did not amend the Protocols.[19] These are the same legal arguments that were in Brazos's response to ERCOT's original motion to dismiss, which the Court rejected. The Court need not give these repeated legal conclusions any deference. Brazos's legal conclusions do not state a plausible claim because they ignore that under the law (the SFA and Protocols), the PUCT's Orders control.

---

[15] ERCOT's Mot. at 11–13.

[16] *See* Comparison of Original Complaint and Amended Complaint [Dkt. No. 173-2] at 27–31 (reflecting in green that the better part of at least 10 paragraphs have been copied and pasted from elsewhere in the document).

[17] Am. Compl. ¶¶ 126–28.

[18] *Id.* ¶ 129.

[19] *Id.* ¶ 130.

**A.      The Court must ignore Brazos's legal conclusions.**

12.      While factual allegations in a complaint must be accepted as true, legal conclusions and argument may not.[20] Brazos makes many legal conclusions in the Amended Complaint: (1) that SB 1580 not only applies to this dispute, but that it also should be interpreted as Brazos suggests; (2) that statements allegedly made by the PUCT in another proceeding somehow bind ERCOT in this case; and (3) that the PUCT's Orders do not affect the SFA and Protocols. The Court should not accept these legal conclusions as true. Despite its attempt to replead, Brazos still fails to state a plausible claim.

**B.      The PUCT's Orders issued during Winter Storm Uri control the price of energy during the Storm.**

13.      In the midst of the winter storm, the PUCT "determined that adjustments [were] needed to ERCOT prices to ensure they accurately reflect[ed] the scarcity conditions in the market."[21] The PUCT observed that "energy prices across the system are clearing at less than $9,000," noted that was "inconsistent with the fundamental design of the ERCOT market," and concluded that "the market price for the energy needed to serve load should also be at its highest."[22] The PUCT specifically referenced its "complete authority" over ERCOT and noted that it can "otherwise direct" ERCOT to set the price of energy under 16 Tex. Admin. Code § 25.501(a)

---

[20] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.") (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)); *see Papasan v. Allain*, 478 U.S. 265, 286 (1986) ("[W]e are not bound to accept as true a legal conclusion couched as a factual allegation.").

[21] PUCT  Order at 1 (Feb. 15, 2021).

[22] *Id*.

("TAC").[23] The PUCT thus "direct[ed] ERCOT to ensure that firm load that is being shed in EEA3 is accounted for in ERCOT's scarcity pricing signals."[24]

      1.      **The PUCT Orders supersede the portion of the Protocols on which Brazos relies.**

      14.      The Public Utility Regulatory Act ("PURA") vests the PUCT with the power and obligation to adopt and enforce rules for the wholesale electric market, although the PUCT may delegate authority to ERCOT to adopt and enforce such rules.[25] The PUCT has, in fact, delegated to ERCOT the authority to adopt protocols, including the protocols that determine pricing in the wholesale market. However, the PUCT expressly retained for itself a supervening authority to "otherwise direct[]" ERCOT to set those prices:

> The protocols and other rules and requirements of the Electric Reliability Council of Texas (ERCOT) that implement this section shall be developed with consideration of microeconomic principles and shall promote economic efficiency in the production and consumption of electricity; support wholesale and retail competition; support the reliability of electric service; and reflect the physical realities of the ERCOT electric system. ***Except as otherwise directed by the commission, ERCOT shall determine the market clearing prices of energy*** and other ancillary services that it procures through auctions and the congestion rents it charges or credits, using economic concepts and principles such as: shadow price of a constraint; marginal cost pricing; and maximizing the sum of consumer and producer surplus.[26]

---

[23] *Id*.

[24] *Id* at 2. While the Amended Complaint sets forth how ERCOT went about setting the PUCT-directed price, those allegations are based on the evidence and arguments that were already before the Court when it first dismissed Count 1. *Compare* Am. Compl. at ¶ 109 n.23, *with* ERCOT Mot. at ¶ 20, n.7 (both citing ERCOT Market Notice 5196 available at http://www.ercot.com/services/comm/mkt_notices/archives/5196). As stated in the Market Notice that Brazos relies on (and that ERCOT relied on its Motion), the steps taken by ERCOT to set prices at the system cap were to "implement the pricing outcomes directed by the order." ERCOT Market Notice 5196 available at http://www.ercot.com/services/comm/mkt_notices/archives/5196. Describing the manner in which ERCOT implemented the PUCT's Orders does not make Brazos's implausible claim now plausible.

[25] Tex. Util. Code § 39.151(d).

[26] 16 TAC § 25.501(a) (emphasis added).

15.     The PUCT has also determined that the price of energy should be subject to a scarcity pricing mechanism with a high system-wide offer cap of $9,000 per MWh.[27] As part of that rule, the PUCT stated that ERCOT "must use a stakeholder process to develop and implement rules that comply with this section."[28] But in that same provision, the PUCT reserved for itself supervening authority to "tak[e] actions necessary to protect the public interest, including actions that are otherwise inconsistent with the provisions in this section."[29] In other words, the PUCT expressly reserved the right to set prices that are inconsistent with the Protocols governing scarcity pricing when necessary to protect the public interest.

16.     PURA allows the PUCT to delegate to ERCOT the responsibility for establishing or enforcing such rules, but PURA provides that any rules adopted by ERCOT "are subject to commission oversight and review."[30] In the PUCT Orders, the PUCT expressly referenced its authority under PURA and its ability to direct prices under the TAC:

> Utilities Code § 39.151(d) gives the Commission "complete authority" over ERCOT, the independent organization certified by the Commission pursuant to § 39.151. Further, 16 TAC § 25.501(a) provides that ERCOT determines market clearing prices of energy and other ancillary services in the ERCOT market unless "otherwise directed by the commission."[31]

17.     Even if the $9,000/MWh price was inconsistent with the letter of an existing Protocol provision, the PUCT's directing that price was not.[32]

---

[27] *Id.* § 25.505.

[28] *Id.* § 25.505(h).

[29] *Id*.

[30] TEX. UTIL. CODE § 39.151(d).

[31] PUCT's Order at 1 (Feb. 15, 2021).

[32] 16 TAC §§ 25.505(h), 25.501(a). *See also Rodriguez v. Service Lloyds Ins. Co.*, 997 S.W.2d 248, 254 (Tex. 1999).

**2.      The SFA on which Brazos relies expressly contemplates that the Protocols and the SFA are subject to a PUCT Order.**

18.     Brazos asks this Court to focus on the SFA, but ignores Section 11(L) of the SFA, which provides that the SFA is "subject to" PUCT orders and that such orders "shall prevail" over the SFA in the event of a conflict:

> **This Agreement is subject to** applicable federal, state, and local laws, ordinances, rules, regulations, **orders of any Governmental Authority** and tariffs. Nothing in this Agreement may be construed as a waiver of any right to question or contest any federal, state and local law, ordinance, rule, regulation, order of any Governmental Authority, or tariff. **In the event of a conflict** between this Agreement and an applicable federal, state, and local law, ordinance, rule, regulation, order of any Governmental Authority or tariff, the applicable federal, state, and local law, ordinance, rule, regulation, **order of any Governmental Authority** or tariff **shall prevail**, provided that Participant shall give notice to ERCOT of any such conflict affecting Participant.[33]

19.     Thus, when Brazos agreed to and obligated itself under the SFA, it agreed that its rights under the SFA were "subject to" the PUCT's Orders and that the PUCT's Orders prevail over any conflicting terms in the SFA or Protocols. Any claim by Brazos that ignores the plain language of the SFA is implausible.

**3.      Brazos cannot rely on SB 1580.**

20.     Aside from the fact that Brazos's invocation of SB 1580 in the Amended Complaint constitutes a legal conclusion, SB 1580 is unavailing for Brazos because it is irrelevant at this time. As ERCOT explained in its *Reply in Support of its Motion to Dismiss and for Abstention* [Dkt. No. 70] ("Reply"), SB 1580 applies to extraordinary prices charged during the storm, pursuant to the PUCT's Orders, that are securitized.[34] SB 1580 did not—and does not—reprice the wholesale

---

[33] SFA § 11(L) (emphasis added).

[34] Reply at 10.

electricity market for Brazos alone. It is not a vehicle for Brazos to circumvent its obligations to pay energy prices as set by the PUCT.

**C.    Because ERCOT properly charged $9,000/MWh in accordance with Texas law, Brazos's Count 1 fails to state a claim.**

21.    The crux of Count 1 is that ERCOT had no authority to charge $9,000/MWh during Winter Storm Uri. ERCOT had no authority *not* to do so once directed by the PUCT.[35]

22.    The PUCT's Orders directed ERCOT to charge $9,000/MWh during the period of emergency. The PUCT's Orders override inconsistent Protocols as a matter of law under 16 TAC §§ 25.505(h) and 25.501(a). The PUCT Orders overrode the existing Protocols here. It is irrelevant how ERCOT achieved this PUCT-directed price.[36] The PUCT had the authority to set this price, it did so, and ERCOT had no authority to ignore the PUCT. Accordingly, Count 1 must be dismissed.[37]

## V.    CONCLUSION

ERCOT respectfully requests this Court enter the Order attached as Exhibit "A" and dismiss Count 1 with prejudice for failure to state a claim.

---

[35] TEX. UTIL. CODE § 39.151(d) (noting that if ERCOT does not "fully cooperate with the commission in the commission's oversight," then the PUCT may "decertify[]" ERCOT").

[36] *See* Am. Compl. ¶ 109.

[37] *See Montco Oilfield Contrs., LLC v. Black Elk Energy Offshore Operations, LLC (In re Montco Offshore, Inc.)*, 595 B.R. 524, 545 (S.D. Tex. Bankr. 2018) (dismissing claims for failure to state a plausible breach of contract claim).

Dated: November 3, 2021                Respectfully submitted,

**MUNSCH HARDT KOPF & HARR, P.C.**

By:  */s/ Jamil N. Alibhai*
      Kevin M. Lippman
      Texas Bar No. 00784479
      klippman@munsch.com
      Deborah Perry
      Texas Bar No. 24002755
      dperry@munsch.com
      Jamil N. Alibhai
      Texas Bar No. 00793248
      jalibhai@munsch.com
      Ross H. Parker
      Texas Bar No. 24007804
      rparker@munsch.com

      3800 Ross Tower
      500 N. Akard Street
      Dallas, Texas 75201-6659
      Telephone: (214) 855-7500
      Facsimile: (214) 855-7584

**COUNSEL FOR DEFENDANT
ELECTRIC RELIABILITY COUNCIL OF
TEXAS, INC.**

## CERTIFICATE OF SERVICE

I certify that on November 3, 2021, I caused a copy of the foregoing document to be served via CM/ECF on all counsel of record.

                        */s/  Jamil N. Alibhai*
                        Jamil N. Alibhai