IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>BRAZOS ELECTRIC POWER COOPERATIVE, INC.,<br><br>    Debtor. | Chapter 11<br><br>Case No. 21-30725 (DRJ) |
| BRAZOS ELECTRIC POWER COOPERATIVE, INC., *et al.*, [1]<br><br>    Plaintiffs,<br><br>v.<br><br>ELECTRIC RELIABILITY COUNCIL OF TEXAS, INC., *et al.* [2]<br><br>    Defendants. | Adv. Proc. No. 21-03863 (DRJ) |

**ELECTRIC RELIABILITY COUNCIL OF TEXAS, INC.'S AND DEFENDANT INTERVENORS CALPINE CORPORATION, NRG ENERGY, INC., NEXTERA ENERGY MARKETING, LLC, ENGIE ENERGY MARKETING NA, INC., AND TALEN ENERGY SUPPLY, LLC'S MOTION FOR LEAVE TO APPEAL THE ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND FOR ABSTENTION [ECF NO. 137]**

---

[1] The Plaintiff-Intervenors in the Adversary Proceeding are: the Official Committee of Unsecured Creditors, Mid-South Electric Cooperative Association; Denton County Electric Cooperative, Inc., d/b/a CoServ Electric; United Electric Cooperative Services, Inc., d/b/a United Cooperative Services; Tri-County Electric Cooperative, Inc.; Bartlett Electric Cooperative, Inc.; Comanche County Electric Cooperative Association; Cooke County Electric Cooperative Association, Inc. d/b/a PenTex Energy; Hamilton County Electric Cooperative Association; Heart of Texas Electric Cooperative, Inc.; J-A-C Electric Cooperative, Inc.; Navasota Valley Electric Cooperative, Inc.; and Wise Electric Cooperative, Inc.

[2] The Defendant-Intervenors in the Adversary Proceeding are: Calpine Corporation; Tenaska Power Services Co.; NRG Energy, Inc.; ENGIE Energy Marketing NA, Inc.; Talen Energy Supply, LLC; Golden Spread Electric Cooperative, Inc; South Texas Electric Cooperative; and NextEra Energy Marketing, LLC.

1

Pursuant to Federal Rule of Bankruptcy Procedure 8004 and 28 U.S.C. § 158(a)(3), Defendant Electric Reliability Council of Texas, Inc. ("ERCOT"), and Defendant-Intervenors Calpine Corporation, NRG Energy, Inc., NextEra Energy Marketing, LLC, ENGIE Energy Marketing NA, Inc., and Talen Energy Supply, LLC file this *Motion for Leave to Appeal the Order Granting in Part and Denying in Part Defendant's Motion to Dismiss and for Abstention* [ECF No. 137].

## I.     INTRODUCTION

1. This bankruptcy adversary proceeding presents questions that are improper for federal-court consideration and lacks a necessary party for adjudication. Nonetheless, the bankruptcy court intends to proceed with the litigation. This is error that needs immediate correction prior to trial.

2. This appeal arises out of the bankruptcy of Debtor Brazos Electric Power Cooperative ("Brazos"). ERCOT filed a proof of claim seeking $1.9 billion that Brazos owes for energy and other goods it purchased during the February 2021 Winter Storm Uri. In response, Brazos filed an adversary complaint attempting to end-run Texas's pervasive regulatory scheme governing the State's intrastate wholesale energy market, overseen by ERCOT. But in charging Brazos the disputed energy prices, ERCOT acted pursuant to orders issued by the Public Utility Commission of Texas ("PUCT") setting these prices, with which ERCOT was statutorily obligated to comply.

3. Brazos's adversary complaint seeks to disallow or reduce ERCOT's claim based on allegations that, in following the PUCT's binding orders, ERCOT violated ERCOT's rules and its contract with Brazos. If granted, the relief Brazos seeks would interfere with Texas's electric-regulatory regime, potentially conflict with pending state-court litigation, and have destabilizing

downstream effects on every participant in the ERCOT market, including Defendant-Intervenors and numerous entities not party to this proceeding.

4.	ERCOT thus moved the bankruptcy court to dismiss or abstain from deciding Brazos's pricing claims under *Burford v. Sun Oil Co.*, 319 U.S. 315, (1943). Alternatively, ERCOT asked the bankruptcy court to dismiss the claims implicating the PUCT's authority under Rule 12(b)(7). The bankruptcy court refused both requests. ERCOT seeks leave to take an interlocutory appeal from those rulings.

## II.   BACKGROUND

5.	The majority of Texas is served by an intrastate electric grid. ERCOT operates that grid, as well as the wholesale energy market that serves the grid's footprint.[3]

6.	Texas's Public Utility Regulatory Act ("PURA") requires the PUCT to "adopt and enforce rules relating to the . . . accounting for the production and delivery of electricity among generators and all other market participants" in the ERCOT region.[4] However, the PUCT may also delegate that sovereign rulemaking authority to ERCOT.[5] The PUCT has done so, but it retains plenary oversight over ERCOT, with which ERCOT must "fully cooperate."[6]

7.	ERCOT's rules, which are known as Protocols, have the force and effect of state law, and all market participants are statutorily required to obey them.[7] Among the Protocols are those that, by PUCT command, "determine the market clearing prices of energy and other ancillary

---

[3] TEX. UTIL. CODE § 39.151(a).

[4] *Id.*

[5] *Id.*

[6] *Id.* §§ 39.151(d), (d-4)(5).

[7] *Id.* § 39.151(j); *PUCT v. Constellation Energy Commodities Grp., LLC*, 351 S.W.3d 588, 594–95 (Tex. App.—Austin 2011, pet. denied). ERCOT's Protocols are available at http://www.ercot.com/mktrules/nprotocols/current.

3

services."[8] Importantly, however, the PUCT retains supervening authority to "otherwise direct[]" what the price of energy should be[9] and "tak[e] actions necessary to protect the public interest, including actions that are otherwise inconsistent with the provisions in this section."[10]

8. During Winter Storm Uri, unprecedented demand for electricity overwhelmed available supply. ERCOT entered its highest emergency status, called EEA3, and directed transmission operators to substantially curtail load, known as firm load shed.[11] Despite this scarcity, prices on the ERCOT market continued to clear below the system-wide offer cap, which the PUCT has by rule set at $9,000/MWh.[12]

9. Finding this discrepancy "inconsistent with the fundamental design of the ERCOT market," the PUCT ordered ERCOT to adjust "ERCOT prices to ensure they accurately reflect the scarcity conditions in the market" by "ensur[ing] that firm load is being shed in EEA3 is accounted for in ERCOT's scarcity pricing signals."[13] As it was required to do by statute, ERCOT complied with the PUCT's order by administratively adjusting its pricing mechanism to peg the price of electricity at the system-wide offer cap from the night of February 15 until the weather emergency subsided on the morning of February 19.

10. After the Storm, Brazos failed to pay ERCOT for $1.9 billion in energy and other goods it purchased, received, and re-sold to its member cooperatives during the Storm. Because

---

[8] 16 TEX. ADMIN. CODE ("TAC") § 25.501(a).

[9] *Id.*

[10] *Id.* § 25.505(h).

[11] *Id.*

[12] 16 TAC § 25.505; Order Directing ERCOT to Take Action and Granting Exception to Commission Rules ("PUCT 2/15/21 Order") at 1; Second Order Directing ERCOT to Take Action and Granting Exception to Commission Rules ("PUCT 2/16/21 Order") at 1.

[13] PUCT 2/16/21 Order at 2.

4

ERCOT is a revenue-neutral clearinghouse—"the central counterparty for all transactions settled by ERCOT," and "the sole buyer to each seller, and the sole seller to each buyer, of all energy"[14]—the money Brazos owes ERCOT is owed, in turn, by ERCOT to market participants that generated and sold energy during the storm, such as Defendant-Intervenors. To ensure ERCOT's revenue neutrality, the Protocols require that when a market participant like Brazos fails to pay what it owes, ERCOT must collect that default from the remaining participants in the market a process known as default uplift.[15] Thus, if Brazos does not pay the $1.9 billion it owes (or if ERCOT's claim is reduced or disallowed), other market participants—like Defendant-Intervenors—could be on the hook for Brazos's liabilities.

11. The crux of Brazos's complaint is that ERCOT's claim should be disallowed or reduced because the prices ERCOT charged pursuant to the PUCT's orders violated ERCOT's Protocols or the Standard Form Market Participant Agreement ("SFA") between ERCOT and Brazos, which binds both parties to the Protocols. However, the SFA is explicitly "subject to" PUCT orders, which "shall prevail" in the event of conflict with the SFA's terms.[16]

12. In order to ensure consistency in the interpretation and application of PUCT orders, PURA's "comprehensive and adequate regulatory system for electric utilities,"[17] requires all challenges to PUCT orders be brought in state district court in Travis County.[18] ERCOT's

---

[14] ERCOT Protocols § 1.2(4).

[15] ERCOT Protocols §§ 9.19(d)(1), 9.19.9(1)(e), 9.19.1(2).

[16] SFA § 11(L).

[17] TEX. UTIL. CODE § 31.001(a).

[18] *See* TEX. GOV'T CODE § 2001.176(b)(1); TEX. UTIL. CODE §§ 11.007(a), 15.001.

Protocols also provide a procedure for billing disputes, from which judicial review can be sought once administrative remedies are exhausted.[19]

13. Using these procedures, numerous market participants filed or intervened in challenges to the validity or application of the PUCT's pricing orders.[20] Others (including Brazos) filed billing disputes and ADRs that may ripen into PUCT proceedings or state-court lawsuits. Any relief granted through these proceedings is subject to review, ultimately, in Travis County district court and the Supreme Court of Texas, and it will be implemented by the PUCT.

14. This judicial-review process is one piece of the comprehensive regulatory scheme Texas employs with respect to energy markets. This is a scheme that the Texas Supreme Court has recognized as within the province of the PUCT and Texas state courts,[21] and federal courts have no business wading into it. At its core, this case depends upon the applicability and interpretation of the PUCT's emergency orders, and this is a matter on which federal courts must defer to the state. Additionally, the PUCT's absence in this proceeding is fatal. The PUCT is party to the concurrent state proceedings, and it will have to implement any judgment by ordering ERCOT to take action with respect to the market. If ERCOT obeys a conflicting judgment of the bankruptcy

---

[19] *See* ERCOT Protocols §§ 9.14 (billing disputes), 20 (alternative dispute resolution); 16 TAC § 22.251(b) (permitting complaints against ERCOT to be filed with the PUCT); TEX. UTIL. CODE § 15.001 (permitting judicial review of a PUCT proceeding).

[20] *E.g., Luminant Energy Co. LLC . PUCT*, No. 03-21-00098-CV (Tex. App.—Austin Mar 2, 2021); *Exelon Generation Co. v. PUCT*, No. D-1-GN-21-001772 (53rd Dist. Ct., Travis County, Tex. Apr. 19, 2021); *RWE Renewables Americas LLC v. D'Andrea*, No. D-1-GN-21-001839 (201st Dist. Ct., Travis County, Tex. Apr. 21, 2021).

[21] *In re Entergy Corp.*, 142 S.W.3d 316, 322 (Tex. 2006) (holding that PURA is a comprehensive regulatory scheme); *Oncor Elec. Delivery Co., LLC v. Chapparal Energy, LLC*, 546 S.W.3d 133, 139–40 (Tex. 2018) (finding the PUCT had exclusive jurisdiction over customer's breach of contract claim for monetary damages against a utility because of PURA's comprehensive regulatory scheme over utilities in Texas); *Oncor Elec. Delivery Co., LLC v. Giovanni Homes Corp.*, 438 S.W.3d 644, 657-58 (Tex. App.—Fort Worth 2014, pet. denied) (holding that the PUCT had exclusive jurisdiction over a breach of contract claim because the utility's tariff and the PUCT rules governed the provision of service for which the plaintiff had contracted).

court, it may simultaneously violate state law and risk discipline or decertification by a PUCT not bound by the bankruptcy court's ruling.

15. For all these reasons, ERCOT filed a motion asking the bankruptcy court to abstain from deciding Brazos's claims pursuant to *Burford* or dismiss those claims for failure to join the PUCT, an indispensable party [ECF No. 23].[22] The bankruptcy court denied that relief [ECF No. 137],[23] and this motion for leave to appeal followed.

### III. QUESTIONS PRESENTED

16. The questions to be decided on appeal are:

   a. Does *Burford* require the bankruptcy court to abstain from deciding Brazos's claims that the price of energy during the storm was inconsistent with PURA, ERCOT's Protocols, and/or the SFA; or that the PUCT's pricing orders are not applicable to amounts Brazos owes ERCOT pursuant to storm-related invoices?

   b. Does Brazos's failure to join the PUCT require dismissal of Brazos's claims that the price of energy during the storm was inconsistent with PURA, ERCOT's Protocols, and/or the SFA; or that the PUCT's pricing orders are not applicable to amounts Brazos owes ERCOT pursuant to storm-related invoices?

---

[22] ERCOT sought dismissal of Counts 1–3 of Brazos's Complaint, as well as the dismissal of Counts 4 and 5 to the extent those counts are based on allegations that the amount of ERCOT's claim is should be reduced or disallowed, or that Brazos did not receive a reasonably equivalent value for what it paid, because ERCOT violated PURA, ERCOT's Protocols, or the SFA.

[23] ERCOT's motion also asked the bankruptcy court to dismiss Counts 1 and 3 of Brazos's complaint for failure to state a claim. *see* Fed. R. Civ. P. 12(b)(6). The bankruptcy court granted ERCOT's Rule 12(b)(6) motion with respect to Count 1. [ECF No. 137.] With the bankruptcy court's leave, Brazos filed its First Amended Complaint [ECF No. 173], which attempts to replead Count 1. ERCOT renewed its motion to dismiss with respect to the amended complaint [ECF No. 191], and Defendant-Intervenors joined in that motion [ECF No. 193].

## IV. LEGAL STANDARD

17. Section 158(a)(3) "does not indicate the standard a district court should use in determining whether to grant leave to appeal."[24] However, "the vast majority of district courts" to address the question have "adopted the standard under 28 U.S.C. § 1292(b) for interlocutory appeals from district court orders."[25] The Fifth Circuit has thus "assum[ed]" that standard applies,[26] and courts in this district routinely apply it.[27] The § 1292(b) standard has three elements: (1) a "controlling issue of law must be involved"; (2) "the question must be one where there is substantial ground for difference of opinion"; and (3) "an immediate appeal must materially advance the ultimate termination of the litigation."[28]

## V. ARGUMENT AND AUTHORITIES

18. The abstention and indispensable-party questions presented by this appeal will determine whether Brazos can use this adversary proceeding to attempt to selectively reprice the wholesale energy market to its benefit—and to the detriment of Defendant-Intervenors and many other non-party market participants. This attempt to usurp Texas's regulatory regime and centralized mechanism for judicial review is the heart of Brazos's adversary complaint. Immediate interlocutory review of these important questions will thus determine—and, if movants are successful, narrow—the scope of the upcoming trial.

---

[24] *In re Ichinose*, 946 F.2d 1169, 1177 (5th Cir. 1991).

[25] *Id.*

[26] *Id.*

[27] *E.g.*, *Enviro-Lite Sols., LLC v. Edinburg Consol. Indep. Sch. Dist.*, No. 7:20-CV-360, 2021 WL 3832818, at *6 (S.D. Tex. Feb. 24, 2021); *In re Royce Homes LP*, 466 B.R. 81, 93–94 (S.D. Tex. 2012).

[28] *Ichinose*, 946 F.2d at 1177.

**A.      This appeal presents controlling questions of law on which there are substantial grounds for disagreement.**

19.     A question of law is "controlling" if the error challenged would be reversible on appeal from a final judgment or if "interlocutory reversal might save time for the district court, and time and expense for the litigants," by resolving a question central to the litigation.[29]

20.     The question of whether to dismiss or abstain from deciding Brazos's pricing claims is plainly "controlling." The bulk of Brazos's complaint attempts to show that ERCOT's claim should be reduced or disallowed because ERCOT, by complying with the PUCT's orders, violated the Protocols and the SFA. If the bankruptcy court dismissed or abstained from deciding those claims, it would resolve most of Brazos's adversary complaint, including substantially all issues regarding the amount of ERCOT's claim. This would significantly narrow the issues to be tried in this case.[30] And there is substantial ground for a difference of opinion regarding the questions to be appealed.

**B.      There is a substantial ground for a difference of opinion regarding the bankruptcy court's refusal to abstain under *Burford*.**

21.     The issue of whether *Burford* requires a federal court to abstain from deciding pricing disputes within the jurisdiction of the PUCT and Texas state courts is one of first impression. But there is substantial reason to doubt the bankruptcy court resolved the question correctly: the circumstances of this case mirror almost identically those that required abstention in *Burford* itself.

---

[29] 16 Wright & Miller, Fed. Prac. & Proc. § 3930 (3d ed.); *Johnson v. Burken*, 930 F.2d 1202, 1206 (7th Cir. 1991) (noting that "controlling" means "serious to the conduct of the litigation, either practically or legally").

[30] *See Municipal Ass'n of S.C. v. Serv. Ins. Co.*, No. 3:08-03072-MBS, 2011 WL 13253448, at *3 (D.S.C. Sept. 21, 2011) ("[T]he issue of FEMA's indispensability under Fed. R. Civ. P. 19(b) is a controlling question of law because a determination adverse to MASC would result in dismissal of the case.").

22. In *Burford*, the federal plaintiff's suit "attacked the validity of an order of the Texas Railroad Commission ["RRC"] granting" Burford a drilling permit.[31] The RRC issued that order pursuant to "the general regulatory system devised for the conservation of oil and gas in Texas."[32] Consistency in this realm was paramount because "each oil and gas field must be regulated as a unit for conservation purposes," and Texas had vested the RRC "with 'broad discretion' in administering the law" in that field.[33] Critically, the "standards applied by the [RRC] in a given case necessarily affect the entire state conservation system," for which reason Texas had "established a system of thorough judicial review" that routed all appeals of RRC action "to a state district court in Travis County" in order to "prevent the confusion of multiple review of the same general issues."[34]

23. Here, likewise, Brazos's claims attack the validity, applicability, and/or efficacy of orders issued by a Texas administrative agency—here, the PUCT. Those orders were issued by the PUCT as part of its oversight of Texas's "comprehensive and adequate regulatory system" governing electric utilities, pursuant to a specific grant of authority over the ERCOT region's wholesale energy market.[35] As in *Burford*, the PUCT's orders necessarily affected the entire market—indeed, because of ERCOT's clearinghouse role, any reduction in ERCOT's claim would, by rule, be borne by the market's other participants, most of whom are not parties to this

---

[31] 319 U.S. at 316–17.

[32] *Id.* at 318.

[33] *Id.* at 320.

[34] *Id.* at 324–26.

[35] TEX. UTIL. CODE §§ 31.001(a), 39.151(d).

proceeding. Finally, Texas has established a centralized method of review for PUCT orders in state district court in Travis County in order to avoid inconsistent rulings.[36]

24.  Indeed, the case for abstention is stronger here than it was in *Burford*. Numerous market participants have challenged the PUCT's orders in the proper state-court fora. The existence of this state-court litigation creates a strong likelihood of inconsistent rulings regarding the pricing of electricity during the storm. But because those proceedings have been filed in fora with market-wide jurisdiction, if the courts rule that the market should be repriced, Brazos will benefit even though it (unlike many other market participants) chose not to intervene. Moreover, Brazos did preserve its right to administratively challenge the ERCOT invoices that are the subject of this adversary proceeding, and —if pursued—that challenge could ripen into a state-court lawsuit.[37] However, if the bankruptcy court attempts to reprice the transactions between ERCOT and Brazos, it lacks jurisdiction to account for that ruling's downstream impacts on other market participants, and it risks conflict with the ongoing state proceedings.

25.  In *Burford*, the Supreme Court held that because the questions regarding Texas's regulatory regime "so clearly involve[d] basic problems of Texas policy," a "sound respect for the independence of state action require[d]" abstention in order to avoid "needless federal conflict with state policy."[38] There is substantial reason to think the same result should have obtained here, and interlocutory review is thus warranted.

---

[36] *See* Tex. Gov't Code § 2001.176(b)(1); PURA §§ 11.007(a), 15.001; *see also* PURA § 39.001(e).

[37] *See* ERCOT Protocol § 20; 16 TAC § 22.251(b).

[38] 319 U.S. at 332, 334.

**C.    There is a substantial ground for difference of opinion regarding the bankruptcy court's decision not to dismiss due to Brazos's failure to join the PUCT.**

26.    The argument that the PUCT is an indispensable party to this adversary proceeding is exceedingly strong, and—because the PUCT is immune and cannot be joined—the bankruptcy court erred by not dismissing Brazos's claims. Indeed, Brazos's pricing claims *directly* challenge the PUCT's authority to effectuate orders it issues in its role as regulator of Texas's electricity industry: if Brazos is right that the PUCT's pricing orders were inapplicable to the transactions between ERCOT and market participants, the PUCT's authority is diminished.

27.    Brazos's claims regarding PURA, ERCOT Protocols, and the SFA likewise all implicate laws that the PUCT has exclusive jurisdiction to enforce or rules that were promulgated using authority delegated from the PUCT,[39] which also exercises plenary authority over ERCOT's operations and budget. And because any disallowance or reduction of the amount of ERCOT's claim must be passed onto the rest of the market, over which the PUCT has ultimate regulatory authority, the PUCT has an interest in any attempt to alter the liabilities between ERCOT and market participants like Brazos.

28.    The PUCT is thus a necessary party under both prongs of Rule 19(a)(1)(B). Disposing of Brazos's pricing claims in the PUCT's absence risks negating the PUCT's authority to issue orders regarding the price of electricity in the ERCOT market, impairing not only the PUCT's rights with respect to the orders at issue but its broader ability to carry out its regulatory

---

[39] The SFA is not a negotiated contract. It is a standard form agreement the terms of which are provided by the Protocols, which ERCOT adopts using delegated PUCT rulemaking authority. ERCOT Protocols § 22A. Likewise, the Protocols required Brazos to execute the SFA as a condition of participating in the market. *Id.* § 16.1. The SFA is an exercise of the PUCT's authority and one of the interlocking pieces of the regulatory scheme the PUCT governs. It cannot be interpreted without impacting the PUCT's authority.

responsibilities under PURA.[40] Without the PUCT's presence, ERCOT would also be at risk of multiple or inconsistent obligations.[41] ERCOT has no discretion to disobey PUCT orders, but a ruling in favor of Brazos's pricing claims would effectively require ERCOT to disobey the PUCT's pricing orders with respect to Brazos—something for which ERCOT is subject to discipline or decertification.[42] Only if the bankruptcy court rendered judgment against the PUCT invalidating or limiting its pricing orders could ERCOT's claim be reduced in a manner that would not violate ERCOT's state-law obligations.[43]

29. The PUCT is thus a necessary party, but because it has Eleventh Amendment immunity from suit it cannot be joined and Brazos's pricing claims should be dismissed.[44] The bankruptcy court likely erred by concluding otherwise, and interlocutory review is therefore warranted.

**D.  Immediate resolution of these questions would advance this litigation's termination.**

30. Whether an interlocutory appeal will materially advance the litigation's termination "is closely tied to the requirement that the order involve a controlling question of law."[45] The

---

[40] *See* Fed. R. Civ. P. 19(b)(1)(B)(i).

[41] *See* Fed. R. Civ. P. 19(b)(1)(B)(ii).

[42] TEX. UTIL. CODE §§ 39.151(d), (d-4)(5).

[43] Similarly, there is a risk of inconsistent obligations due to the pending state-court litigation against the PUCT regarding its pricing orders. The PUCT would implement any market-wide relief granted in those proceeding by ordering ERCOT to take certain actions with respect to the pricing of the market for the period of the storm. It is likely that ERCOT's obligations under those orders would conflict with any relief granted by the bankruptcy court.

[44] Fed. R. Civ. P. 19(b); *see Enterprise Mgmt. Consultants, Inc. v. United States*, 883 F.2d 890, 894 (10th Cir. 1989) ("When, as here, a necessary party under Rule 19(a) is immune from suit, there is very little room for balancing of other factors set out in Rule 19(b), because immunity may be viewed as one of those interests compelling by themselves." (internal quotation marks omitted)).

[45] 16 Fed. Prac. & Proc. § 3930.

requirement is satisfied when interlocutory reversal would result in "avoiding," "curtailing," or "simplifying" pretrial or trial proceedings.[46]

31. Interlocutory review of the bankruptcy court's refusal to dismiss or abstain from deciding Brazos's pricing claims satisfies this standard. To resolve Brazos's pricing claims, the bankruptcy court would have to contend with an array of complex and novel legal, factual, and policy questions. These include whether the PUCT's orders controlled over the allegedly inconsistent provisions in the Protocols and SFA and whether, despite those orders and the Texas Legislature's refusal to reprice the market, ERCOT was nevertheless obligated to reprice the market retroactively. The bankruptcy court would also have to reconstruct a hypothetical market to determine what the price of electricity would have been at discrete moments of the storm, making retroactive judgments about how hundreds of players in and out of the market would have responded to a different (and entirely speculative) set of price signals. That inquiry may prove not only complex, but impossible.

32. Abstention or dismissal avoids these issues, leaving them to be resolved—as the Texas Legislature intended—by the PUCT and Texas state courts, fora that have the authority and jurisdiction to balance the competing interests of all participants in the market. Interlocutory appeal would therefore materially advance this litigation's termination.

## VI.   PRAYER

Movants respectfully request that this Court grant them leave to appeal.

---

[46] *Id.*


Dated: November 5, 2021    **MUNSCH HARDT KOPF & HARR, P.C.**

By: /s/ Jamil N. Alibhai
    Kevin M. Lippman
    Texas Bar No. 00784479
    klippman@munsch.com
    Deborah Perry
    Texas Bar No. 24002755
    dperry@munsch.com
    Jamil N. Alibhai
    Texas Bar No. 00793248
    jalibhai@munsch.com
    Ross Parker
    Texas State Bar No. 24007804
    rparker@munsch.com

    3800 Ross Tower
    500 N. Akard Street
    Dallas, Texas  75201-6659
    Telephone: (214) 855-7500
    Facsimile:  (214) 855-7584

**ATTORNEYS FOR THE ELECTRIC RELIABILITY COUNCIL OF TEXAS, INC.**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**

By: _____
David R. Seligman, P.C. (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: david.seligman@kirkland.com

Mark McKane, P.C. (admitted *pro hac vice*)
555 California Street
San Francisco, California 94104
Telephone: (415) 439-1400
Facsimile: (212) 439-1500
Email: mark.mckane@kirkland.com

Aparna Yenamandra (admitted *pro hac vice*)
601 Lexington Avenue

New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: aparna.yenamandra@kirkland.com

**COUNSEL FOR CALPINE CORPORATION**


**SHEARMAN & STERLING LLP**

By:_____
C. Luckey McDowell (SBT 24034565)
Ian E. Roberts (SBT 24056217)
2828 N. Harwood Street, Suite 1800
Dallas, Texas 75201
Telephone: (214) 403-0649
Email: luckey.mcdowell@shearman.com
Email: ian.roberts@shearman.com

Joel Moss (admitted *pro hac vice*)
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (212) 848-4693
Email: joel.moss@shearman.com

Jonathan M. Dunworth (admitted *pro hac vice*)
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 848-5288
Email: jonathan.dunworth@shearman.com

**COUNSEL FOR NRG ENERGY, INC., ENGIE ENERGY MARKETING NA, INC., TALEN ENERGY SUPPLY, LLC, AND NEXTERA ENERGY MARKETING, LLC**

## CERTIFICATE OF SERVICE

I certify that on November 5, 2021, I caused a copy of the foregoing document to be served via CM/ECF on all counsel of record in this matter.

                                                              */s/  Jamil N. Alibhai*
                                                              Jamil N. Alibhai

4887-8127-7954v.3 .