**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| BRAZOS ELECTRIC POWER | § | Case No. 21-30725 (DRJ) |
| COOPERATIVE, INC.,[1] | § | |
| | § | |
| Debtor. | § | |
| | § | |
| BRAZOS ELECTRIC POWER | § | |
| COOPERATIVE, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | Adv. Proc. No. 21-03863 (DRJ) |
| v. | § | |
| | § | |
| ELECTRIC RELIABILITY COUNCIL | § | |
| OF TEXAS, INC., | § | |
| | § | |
| Defendant. | § | |

**DENTON COUNTY ELECTRIC COOPERATIVE, INC. D/B/A COSERV ELECTRIC'S**
**RESPONSE TO THE PUBLIC UTILITY COMMISSION OF TEXAS'S MOTION TO**
**QUASH SUBPOENA, OR IN THE ALTERNATIVE, MOTION FOR PROTECTIVE**
**ORDER AND EMERGENCY CROSS-MOTION TO COMPEL**
(Docket Entry 206)

---

**EMERGENCY RELIEF HAS BEEN REQUESTED.  IF THE COURT CONSIDERS THE CROSS-MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE FEWER THAN 21 DAYS TO RESPOND.  IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST EITHER APPEAR AT THE HEARING OR FILE A WRITTEN RESPONSE PRIOR TO THE HEARING. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

**RELIEF IS REQUESTED NOT LATER THAN DECEMBER 1, 2021.**

---

[1] The Debtor in this chapter 11 case, along with the last four (4) digits of its federal tax identification number, is: Brazos Electric Power Cooperative, Inc. (4729). Additional information regarding this case may be obtained on the website of the Debtor's claims and noticing agent at http://cases.stretto.com/Brazos. The Debtor's address is 7616 Bagby Avenue, Waco, TX 76712.

Intervenor-Plaintiff Denton County Electric Cooperative, Inc. d/b/a CoServ Electric ("CoServ") files its Response in Opposition ("Response") to the Public Utility Commission of Texas's (the "PUCT") *Motion to Quash Subpoena, or in the Alternative, Motion for Protective Order* [Adv. Pro. Dkt. No. 206] (the "Motion") and *Emergency Cross-Motion to Compel* and respectfully states as follows:

## I.     EMERGENCY RELIEF REQUESTED

1.     By this Motion, CoServ seeks entry of an order substantially in the form attached hereto as **Exhibit A** (the "Proposed Order") compelling the PUCT to produce all documents and information responsive to CoServ's October 22, 2021 Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Bankruptcy Case (or Adversary Proceeding) (the "Subpoena").

2.     Further, for the reasons set forth below, CoServ asks that the Court consider the relief sought herein on an emergency basis, and set a hearing on emergency notice at the Court's earliest convenience if it determines a hearing on the Motion is necessary.

## II.     PRELIMINARY STATEMENT

3.     On October 18, 2021, the Court granted CoServ's request to intervene in this Adversary Proceeding, subject to certain requirements.[2] On October 22, 2021, with the Court's permission and without objection from the Debtor, the Official Committee of Unsecured Creditors of Brazos Electric Power Cooperative, Inc. (the "Committee"), or the Electric Reliability Council of Texas, Inc. ("ERCOT"), CoServ served a Subpoena on the PUCT, which sought documents in

---

[2] *See Stipulation and Agreed Order Authorizing Intervention* [Adv. Pro. Dkt. No. 136] (the "Member Co-Op Intervention Order").

2

connection with *a single*, narrowly tailored request for production (the "<u>Request</u>").[3]

4.        The PUCT now moves to quash the Subpoena in its entirety or, in the alternative, it seeks a protective order, arguing that: (1) the Subpoena constitutes a suit from which the PUCT is shielded under the doctrine of sovereign immunity; (2) CoServ failed to provide the PUCT with enough time to respond to the Request; (3) CoServ has requested production of documents beyond the geographical limits of Federal Rule of Civil Procedure 45; (4) the requested documents may be privileged; (5) the Request is overly broad and unduly burdensome; (6) the Request is unreasonably vague and ambiguous; (7) the Request is needlessly duplicative of discovery that the Debtor and the Committee previously propounded on the PUCT; (8) the Request violates the Court's directive that written discovery requests not be "substantially similar" to other parties' discovery requests previously propounded on the PUCT; and (9) if the Court decides not to quash the Subpoena, the PUCT is entitled to a protective order to modify and limit the scope of CoServ's allegedly duplicative Request.

5.        CoServ's Request seeks specific, relevant, narrowly tailored information that has not otherwise been produced by any party during the course of discovery. This information is critical to the proper adjudication of the claims in this case. Contrary to the representations made in the Motion, CoServ has made good faith efforts to confer with the PUCT in order to reach a resolution, and it has agreed to limit the scope of the Request by time period, custodians, and search terms. Most of these new parameters are similar to the terms that the PUCT agreed to use in response to the Debtor's requests for production.

6.        Despite CoServ's attempts to resolve these issues consensually, the PUCT has engaged in needless motion practice in order to avoid fully producing the documents requested.

---

[3] *See Denton County Electric Cooperative, Inc. d/b/a CoServ Electric's Notice of Intent to Serve Subpoena Duces Tecum to the Public Utility Commission of Texas* [Adv. Pro. Dkt. No. 151] (the "<u>Notice of Intent to Serve Subpoena</u>").

The PUCT's refusal to produce the requested discovery, despite CoServ's agreement to limit the scope of the Request, has forced CoServ to file this Response to, among other things, compel the PUCT to produce all responsive, non-privileged documents to ensure CoServ has a meaningful opportunity to participate in the remainder of discovery.

### III.   <u>BACKGROUND</u>

7.      On September 20, 2021, CoServ filed a motion seeking to intervene in the Adversary Proceeding as an intervenor-plaintiff pursuant to Federal Rule of Civil Procedure 24, made applicable to this Adversary Proceeding by Rule 7024 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").[4]

8.      CoServ, along with a number of other intervenor co-op members (collectively, the "<u>Intervening Co-Op Members</u>"), negotiated with the Debtor and the Committee, and ultimately agreed to a *Stipulation and Agreed Order Authorizing Intervention* (the "<u>Intervention Stipulation</u>"), which this Court approved on the record during a hearing on October 18, 2021. The Court subsequently memorialized its ruling by formally entering an order approving the Intervening Co-Op Members' intervention pursuant to the terms set forth in the Member Co-Op Intervention Order.

9.      Pursuant to paragraph 2(a) of the Member Co-Op Intervention Order, the Intervening Co-Op Members were deemed to have joined the *Confidentiality Agreement and Stipulated Protective Order* [Adv. Pro. Dkt. No. 51] entered into by the Debtor, the Committee, ERCOT, and the PUCT (the "<u>Protective Order</u>").

10.     The Member Co-Op Intervention Order also stated that the Intervening Co-Op

---

[4] *Motion of Denton County Electric Cooperative, Inc. d/b/a CoServ Electric for Entry of an Order Pursuant to Federal Rule of Civil Procedure 24 and Federal Rule of Bankruptcy Procedure 7024 Authorizing Intervention in Adversary Proceeding* [Adv. Pro. Dkt. No. 34].

Members would not have the right to propound any written discovery requests unless:

> (i) otherwise agreed to by the Existing Parties and the applicable Intervening Co-Op Member, or (ii) ordered by the Court upon a motion and an opportunity to be heard (which the Existing Parties agree may be heard on an expedited basis). Before requesting permission to propound any Written Discovery Requests, the applicable Intervening Co-Op Member(s) shall make reasonable efforts to consult with the Existing Plaintiffs and shall not propound any Written Discovery Requests that are substantially similar to any Written Discovery Requests that the Existing Plaintiffs have propounded or agree to propound. The Existing Plaintiffs shall make reasonable efforts to confer with the applicable Intervening Co-Op Members about the Written Discovery Requests that such Existing Plaintiff intends to propound.

*Id.* ¶ 2.c.

11.     During the October 18 hearing, CoServ raised the possibility of seeking the Court's permission to propound very limited discovery once it reviewed the discovery propounded throughout these proceedings. In doing so, both the Court and CoServ recognized that any such request would be limited in scope and would not seek materials that were duplicative of the discovery that had already been exchanged.

12.     After CoServ intervened in this proceeding, it received and reviewed copies of the written discovery propounded on the PUCT by both the Debtor and the Committee. Based on its review, CoServ determined that one targeted written request to the PUCT was necessary, appropriate, and non-duplicative of discovery propounded by other parties. The Request seeks "All Documents and Communications concerning firm load shed (as such term is used in the Complaint); specifically, any directive by the PUCT to add firm load shed as a Price Adder trigger pursuant to section 6.5.7.3.1 of the Protocols during the Relevant Period."[5]

13.     As instructed by the Court, CoServ circulated its Request to the Debtor, the Committee, and ERCOT, and provided a courtesy copy the Court for review and approval.

---

[5] *See* Notice of Intent to Serve Subpoena.

14.     At the status conference on October 22, 2021, the Court orally granted CoServ leave to serve the Subpoena on the PUCT based on its review of the Request and the lack of opposition from the Debtor, the Committee, or ERCOT. In granting CoServ's request to serve written discovery, the Court noted that it was "surprised" that such requests had not already been propounded during the Adversary Proceeding.[6] Later that day, CoServ served the Subpoena on the PUCT via e-mail.

15.     Notwithstanding the Court's comments, to date, the PUCT has failed to meaningfully comply with the Subpoena, claiming protection under sovereign immunity and arguing that the documents were privileged, duplicative, overly broad, vague, unclear, and unreasonably burdensome. As noted above, CoServ attempted to resolve these issues with the PUCT to no avail.

16.     As of the date of this filing, the PUCT has produced a limited number of responsive documents that it obtained using a time period that it unilaterally determined was appropriate and selectively applying two of CoServ's ten search terms and one of its own.

## IV.   AUTHORITY

17.     Federal Rule of Civil Procedure 26(b) governs the scope of discovery and states:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

---

[6] *See* Tr. of Hr'g on Oct. 22, 2021, *Brazos Elec. Power Coop., Inc.* v. *Elec. Reliability Council of Tex.*, Adv. Pro. No. 21-03863 (DRJ) (S.D. Tex. Bankr. Oct. 23, 2021), ECF No. [155] at 7:17–20.

18.     "Federal Rule of Civil Procedure 45 'explicitly contemplates the use of subpoenas in relation to non-parties' and governs subpoenas served on a third party, . . . as well as motions to quash or modify or to compel compliance with such a subpoena." *Am. Fed'n of Musicians of the U.S. & Can. v. Skodam Films, LLC*, 313 F.R.D. 39, 42 (N.D. Tex. 2015) (quoting *Isenberg v. Chase Bank USA, N.A.*, 661 F. Supp. 2d 627, 629 (N.D. Tex. 2009)).

19.     A non-party can object to a discovery request in the manner described in Rule 45, and these objections "are subject to the same prohibition on general or boiler-plate [or unsupported] objections and requirements that the objections must be made with specificity and that the responding party must explain and support its objections." *Id.* at 43 (citing *Heller v. City of Dall.*, 303 F.R.D. 466, 483 (N.D. Tex. 2004)).

20.     In addition to lodging proper objections, "[t]he target of a Rule 45 subpoena can also file a motion to quash or modify the subpoena." *Id.* at 44. Under Rule 45(d), made applicable to this proceeding by Rule 9016 of the Bankruptcy Rules,

> [o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden.

FED. R. CIV. P. 45(d)(3)(A).

21.     "Generally, modification of a subpoena is preferable to quashing it outright." *Wiwa v. Royal Dutch Pet. Co.*, 392 F.3d 812, 818 (5th Cir. 2004).

22.     Where a subpoenaed party asserts undue burden, that party "has the burden of proof to demonstrate 'that compliance with the subpoena would be unreasonable and oppressive.'" *Id.* (quoting *Williams v. City of Dall.*, 178 F.R.D. 103, 109 (N.D. Tex. 1998)) (internal quotation marks omitted). "Whether a burdensome subpoena is reasonable must be determined according to the facts of the case, such as the party's need for the documents and the nature and importance of the

litigation." *Id.* at 818 (internal quotation marks and footnote omitted).

## V.   <u>ARGUMENT</u>

23.     As explained above, CoServ has propounded *one* Request for documents and communications that specifically relate to the Price Adder triggers in the Protocols, both immediately prior to Winter Storm Uri and the months following the storm, when load shed was ultimately added as a Price Adder trigger.

24.     The PUCT now moves to quash the Subpoena in its entirety, arguing that the Request (1) is unduly burdensome, overbroad, or duplicative of preexisting requests; (2) fails to provide the PUCT with enough time to respond; (3) requires that documents be produced beyond the geographical limits of Federal Rule of Civil Procedure 45(c); (4) seeks documents that are protected from disclosure based on privilege; and (5) cannot be enforced against the PUCT under the doctrine of sovereign immunity. In the alternative, the PUCT also seeks a protective order.

**A.  The Request is clear and narrowly tailored, and it seeks documents that are critical to the adjudication of this case.**

25.     It is worth noting at the outset that the PUCT asserts a number of broad objections that lack the necessary specificity required under the Federal Rules of Civil Procedure. Many of these objections rely on generalizations and hypotheticals, rather than pointing to specific portions of the Request that are objectionable and explaining why they are improper. *See Am. Fed'n of Musicians of the U.S. & Can.*, 313 F.R.D. at 43. The Motion should be denied based on these improper objections alone.

26.     Notably, through these generalized objections, the PUCT appears to argue that it is relieved of any obligation to comply with discovery procedures because it has determined that the Request is unreasonably burdensome, overly broad, and seeks the production of privileged or protected documents. Remarkably, the PUCT previously made these same generalized objections

and assertions of privilege in response to the Committee's discovery requests, which this Court rejected.[7] Undeterred, the PUCT now engages in additional, needless motion practice in an attempt to circumvent its discovery obligations, despite knowing they lack merit.

27.     Perhaps most importantly, prior to propounding this discovery on the PUCT, the Court reviewed CoServ's Request to ensure that it was not overbroad or duplicative of the discovery previously exchanged in these proceedings. By permitting CoServ to propound this Request on the PUCT, the Court made a preliminary, gatekeeping determination that CoServ's requested discovery was neither duplicative nor unnecessarily broad. Indeed, the Court conditioned the Intervening Co-Op Members' ability to intervene in this case upon their assent to these restrictive discovery and pre-trial obligations detailed in the Member Co-Op Intervention Order. In doing so, the Court aimed to eliminate any possibility of nefarious conduct or dilatory discovery tactics, and its decision to allow CoServ to propound this discovery on the PUCT establishes that the Request was properly tailored.

28.     The PUCT also attempts to mischaracterize CoServ's Request as being duplicative to the discovery requests that were previously propounded by the Debtor and the Committee. CoServ's Request, however, does not seek additional information relating to firm load shed during Winter Storm Uri, as the PUCT argues. Rather, this Request is more nuanced—it employs different ESI search terms and is designed to capture a different set of documents and communications about Price Adder triggers. Moreover, as discussed in more detail below, CoServ refined its Request to focus on the period between February 1, 2021, and June 30, 2021.

29.     Additionally, to the extent the Request was overbroad as originally framed, CoServ has since agreed to limit the scope of its Request to seven specific custodians and has developed

---

[7] *See generally* Tr. of Hr'g on Aug. 2, 2021, *In re Brazos Elec. Power Coop., Inc.*, No. 21-30725 (DRJ) (S.D. Tex. Bankr. Aug. 3, 2021), ECF No. [981] at 32–52.

particularized ESI search terms to identify documents and communications that relate to the Price Adder trigger from February 1, 2021, until June 30, 2021. These parameters were deliberately drafted to identify documents that were different from those previously sought by the Debtor and the Committee, and these limited parameters address many of the PUCT's original concerns, including that the nature and extent of communications originally requested was too broad, that the possible universe of relevant custodians would be extremely difficult to identify, and that the open-ended time frame extended well beyond any relevant period of time.

30.    The Request, as modified, presents a reasonable and proportional scope that balances CoServ's important interest in having the Debtor's claims fully and properly adjudicated, and the PUCT's interest in not being subjected to unduly burdensome, duplicative discovery requests.

**B. The Request does not seek privileged material, and any such material can be addressed through a privilege log.**

31.    The PUCT contends that the Request improperly seeks the disclosure of privileged or protected matters. Specifically, the PUCT alleges that the documents requested are protected by the attorney-client privilege and the deliberative-process privilege. Neither argument is meritorious.

32.    Indeed, similar to the prior (and unsuccessful) motion to quash against the Committee,[8] where the PUCT objected to discovery requests by asserting broad, unsupported applications of privilege, here, the PUCT again attempts to unilaterally exempt itself from the discovery process without providing any reasonable indication that the documents requested would, in fact, be privileged. Yet, the PUCT has the burden to establish that the documents at

---

[8] *See generally* Tr. of Hr'g on Aug. 2, 2021, *In re Brazos Elec. Power Coop., Inc.*, No. 21-30725 (DRJ) (S.D. Tex. Bankr. Aug. 3, 2021), ECF No. [981] at 32–52.

issue likely contain privileged information based on its reasonable and proportionate search, and it cannot circumvent this process by simply stating in a conclusory manner that such privilege exists.

33.     The PUCT's privilege concerns are also misguided because there are adequate procedures in place in this Adversary Proceeding to safeguard any confidential or privileged documents. In particular, by agreeing to intervene in these proceedings, CoServ became a party to the Protective Order between the Debtor, the Committee, ERCOT, and the PUCT.[9] The PUCT fails to explain why the safeguards in the Protective Order are insufficient here. In addition, the PUCT has not proposed any additional safeguards beyond those in the Protective Order that might be necessary to fully protect against the disclosure of any confidential or privileged information. Likewise, CoServ's proposed limitations to the scope of its Request will necessarily reduce the inadvertent disclosure of confidential or privileged information.

34.     In sum, given the Protective Order between the PUCT, ERCOT, the Committee, the Debtor, and CoServ, the Motion should be denied because the Request does not seek confidential or privileged information and, regardless, the PUCT has adequate safeguards in place to protect any privileged documents and communications.

**C. The Request provides the PUCT with adequate time to respond and does not require production beyond the geographical limits of Rule 45.**

35.     The PUCT also argues that the Subpoena should be quashed because CoServ did not give it enough time to respond to the Requests. Specifically, the PUCT received the Subpoena by email on October 22, 2021, and the deadline to respond to the Request was November 5, 2021.[10] It bears emphasizing that this Subpoena only includes a single request for production,

---

[9] *See Amended Stipulation and Agreed Order Authorizing Intervention* [Adv. Pro. Dkt. No. 172] at ¶ 2.a.
[10] *See* Notice of Intent to Serve Subpoena.

which CoServ has since limited even further by agreeing to a shorter time period, a few specific custodians, and specific, narrowly drafted search terms. Two weeks was more than enough time to complete this limited production,[11] and obtaining these responses by November 5, 2021 would have allowed CoServ a meaningful opportunity to participate in discovery in this case.

36.     As is, CoServ had two weeks from the date it intervened to review all discovery exchanged to date, propound any additional discovery within less than five (5) business days, receive the PUCT's discovery responses, and review those responses in preparation for the depositions that were scheduled to begin on November 5, 2021. Furthermore, at the time CoServ propounded the Request, it was diligently working to meet the Court's November 23, 2021 fact discovery deadline, which has since been extended to December 3, 2021 "for the sole purpose of conducting certain additional depositions."[12] CoServ has consistently acted diligently and efficiently to conserve the resources of those involved in these proceedings, while still complying with the Court's expedited pre-trial schedule. Notably, rather than serving the PUCT with numerous (and potentially duplicative) requests for discovery, CoServ and the other Intervening Co-Op Members worked together to review the existing discovery and ultimately propounded a single discovery request on the PUCT as a result of those collaborative efforts. These efforts were significant and resulted in a proportionate, focused request for discovery. Any alleged inability by the PUCT to respond to the single document request by the stated deadline was not a product of undue burden, but rather a lack of diligence.

---

[11] The PUCT notes that using CoServ's proposed search terms, shortened time period, and specific custodians would produce over 4,500 e-mails that would need to be reviewed. Moreover, the PUCT represents that it would take over eighty (80) hours to conduct a first-level review of these e-mails, which it believes is unduly burdensome. On the other hand, the PUCT has proposed its own search terms and a timeframe spanning from February 1, 2021, to March 31, 2021, while using the same custodians, which yields 463 total e-mails or around eight (8) hours for a first-level review.
[12] Joint Stipulation and Agreed Order Extending the Deadline to Complete Fact Depositions [Adv. Pro. Dkt. No. 247], at ¶ 1.

37.     Additionally, CoServ agreed to further refine its Request in attempting to confer with the PUCT and it seeks only an electronic production in response to its discovery request. As such, the PUCT's argument that the Request seeks production of documents outside of the geographic limits of Rule 45(c) has no merit. CoServ is not seeking a production of physical documents to be delivered to Dallas and the geographic limits of Rule 45(c) are therefore inapplicable to the delivery of responsive ESI.[13]

### D.  The PUCT is not exempt from complying with the Subpoena in these proceedings based on sovereign immunity.

38.     Lastly, the PUCT attempts to assert that it is exempt from complying with the Subpoena because it is protected by sovereign immunity. Despite its extensive involvement in this case, the PUCT also argues that it has not waived jurisdiction here.

39.     The PUCT has, throughout the entirety of these proceedings, characterized itself as being "different"[14] than the remaining parties in this case. As a result, the PUCT has actively participated in these proceedings as an advocate, despite its assertions that it is not a party to this case and cannot be subjected to the Court's jurisdiction absent waiver. Because of its "different" status, the PUCT has also been included in weekly meetings with the key stakeholders and interested parties in this case, has negotiated the Protective Order (primarily for its own benefit),[15]

---

[13] *See, e.g.*, *Curtis v. Progressive N. Ins. Co.*, No. CIV-17-1076-C, 2018 WL 2976432 (W.D. Okla. 2018) (where a subpoena does not require travel to or attendance at a location outside the applicable 100-mile radius, and the requested information can be produced electronically, the subpoena is not in violation of the 100-mile rule); *Dippel v. S.C. Farm Bureau*, No. 4:16-CV-1605-RBH-TER, 2018 WL 5763690, at *1 (D.S.C. Nov. 2, 2018) (holding the same and citing numerous similar cases); *see also D'Souza v. Marmaxx Operating Corp.*, No. EP-15-CV-00256-DCG, 2017 WL 1322243, at *6 (W.D. Tex. Apr. 7, 2017) (ordering parties to "confer and agree on a cost-effective method of production, including electronic means," where the 100-mile rule would have otherwise been violated).

[14] Tr. of Hr'g on Aug. 2, 2021, *In re Brazos Elec. Power Coop., Inc.*, No. 21-30725 (DRJ) (S.D. Tex. Bankr. Aug. 3, 2021), ECF No. [981] at 40:3–5 ("The PUC[T] is different. I was planning on saying that the PUCT is special, but I'm just going to use the word 'different.'").

[15] *See* Tr. of Hr'g on Oct. 22, 2021, *Brazos Elec. Power Coop., Inc.* v. *Elec. Reliability Council of Tex.*, Adv. Pro. No. 21-03863 (DRJ) (S.D. Tex. Bankr. Oct. 23, 2021), ECF No. [155] at 14:6–23.

has argued and submitted filings in support of dismissal on ERCOT's two prior motions to dismiss,[16] and has actively participated and been heard on its positions at almost every status conference and hearing that the Court has conducted in recent months.[17]

40.     Specifically, the PUCT has filed briefs in support of ERCOT's motions to dismiss, which are not limited to the PUCT's reservation of rights or the interests of the State of Texas it seeks to protect. Rather, the PUCT has taken a proactive advocacy role during these hearings and in these briefs, it has agreed with ERCOT and argued that it was a necessary and indispensable party to this case,[18] and it has effectively joined ERCOT in defense—all while reemphasizing that it was not waiving jurisdiction by participating in these proceedings.

41.     The PUCT has also engaged in discovery by producing documents in response to discovery requests from the Debtor, the Committee, and (albeit in a much more limited sense) CoServ. And, although the parties were given a deadline of September 20, 2021 to intervene in this Adversary Proceeding, the Court's Scheduling Order includes a footnote stating that the PUCT "may file a motion seeking leave to intervene after this deadline, and all Parties reserve the right to contest the intervention."[19]

42.     Yet, despite being one of the most regular participants at the hearings in this case, the PUCT avidly maintains that it is entitled to the protections of sovereign immunity as a state

---

[16] *See The Public Utility Commission of Texas's Brief in Support of the Electric Reliability Council of Texas, Inc.'s Motion to Dismiss and for Abstention* [Adv. Pro. Dkt. No. 69]; *The Public Utility Commission of Texas's Statement in Support of the Electric Reliability Council of Texas, Inc.'s Emergency Motion to Dismiss* [Adv. Pro. Dkt. No. 228].

[17] *See, e.g.*, Tr. of Hr'g on Oct. 22, 2021, *Brazos Elec. Power Coop., Inc.* v. *Elec. Reliability Council of Tex.*, Adv. Pro. No. 21-03863 (DRJ) (S.D. Tex. Bankr. Oct. 23, 2021), ECF No. [155] at 14:6–23; Tr. of Hr'g on Sept. 28, 2021, *In re Brazos Elec. Power Coop., Inc.*, No. 21-30725 (DRJ) (S.D. Tex. Bankr. Sept. 30, 2021), ECF No. [1191] at 17:3–17; Tr. of Hr'g on Aug. 2, 2021, *In re Brazos Elec. Power Coop., Inc.*, No. 21-30725 (DRJ) (S.D. Tex. Bankr. Aug. 3, 2021), ECF No. [981] at 32–52.

[18] *See* Tr. of Hr'g on Oct. 18, 2021, *Brazos Elec. Power Coop., Inc.* v. *Elec. Reliability Council of Tex.*, Adv. Pro. No. 21-03863 (DRJ) (S.D. Tex. Bankr. Oct. 23, 2021), ECF No. [131] at 44:19–45:18.

[19] *See Scheduling Order* [Adv. Pro. Dkt. No. 13] at 2 n.2.

government agency charged with oversight of the utilities in the State of Texas. As such, in response to the Subpoena, the PUCT argues that a Subpoena is a "suit" from which the PUCT is immune because CoServ seeks to compel action from a government entity. Ultimately, the PUCT has gradually begun producing responsive documents, including a limited production to CoServ.

43.     There is no question that the PUCT has had a significant impact in driving the course of this Adversary Proceeding. It has done so as if it were a real party in interest, while simultaneously reaping additional benefits from remaining advantageously "removed." Moreover, despite arguing that this Court lacks jurisdiction to bind the PUCT, it has nevertheless strategically exerted control over these proceedings—the latest instance of which is this Motion. In addition, the PUCT has secured a safety valve that leaves open the possibility of filing a motion to intervene, should the time come to take a more recognized role in this case. After having regularly and actively contributed to the progression of this case, the PUCT files this Motion seeking to quash the Subpoena, asserting needless objections that this Court has previously rejected and despite having fully responded to the discovery requests of the Debtor and the Committee previously.

44.     The PUCT cannot have its cake and eat it too.  Instead, it has created an untenable situation for itself, for the Court, and for the parties. Through the instant Motion, the PUCT has made it clear—for a second time on materially indistinguishable motions—that it will pick and choose when to participate in these proceedings and the development of the case (*e.g.*, through its exerting selective objections to some discovery requests, but not others).[20]

45.     Although it has repeatedly attempted to preserve its rights on the record, the PUCT

---

[20] *See The Public Utility Commission of Texas's Statement in Support of the Electric Reliability Council of Texas, Inc.'s Emergency Motion to Dismiss* [Adv. Pro. Dkt. No. 228] at 3 ("Notwithstanding its status as a non-party, the PUCT continues to take the position that nothing in the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, or otherwise, precludes the PUCT from providing the Court and other parties-in-interest with the PUCT's position on the important matters set forth in this Adversary Proceeding.").

has problematically assumed both an advocacy and non-party role in this litigation, and it has done so without significant oversight or consequences. The instant Motion highlights this tactic, as the PUCT seeks to deprive CoServ of critical discovery by lodging arbitrary, overbroad objections. It attempts to avoid producing the requested documents, despite having participated in discovery with the Debtor and the Committee previously, and despite CoServ having sought Court approval prior to serving the Subpoena. The PUCT simultaneously assumes an advocacy role in in this proceeding in instances where such a posture accrues to its benefit, while simultaneously denying its obligation to respond to a legitimate and reasonable request for information. The Court should not allow the PUCT to continue using its participation in these proceedings as both a sword and a shield.

*     *     *

46.    For the reasons discussed above, the PUCT's Motion should be denied because CoServ's Request, both initially and as revised through discussions with the PUCT, is reasonably, proportionately, and narrowly tailored to the outstanding issues in this case. By refusing to produce a significant portion of the discoverable documents by November 5, 2021, the PUCT has interfered with CoServ's ability to effectively participate in these proceedings. CoServ therefore asks this Court to compel the PUCT to produce all non-privileged documents that are outstanding and responsive to the Request.

## VI.    <u>CONCLUSION</u>

WHEREFORE CoServ respectfully requests that the Court enter an order: (i) denying the PUCT's Motion in its entirety; (ii) compelling the PUCT to produce all documents and information requested; and (iii) granting any such further relief as the Court deems just and appropriate under the circumstances.

Dated: November 24, 2021

Respectfully submitted,

**MCDERMOTT WILL & EMERY LLP**

*/s/ Charles R. Gibbs*
Charles R. Gibbs
Texas State Bar No. 7846300
Eric Seitz
Texas State Bar No. 24067863
Jane A. Gerber
Texas State Bar No. 24092416
2501 North Harwood Street, Suite 1900
Dallas, TX 75201-1664
Telephone: (214) 295-8000
Facsimile: (972) 232-3098
Email: crgibbs@mwe.com
         eseitz@mwe.com
         jagerber@mwe.com

*Counsel to Denton County Electric*
*Cooperative, Inc., d/b/a CoServ Electric*

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on November 24, 2021, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ *Charles R. Gibbs*
Charles R. Gibbs