# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>BRAZOS ELECTRIC POWER COOPERATIVE, INC.,<br><br>       Debtor.[1] | Chapter 11<br><br>Case No. 21-30725 (DRJ) |
| BRAZOS ELECTRIC POWER COOPERATIVE, INC., *et al.*,<br><br>       Plaintiff / Intervenor-Plaintiffs,<br><br>v.<br><br>ELECTRIC RELIABILITY COUNCIL OF TEXAS, INC. *et al.*,<br><br>       Defendant / Intervenor-Defendants. | Adv. Proc. No. 21-03863 (DRJ) |

## DEBTOR'S MOTION FOR JUDGMENT ON THE PLEADINGS AND FOR ENTRY OF AN ORDER STRIKING CERTAIN EXPERT OPINIONS

**IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE ELECTRONICALLY AT HTTPS://ECF.TXSB.USCOURTS.GOV/ WITHIN TWENTY-ONE DAYS FROM THE DATE THIS MOTION WAS FILED. IF YOU DO NOT HAVE ELECTRONIC FILING PRIVILEGES, YOU MUST FILE A WRITTEN OBJECTION THAT IS ACTUALLY RECEIVED BY THE CLERK WITHIN TWENTY-ONE DAYS FROM THE DATE THIS MOTION WAS FILED. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

---

[1] The Debtor in this chapter 11 case, along with the last four digits of its federal tax identification number is: Brazos Electric Power Cooperative, Inc. (4729).  Additional information regarding this case may be obtained on the website of the Debtor's claims and noticing agent at http://cases.stretto.com/Brazos.  The Debtor's address is 7616 Bagby Avenue, Waco, TX 76712.

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Brazos Electric Power Cooperative, Inc. (the "Debtor" or "Brazos") files this *Motion for Judgment on the Pleadings and for Entry of an Order Striking Certain Expert Opinions* (the "Motion") in the above-captioned adversary proceeding (the "Adversary Proceeding").

## I.     PRELIMINARY STATEMENT[2]

1.     The Parties disclosed their experts on December 9, 2021. The majority (four of seven) of the experts designated by ERCOT and the Intervenors offer opinions that relate to Brazos's hedging strategy and/or its alleged failure to properly winterize for Winter Storm Uri—a storm that ERCOT has conceded was "historic" in its severity.  These opinions are relevant only to ERCOT's asserted affirmative defense that Brazos failed to properly mitigate its damages. Brazos's alleged failure to mitigate its damages through better hedging or winterization, however, is not a defense to objections based on ERCOT charging more than legally permissible for electricity.  Indeed, all of ERCOT's purported affirmative defenses fail as a matter of law because Brazos, as the Debtor, *has not asserted any affirmative causes of action against ERCOT*.  Instead, Brazos has only objected—through an adversary complaint—to ERCOT's proof of claim. It is *Brazos* that should be (and indeed, is) asserting defenses to *ERCOT's* allegations. As such, the Debtor requests that the Court dismiss ERCOT's affirmative defenses (the "Challenged Affirmative Defenses") because they fail as a matter of law.

2.     The Debtor further requests an order striking those expert opinions, or portions thereof, addressing irrelevant issues concerning the Challenged Affirmative Defenses, namely: whether the Debtor's hedging and winterization activities caused the Debtor to purchase more

---

[2] Capitalized terms not otherwise defined in this Preliminary Statement shall have the meanings ascribed to them elsewhere in this Motion.

power or more expensive power during Winter Storm Uri than otherwise would have been required. The subject opinions are those contained in the Expert Report of Todd W. Filsinger and Clifford Watson (the "<u>Filsinger Report</u>"),[3] offered by ERCOT, one of the opinions offered by Paul M. Sotkiewicz (the "<u>Sotkiewicz Report</u>"),[4] also offered by ERCOT, and one of the opinions in the Expert Report of Frank C. Graves (the "<u>Graves Report</u>"),[5] offered by Calpine. Filsinger and Watson opine that if Brazos's generation had been available to run and if Brazos had █████████ ███████," it could have mitigated its costs.[6] Sotkiewicz opines that many of the resources Brazos controls "███████████████████████████████████████████████████████ ███████████████████████████████████████."[7] Graves opines that Brazos's "███ █████████████████████████"—namely its failure to acquire "███████████████████ ██████████████████"—"███████████████████████ ███████" during the storm.[8]

3.      Whether Brazos could have acted to reduce the amount or price of power it was required to purchase during Winter Storm Uri, however, is not probative of any disputed issue in this proceeding other than the Challenged Affirmative Defenses, which, for the reasons set forth herein, are legally deficient and therefore should be struck. This Adversary Proceeding involves an objection to the claim that ERCOT filed against the Debtor; thus, the ultimate resolution of this

---

[3] *See Confidential Expert Report of Todd W. Filsinger and Clifford Watson*, filed under seal as <u>Exhibit A</u> pursuant to the *Confidentiality Agreement and Stipulated Protective Order* [Adv. Dkt. No. 51].

[4] *See Expert Report in Support of Electric Reliability Council of Texas, Inc.*, by Paul M. Sotkiewicz, filed under seal as <u>Exhibit B</u> pursuant to the *Confidentiality Agreement and Stipulated Protective Order* [Adv. Dkt. No. 51].

[5] *See Opening Expert Report of Frank C. Graves*, filed under seal as <u>Exhibit C</u> pursuant to the *Confidentiality Agreement and Stipulated Protective Order* [Adv. Dkt. No. 51].

[6] *See* Filsinger Report at § 1.4.

[7] *See* Sotkiewicz Report at § (B)(1).

[8] *See* Graves Report at § A(1).

Adversary Proceeding will determine only what amounts the Debtor owes to ERCOT and whether those amounts are entitled to administrative priority status; it will not determine whether ERCOT owes any amounts or affirmative damages to the Debtor, as the Debtor has not filed affirmative claims against ERCOT.  Therefore, any alleged failure on the part of the Debtor to mitigate its "damages" is completely irrelevant—the Debtor has not asserted any damages for which it would be required to mitigate.  Opinions, crafted with the benefit of hindsight, second-guessing the Debtor's hedging strategy and arguing that the Debtor's financial exposure could have been reduced by adopting a different business decision or otherwise preparing for a black swan event in a different manner simply have no bearing on the issues the Court must decide.  The time, energy, and resources spent presenting and arguing these irrelevant issues at trial—including voluminous testimony from both fact and expert witnesses—will only be wasted at the ultimate expense of the rate payers and will be an unnecessary and costly distraction at trial.

## II.        JURISDICTION AND AUTHORITY

4.        This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).  This Court has constitutional authority to enter final orders with respect to the relief requested herein.  The Debtor further confirms its consent to this Court's entry of final orders or judgments on this Motion if it is later determined that, in the absence of the consent of the parties, this Court does not have constitutional authority to enter final orders or judgments.

## III.        ISSUES IN THIS ADVERSARY PROCEEDING

5.        On March 1, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case").  ERCOT filed a proof of claim (the "ERCOT Claim"), alleging that the Debtor is liable to ERCOT in the amount of

$1,899,152,990.64, with approximately $1,877,591,506.10 of that amount allegedly subject to administrative expense priority status.[9]  The ERCOT Claim alleged that "[p]rior to the Petition Date, the Debtor was in default of its obligations under the Brazos SFA and the ERCOT Protocols."[10]  The Debtor first filed an objection[11] to the ERCOT Claim under Bankruptcy Code sections 502 and 503 as a contested matter but ultimately withdrew the objection and instead filed an adversary complaint[12] objecting to the ERCOT Claim on various grounds under Bankruptcy Code sections 502 and 503, including that the ERCOT Claim is unenforceable against the Debtor or the Debtor's property under the SFA, the Protocols, and Bankruptcy Code section 502(b)(1) because the ERCOT Claim asserts excessive charges that conflict with the terms of the SFA and the ERCOT Protocols.[13]

6.     Brazos filed its *First Amended Complaint Objecting to Electric Reliability Council of Texas, Inc.'s Proof of Claim and Other Relief* [Adv. Dkt. No. 173] (the "Amended Complaint") on October 25, 2021.  The Amended Complaint details facts concerning the proper interpretation and application of the SFA and the ERCOT Protocols in effect at the time, which Brazos contends are the sole bases for determining the price it is obligated to pay thereunder.  Critically, Brazos made clear in its Amended Complaint that it is not asserting a claim against ERCOT for breach of

---

[9] The ERCOT Claim was amended on November 4 , 2021(the "Amended ERCOT Claim").  The Amended ERCOT Claim alleges that Brazos is liable to ERCOT in the amount of $1,886,595,737.08, with $1,874,552,630.40 of that amount of that amount allegedly subject to administrative expense priority status.  Like the ERCOT Claim, the Amended ERCOT Claim bases its claim on Brazos's alleged default, however the Amended ERCOT Claim alleges that "[p]rior to the Petition Date, the Debtor was in default of its obligations under the Brazos SFA, the ERCOT Protocols and the two [PUCT Orders].".

[10] ERCOT Claim, Addendum § B.1.

[11] *Objection to Electric Reliability Council of Texas, Inc.'s Proof of Claim* [Dkt. No. 930] (the "Initial Claim Objection").

[12] *Complaint Objecting to Electric Reliability Council of Texas, Inc.'s Proof of Claim and Other Relief* [Adv. Dkt. No. 1] (the "Complaint").

[13] *See* Complaint Count 1.

contract.  Rather, Brazos has merely objected to the amount and priority status of the ERCOT Claim.  The Amended Complaint's "counts" do not assert causes of action for relief or damages against ERCOT—they are, in substance, objections and affirmative defenses to ***ERCOT's*** claim. The Amended Complaint unambiguously explains:

> ***The Debtor's Count 1 is simply a claim objection under 11 U.S.C. § 502(b)(1), not a claim for affirmative relief.***  Count 1 herein seeks to reduce the ERCOT Claim potentially several hundreds of millions, or even more than one billion dollars because, for the reasons set forth herein, the ERCOT Claim as filed is unenforceable against the Debtor and property of the Debtor under the SFA and the protocols.[14]

7.     Count 1 of the Amended Complaint challenges ERCOT's allegation of damages, arguing that the damages set forth in the ERCOT Claim far exceed those enforceable against the Debtor under the SFA and the ERCOT Protocols.  Count 1 explains that the ERCOT Protocols in place at the time of Winter Storm Uri did not include load shed as a factor to be included in scarcity pricing and therefore ERCOT's decision to peg energy prices at $9,000/MWh because load shed was occurring was in violation of the ERCOT Protocols.  As such, the amount of the ERCOT Claim, which was calculated using the improper $9,000/MWh price, exceeds the amount properly chargeable to Brazos under the SFA and therefore the claim amount should be reduced pursuant to Bankruptcy Code section 502(b).[15]

8.     Count 2 of the Amended Complaint asserts the defense of mitigation under Bankruptcy Code section 502(b), arguing that ERCOT failed to mitigate *its* damages under *its* breach of contract claim.[16]  As Count 2 explains, ERCOT's claim is based on the excessive price

---

[14] Amended Complaint ¶ 100 (emphasis added).

[15] *See id.* ¶¶ 100–32.

[16] *See Great Am. Ins. Co. v. N. Austin Mun. Util. Dist.*, 908 S.W.2d 415, 426 (Tex. 1995) ("[T]he doctrine of mitigation of damages . . . prevents a party from recovering for damages resulting from a breach of contract that could be avoided by reasonable efforts on the part of the plaintiff.").

of $9,000/MWh, which was held in place for several days.  ERCOT was made aware that this price was improper as to the last 33 hours of the storm, yet entirely failed to take action to correct this price.  Therefore, the Debtor argues, ERCOT failed to mitigate its losses by taking corrective action and instead simply passed the entirety of its excessive $9,000/MWh charges to the Debtor.[17]

9.      Count 3 of the Amended Complaint is likewise, an objection to the ERCOT Claim under Bankruptcy Code section 502(b).  It refutes ERCOT's allegation that the Debtor breached the contract, arguing that the occurrence of a Force Majeure event (as defined in the SFA) prevents the Debtor from being in default under the SFA.  Accordingly, Debtor argues, to the extent that the ERCOT Claim asserts any amounts resulting from the Debtor's alleged default under the SFA, those amounts should be disallowed in their entirety.[18]

10.     Counts 4 and 5 of the Amended Complaint assert objections and defenses to ERCOT's Claim, arguing that the ERCOT Claim is avoidable as a constructively fraudulent obligation under Bankruptcy Code sections 502(d), 548, and 544, as well as TEX. BUS. & COM. CODE §§ 24.005 and 24.008(a) (hereinafter, "TUFTA").[19]

11.     Finally, Counts 6 through 9 of the Amended Complaint assert objections and defenses to ERCOT's allegation of priority status under Section 503(b)(9) of the Bankruptcy Code, challenging whether ERCOT has demonstrated that the elements of section 503(b)(9) have been satisfied.[20]

12.     On November 3, 2021, ERCOT filed its *Answer and Affirmative Defenses to Brazos Electric Power Cooperative's Inc.'s First Amended Complaint* [Adv. Dkt. No. 192] (the

---

[17] *See* Amended Complaint ¶¶ 133–40.

[18] *Id.*  ¶¶ 141–44.

[19] *Id.* ¶¶ 145–53.

[20] *Id.* ¶¶ 154–69.

"Amended Answer").  Despite the fact that that Debtor has not asserted a breach of contract claim or sought damages against ERCOT, requested injunctive relief against ERCOT, or otherwise claimed that ERCOT is liable to the Debtor for damages, ERCOT nonetheless has asserted several affirmative defenses attempting to avoid such liability.[21]

13.    It should be noted, however, that, the Adversary Proceeding seeks to resolve the amount and classification of a claim for damages that ***ERCOT asserted***, not the Debtor.  The procedural posture of this case (prosecuting section 502 claim objections through an adversary proceeding) does not affect the parties' substantive rights.  Under the circumstances, ERCOT's "affirmative defenses" are meritless and fail as a matter of law.

### IV.    RELIEF REQUESTED

14.    The Debtor, by this Motion, respectfully requests entry of the order attached hereto (the "Order") holding that ERCOT's affirmative defenses fail as a matter of law and striking the irrelevant opinions, or portions thereof, of Filsinger, Watson, and Graves and precluding them from testifying at trial regarding same.

### V.    BASIS FOR RELIEF

**A. Judgment on the Pleadings is Proper as to the Challenged Affirmative Defenses**

***i. Legal Standard***

---

[21] *See, e.g.*, ERCOT's first ("the Debtor's Complaint is barred or fails, in whole or in part, because of the Debtor's ***prior material breach***"), second ("the Debtor's Complaint is barred or fails, in whole or in part, due to a lack of causation between ***ERCOT's alleged breach and the alleged harm or loss for which the Debtor seeks relief*** . . . ."), third ('the Debtor did not mitigate ***its damages***"), ninth ("the Debtor's Complaint is barred or fails, in whole or in part, because ***any alleged harm or loss for which the Debtor seeks relief*** is due to conduct of individuals or entities over whom ERCOT exercised no control"), tenth ("the Debtor's Complaint is barred or fails, in whole or in part, because any ***alleged harm or loss for which Debtor seeks relief*** arose from intervening, superseding, and/or new and independent causes over which ERCOT has no control"), and fifteenth affirmative defenses ("Count 5 of the Debtor's Complaint is barred or fails, in whole or in part, by ***Debtor's unclean hands and its request for inequitable relief***") (emphasis added).

15.     A motion for judgment on the pleadings provides a court with a method for summary adjudication of a defense after the pleadings are closed, but before trial.  *See* FED. R. CIV. P. 12(c); FED. R. BANKR. P. 7012.  "As the title of the rule implies, Rule 12(c) permits a judgment based on the pleadings alone." *N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998). "The pleadings include the complaint, the answer, and any written instruments attached as exhibits." *Id.* (citing Fed. R. Civ. P. 10(c)); *see also Gabilly v. City of New York*, 19-CV-11884 (RA), 2021 WL 3667981, at *2 (S.D.N.Y. Aug. 17, 2021)(explaining that the pleadings include the complaint, answer, and any exhibits thereto).  The standard for deciding a Rule 12(c) motion is the same as that for deciding a Rule 12(b)(6) motion to dismiss.  *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).  Judgment on the pleadings can be granted either for a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.  *Rodriguez v. CHRISTUS Spohn Health Sys. Corp.*, 874 F. Supp. 2d 635, 653 (S.D. Tex. 2012); *see also Frith v. Guardian Life Ins. Co. of Am.*, 9 F. Supp. 2d 734, 737–38 (S.D. Tex. 1998) (holding that Rule 12(b)(6) dismissal can be based either on a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory"). Judgment on the pleadings is proper when a party asserts an affirmative defense that is inapplicable or has no legal basis.  *See Asilonu v. Asilonu*, 1:19CV1122, 2021 WL 3116074, at *6 (M.D.N.C. July 22, 2021) (explaining that traditional contract defenses did not apply to cases enforcing the Form I-864, such as the one at bar, and dismissing defendant's traditional contract affirmative defenses); *TD Bank, N.A. v. Biltmore Investments, Ltd*, 116CV00144MOCDSC, 2016 WL 6023652, at *4 (W.D.N.C. Oct. 13, 2016) (granting motion for judgment on the pleadings because "[t]he defendant's allegation of contributory negligence fails on its face. No claims have been made regarding negligence. The affirmative defense has no weight here and is inapplicable"); *In re*

*Kennedy*, CIV 2:07-0069 FCDGGH, 2009 WL 256511, at *5 (E.D. Cal. Feb. 3, 2009) (granting motion for judgment on the pleadings and dismissing inapplicable affirmative defenses as to those causes of action for which they were inapplicable); *Dell, Inc. v. 3K Computers, LLC*, 08-80455-CIV, 2008 WL 6600766, at *3 (S.D. Fla. Oct. 7, 2008) (granting 12(c) motion when "there is no longer a legal basis" for defendant's affirmative defense); *see also Jennings v. O'Reilly Auto Enterprises, LLC*, 4:17-CV-00837, 2019 WL 286740, at *2 (E.D. Tex. Jan. 22, 2019) (granting summary judgment on affirmative defense because affirmative defense asserted was not applicable to cause of action at hand).

### ii. The Debtor's Amended Complaint Asserts Defenses and Objections to the ERCOT Claim— Not Affirmative Claims Against ERCOT

16.     Section 502 of the Bankruptcy Code provides, in pertinent part, that "[a] claim or interest, proof of which is filed under section 501 of [the Bankruptcy Code], is deemed allowed, unless a party in interest . . . objects."  11 U.S.C. § 502(a).  While, pursuant to Bankruptcy Rule 3001(f), the ERCOT Claim, as filed, constituted *prima facie* evidence of the validity and amount of the claim under section 502(a), the Amended Complaint sets forth numerous objections and defenses to the ERCOT Claim that refute at least one of the allegations that are essential to the ERCOT Claim's legal sufficiency.  *See In re Jack Kline Co., Inc.*, 440 B.R. 712, 742 (Bankr. S.D. Tex. 2010); *In re Fidelity Holding Co., Ltd.*, 837 F.2d 696, 698 (5th Cir. 1988).  Once the allegations are refuted, the burden reverts back to ERCOT to prove the validity of its claim by a preponderance of the evidence.  *In re Fidelity Holding Co., Ltd.*, 837 F.2d at 698.  Despite this shifting burden, ERCOT bears the ultimate burden of proving the validity of the ERCOT Claim by a preponderance of the evidence.  *In re Armstrong*, 347 B.R. 581, 583 (Bankr. N.D. Tex. 2006) (citing *Raleigh v. Ill. Dep't of Rev.*, 530 U.S. 15 (2000)).  This remains true even though the claim objection was filed as an adversary complaint instead of a contested matter.  *See In re Waterman*

*S.S. Corp.*, 200 B.R. 770, 774-75 (Bankr. S.D.N.Y. 1996) (finding that, in an adversary proceeding dealing with an objection to a claim, "the ultimate burden of persuasion is always on the claimant.").

17.    By voluntarily filing the ERCOT Claim and seeking damages from the Debtor, ERCOT—not the Debtor—is seeking to enforce its alleged contractual rights through a claim for relief for damages. [22]  The Debtor's Amended Complaint, accordingly, asserts defenses and objections to the ERCOT Claim, but, critically, ***does not seek any affirmative relief or damages against ERCOT***.

18.    Counts 1, 2, and 3 of the Amended Complaint are all objections to the ERCOT Claim under Bankruptcy Code section 502(b).  Counts 4 and 5 are likewise objections and defenses to the ERCOT claim under Bankruptcy Code section 502(d). [23]  Counts 6 through 9 of the Amended Complaint assert objections and defenses to ERCOT's allegation of priority status under Section

---

[22] *See Statement of Electric Reliability Council of Texas to Debtor's Motion for Entry of an Order Extending the Exclusivity Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof* [Dkt. No. 896] (the "Exclusivity Statement") (stating that the ERCOT Claim "must be promptly cured in connection with the assumption of the executory contracts between ERCOT and the Debtor in order for the Debtor to continue participating in the ERCOT market."); *see also* Amended ERCOT Claim, Addendum ¶ B.1 (alleging, among other things, that, "[p]rior to the Petition Date, the Debtor was in default of its obligations under the Brazos SFA, the ERCOT Protocols, and the two [PUCT Orders].").

[23] While the Debtor *could* have brought affirmative claims for recovery on its fraudulent obligation allegations, it instead brought Counts 4 and 5 under 11 U.S.C. § 502(d) as affirmative defenses to prevent ERCOT's recovery on account of these fraudulent obligations.  *See In re Parker N. Am. Corp.*, 24 F.3d 1145, 1155 (9th Cir. 1994) ("Section 502(d) operates to disallow claims of transferees who do not surrender their avoidable transfers. It does not compel the surrender, nor permit affirmative relief of any kind. . . .  As such, by invoking § 502(d), PNA transformed the preference action into an affirmative defense against the RTC's proof of claim.") (internal citations and quotation marks omitted); *see also In re Stoecker*, 143 B.R. 118, 135-38 (Bankr. N.D. Ill.) ("Consistent with past practice most bankruptcy courts have likewise construed section 502(d) as a defensive measure which precludes entities having received a voidable transfer from sharing in the distribution of the assets of the estate unless, and until, the voidable transfer has been returned to the estate."), *aff'd in part, rev'd in part on other grounds*, 143 B.R. 879 (N.D. Ill. 1992); *In re Enron Corp.*, 340 B.R. 180, 190-93 (Bankr. S.D.N.Y. 2006)("Case law supports the proposition that a debtor may file an adversary proceeding, instead of an objection to a proof of claim, to assert a section 502(d) defense. . . . Thus, by commencing an adversary proceeding with a section 502(d) cause of action, Enron can raise an affirmative defense to a distribution to the Defendants."), *vacated and remanded on other grounds*, 379 B.R. 425 (S.D.N.Y. 2007).

503(b)(9) of the Bankruptcy Code, challenging whether ERCOT has demonstrated that the elements of section 503(b)(9) have been satisfied.

19.    Brazos has made it abundantly clear that it is not alleging that it is entitled to any damages from ERCOT and that it is only asserting defenses to the ERCOT Claim. *See, e.g.*, Amended Complaint ¶ 100 (explaining that "[t]he Debtor's Count 1 is simply a claim objection under 11 U.S.C. § 502(b)(1), not a claim for affirmative relief"); *Id.* ¶ 131 (asserting that "the ERCOT Claim is unenforceable against the Debtor and property of the Debtor" but not asserting that Brazos is entitled to damages); *Id.* § VII (requesting that the court disallow in part and reduce the ERCOT Claim and that find that the ERCOT Claim is not entitled to priority status but not requesting any damages).

### iii. The Challenged Affirmative Defenses to Brazos's Defenses Are Legally Deficient

20.    As explained above, the Debtor has not alleged any affirmative claim—for damages, injunctive relief, or anything else—against ERCOT.   Nonetheless, ERCOT filed an Amended Answer purporting to assert a scattershot collection of "affirmative defenses," seeking to defend itself against claims that Brazos has never asserted.

21.    ERCOT's first "affirmative defense" is "Debtor's Complaint is barred or fails, in whole or in part, because of the Debtor's prior material breach."   Under Texas law, prior material breach by one party releases the other party from further obligation under the contract between the parties.   *See Mustang Pipeline Co., Inc. v. Driver Pipeline Co., Inc.*, 134 S.W.3d 195, 198 (Tex. 2004).

22.    ERCOT's third purported affirmative defense is that "the Debtor did not mitigate its damages."   The failure to mitigate damages is an affirmative defense to breach of contract. *In re El Paso Refinery, L.P.*, 196 B.R. 58, 64 (Bankr. W.D. Tex. 1996) ("The term 'duty to mitigate' refers to ***an affirmative defense to a claim for damages***.") (footnote omitted and emphasis added);

*see also Great Am. Ins. Co.*, 908 S.W.2d at 426 (explaining that "the doctrine of mitigation of damages . . . prevents a party from recovering for damages resulting ***from a breach of contract*** that could be avoided by reasonable efforts on the part of the plaintiff"); *Otto Goedecke, Inc. v. Henderson*, 388 S.W.2d 728, 730 (Tex. Civ. App.—Amarillo 1965, writ ref'd n.r.e.)(explaining that "[t]he duty to mitigate damages does not come into play until the injured party has notice of the ***breach of contract***")(emphasis added); *Polis v. Alford*, 273 S.W.2d 79, 79–80 (Tex. Civ. App.—San Antonio 1954, writ ref'd) (describing the duty to mitigate damages as "the rule of minimizing damages sustained by the ***breach of a contract***" and explaining that the rule's purpose "is to put the injured party in as good a position as he would have been put by full performance of the contract at the least necessary cost to the defendant, the plaintiff is never give[n] judgment for damages for losses that he could have avoided by reasonable effort without risk of other substantial loss or injury") (emphasis added).

23.     ERCOT's second, ninth, and tenth affirmative defenses are, respectively, that "Debtor's Complaint is barred or fails . . . ***due to a lack of causation between ERCOT's alleged breach and the alleged harm or loss for which the Debtor seeks relief***," that "Debtor's Complaint is barred or fails . . . because ***any alleged harm or loss for which the Debtor seeks relief*** is due to the conduct of individuals or entities over whom ERCOT exercised no control," and that "the Debtor's Complaint is barred or fails . . . because ***any alleged harm or loss for which Debtor seeks relief*** arose from intervening, superseding, and/or new and independent causes over which ERCOT has no control." (emphasis added). Though superseding and intervening causes are more traditionally recognized as tort concepts, it appears that ERCOT, through these defenses, is attempting to negate one element of breach of contract—damages caused by the breach. *See Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019) ("Breach

of contract requires pleading and proof that (1) a valid contract exists; (2) the plaintiff performed or tendered performance as contractually required; (3) the defendant breached the contract by failing to perform or tender performance as contractually required; and (4) *the plaintiff sustained damages due to the breach*.") (emphasis added).

24.     Fatal to all of these purported "affirmative defenses" is the fact that *Brazos has not asserted a breach of contract claim against ERCOT*, nor has it argued that it is entitled to any sort of damages from ERCOT at all.  As such, ERCOT's first, second, third, ninth, and tenth affirmative defenses fail on their face and should be dismissed.

25.     ERCOT's fifteenth affirmative defense also misses the mark.  There, ERCOT alleges that the Debtor has "unclean hands."  Under Texas law, the unclean hands doctrine is an affirmative defense to equitable relief.  *Bank of Saipan v. CNG Fin. Corp.*, 380 F.3d 836, 840 (5th Cir. 2004).  Unclean hands, however, is not a defense to any of the claims asserted in this proceeding nor has ERCOT set forth *any* facts, much less *sufficient* facts, in the Amended Answer supporting an allegations of unclean hands.  Again, the Debtor has not asserted any affirmative claims against ERCOT and thus an unclean hands affirmative defense is inappropriate.

26.     Indeed, the remainder of ERCOT's purported "affirmative defenses" fail for the same reason: it is entirely nonsensical for ERCOT to assert any "affirmative defenses" to the *Debtor's* defenses and objections because these defenses and objections are not affirmative claims for relief against ERCOT. *See VP Properties & Developments, LLLP v. Seneca Specialty Ins. Co.*, 645 Fed. Appx. 912, 916 (11th Cir. 2016)(explaining that "[a]n affirmative defense is one that *admits to the complaint, but avoids liability*, wholly or partly, by new allegations of excuse, justification, or other negating matters)(emphasis added).

27.     In short, each of the Challenged Affirmative Defenses withers in the harsh light of the actual pleadings.  Indeed, not a single one of ERCOT's purported defenses is applicable to any of the claims in the Amended Complaint.  As it is clear that there are no legal bases for any of the Challenged Affirmative Defenses, the Debtor's motion for judgment on the pleadings should be granted.

## B. Certain Expert Opinions Should be Struck as Irrelevant

28.     Since the Challenged Affirmative Defenses fail as a matter of law, expert opinions offered by ERCOT and Calpine that relate only to these inappropriate defenses may properly be struck by the Court.  In particular, expert opinions that concern the Debtor's hedging or winterization activities should be struck, as they are entirely irrelevant to the ERCOT Claim and Debtor's defenses thereto.

### i. Expert Testimony Must be Relevant in Order to be Admissible.

29.     The Federal Rules of Evidence unambiguously provide that evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401.  Only relevant evidence is admissible.  FED. R. EVID. 402.

30.     Federal Rule of Evidence 702 governs the admissibility of expert testimony and reports.  Rule 702 permits opinion testimony from a witness "qualified as an expert by knowledge, skill, experience, training, or education" if the expert's knowledge will "help the trier of fact to understand the evidence or to determine a fact in issue", and (1) "the testimony is based on sufficient facts or data;" (2) "the testimony is the product of reliable principles and methods;" and (3) "the expert has reliably applied the principles and methods to the facts of the case." FED. R. EVID. 702.

31.     "The requirement that the testimony 'assist the trier of fact' means the evidence must be relevant." *Mathis v. Exxon Corp.*, 302 F.3d 448, 460 (5th Cir. 2002); *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) "[Rule 702's] requirement that the testimony 'assist the trier of fact to understand the evidence or to determine a fact in issue' goes primarily to relevance"); *Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 529 (5th Cir. 2015)(explaining that "expert testimony must be relevant, not simply in the sense that all testimony must be relevant . . . but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue.")(quoting *Bocanegra v. Vicmar Servs., Inc., 320* F.3d 581, 584 (5th Cir. 2003)).  Similarly, "***[e]xpert testimony which does not relate to any issue in the case is not relevant*** and, ergo, non-helpful." *Daubert*, 509 U.S. at 591 (quotation marks omitted and emphasis added).

32.     As gatekeeper, the Court must permit only reliable and relevant testimony from qualified witnesses to be admitted as expert testimony, *Daubert*, 509 U.S. at 589, and may strike expert opinions that are not relevant.  *See Poole-Ward v. Affiliates for Women's Health, P.A.*, 329 F.R.D. 156, 169–70 (S.D. Tex. 2018) (excluding portion of expert opinion addressing whether plaintiff had a substance abuse disorder before or after employment because it was not relevant to whether defendant had a good-faith, even if wrong, belief that plaintiff was impaired on a specific day during her employment); *First Unum Ins. Co. of Am. v. Rucker*, No. 4:20-cv-0181, 2021 WL 799320, at *2 (S.D. Tex. Jan. 19, 2021) (granting motion to strike expert testimony as to the decedent's state-of-mind after designating defendant as beneficiary because it was not relevant to the central issue of the decedent's state-of-mind at the time he designated the beneficiary); *Rodriguez v. Transportes de Carge FEMA, S.A. de C.V.*, No. 5:18-cv-114, 2020 WL 6938329, at *4–*5 (S.D. Tex. July 28, 2020) (striking expert testimony regarding whether defendant failed

comply with applicable safety regulations because it was not relevant to whether the defendant

was vicariously liable for the actions of its driver); *Canrig Drilling Tech. Ltd. v. Trinidad Drilling*

*L.P.*, CV H-15-0656, 2016 WL 7188657, at *6 (S.D. Tex. Dec. 12, 2016) (striking expert opinion

regarding inequitable conduct because defendant had not asserted inequitable conduct as an

affirmative defense and therefore expert opinion on same was "not relevant to any issue in the

case").  The party offering the expert testimony has the burden of proof, by a preponderance of

evidence, to show that the testimony is reliable and relevant. *Mathis*, 302 F.3d at 459–60.

### ii. The Opinions of Filsinger, Watson, and Graves That Relate to Brazos's Hedging and Winterization Activities Are Irrelevant and Therefore Inadmissible.

33.      The following opinions are irrelevant and inadmissible, as they would not assist the

Court to understand or determine any fact actually at issue in this Adversary Proceeding

(collectively, the "Challenged Opinions"):

a.      Graves's opinion, set out in Section G of his report, that Brazos's own
decisions led to its financial exposure during Winter Storm Uri;[24]

b.      Sotkiewicz's opinions that ███████████████████████
████████████████████████████████████████████████
████████████████████████████
███████████████████,"[25] and

c.      all opinions contained in the Filsinger Report, including Filsinger and
Watson's opinions

1.      that ███████████████████████████████████
███████,[26]

2.      that Brazos's hedging policy ████████████████
████████████,"[27]

---

[24] Graves Report § G.

[25] Sotkiewicz Report § VI.

[26] Filsinger Report § 3.

[27] *Id.* § 4.3.

3.      that Brazos ignored risks to which its Members were being exposed;[28]

4.      that ████████████████████████████████████████ ████████████████████████ ,"[29]

5.      that Brazos failed to operate effectively during Winter Storm Uri due to natural gas curtailments, lack of weatherization preparedness, failure to follow winter operations procedures, fuel oil operations failures, temperatures below design criteria, and other equipment failures;[30] and

6.      that Brazos could have prevented "████████████████████████ ████████████████████ ."[31]

34.      The opinions enumerated above are relevant only to the Challenged Affirmative Defenses, which, as explained in Section A, *supra*, fail as a matter of law. As such, none of the Challenged Opinions would in any way help the trier of fact determine a fact in issue in this proceeding. For example, Filsinger and Watson spend the entirety of their 73-page report addressing whether Brazos's generation facilities were appropriately prepared for Winter Storm Uri and whether Brazos's hedging strategies exposed it to unnecessary risk.[32] These opinions, however, are in no way relevant to Brazos's objections to the ERCOT Claim. Brazos does not challenge anything about the *amount* of electricity (i.e. the number of megawatt hours) it purchased in the ERCOT real-time market during the storm. Brazos merely disputes whether the *price* that ERCOT charged for electricity (i.e. the price per MWh) during the storm was properly calculated under the SFA and the ERCOT Protocols. Additionally, it is nonsensical for Filsinger

---

[28] *Id.* § 4.3.4.

[29] *Id.* § 4.4.

[30] *Id.* § 5.

[31] *Id.* § 5.2.

[32] *See* Filsinger Report.

and Watson to opine on whether Brazos could have "█████████████████████"[33] given that failure to mitigate damages is an affirmative defense to breach of contract[34] and Brazos has not, at any point in this proceeding, alleged that ERCOT is liable to Brazos for breach of contract damages.

35.     In essence, the Challenged Affirmative Defenses and Challenged Opinions seem to suggest that because Brazos had alternative options for generation of power or purchasing power, it should not have purchased as much power as it did from ERCOT when it did.  But had Brazos purchased less power, it would then owe less money to ERCOT; certainly the Challenged Affirmative Defense and Challenged Opinions do not seek to reduce the amount of ERCOT's own claim—that would be nonsense.  The suggestion that Brazos had alternatives, whether true or false, does not affect the resolution of the ERCOT Claim at all.  If, for instance, Brazos had alleged that ERCOT caused Brazos to experience generation failures or caused Brazos to have to purchase more power than it otherwise would have, and that ERCOT was therefore liable to Brazos for damages arising from those failures or increased purchases, then certainly ERCOT's assertions that Brazos failed to mitigate would be relevant.  But nothing in this Adversary Proceeding can be construed as Brazos having made those allegations; to the contrary, the Amended Complaint and Brazos's statements throughout this Adversary Proceeding have consistently stated that Brazos is not seeking damages from ERCOT in any amount.  As a result, there are no "damages" for which Brazos would be required to mitigate, and there is no "alleged harm or loss for which the Debtor seeks relief."  *See* Section A, *supra*.

---

[33] Filsinger Report § 1.3.

[34] *Great Am. Ins. Co.*, 908 S.W.2d at 426 (the doctrine of mitigation of damages "prevents a party from recovering for damages resulting from a ***breach of contract*** that could be avoided by reasonable efforts on the part of the plaintiff")(emphasis added).

36.     The Debtor should not be forced to waste time at trial addressing or rebutting the Challenged Opinions, which are relevant only to  defenses to claims that have never been asserted by the Debtor (i.e., the Challenged Affirmative Defenses).   Responding to these frivolous "defenses" would serve no purpose but to burden the Debtor and the Committee with unnecessary expenses, waste estate resources, and confuse the issues at trial.  The Debtor therefore respectfully requests that the Court enter the Order striking the Challenged Opinions in their entirety and prohibiting the experts from testifying as to the Challenged Opinions at trial.

## VI.     PRAYER

For the foregoing reasons, the Debtor respectfully requests that this Court enter an order substantially in the form attached hereto granting the relief requested in this Motion and granting the Debtor such other and further relief as may be just and proper.

Dated: December 17, 2021
     Houston, Texas

Respectfully submitted,

**EVERSHEDS SUTHERLAND (US) LLP**

Lino Mendiola (SBT 00791248)
Michael Boldt (SBT 24064918)
David Baay (SBT 24027050)
Jim Silliman (SBT 24081416)
One American Center
600 Congress Ave., Suite 2000
Austin, TX 78701
Telephone: (512) 721-2700
Facsimile: (512) 721-2656
Email: linomendiola@eversheds-sutherland.us
Email: michaelboldt@eversheds-sutherland.us
Email: davidbaay@eversheds-sutherland.us
Email: jimsilliman@eversheds-sutherland.us

*Special Counsel for the Debtor and Debtor in Possession*

**O'MELVENY & MYERS LLP**
Louis R. Strubeck, Jr. (SBT 19425600)
Nick Hendrix (SBT 24087708)
2501 North Harwood Street
Dallas, Texas 75201
Telephone: (972) 360-1925
Email: lstrubeck@omm.com
Email: nhendrix@omm.com
Telephone: (972) 360-1925

*Co-Counsel for the Debtor and Debtor in Possession*

**NORTON ROSE FULBRIGHT US LLP**

By: */s/ Jason L. Boland*
Jason L. Boland (SBT 24040542)
Julie G. Harrison (SBT 24092434)
Maria Mokrzycka (SBT 24119994)
1301 McKinney Street, Suite 5100
Houston, TX 77010
Telephone: (713) 651-5151
Facsimile: (713) 651-5246
Email: jason.boland@nortonrosefulbright.com
Email: julie.harrison@nortonrosefulbright.com
Email: maria.mokrzycka@nortonrosefulbright.com

Paul Trahan  (SBT 24003075)
Emily Wolf (SBT 24106595)
98 San Jacinto Boulevard, Suite 1100
Austin, TX  78701
Telephone: (512) 536 5288
Facsimile: (512) 536 4598
Email: paul.trahan@nortonrosefulbright.com
Email: emily.wolf@nortonrosefulbright.com

Steve A. Peirce (SBT 15731200)
111 West Houston Street, Suite 1800
San Antonio, TX  78205
Telephone: (210) 270-7179
Facsimile: (210) 270-7205
Email: steve.peirce@nortonrosefulbright.com

*Counsel for the Debtor and Debtor in Possession*

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned attorney hereby certifies that a true and correct copy of the foregoing document was served upon the counsel for parties of record in this Adversary Proceeding, electronically through the Bankruptcy Court's Electronic Case Filing System on those parties that have consented to such service on the 17th day of December, 2021.

*/s/ Maria Mokrzycka*
Maria Mokrzycka