**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>BRAZOS ELECTRIC POWER<br>COOPERATIVE, INC.,[1]<br><br>    Debtor. | Chapter 11<br><br>Case No. 21-30725 (DRJ) |
| BRAZOS ELECTRIC POWER<br>COOPERATIVE, INC., *et al.*,[2]<br><br>    Plaintiffs,<br><br>v.<br><br>ELECTRIC RELIABILITY COUNCIL OF<br>TEXAS, INC., *et al.*,[3]<br><br>    Defendants. | Adv. Proc. No. 21-03863 (DRJ) |

**ELECTRIC RELIABILITY COUNCIL OF TEXAS, INC. AND DEFENDANT-
INTERVENORS' RESPONSE IN OPPOSITION TO DEBTOR'S MOTION FOR
JUDGMENT ON THE PLEADINGS AND FOR ENTRY OF AN ORDER STRIKING
CERTAIN EXPERT OPINIONS**
[Relates to Adv. Dkt. No. 274]

---

[1] The Debtor in this chapter 11 case, along with the last four digits of its federal tax identification number is: Brazos Electric Power Cooperative, Inc. (4729). Additional information regarding this case may be obtained on the website of the Debtor's proposed claims and noticing agent at http://cases.stretto.com/Brazos. The Debtor's address is 7616 Bagby Avenue, Waco, TX 76712.

[2] The Plaintiff-Intervenors in this Adversary Proceeding are: the Official Committee of Unsecured Creditors, Mid-South Electric Cooperative Association; Denton County Electric Cooperative, Inc., d/b/a CoServ Electric; United Electric Cooperative Services, Inc., d/b/a United Cooperative Services; Tri-County Electric Cooperative, Inc.; Bartlett Electric Cooperative, Inc.; Comanche County Electric Cooperative Association; Cooke County Electric Cooperative Association, Inc. d/b/a PenTex Energy; Hamilton County Electric Cooperative Association; Heart of Texas Electric Cooperative, Inc.; J-A-C Electric Cooperative, Inc.; Navasota Valley Electric Cooperative, Inc.; and Wise Electric Cooperative, Inc.

[3] The Defendant-Intervenors in this Adversary Proceeding are: Calpine Corporation; Tenaska Power Services Co.; NRG Energy, Inc.; ENGIE Energy Marketing NA, Inc.; Talen Energy Supply, LLC; Golden Spread Electric Cooperative, Inc.; South Texas Electric Cooperative, Inc.; and NextEra Energy Marketing, LLC.

## <u>TABLE OF CONTENTS</u>

I.   SUMMARY OF ARGUMENT ..................................................................................... 1

II.  BACKGROUND ...................................................................................................... 3

   A.  The ERCOT Wholesale Electricity Market ................................................... 3

   B.  Brazos's Claims against ERCOT .................................................................. 4

   C.  Expert witnesses and Brazos's Motion to Strike ........................................... 5

III. ARGUMENT AND AUTHORITIES ........................................................................... 6

   A.  Brazos's Motion is procedurally improper and should be denied. ............... 6

      1.  Brazos's Motion is really a motion to strike under Federal Rule of Civil Procedure Rule 12(f), which is time barred. ....................................... 6

      2.  Even if the Court reviews Brazos's Motion under Federal Rule of Civil Procedure 12(c), it should be denied because ERCOT has valid affirmative defenses. .......... 7

   B.  Brazos asserts nine counts against ERCOT that constitute affirmative causes of action for relief. ....................................................................................... 7

      1.  Rule 8 of the Federal Rules of Civil Procedure applies to Brazos's Amended Complaint and ERCOT's Answer. ............................................. 8

      2.  ERCOT's Proof of Claim is not a complaint under Rule 8. .................... 8

      3.  Count 1 of Brazos's Amended Complaint is a breach of contract claim against ERCOT. .......................................................................... 9

      4.  Counts 2 and 3 of Brazos's Amended Complaint are tied to Brazos's breach of contract claim in Count 1. ...................................................... 11

      5.  Brazos seeks affirmative relief in the form of a reduction of its monetary obligations to ERCOT .......................................................................... 11

   C.  Brazos participated in extensive discovery related to ERCOT's affirmative defenses ....................................................................................... 12

   D.  ERCOT's affirmative defenses are merit-based defenses necessary to the adversary proceeding. ....................................................................... 13

      1.  ERCOT's First Affirmative Defense of prior material breach is meritorious. ..... 14

      2.  ERCOT's Third Affirmative Defense of failure to mitigate is meritorious. .......... 15

      3.  ERCOT's Second, Ninth, and Tenth Affirmative Defenses that address a lack of causation are meritorious. ................................................. 16

      4.  ERCOT's Fifteenth Affirmative Defense of unclean hands is meritorious. .......... 16

      5.  ERCOT's remaining affirmative defenses are meritorious and Brazos has not correctly challenged their validity. ....................................... 17

E.   The challenged Expert Opinions are relevant to Brazos's claims and ERCOT's affirmative defenses, and Brazos's request to strike the Expert Opinions should be denied. ........................................................................................................... 18

1.   The Expert Opinions are relevant to evaluating Brazos's ordinary course of business for purposes of Count 8. .......................................................... 19

2.   The Expert Opinions are relevant to evaluating the value that Brazos paid for energy during Winter Storm Uri, for purposes of Counts 4 and 5 ...................... 22

3.   The Expert Opinions are relevant to Brazos's arguments about the duty to mitigate pursuant to the SFA. ............................................................... 25

4.   The Expert Opinions provide the Court with information relevant to understanding the causal link connecting Brazos's own risk strategy, its exposure to scarcity pricing, and its obligations owed to ERCOT. .................................... 26

5.   The Expert Opinions should be judged on the merits at trial. ............................. 27

IV.   CONCLUSION ............................................................................................. 29

APPENDIX A ................................................................................................. 34

APPENDIX B ................................................................................................. 35

APPENDIX C ................................................................................................. 36

APPENDIX D ................................................................................................. 38

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                            **Page(s)**

*Ackerson v. Bean Dredging LLC*,
    589 F.3d 196 (5th Cir. 2009) ........................................................................14

*AM Gen. LLC v. Demmer Corp.*,
    No. 3:12-CV-333, 2013 U.S. Dist. LEXIS 136360, 2013 WL 5348484 (N.D.
    Ind. Sept. 23, 2013)......................................................................................12

*Am. Standard Credit, Inc. v. Nat'l Cement Co.*,
    643 F.2d 248 (5th Cir. 1981) ........................................................................10

*Chauvin v. State Farm Fire & Cas. Co.*,
    495 F.3d 232 (5th Cir. 2007) ........................................................................14

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993)......................................................................................18

*Desperado Motor Racing & Motorcycles, Inc. v. Robinson*,
    No. H-09-1574, 2010 U.S. Dist. LEXIS 69711 (S.D. Tex. July 13, 2010) ..............................6

*Dill v. Fed. Home Loan Mortg. Corp.*,
    2020 U.S. Dist. LEXIS 237226 (S.D. Tex. 2020) ................................................14

*Ennis Transp. Co. v. Richter*,
    2012 U.S. Dist. LEXIS 39048 (N.D. Tex. 2012)....................................................10

*In re Erlewine*,
    349 F.3d 205 (5th Cir. 2003) ........................................................................22

*In re Fairchild Aircraft Corp.*,
    6 F.3d 1119 (5th Cir. 1993), abrogated on other grounds by *In re Dunham*,
    110 F.3d 286 (5th Cir. 1997) ........................................................................22

*Franks v. Tyhan, Inc.*,
    No. H-15-191, 2016 U.S. Dist. LEXIS 50616 (S.D. Tex. 2016)................................6

*Germain v. US Bank Nat'l Ass'n*,
    920 F.3d 269 (5th Cir. 2019) ..........................................................................8

*Gibbs v. Gibbs*,
    210 F.3d 491 (5th Cir. 2000) ........................................................................28

*Ginsburg v. InBev NV/SA*,
    623 F.3d 1229 (8th Cir. 2010) ......................................................................12

*Grajales v. P.R. Ports Auth.*,
    682 F.3d 40 (1st Cir. 2012) ...................................................................................12

*Granfinanciera v. Nordberg*,
    492 U.S. 33 (1989) ...............................................................................................17

*In re Grayson*,
    488 B.R. 579 (Bankr. S.D. Tex. 2012) .................................................................10

*Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*,
    313 F.3d 305 (5th Cir. 2002) ......................................................................7, 14, 18

*Gunn Infiniti, Inc. v. O'Byrne*,
    996 S.W.2d 854 (Tex. 1999) ...............................................................................15

*Janvey v. Golf Channel, Inc.*,
    487 S.W.3d 560 ....................................................................................................22

*In re Jensen*,
    946 F.2d 369 (5th Cir. 1991) ...............................................................................17

*Knight v. Kirby Inland Marine Inc.*,
    482 F.3d 347 (5th Cir. 2007) ...............................................................................18

*Madrid v. Wells Fargo Bank, N.A.*,
    No. EP-14-CV-00152-DCG, 2017 U.S. Dist. LEXIS 221452 (W.D. Tex.
    2017) ...............................................................................................................12, 16

*In re MBS Mgmt. Servs., Inc.*,
    690 F.3d 352 (5th Cir. 2012) ...............................................................................27

*Mead v. Johnson Group, Inc.*,
    615 S.W.2d 685 (Tex. 1981) ...............................................................................16

*Morgan v. Goodman Mfg. Co., L.P.*,
    No. 4:19-CV-00850, 2021 U.S. Dist. LEXIS 59521 (S.D. Tex. 2021) ...................6

*Mustang Pipeline Co. v. Driver Pipeline Co.*,
    134 S.W.3d 195 (Tex. 2004) ...............................................................................14

*Myrtle Consulting Grp., LLC v. Resulting Partners, Inc.*,
    2021 Tex. App. LEXIS 4312 (Tex. App.—Houston [1st Dist.] 2021, no pet.) .....17

*Nat'l Union Fire Ins. Co. of Pittsburgh v. Resolution Tr. Corp.*,
    18 F.3d 935 (5th Cir. 1994) ...................................................................................7

*In re Ohio Valley Amusement Co.*,
    2008 Bankr. LEXIS 3191, 2008 WL 5062464 (Bankr. N.D.W. Va. Dec. 1,
    2008) ...........................................................................................................20

*Pickersgill v. Neely*,
    Civil Action No. 3:21-CV-00773-X, 2021 U.S. Dist. LEXIS 214306 (N.D.
    Tex. 2021) ......................................................................................................7

*In re PMC Mktg. Corp.*,
    517 B.R. 386 (1st Cir. BAP 2014) ...............................................................20

*Puga v. RCX Sols., Inc.*,
    922 F.3d 285 (5th Cir. 2019) ........................................................................28

*Roark v. Allen*,
    633 S.W.2d 804 (Tex. 1982).........................................................................10

*In re Roth Am., Inc.*,
    975 F.2d 949 (3d Cir. 1992)..........................................................................20

*S. Elec. Servs. v. City of Houston*,
    2011 Tex. App. LEXIS 3440 (Tex. App.—Houston [1st Dist.] 2011, pet.
    denied)...........................................................................................................16

*S. Pac. Transp. Co. v. Chabert*,
    973 F.2d 441 (5th Cir. 1992) ........................................................................27

*Schmidt v. Rodriguez (In re Rodriguez)*,
    Nos. 10-70606, 11-07012, 12-07018, 2013 Bankr. LEXIS 5048 (Bankr. S.D.
    Tex. 2013) ......................................................................................................9

*In re SemCrude, L.P.*,
    504 B.R. 39 (Bankr. D. Del. 2013) ..............................................................20

*In re Spencer*,
    2016 WL 7156534 (Bankr. N.D. Miss. Nov. 1, 2016) ..........................................19

*In re Today's Destiny, Inc.*,
    No. 05-90080, 2008 Bankr. LEXIS 3577 (Bankr. S.D. Tex. 2008) ..........................9

*Travelers Cas. & Sur. Co. of Am. v. PG&E*,
    549 U.S. 443 (2007)........................................................................................9

*Tyger Mfg., LLC v. Mike's Worldwide LLC*,
    2020 U.S. Dist. LEXIS 223839 (S.D. Tex. 2020) ................................................14

*United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cty., State of Miss.*,
   80 F.3d 1074 (5th Cir. 1996) ........................................................................................18

*United States v. Brink*,
   No. CIV.A. C-10-243, 2011 U.S. Dist. LEXIS 21816, 2011 WL 835828 (S.D.
   Tex. Mar. 4, 2011) ..........................................................................................................6

*United States v. Mire*,
   838 F.3d 621 (5th Cir. 2016) ........................................................................................14

*Viterbo v. Dow Chemical Co.*,
   826 F.2d 420 (5th Cir. 1987) ........................................................................................28

*Weaver v. Kellogg*,
   216 B.R. 563 (S.D. Tex. 1997) .....................................................................................23

*In re Willow Bend Ventures, LLC*,
   2019 Bankr. LEXIS 1621, 2019 WL 2252498 (Bankr. E.D. La. May 24, 2019) ..................20

*In re WRT Energy Corp.*,
   282 B.R. 343 (Bankr. W.D. La. 2001) ....................................................................22, 23

**Statutes**

11 U.S.C. 502(b)(1) ...........................................................................................................11

11 U.S.C. § 502(b)(1) ...........................................................................................................9

11 U.S.C. § 503(b)(9) .....................................................................................................19, 20

11 U.S.C. § 548(a)(1)(B) ....................................................................................................22

Texas Uniform Fraudulent Transfer Act § 24.005(a) .........................................................22

U.C.C. § 1-201(b)(9) ...........................................................................................................20

**Other Authorities**

Fed. R. Bankr. P. 3001(f) .....................................................................................................9

Fed. R. Bankr. P. 7008 .........................................................................................................7

Fed. R. Bankr. P. 7012 .....................................................................................................6, 8

Fed. R. Civ. P. 8 ..............................................................................................................7, 8

Fed. R. Civ. P. 12 ........................................................................................................ *passim*

FED. R. EVID. 401 .................................................................................................................18

FED. R. EVID. 402 .................................................................................................................18

FED. R. EVID. 702 .................................................................................................................28

TO THE HONORABLE DAVID R. JONES, CHIEF U.S. BANKRUPTCY JUDGE:

Defendant Electric Reliability Council of Texas, Inc. ("ERCOT"), together with Calpine Corporation, on behalf of itself and each of its affiliates, including but not limited to Calpine Energy Services, L.P., Calpine Energy Solutions, LLC, and Cavallo Energy Texas, LLC (collectively, "Calpine"); NRG Energy, Inc., on behalf of itself and certain of its intervening affiliates (collectively, "NRG"); ENGIE Energy Marketing NA, Inc., on behalf of itself and certain of its intervening affiliates (collectively, "ENGIE"); Talen Energy Supply, LLC, on behalf of itself and each of its affiliates, including but not limited to Talen Energy Marketing, LLC (collectively "Talen"); NextEra Energy Marketing, LLC ("NEM"); South Texas Electric Cooperative, Inc. ("STEC"); and Tenaska Power Services Co. ("TPS") (together with STEC, NEM, Talen, ENGIE, NRG and Calpine, the "Defendant Intervenors") file this *Response in Opposition to Debtor's Motion for Judgment on the Pleadings and for Entry of an Order Striking Certain Expert Opinions*.

## I.    SUMMARY OF ARGUMENT

1.    Brazos Electric Power Cooperative, Inc.'s ("Brazos") Motion for Judgment on the Pleadings and for Entry of an Order Striking Certain Expert Opinions (the "Motion") fails for three reasons: (1) the Motion is untimely; (2) Brazos's Amended Complaint alleges affirmative causes of action against ERCOT and seeks affirmative relief from the Court; and (3) Brazos's own claims put its failure to adequately hedge and winterize at issue.

2.    *First*, the Motion is untimely. Brazos's Motion asks the Court to dismiss ERCOT's affirmative defenses. Courts construe motions to dismiss affirmative defenses as motions to *strike* affirmative defenses pursuant to Federal Rule of Civil Procedure Rule 12(f). Here, properly construing Brazos's Motion as a motion to strike makes that Motion untimely, because it must have been brought within 21 days of ERCOT filing its Answer. Even if construed as a motion for

judgment on the pleadings under Federal Rule of Civil Procedure Rule 12(c), ERCOT's affirmative defenses preclude Brazos's requested dismissal.

3.      *Second*, ERCOT is required to answer Brazos's Complaint, including asserting any affirmative defenses. ERCOT's affirmative defenses are merit-based, necessary to this adversary proceeding, and Brazos put them at issue through its allegations.

4.      After ERCOT filed its Answer, the parties engaged in extensive and expensive discovery on ERCOT's affirmative defenses. Other than a few relevance objections lodged during depositions, Brazos actively participated in all other aspects of written and oral discovery without raising a relevance objection.

5.      *Third*, the Motion seeks to exclude expert testimony concerning Brazos's failure to hedge against the risk of sustained high energy prices and to winterize its generation facilities. Brazos premises this portion of its Motion entirely on its assertion that "[t]hese opinions are relevant only to ERCOT's asserted affirmative defense that Brazos failed to properly mitigate its damages."[4]

6.      But Brazos's hedging and winterization practices are implicated not just by ERCOT's defenses but also by Brazos's own claims. For example, evidence of Brazos's hedging practices and reliance on ERCOT's Day-Ahead and Real-Time markets is relevant to determining Brazos's ordinary course of business, which Brazos has placed at issue in Count 8 and which ERCOT must prove for its priority claim. Hedging practices are relevant to the value of goods that Brazos received which Brazos placed at issue in Counts 4 and 5. Having injected those issues into this dispute, Brazos cannot now credibly claim that the expert testimony it seeks to strike is

---

[4] Motion ¶ 1.

relevant only to ERCOT's affirmative defenses. ERCOT and the Defendant-Intervenors are entitled to offer expert testimony in defense to these claims.

## II.   BACKGROUND

7.     In this adversary proceeding, Brazos seeks to substantially reduce ERCOT's claim. ERCOT's claim results from unpaid invoices for Brazos's purchase of energy and ancillary services from ERCOT in February 2021. The parties' relationship is governed by the Standard Form Market Participant Agreement ("SFA").

8.     In September 2021, ERCOT filed its Answer to Brazos's Complaint, asserting seventeen affirmative defenses, including Brazos's own material breach of the SFA, the lack of causation between ERCOT's actions and Brazos's harm, and Brazos's failure to mitigate its damages. Now, after the close of fact discovery and the submission of affirmative expert reports, Brazos seeks judgment on the pleadings with respect to all of ERCOT's affirmative defenses. Brazos also seeks to strike a subset of expert testimony regarding its failed financial and operational risk strategies on the theory that these opinions are only relevant to ERCOT's affirmative defenses.

### A.     The ERCOT Wholesale Electricity Market

9.     Energy is bought and sold in ERCOT in three ways: (1) the bilateral market; (2) the ERCOT Day-Ahead Market; and (3) the ERCOT Real-Time Market. The Day-Ahead Market is an ERCOT-managed market where sellers offer to supply, and buyers offer to buy electricity. ERCOT determines a clearing price for the sale of generation in the Day-Ahead Market. Supply that is not cleared in the Day-Ahead Market is scheduled for the Real-Time Market, which facilitates the real-time purchase and sale of electrical energy.

10.     Because electricity prices in the Day-Ahead and Real-Time Markets can be volatile, ERCOT market participants may choose to enter long-term bilateral contracts for energy to hedge against price spikes. Participants may also go to the ERCOT Day-Ahead and Real-Time Markets to satisfy excess load demands, a strategy that is vulnerable to price volatility.

11.     As a result of Brazos's decision not to hedge against price volatility and its failure to adequately winterize its generation facilities, Brazos purchased energy in ERCOT's Real-Time Market to meet its load obligations during Winter Storm Uri.

**B.      Brazos's Claims against ERCOT**

12.     On March 1, 2021, Brazos filed its voluntary petition for relief.[5]  Brazos filed its initial Complaint on August 18, 2021 and its Amended Complaint on October 25, 2021 (the "Amended Complaint").[6]

13.     Pursuant to the Court's Scheduling Order, ERCOT filed its Answer and Affirmative Defenses to Brazos's Complaint on September 14, 2021, and filed its Answer and Affirmative Defenses to Brazos's Amended Complaint on November 3, 2021 (the "Answer").[7]

14.     Since then, the parties have engaged in extensive fact and expert discovery. This includes in three in-person plant inspections, approximately 25 corporate representative and fact witness depositions, requests for production, requests for admission, and interrogatories.

---

[5] *In re Brazos Elec. Power Coop., Inc.*, No. 21-20725 (DRJ) (Bankr. S.D. Tex.) [Bankr. Case Dkt. No. 1].

[6] Compl. [Dkt. No. 1]; Am. Compl. [Dkt. No. 173].

[7] Answer [Dkt. No. 24]; Answer to Am. Compl. [Dkt. No. 192] (adding an eighteenth affirmative defense).

C.      **Expert witnesses and Brazos's Motion to Strike**

15.      On December 9, 2021, ERCOT served its Designation of Expert Witnesses, which includes the designation of Todd W. Filsinger, Clifford Watson (the "Filsinger Report")[8], and Paul M. Sotkiewicz (the "Sotkiewicz Report")[9], and Calpine served its Designation of Expert Witnesses, which includes the designation and opinions by Frank C. Graves (the "Graves Report")[10] (collectively, the "Expert Opinions"). The Expert Opinions detail Brazos's failure to adequately winterize its facilities, prepare for an extreme weather event, or otherwise hedge against high costs in the ERCOT market, in contrast with other similarly-situated market participants.

16.      On December 17, 2021, Brazos filed its Motion. It seeks to strike ERCOT's affirmative defenses and five of the eleven opinions offered by four of the five ERCOT and Calpine-designated experts.

17.      Brazos's Motion neither challenges Defendants' experts' qualifications nor the reliability of their opinions.  Instead, Brazos seeks to exclude multiple Expert Opinions regarding Brazos's financial hedging and winterization[11] because it contends these opinions are irrelevant to "ERCOT's claim and the Debtor's defenses thereto."[12]

---

[8] *See Confidential Expert Report of Todd W. Filsinger and Clifford Watson*, filed under seal as Exhibit A in Brazos's Motion pursuant to the *Confidentiality Agreement and Stipulated Protective Order* [Adv. Dkt. No. 51].

[9] *See Expert Report in Support of Electric Reliability Council of Texas, Inc., by Paul M. Sotkiewicz*, filed under seal as Exhibit B in Brazos's Motion pursuant to the *Confidentiality Agreement and Stipulated Protective Order* [Adv. Dkt. No. 51].

[10] *See Opening Expert Report of Frank C. Graves*, filed under seal as Exhibit C in Brazos's Motion pursuant to the *Confidentiality Agreement and Stipulated Protective Order* [Adv. Dkt. No. 51].

[11] Motion ¶ 33.

[12] Motion ¶ 28.

### III.   ARGUMENT AND AUTHORITIES

**A.   Brazos's Motion is procedurally improper and should be denied.**

> **1.   Brazos's Motion is really a motion to strike under Federal Rule of Civil Procedure Rule 12(f), which is time barred.**

18.   Although styled as a motion for judgment on the pleadings, Brazos seeks to dismiss ERCOT's affirmative defenses.[13]  "[T]he proper remedy for an insufficient affirmative defense is a motion to strike under Rule 12(f)."[14]  While Rule 12(c) allows a party to move for judgment on the pleadings a motion to strike affirmative defenses under Rule 12(f) is more appropriate when a plaintiff disputes the sufficiency of a defendant's defenses.[15]

19.   Rule 12(f), made applicable through Bankruptcy Rule 7012(b), permits a court to "strike from a pleading an insufficient defense."[16]  Pursuant to Rule 12(f), a party must move to strike defenses "within 21 days after being served with the pleading."[17]

20.   If Brazos wanted to strike any of ERCOT's affirmative defenses, Brazos was required to do so within 21 days of service of ERCOT's Answer. Brazos did not, and instead the

---

[13] *Id.*

[14] *Desperado Motor Racing & Motorcycles, Inc. v. Robinson*, No. H-09-1574, 2010 U.S. Dist. LEXIS 69711, at *5 (S.D. Tex. July 13, 2010) (construing a 12(b)(6) motion to dismiss affirmative defenses as a motion to strike under Rule 12(f)).

[15] *Morgan v. Goodman Mfg. Co., L.P.,* No. 4:19-CV-00850, 2021 U.S. Dist. LEXIS 59521, at *27 (S.D. Tex. 2021) (citing *Franks v. Tyhan, Inc.,* No. H-15-191, 2016 U.S. Dist. LEXIS 50616, at *4 (S.D. Tex. 2016)); *see also United States v. Brink*, No. CIV.A. C-10-243, 2011 U.S. Dist. LEXIS 21816, 2011 WL 835828, at *2 (S.D. Tex. Mar. 4, 2011) (favoring Rule 12(f) over Rule 12(c) for disputing the sufficiency of affirmative defenses); 5C Charles Alan Wright et al., Federal Practice and Procedure § 1369 (3d ed. 1998) ("If a plaintiff seeks to dispute the legal sufficiency of fewer than all of the defenses raised in the defendants pleading, he should proceed under Rule 12(f) rather than under Rule 12(c) . . . .")

[16] Fed. R. Civ. P. 12(f); Fed. R. Bankr. P. 7012(b).

[17] Fed. R. Civ. P. 12(f); *see also Robinson* at *2 (construing a party's motion to dismiss affirmative defenses under 12(b)(6) as a motion to strike under Rule 12(f), and denying the motion as untimely).

parties engaged in extensive fact and expert discovery regarding these issues. As a result, Brazos

waived its opportunity to bring a motion to strike ERCOT's affirmative defenses.

> **2.     Even if the Court reviews Brazos's Motion under Federal Rule of Civil Procedure 12(c), it should be denied because ERCOT has valid affirmative defenses.**

21.     In reviewing a Rule 12(c) motion, "[p]leadings should be construed liberally, and

judgment on the pleadings is appropriate *only if* there are no disputed issues of fact and only

questions of law remain."[18] Judgment on the pleadings for a plaintiff is improper if the defendant

has raised affirmative defenses.[19]

22.     ERCOT's Answer raises affirmative defenses that, if proved, would defeat the

claims in Brazos's Amended Complaint.

## B.     Brazos asserts nine counts against ERCOT that constitute affirmative causes of action for relief.

23.     Brazos seeks to dismiss ERCOT's affirmative defenses under the misguided theory

that Brazos's Amended Complaint is effectively a detailed claim objection, and as such does not

contain affirmative claims. First, Brazos initiated this adversary proceeding by filing the

Complaint, which was required to comply with Rule 8(a), as applied by Bankruptcy Rule 7008.

Brazos's filing of the Complaint, and subsequently Brazos's Amended Complaint, required

ERCOT to file an answer and assert applicable affirmative defenses pursuant to Rule 8(b)-(c).

Second, ERCOT's Proof of Claim is not a complaint governed by the Federal Rules of Civil

---

[18] *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 312 (5th Cir. 2002) (emphasis added); *see also Pickersgill v. Neely*, Civil Action No. 3:21-CV-00773-X, 2021 U.S. Dist. LEXIS 214306, at *7 (N.D. Tex. 2021).

[19] *Nat'l Union Fire Ins. Co. of Pittsburgh v. Resolution Tr. Corp.*, 18 F.3d 935 (5th Cir. 1994) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice And Procedure § 1368, at 529 (1990)).

Procedure. Third, Brazos is the plaintiff here. Each "count" of its claims in its Amended Complaint is a cause of action that seeks affirmative relief.

1. **Rule 8 of the Federal Rules of Civil Procedure applies to Brazos's Amended Complaint and ERCOT's Answer.**

24.     Rule 8(a) requires a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief" and "a demand for the relief sought."[20]

25.     After Brazos filed its Complaint, ERCOT was required to file an answer and any motions to dismiss pursuant to Rule 12(b), as applied by Bankruptcy Rule 7012, and in accordance with this Court's Scheduling Order.[21] Because Brazos's Complaint, and subsequently its Amended Complaint, is governed by Rule 8(a), ERCOT's Answer was required to comply with Rule 8(b) and "state in short and plain terms" any defenses to the claims asserted.[22]

26.     In addition, ERCOT was required to comply with Rule (8)(c), which requires a party to state affirmatively "any avoidance or affirmative defense."[23] This includes defenses "that concern allegations outside of the plaintiff's prima facie case that the defendant therefore cannot raise by a simple denial in the answer."[24]

2. **ERCOT's Proof of Claim is not a complaint under Rule 8.**

27.     Brazos argues that ERCOT's Proof of Claim contains claims for relief and should be construed as a complaint.  And as a result, Brazos contends it has only objected to those claims

---

[20] FED. R. CIV. P. 8(a).

[21] Scheduling Order [Dkt. No. 13].

[22] FED. R. CIV. P. 8(b).

[23] FED. R. CIV. P. 8(c).

[24] *Germain v. US Bank Nat'l Ass'n*, 920 F.3d 269, 274 (5th Cir. 2019).

without asserting any affirmative claims. This is incorrect. ERCOT's Proof of Claim is not like a complaint.[25]  "A proof of claim is not a complaint and is not supposed to be."[26]

> **3.      Count 1 of Brazos's Amended Complaint is a breach of contract claim against ERCOT.**

28.     Count 1 alleges that ERCOT violated the contractual terms of the SFA and Protocols when it "failed to follow the protocol change process and ignored the contractual terms of the SFA."[27]  Brazos objected to ERCOT's Proof of Claim under 11 U.S.C. § 502(b)(1) and describes ERCOT's Proof of Claim as "purely contractual."[28]

29.     Section 502(b)(1) provides defenses that are available to claims outside of bankruptcy and are available to debtors while engaged in the bankruptcy.[29]  This requires consulting state law to determine the validity of most claims.[30]

30.     Brazos's primary basis for seeking reduction of ERCOT's Proof of Claim is that ERCOT "failed to follow the protocol change process and ignored the contractual terms of the SFA and the pricing process set forth in the protocols."[31]  Brazos admits that "the contractual relationship between Debtor and ERCOT is governed by the SFA, related agreements, and the

---

[25] *See Schmidt v. Rodriguez (In re Rodriguez),* Nos. 10-70606, 11-07012, 12-07018, 2013 Bankr. LEXIS 5048, at *11 (Bankr. S.D. Tex. 2013) (noting that a proof of claim is not like a complaint because, under Federal Rule of Bankruptcy Procedure 3001(f), it inherently "constitute[s] prima facie evidence of the validity and amount of the claim").

[26] *In re Today's Destiny, Inc.*, No. 05-90080, 2008 Bankr. LEXIS 3577, at *22-23 (Bankr. S.D. Tex. 2008).

[27] Am. Compl. ¶ 120-122.

[28] Am. Compl. ¶ 130.

[29] *Travelers Cas. & Sur. Co. of Am. v. PG&E*, 549 U.S. 443, 450 (2007).

[30] *Id*. at 450-51.

[31] Am. Compl. ¶ 120.

ERCOT protocols."[32] Brazos further admits that "under the SFA, both the Debtor and ERCOT agreed to 'comply with, and be bound by, all ERCOT protocols.'"[33]

31.     If the basis for Brazos's § 502 objection to Count 1 is not breach of contract, Brazos has not identified any other basis for a remedy that would entitle it to disallow ERCOT's Proof of Claim.[34]

32.     The fact that Brazos's Amended Complaint does not use the label "breach of contract" is of no consequence. Courts look to the specific allegations, the factual bases that have been raised and tried, and the intent of the parties to determine the type of cause of action.[35]  Brazos has its claims in this proceeding, including Count 1, as one "which deals with a state law *contract dispute*."[36]  The basis of Brazos's "contract dispute" is that ERCOT failed "to follow the parties' contract and its own protocols"[37] and that the invoices charged to Brazos "were calculated in violation of the SFA, the protocols, and the course of dealing."[38]

33.     As a result, Count 1 can only be construed as a breach of contract claim against ERCOT, which necessitated the filing of ERCOT's Answer and affirmative defenses.

---

[32] Am. Compl. ¶ 24.

[33] Am. Compl. ¶ 104.

[34] *In re Grayson*, 488 B.R. 579, 588 (Bankr. S.D. Tex. 2012).

[35] *See Ennis Transp. Co. v. Richter*, 2012 U.S. Dist. LEXIS 39048 (N.D. Tex. 2012) (*citing Am. Standard Credit, Inc. v. Nat'l Cement Co*., 643 F.2d 248, 257 n.4 (5th Cir. 1981) (intermediate citation omitted for clarity)); *Roark v. Allen*, 633 S.W.2d 804, 809-810 (Tex. 1982).

[36] Debtor's Resp. in Opp'n to Electric Reliability Council of Texas, Inc.'s Mot. to Dismiss and for Abstention at ¶ 84 [Adv. Dkt. 42] (the "Resp. to Mot. to Dismiss") (emphasis added); *see also* Resp. to Mot. to Dismiss ¶¶ 84 and 107.

[37] Am. Compl. ¶ 1.

[38] Am. Compl. ¶ 122.

**4.    Counts 2 and 3 of Brazos's Amended Complaint are tied to Brazos's breach of contract claim in Count 1.**

34.    Count 2 of Brazos's Amended Complaint alleges that "ERCOT made no effort to mitigate" even though "Section 8(D) of the SFA requires and other applicable Texas law imposes a duty on ERCOT to mitigate damages."[39]  This count requires interpreting the SFA and the protocols because Brazos alleges that "ERCOT failed to mitigate its damages as required *under the contract*."[40]  Here again, Brazos alleges that ERCOT breached a contractual provision. Further, Brazos alleges that ERCOT "failed to employ a method provided under the ERCOT protocols"[41] and as a result, violated the terms of the SFA and Protocols.

35.    Similarly, Count 3 alleges that Brazos "was not in default prior to the Petition Date due to, among other things, a force majeure event within the meaning of the Debtor's contract with ERCOT."[42]  Similar to Counts 1 and 2, Count 3 requires interpreting the SFA, and Brazos relies upon the terms of the SFA to support its allegation.[43]  Furthermore, Brazos admits that the allegations in Count 3 are "sufficient to *state a claim* under Bankruptcy Code 502(b)(1)."[44]

36.    Count 2 and Count 3 are claims that sound in breach of contract.

**5.    Brazos seeks affirmative relief in the form of a reduction of its monetary obligations to ERCOT.**

37.    Despite its statements to the contrary, Brazos brought this adversary proceeding seeking affirmative relief from the Court. Specifically, Brazos "seeks to reduce the ERCOT Proof

---

[39] Am. Compl. ¶¶ 51, 137, 138.

[40] Am. Compl. ¶ 1 (emphasis added).

[41] Am. Compl. ¶ 68 and ¶136.

[42] Am. Compl. ¶ 1.

[43] Am. Compl. ¶¶ 72-73.

[44] Resp. to Mot. to Dismiss ¶ 103 (emphasis added).

of Claim potentially several hundreds of millions, or even more than one billion dollars."[45] Brazos

cannot credibly argue that it is not seeking affirmative relief from ERCOT when each "count"

seeks to "disallow, reduce, or reclassify the ERCOT Proof of Claim."[46]

## C.   Brazos participated in extensive discovery related to ERCOT's affirmative defenses

38.    Discovery in this adversary proceeding has been extensive, time consuming, and

expensive. To develop its affirmative defenses, ERCOT served written discovery requests, took

depositions, inspected Brazos's plants, and engaged experts. Given that fact discovery is now

complete, Brazos's Motion is untimely. Courts are hesitant to entertain Rule 12(c) motions when

discovery has been completed because such issues are better resolved at trial or in summary

judgment.[47]

39.    Brazos produced corporate representatives for deposition in response to *sixteen*

topics that relate to ERCOT's affirmative defenses, including Brazos's contractual obligations

under the SFA and Brazos's hedging arrangements prior to and during Winter Storm Uri[48] The

---

[45] Am. Compl. ¶ 100.

[46] Resp. to Mot. to Dismiss ¶ 111.

[47] *Madrid v. Wells Fargo Bank, N.A.*, No. EP-14-CV-00152-DCG, 2017 U.S. Dist. LEXIS 221452, at *9 (W.D. Tex. 2017) (citing to *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 46 (1st Cir. 2012) ("[O]nce the parties have invested substantial resources in discovery, a district court should hesitate to entertain a Rule 12(c) motion that asserts a complaint's failure to satisfy the plausibility requirement."); *Ginsburg v. InBev NV/SA*, 623 F.3d 1229, 1233 n. 3 (8th Cir. 2010) (expressing concern regarding the appropriateness of a Rule 12(c) motion filed after a preliminary injunction hearing that generated an extensive record); 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1367 (3d ed.) ("[I]f the pleadings do not resolve all of the factual issues in the case, a trial on the merits would be more appropriate than an attempt at resolution of the case on a Rule 12(c) motion."); *see also AM Gen. LLC v. Demmer Corp.*, No. 3:12-CV-333, 2013 U.S. Dist. LEXIS 136360, 2013 WL 5348484, at *1, *6 (N.D. Ind. Sept. 23, 2013) (*citing Grajales*, 682 F.3d at 46 and denying a 12(c) motion on the grounds that "[m]any of the issues raised by [the defendant] in the current motion are more appropriate for a summary judgment motion, especially considering the amount of discovery that has taken place in this case")).

[48] Appendix A contains a list of topics included in ERCOT's Notice of Rule 30(b)(6) Deposition to Brazos relevant to ERCOT's affirmative defenses.

*only* time Brazos objected on relevance grounds to any of the corporate representative topics was during the deposition of Dean Thrall, and such objection was limited to two topics concerning winterization and generation capacity.[49]  In addition, Brazos requested the depositions of ERCOT representatives on *five* topics relating to ERCOT's affirmative defenses, including "*Any fact supporting the affirmative defenses asserted in ERCOT's Answer.*"[50]

40.     Likewise, Brazos engaged in extensive written discovery related to ERCOT's affirmative defenses, producing documents and providing written responses to *fourteen* Requests for Production and *three* Requests for Admission, *without objecting to relevance*.[51]  Brazos also served *five* Requests for Production, *six* Interrogatories, and *nine* Requests for Admission that relate to ERCOT's affirmative defenses.[52]

41.     Brazos expended vast financial resources and, consequently, forced the other parties to also expend those resources engaging in short-tracked and extensive discovery.  Brazos now comes to this Court asserting that all of it was unnecessary because ERCOT's defenses are irrelevant and should not be heard. Brazos has waived its right to make such an assertion.  Its Motion is untimely and the relief requested should be denied.

**D.     ERCOT's affirmative defenses are merit-based defenses necessary to the adversary proceeding.**

42.     A motion brought under Rule 12(c) is designed to dispose of cases where there are no disputes of material fact and a judgment on the merits can be rendered by looking to the

---

[49] Thrall Dep. at 32-34, attached as Exhibit "A".

[50] Appendix B contains a list of topics included in Brazos's Notice of Rule 30(b)(6) Deposition to ERCOT relevant to ERCOT's affirmative defenses.

[51] Appendix C contains a list of ERCOT's Requests for Production and Requests for Admission to Brazos which are relevant to ERCOT's affirmative defenses.

[52] Appendix D contains a list of Brazos's Requests for Production, Interrogatories, and Requests for Admission which are relevant to ERCOT's affirmative defenses.

substance of the pleadings and any judicially noticed facts.[53] The standard is the same as that under Rule 12(b)(6).[54] The motion "should not be granted unless the plaintiff would not be entitled to relief under any set of facts that he could prove consistent with the complaint."[55] The inquiry under Rule 12(c) "focuses on the allegations in the pleadings and not on whether the plaintiff actually has sufficient evidence to succeed on the merits."[56]

### 1. ERCOT's First Affirmative Defense of prior material breach is meritorious.

43.     Under Texas law, when one party commits a material breach, the non-breaching party is excused from further performance.[57] Whether a breach is material is a question of fact for the court to determine.[58] Where a contract provides for certain breaches to terminate the agreement, those provisions, and therefore the associated breach, are presumed material.[59]

44.     In response to Brazos's allegations in Count 1 that ERCOT violated the contractual terms of the SFA and Protocols, ERCOT asserts that it was Brazos that committed a prior material breach.[60]

45.     Brazos acknowledges that it has not paid the amounts ERCOT is owed. Brazos admits it purchased energy on the ERCOT market it could not afford.[61] Further, Brazos admits it

---

[53] *Dill v. Fed. Home Loan Mortg. Corp.,* 2020 U.S. Dist. LEXIS 237226, *5 (S.D. Tex. 2020) (citing *Great Plains Tr.,* 313 F.3d at 312).

[54] *Id.*

[55] *Tyger Mfg., LLC v. Mike's Worldwide LLC,* 2020 U.S. Dist. LEXIS 223839, *3 (S.D. Tex. 2020) (quoting *Chauvin v. State Farm Fire & Cas. Co.*, 495 F.3d 232, 237 (5th Cir. 2007)).

[56] *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 209 (5th Cir. 2009)).

[57] *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004).

[58] *Id.* at 199.

[59] *See United States v. Mire*, 838 F.3d 621, 627 (5th Cir. 2016) (citations omitted) (applying Texas law).

[60] Am. Compl. ¶ 120-122.

[61] Karnei Dep. at 82-83; 86-8, attached as Exhibit "B".

could not satisfy requested collateral calls.[62]  Pursuant to the terms of the SFA, failure to timely

pay and failure to comply with the ERCOT Protocols constitute events of default under the SFA.[63]

As such, Brazos committed events of default by failing to pay the ERCOT invoices. Because these

events of default are breaches of the SFA, they are presumed material.[64]  These material breaches

occurred prior to any alleged breach by ERCOT.

46.      ERCOT's affirmative defense of prior material breach is applicable to Brazos's

Amended Complaint and raises sufficient facts to dispute Brazos's claims. As a result, Brazos is

not entitled to judgment on the pleadings, and the Court should not strike ERCOT's affirmative

defense of prior material breach.

## 2.      ERCOT's Third Affirmative Defense of failure to mitigate is meritorious.

47.      The doctrine of mitigation applies to breach of contract claims and the long-

standing law of this state requires that if a claimant can mitigate with reasonable effort or trifling

expenses they must do so.[65]

48.      It was Brazos, not ERCOT, that first raised the issue of mitigation. In Count 2,

Brazos alleges that ERCOT failed to mitigate its claim in accordance with the SFA.[66] Brazos

cannot avoid the unpaid ERCOT invoices on a theory that ERCOT can "mitigate" those invoices

by retroactively lowering the price of what was sold. Brazos also fails to acknowledge that the

SFA places a duty to mitigate on both parties.[67] Brazos had a duty to mitigate its potential damages

---

[62] *Id*. at 82; Bordovsky Dep. at 57, attached as Exhibit "C".

[63] SFA § 8(A)(1), (2).

[64] *See Mire*, 838 F. 3d at 627.

[65] *Gunn Infiniti, Inc. v. O'Byrne*, 996 S.W. 2d 854, 857 (Tex. 1999).

[66] Am. Compl. ¶¶ 51, 137, 138.

[67] SFA, § 8(D).

as a result of Winter Storm Uri and failed to do so. Because the crux of Brazos's Amended Complaint is an allegation that ERCOT failed to follow the SFA and the protocols, *i.e.*, a breach of contract claim, ERCOT is entitled to assert failure to mitigate as an affirmative defense.

49.     ERCOT's affirmative defense that Brazos failed to mitigate is applicable to Brazos's legal claims and ERCOT's Answer raises sufficient facts to dispute Brazos's claims. As a result, Brazos is not entitled to judgment on the pleadings, and this Court should not strike ERCOT's affirmative defense of failure to mitigate.

### 3.     ERCOT's Second, Ninth, and Tenth Affirmative Defenses that address a lack of causation are meritorious.

50.     In order to recover compensatory damages, a plaintiff must prove that he suffered some pecuniary loss *as a result of the breach*.[68] Those losses must be natural, probable, and foreseeable as a consequence of the defendant's conduct.[69] Those losses cannot be remote, contingent, speculative, or conjectural.[70]

51.     While Brazos is correct that causation is a tort concept, it also applies equally in breach of contract cases.[71] For this reason, ERCOT's assertion of this affirmative defense is proper in a case involving breach of contract allegations.

### 4.     ERCOT's Fifteenth Affirmative Defense of unclean hands is meritorious.

52.     In a breach of contract claim, the court has the power to grant equitable remedies. The doctrine of unclean hands allows a court to refuse to grant equitable relief sought by one whose conduct in connection with the same matter or transaction has been unconscientious, unjust, or

---

[68] *Mead v. Johnson Group, Inc.*, 615 S.W.2d 685, 687 (Tex. 1981).

[69] *Id.* (emphasis added).

[70] *S. Elec. Servs. v. City of Houston*, 2011 Tex. App. LEXIS 3440, *10-11 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) (citations omitted).

[71] *Madrid*, 2017 U.S. Dist. LEXIS 221452, at *11.

marked by a lack of good faith, or one who has violated the principles of equity and righteous dealing.[72] When a creditor files a claim, it subjects itself to the allowance or disallowance process, which is part of the court's equitable power.[73] Likewise, when the trustee files a fraudulent conveyance action against the creditor, that is also part of the claims-allowance process which is triable *only in equity*.[74]

53.     ERCOT is entitled to assert the affirmative defense of Brazos's unclean hands as a way of precluding equitable relief. ERCOT has alleged sufficient facts to show that Brazos does not come before this court with clean hands. It failed in a whole host of ways and those failures resulted in it seeking bankruptcy protection. It is appropriate for ERCOT to assert this equitable defense in response to the claims Brazos asserts and the relief it seeks.

### 5.     ERCOT's remaining affirmative defenses are meritorious and Brazos has not correctly challenged their validity.

54.     In its Motion, Brazos substantively addresses ERCOT's First Affirmative Defense (prior material breach), Third Affirmative Defense (failure to mitigate), Second, Ninth, and Tenth Affirmative Defenses (lack of causation), and Fifteenth Affirmative Defense (unclean hands). However, in a catchall paragraph at the end of its discussion, Brazos groups "the remainder of ERCOT's affirmative defenses" into one category and requests dismissal of all of ERCOT's

---

[72] *Myrtle Consulting Grp., LLC v. Resulting Partners, Inc.*, 2021 Tex. App. LEXIS 4312, *26 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (citations omitted).

[73] *In re Jensen*, 946 F.2d 369, 373 (5th Cir. 1991) (citing *Granfinanciera v. Nordberg*, 492 U.S. 33, 58 (1989)).

[74] *Id.* (emphasis added); ERCOT is aware that both the 5th Circuit and the *Granfinanciera* court held that a debtor's pre-petition claims are not automatically converted to equitable-only claims when those claims do not arise out of the process of allowances. However, that was with respect to debtor's claims against non-creditor third-parties to augment the estate. Here, however, ERCOT is a creditor and Brazos has continuously asserted that these claims arise out of the claims allowance process. Am. Compl. ¶ 100.

asserted affirmative defenses.[75] It is procedurally improper for Brazos to seek a motion for judgment on the pleadings for affirmative defenses where it fails to address the legal elements of the defenses and fails to identify the basis for which those affirmative defenses are deficient.[76] As a result, the Court should not consider Brazos's improper request that the "remainder of ERCOT's affirmative defenses" be dismissed and Brazos's Motion should be denied.

**E.    The challenged Expert Opinions are relevant to Brazos's claims and ERCOT's affirmative defenses, and Brazos's request to strike the Expert Opinions should be denied.**

55.     In general, all relevant evidence is admissible.[77] Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[78] "The Rule's basic standard of relevance thus is a liberal one."[79] Expert testimony is relevant if it "will assist the trier of fact to understand the evidence or to determine a fact in issue."[80]

56.     The Expert Opinions in this proceeding are critical and relevant to various counts in ***Brazos's own*** Amended Complaint, and not just to ERCOT's affirmative defenses. Specifically, expert testimony regarding Brazos's hedging strategy and winterization practices are relevant to Count 8 because this testimony reveals how Brazos purchased electrical energy from ERCOT in the ordinary course of its business. This testimony is also relevant to Counts 4 and 5, because this

---

[75] Motion ¶ 26-27.

[76] *Great Plains Tr.,* 313 F.3d at 313 (analyzing the standard for a 12(c) motion).

[77] FED. R. EVID. 402.

[78] FED. R. EVID. 401 (emphasis added).

[79] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 587 (1993).

[80] *United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cty., State of Miss.,* 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Daubert,* 509 U.S. at 591); *see also Knight v. Kirby Inland Marine Inc.,* 482 F.3d 347, 352 (5th Cir. 2007) (observing that expert testimony is relevant if its reasoning or methodology can be applied to the facts in issue).

testimony provides insight into the value of electrical energy during Winter Storm Uri. Finally, this testimony provides essential context for Brazos's arguments in Count 1, concerning the parties' conduct under the SFA.

57.     For purposes of this motion, however, each Expert Opinion need only assist the trier of fact to understand the evidence or to determine a single fact in issue to be relevant.

**1.     The Expert Opinions are relevant to evaluating Brazos's ordinary course of business for purposes of Count 8.**

58.     In Count 8 of Brazos's Amended Complaint, Brazos alleges that the electricity and ancillary services charges comprising ERCOT's claim were not incurred in the ordinary course of Brazos's business, as required under 11 U.S.C. § 503(b)(9). The Expert Opinions provide valuable information to refute Brazos's allegations.

59.     Section 503(b)(9) gives administrative priority for claims arising from the sale of goods to the debtor within twenty days of the commencement of the debtor's bankruptcy case in the ordinary course of the debtor's business.[81]

60.     While there is no generally accepted standard for determining the "ordinary course of business" specific to Section 503(b)(9), this concept may be understood by reference to its treatment under either the U.C.C. or other provisions of Bankruptcy Code. In each case, courts look to either the industry's general practice or to the historic practice of the debtor itself to analyze

---

[81] 11 U.S.C. § 503(b)(9); *In re Spencer*, 2016 WL 7156534 at *2 (Bankr. N.D. Miss. Nov. 1, 2016).

whether goods were sold in the ordinary course of business.[82]   These two tests are sometimes referred to as the horizontal and vertical dimension test.[83]

61.     The horizontal test looks to "whether the type of transaction was a 'common practice' in the debtor's industry," while the vertical test analyzes "whether a creditor could 'reasonably expect' a debtor to enter into that type of post-petition transaction."[84] Indeed, in its initial objection to the priority status of ERCOT's claim under Section 503(b)(9), Brazos referred to the horizontal dimension test and the vertical dimension test for determining whether it purchased electrical energy from ERCOT in the ordinary course of a its own business.[85]   The Expert Opinions are relevant to both tests.

62.     The Expert Opinions are relevant to the vertical dimension test, since they illustrate how Brazos's reliance on the Day-Ahead and Real-Time Markets and its decision not to invest in additional generation units was part of an overall strategy to reduce costs on a day-to-day basis, even though this strategy meant Brazos was vulnerable to market volatility.[86] Indeed, the Expert

---

[82] *See In re SemCrude, L.P.*, 504 B.R. 39, 64 (Bankr. D. Del. 2013) ("A person buys goods in the ordinary course if the sale to the person comports with the usual or customary practices in the kind of business in which the seller is engaged or with the seller's own usual or customary practices") (citing U.C.C. § 1-201(b)(9)); *In re PMC Mktg. Corp.*, 517 B.R. 386, 391 (1st Cir. BAP 2014) (noting that the meaning of "goods" under § 503(b)(9) is primarily informed by the meaning of goods under Article 2 of the UCC and collecting cases); *In re Willow Bend Ventures, LLC*, 2019 Bankr. LEXIS 1621, at *25, 2019 WL 2252498 at *11 (Bankr. E.D. La. May 24, 2019).

[83] *See* 4 Collier on Bankruptcy ¶ 503.06 ("The horizontal dimension test focuses on whether other businesses in the same industry engage in the same type of transaction on a regular basis . . . [whereas the] vertical dimension test focuses on the expectations of the creditors of the estate.").

[84] *In re Ohio Valley Amusement Co*., 2008 Bankr. LEXIS 3191, at *12, 2008 WL 5062464, at *4 (Bankr. N.D.W. Va. Dec. 1, 2008); *In re Roth Am., Inc.,* 975 F.2d 949 (3d Cir. 1992).

[85] In re Brazos Elec. Power Coop., Inc., No. 21-30725 (DRJ) (Bankr. S.D. Tex.), Debtor's Obj. to ERCOT's Proof of Claim [Bankr. Dkt. No. 930] at 76.

[86] *See* Graves Report at 42-43 ███████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████████

Opinions reveal Brazos's practice of hedging against spikes in demand during summer periods, but not winter periods, notwithstanding its own historical data showing the potential for winter peaks (including prior winter periods where demand for energy caused prices to rise to the market-wide cap).[87] The Expert Opinions also demonstrate Brazos's consistent and intentional practice of under-investing in their own fleet of generators, with the knowledge, expectation, and past practice of satisfying excess demand in reliance on the ERCOT spot markets.[88]

63.     The Expert Opinions also bear on the horizontal dimension test, since they contextualize Brazos's strategy of relying on the ERCOT Day-Ahead and Real-Time Markets within industry practice. Specifically, the Expert Opinions show how ERCOT market participants have a range of tools at their disposal to manage their exposure to price risk, including investment in physical generation assets and engaging in financial hedges. The Expert Opinions indicate that Brazos's practice of relying on the ERCOT Day-Ahead and Real-Time Markets, while risky during periods of scarcity, can constitute a legitimate business strategy within the ERCOT market.[89] Thus, the Expert Opinions are relevant to understanding why it would be reasonable to expect a hypothetical post-petition Brazos to continue to purchase energy on the ERCOT Day-Ahead and Real-Time Markets under certain circumstances.

---

██████████████████████████████████████████████████ Filsinger Report
at 2 ██
██████████████████████████████████████

[87] *See* Sotkiewicz Report at 6, Table 1.

[88] Sotkiewicz Report at 8 ████████████████████████████████
██████████████████████████████

[89] *See, e.g.,* Graves Report at 43 ███████████████████████
████████████████████████████████████

**2.      The Expert Opinions are relevant to evaluating the value that Brazos paid for energy during Winter Storm Uri, for purposes of Counts 4 and 5.**

64.      In Counts 4 and 5 of Brazos's Amended Complaint, Brazos brought constructive fraudulent transfer claims pursuant to 11 U.S.C. § 548(a)(1)(B) of the Bankruptcy Code and § 24.005(a) of the Texas Uniform Fraudulent Transfer Act.  In each, Brazos seeks to avoid ERCOT's claim on the grounds that Brazos did not receive "reasonably equivalent value" for the obligations to ERCOT it incurred during Winter Storm Uri. The Expert Opinions provide context for showing that Brazos did in fact receive "reasonably equivalent value" when it purchased energy from the ERCOT markets during Winter Storm Uri.

65.      "[T]he question of reasonable equivalence is usually a question of fact, or is at least fact-intensive."[90] Rather than apply a mathematical rule, courts in the Fifth Circuit use the "totality of circumstances" to determine whether a debtor made a transfer or incurred an obligation for "reasonably equivalent value."[91] The relevant time frame for determining value is the time when the transfers took place.[92]

66.      Expert testimony often plays an important role in the fact-intensive analysis to determine reasonably equivalent value. "The detailed fact-finding and valuation entailed in the reasonably equivalent value analysis often requires the fact finder to assess the contrary opinions

---

[90] *In re Erlewine*, 349 F.3d 205, 209 (5th Cir. 2003).

[91] *In re WRT Energy Corp*., 282 B.R. 343, 405 (Bankr. W.D. La. 2001).

[92] *Janvey v. Golf Channel, Inc.,* 487 S.W.3d 560, 574 (Tex. 2016 (reasoning that under TUFTA, "whether an exchange was made for reasonably equivalent value is evaluated objectively at the time of the transfer, not in retrospect."); *In re Fairchild Aircraft Corp.,* 6 F.3d 1119, 1126 (5th Cir. 1993) (for purposes of Section 548, a particular transaction "must be evaluated as of the time it was made and during the time it was implemented"), abrogated on other grounds by *In re Dunham,* 110 F.3d 286 (5th Cir. 1997).

of the competing experts."[93]  Here, the Expert Opinions contain multiple insights into the value of the energy that Brazos purchased from ERCOT, with direct relevance for Counts 4 and 5.

67.     The Expert Opinions shed light into industry standards for buying and selling energy in the ERCOT market; in other words, how pricing works in the ERCOT Day-Ahead and Real-Time Markets.[94] The Expert Opinions detail how, during periods of extreme scarcity and natural gas curtailments, pricing in the ERCOT spot markets can fluctuate.[95]  The testimony illustrates how market participants, including Brazos, ███████████████████████████ ██████████████████████████████.[96] For instance, the Sotkiewicz report draws upon Brazos's self-reported data to illustrate that it previously purchased energy at the then-existing cap during periods of high demand.[97] All of these factors are relevant to determining the value of the electrical energy Brazos received during Winter Storm Uri.

68.     To understand ERCOT market pricing, it is necessary to understand how market participants use financial and physical hedging to manage pricing risk. The Expert Opinions explain how ERCOT's Real-Time and Day-Ahead Markets, while a viable method of purchasing electrical energy, are effectively markets of last resort, particularly when natural gas curtailment and other scarcity conditions are present. Filsinger explains that such scarcity conditions, while rare, were not unprecedented in Texas prior to Winter Storm Uri,[98] and accordingly market

---

[93] *In re WRT*, 282 B.R. at 405; *see also Weaver v. Kellogg*, 216 B.R. 563, 574 n.13 (S.D. Tex. 1997).

[94] *See generally* Filsinger Report at 10-14 ████████████████████████████████

[95] *See* Filsinger Report at 17.

[96] *See* Filsinger Report at 63 (pointing to reports forecasting severe weather that were circulated to Brazos in early February 2021 and ███████████████████████████████████████ ████████████████████████████████████████████████████████

[97] *See* Sotkiewicz Report at 5-10.

[98] *See generally* Filsinger Report at 15-17, Section 3.

participants (including Brazos) evaluate these risks to the energy market and use hedges to mitigate against shortfalls on an ongoing basis.

69.    Notably, the Expert Opinions describe Brazos's winter hedging strategy, which covered only the average projected load exposure for the winter, and they explain the logical result of this strategy: that even if all of Brazos's wholly-owned generation operated at capacity, Brazos would be exposed ███████████████████████████████  and the remainder would need to come from the ERCOT spot markets.[99]

70.    Moreover, the Expert Opinions ████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████.[100]

Stated differently, Brazos took a bet to rely on energy costs set by the Day-Ahead and Real-Time Markets, rather than a pre-set hedge.

71.    Most fundamentally, by detailing the capacity of Brazos's own generation facilities, the Expert Opinions illustrate how ERCOT's energy was cheaper than any energy that Brazos could have generated with its own facilities during Winter Storm Uri.[101] During this period, all power generation was severely constrained and electrical energy was scarce, ████████ ████████████████████████████████████████████████████

---

[99] *See* Sotkiewicz Report at 8 ████████████████████████████ ████████████████████████

[100] *See* Filsinger Report at 62 ████████████████████████████████ ████████████████████Graves Report at 49-50████████████

[101] *See* Filsinger Report at 42; Sotkiewicz Report at 27.

███████████████████████[102]   Indeed, had prices not been capped at the regulatory-set limit, the demand for energy between February 14 and February 19 may have forced prices to rise beyond $9,000/MWh, and market participants with constrained generation facilities, like Brazos, may have needed to purchase energy at a higher market price.[103]

72.     Accordingly, the Expert Opinions bear upon the value of energy that Brazos purchased from ERCOT during Winter Storm Uri, relevant to Counts 4 and 5 of its Amended Complaint.

**3.      The Expert Opinions are relevant to Brazos's arguments about the duty to mitigate pursuant to the SFA.**

73.     In its Amended Complaint, Brazos alleges that ERCOT is subject to a duty to mitigate pursuant to the SFA and Texas law. But Brazos is subject to those same obligations as a party to the SFA.[104]   The Expert Opinions provide context for Brazos's actions (and inactions) in the context of industry practice as to financial hedging and winterization. ███████████

███████████████████████████████████████████

███████████[105]

74.     For example, Mr. Graves describes how Brazos's own generation units performed significantly worse than the ERCOT average, and details how Brazos's lack of adequate

---

[102] *See* Graves Report at 46-47 ████████████████████████
███████████████████████████████████████████

[103] *Cf.* Graves Report at 34 n. 62 (providing support for the position that energy prices during forced outages should rise to approximately $20,000/MWh or higher).

[104] *See* SFA, § 8(D).

[105] *See* Graves Report at 51-54, Section 4 ████████████████████
███████████████████████████████████████

winterization and preparation led to this result.[106] In addition, Section 5 of the Filsinger Report provides extensive detail regarding operational failures in Brazos's facilities resulting from inadequate preparation, including a lack of firm gas supply contracts to hedge against natural gas curtailments, lack of weatherization preparedness, failure to follow winter operational procedures, fuel oil operations failures, and other equipment failures.[107]

75.    Likewise, Dr. Sotkiewicz presents data showing how since 2011, Brazos ████



████████████████████████████████████████[108]  Noting

Brazos's practice to ██████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████.[109]

76.    Brazos's failure to adequately hedge against pricing spikes, and its resulting exposure to the Day-Ahead and Real-Time Markets, demonstrate that Brazos made a conscious decision to be exposed to scarcity pricing when this pricing arose during Winter Storm Uri. Accordingly, the Expert Opinions shed light into Brazos's actions and inactions to address its exposure to known risks.

**4.    The Expert Opinions provide the Court with information relevant to understanding the causal link connecting Brazos's own risk strategy, its exposure to scarcity pricing, and its obligations owed to ERCOT.**

77.    Brazos's Amended Complaint makes a causal argument between ERCOT's winterization efforts and the impact on market participants, alleging that "[b]ased on past

---

[106] *See* Graves Report at 48 ████████████████████████████████████
████████████████████████████████

[107] Filsinger Report at 33-50, Section 5.

[108] Sotkiewicz Report at 8-9.

[109] Sotkiewicz Report at 6 ████████████████████████████████████████
████████████████████████████████████████████████

experience of rolling blackouts due to severe winter weather," ERCOT should have "instituted various tools it had at its disposal."[110]  Yet the Amended Complaint fails to explain why Brazos was unique among its peers in the extent of its exposure to price fluctuations in the ERCOT market. It is no coincidence that Brazos's debt makes up nearly two-thirds of the $3 billion market shortfall.

78.    The Expert Opinions help resolve this apparent incongruity, explaining how Brazos's ongoing practice of relying upon the ERCOT wholesale markets, its failure to take advantage of hedging opportunities in the weeks before Winter Storm Uri, and its winterization practices all culminated in Brazos purchasing substantial electrical energy from ERCOT's markets at scarcity pricing. ██████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████[111]  Accordingly, this evidence will inform the Court's understanding of causation in pricing and electrical energy costs, as relevant to the Amended Complaint.

### 5.    The Expert Opinions should be judged on the merits at trial.

79.    As trier of fact, the Court is well positioned to assess the significance of the Expert Opinions during trial, pursuant to the adversary process.  "A trial judge sitting without a jury is entitled to greater latitude in the admission or exclusion of evidence."[112] While the trial court traditionally acts as a gatekeeper to protect a jury from unreliable or irrelevant expert evidence, there is less risk of prejudice in bench trials.[113]

---

[110] Am. Compl. ¶ 88.

[111] Graves Report at 51 ████████████████████████████████████
██████████████████████

[112] *S. Pac. Transp. Co. v. Chabert*, 973 F.2d 441, 448 (5th Cir. 1992).

[113] *See In re MBS Mgmt. Servs., Inc.*, 690 F.3d 352, 357-58 (5th Cir. 2012) ("Most of the safeguards provided for in Daubert are not as essential in a case such as this where a judge sits as the trier of

80.     Because the adversary system provides ample opportunity to present contrary evidence, cross-examine the experts retained by counterparties, and otherwise dispute the substance of expert evidence on the merits, "the rejection of expert testimony is the exception rather than the rule."[114] The Fifth Circuit has held that "[a]s a general rule, questions relating to the bases and sources of an [party's] opinion affect the weight to be assigned that opinion rather than its admissibility."[115]

81.     Admitting the Expert Opinions will not prejudice Brazos or any other party; if admitted, this testimony is likely to assist the Court in evaluating various issues in dispute. Brazos will have full opportunity to cross-examine the authors of the challenged reports; indeed, that is the purpose of the adversary system.

82.     By contrast, an order striking the Expert Opinions would obstruct the complete resolution of this adversary proceeding by imposing unnecessary constraints on the parties' ability to fully engage with each issue in dispute. Such a result would prejudice ERCOT and the Defendant-Intervenors from responding to Brazos's specific claims and allegations, including those concerning Brazos's business practices, the value of electrical energy during Winter Storm Uri, and the parties' obligations under the SFA.

---

fact in place of a jury.") (quoting *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000)) (alterations removed).

[114] *Puga v. RCX Sols., Inc*., 922 F.3d 285, 294 (5th Cir. 2019) (quoting Fed. R. Evid. 702 advisory committee's notes (2000)).

[115] *Viterbo v. Dow Chemical Co*., 826 F.2d 420, 422 (5th Cir. 1987).

## IV.   CONCLUSION

ERCOT and the Defendant-Intervenors respectfully request that the Court deny Brazos Electric Power Cooperative, Inc.'s Motion for Judgment on the Pleadings and Entry of an Order Striking Certain Expert Opinions and enter the Order attached as Exhibit "D."

Dated: January 7, 2022

Respectfully submitted,

**MUNSCH HARDT KOPF & HARR, P.C.**

By: */s/ Jamil N. Alibhai*
    Kevin M. Lippman
    Texas Bar No. 00784479
    klippman@munsch.com
    Deborah Perry
    Texas Bar No. 24002755
    dperry@munsch.com
    Jamil N. Alibhai
    Texas Bar No. 00793248
    jalibhai@munsch.com
    Ross Parker
    Texas State Bar No. 24007804
    rparker@munsch.com

    3800 Ross Tower
    500 N. Akard Street
    Dallas, Texas  75201-6659
    Telephone: (214) 855-7500
    Facsimile:  (214) 855-7584

**COUNSEL FOR ELECTRIC RELIABILITY COUNCIL OF TEXAS, INC.**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**

By: */s/ Mark McKane*
David R. Seligman, P.C. (admitted pro hac vice)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email: david.seligman@kirkland.com

Mark McKane, P.C. (admitted pro hac vice)
555 California Street
San Francisco, California 94104
Telephone:    (415) 439-1400
Facsimile:    (212) 439-1500
Email: mark.mckane@kirkland.com

Aparna Yenamandra (admitted pro hac vice)
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email: aparna.yenamandra@kirkland.com

**COUNSEL FOR CALPINE CORPORATION**

**SHEARMAN & STERLING LLP**

By: */s/ Ian E. Roberts*
C. Luckey McDowell (SBT 24034565)
Ian E. Roberts (SBT 24056217)
2828 N. Harwood Street, Suite 1800
Dallas, Texas 75201
Telephone: (214) 271-5777
Email: luckey.mcdowell@shearman.com
Email: ian.roberts@shearman.com

Joel Moss (admitted pro hac vice)
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (212) 848-4693
Email: joel.moss@shearman.com

Jonathan M. Dunworth (admitted pro hac vice)
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 848-5288
Email: jonathan.dunworth@shearman.com

**COUNSEL FOR NRG ENERGY, INC., ENGIE
ENERGY MARKETING NA, INC., TALEN
ENERGY SUPPLY, LLC, AND NEXTERA
ENERGY MARKETING, LLC**

**ROSS & SMITH, PC**

By*: /s/ Judith Ross*
Judith Ross
700 North Pearl Street, Suite 1610
Dallas, TX 75201
Telephone:     (214) 377-8659
Email:  judith.ross@judithwross.com

**COUNSEL TO TENASKA POWER SERVICES CO.**

**HAYNES AND BOONE, LLP**

By: */s/ Patrick L. Hughes*
Patrick L. Hughes
Texas State Bar No. 10227300
David Trausch
Texas State Bar No. 24113513
1221 McKinney, Suite 4000
Houston, TX 77010
Telephone:     (713) 547-2000
Facsimile:     (713) 547-2600
Email:  patrick.hughes@haynesboone.com
Email:  david.trausch@haynesboone.com

**COUNSEL TO SOUTH TEXAS ELECTRIC COOPERATIVE, INC.**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on January 7, 2022, I caused a copy of the foregoing document to be served via e-mail on all counsel of record in this matter.


<u>/s/  Jamil N. Alibhai</u>
Jamil N. Alibhai

# APPENDIX A

The following topics relevant to ERCOT's affirmative defenses were included in ERCOT's Notice of Rule 30(B)(6) Deposition to Brazos:

- Topic 1 - Brazos's contractual obligations under the SFA.
- Topic 2 - Brazos's performance under the SFA from February 1 – 28, 2021.
- Topic 3 - Brazos's contractual and legal obligations under the Protocols.
- Topic 5 - Brazos's performance under the Protocols from February 1 – 28, 2021.
- Topic 21 - Brazos's bilateral purchased volumes during Winter Storm Uri.
- Topic 23 - The reasons why Brazos's generation resources and transmission facilities were unavailable at any point in time during Winter Storm Uri.
- Topic 39 - Any weatherization plans or the weatherization sections of any emergency operations plans for Brazos, and any updates to those plans submitted to ERCOT or the PUCT from January 1, 2019 to present.
- Topic 40 - Brazos's compliance with its weatherization plans or the weatherization section of any emergency operations plans from January 1, 2019 to present.
- Topic 45 - Contracts and hedging arrangements to which Brazos is a party from January 1, 2019 to present.
- Topic 47 - Generation capacity across Brazos's generation and transmission facilities during Winter Storm Uri.
- Topic 57 - Any hedging program or hedging arrangements employed by Brazos from January 1, 2019 to the present to mitigate risk related to (i) wholesale electricity prices and interest-rate exposure for any portion of its debt levels; and/or (ii) its dependence on natural gas for generating power.
- Topic 58 - Hedging programs in effect at Brazos between February 2019 and March 1, 2021.
- Topic 60 - All power purchase contracts, sales, and hedging arrangements (including but not limited to forward energy contracts and heat-rate options) that Brazos signed during the week beginning February 8, 2021 for a delivery period that includes any part or all of delivery dates February 14, 2021 through February 21, 2021.
- Topic 61 - All natural gas purchase contracts, sales, and hedging arrangements that the Brazos signed during the week beginning February 8, 2021 for a delivery period that includes any part or all of delivery dates February 14, 2021 through February 21, 2021.
- Topic 69 - Brazos's efforts to mitigate or offset any non-performance events during Winter Storm Uri (including but not limited to startup problems, lack of fuel delivery, or other causes of forced outage) for each unit owned or contracted by Brazos.
- Topic 71 - Mitigation efforts, if any, that Brazos employed to limit the amount of power purchased by Brazos during Winter Storm Uri.

# APPENDIX B

The following topics relevant to ERCOT's affirmative defenses were included in Brazos's Notice of Rule 30(B)(6) Deposition to ERCOT:

- Topic 1 - ERCOT's contractual and legal obligations under the Standard Form Market Participant Agreement to which the Debtor and ERCOT are parties (the "SFA"), that was executed in January 2015, effective as of April 2015, and supplemented in May 2015.
- Topic 7 - ERCOT's contractual and legal obligations under the Protocols.
- Topic 26 - ERCOT's statement that Debtor was in default prior to the petition date.
- Topic 31 - ERCOT's efforts to mitigate any portion of the amount of its Proof of Claim.
- Topic 38 - Any fact supporting the affirmative defenses asserted in ERCOT's Answer.

# APPENDIX C

The following Requests for Production and Requests for Admission relevant to ERCOT's affirmative defenses were served on Brazos:

*Requests for Production:*

- First Request for Production No. 23 - Documents and communications regarding the Debtor's knowledge beginning on February 6, 2021 and through February 20, 2021, of the threat that potentially dangerous extreme cold weather was coming to or had come to Texas.
- First Request for Production No. 30 - Documents and communications regarding any hedging program or hedging arrangements employed by the Debtor to mitigate risk related to (i) wholesale electricity prices and interest-rate exposure for any portion of its debt levels; and/or (ii) its dependence on natural gas for generating power.
- First Request for Production No. 48 - All power purchase contracts, sales, and hedging arrangements (including but not limited to forward energy contracts and heat-rate options) that Debtor signed during the week beginning February 8th for a delivery period that includes any part or all of delivery dates February 14, 2021 through February 21, 2021.
- First Request for Production No. 50 - All natural gas purchase contracts, sales, and hedging arrangements that Debtor signed during the week beginning February 8th for a delivery period that includes any part or all of delivery dates February 14, 2021 through February 21, 2021.
- First Request for Production No. 51 - Documents sufficient to show the details of the "robust hedging program" or programs, as that phrase is used in ¶ 33 of the Karnei Declaration, in effect at Brazos between February 2019 and February 2021.
- First Request for Production No. 55 - Documents reflecting Debtor's efforts to mitigate or offset any non-performance events during the period of February 14, 2021 through February 20, 2021 (including but not limited to startup problems, lack of fuel delivery, or other causes of forced outage) for each unit owned or contracted by Debtor.
- First Request for Production No. 64 - Documents sufficient to show Debtor's estimating and planning with respect to the amount of power that would be required during Winter Storm Uri and/or constituting Debtor's emergency readiness and response plans and procedures for Winter Storm Uri
- First Request for Production No. 73 - Documents created or reviewed by Debtor in connection with the preparation of any weatherization plans or the weatherization sections of any emergency operations plans, and any updates to those plans submitted to ERCOT or the PUCT from June 17, 2011 to the present.
- First Request for Production No. 75 - Documents and communications related to Debtor's 2020 Declaration of Completion of Generation Resource Winter Weatherization Preparations as required by Protocol Section 22, Attachment O, from January 1, 2020 to the present.
- Second Request for Production No. 12 - Documents reflecting Brazos's efforts to mitigate or offset any non-performance events during the period February 14, 2021 through February 20, 2021 (including but not limited to start up problems, lack of fuel delivery, or other causes of forced outage) for each unit owned or contracted by Brazos.

36

- Second Request for Production No. 16 - Documents reflecting any breach or default by Brazos under the SFA or the Protocols.
- Third Request for Production No. 16 - Documents and communications regarding the weatherization status of Brazos's generation resources that are owned, or under contract, including but not limited to heat tracing to ensure fuel delivery, environmental controls such as demineralized water production and heat tracing, building and insulation to protect generation resources from cold weather from January 1, 2019 to March 31, 2021.
- Third Request for Production No. 32 - Documents sufficient to show the weatherization investments and expenses by year incurred from January 1, 2010 through March 31, 2021 for each resource owned or contracted by Brazos.
- Third Request for Production No. 34 - Documents and communications regarding weatherization capital spending at the time of construction including but not limited to insulation, trace heating, protective structures, and any communications and determinations made on the final weatherization investment prior to commercial operation for each resource owned or contracted by Brazos.

*Requests for Admission:*
- Request for Admission No. 36 - Please admit or deny that Brazos had a duty under the SFA to mitigate any damages it incurred as a result of Winter Storm Uri.
- Request for Admission No. 49 - Please admit or deny that Brazos did not have a sufficient natural gas supply to operate all of its generating facilities during Winter Storm Uri.
- Request for Admission No. 50 - Please admit or deny that Brazos failed to enter into bilateral transactions to purchase enough natural gas to run all of its generating facilities during Winter Storm Uri.

# APPENDIX D

The following Requests for Production, Interrogatories, and Requests for Admission relevant to ERCOT's affirmative defenses were served by Brazos on ERCOT:

*Requests for Production*

- First Request for Production No. 10 - All documents and communications related to any contract between ERCOT and Brazos.
- First Request for Production No. 11 - All documents and communications related to the calculation of any invoice sent to Brazos.
- First Request for Production No. 12 - All documents and communications related to the existence of a force majeure event during or following Winter Storm Uri.
- First Request for Production No. 15 - All documents and communications concerning any actual or contemplated deviation from the ERCOT Protocols.
- Second Request for Production No. 1 - All documents and communications related to ERCOT's efforts to mitigate the ERCOT Claim.

*Interrogatories*

- Interrogatory No. 2 - Identify what amount Brazos Electric would owe ERCOT for wholesale energy charges for the period February 12, 2021 through February 20, 2021 if such amount is calculated solely according to the protocols in effect during the same period.
- Interrogatory No. 3 - Describe in detail any breaches by Brazos Electric of the SFA or protocols and any Event of Default committed by Brazos Electric under the SFA or protocols prior to and up until the time Brazos Electric sent ERCOT a force majeure notice. Your response should identify both monetary and non-monetary breaches and/or Events of Default.
- Interrogatory No. 5 - Describe in detail how Brazos Electric's allegations within Count 1 of its Complaint are contrary to the terms of the SFA as set forth in Section IV.A.1. of ERCOT's Motion to Dismiss. Your response should identify the persons, documents, electronically stored information, and/or tangible things supporting this position.
- Interrogatory No. 6 - Describe in detail how Brazos Electric's allegations within Count 3 of its Complaint contradict the SFA's provisions requiring payment even when a Force Majeure Event occurs as set forth in Section IV.A.2. of ERCOT's Motion to Dismiss. Your response should identify the persons, documents, electronically stored information, and/or tangible things supporting this position.
- Interrogatory No. 8 - Describe in detail any failure by ERCOT to comply with the specific change process under the SFA that states that "the ERCOT Protocols, as amended in accordance with the change procedures(s) described in the ERCOT Protocols, in effect at the time of the performance or non-performance of an action, shall govern with respect to that action," as it relates to ERCOT's decision to alter the energy price calculation methodology during Winter Storm Uri. Your response should identify the persons, documents, electronically stored information, and/or tangible things related to the failure, and specify the date of the failure.
- Interrogatory No. 9 - Describe in detail all contemplated acts or actual acts that were taken by ERCOT or on behalf of ERCOT to attempt to mitigate the amounts ultimately included in ERCOT's invoicing to Brazos Electric as a result of Winter Storm Uri. Your response

should identify the persons, documents, electronically stored information, and/or tangible things related to the act, and specify the date of the act.

*Requests for Admission*

- Request for Admission No. 10 - Please admit or deny that it is ERCOT's understanding that ERCOT agreed within the SFA to discharge its respective duties and responsibilities under the ERCOT protocols.
- Request for Admission No. 11 - Please admit or deny that it is ERCOT's understanding that the contractual relationship between Brazos Electric and ERCOT is governed by the SFA and the incorporated ERCOT protocols.
- Request for Admission No. 23 - Please admit or deny that it is ERCOT's understanding that ERCOT invoices for energy charges during Winter Storm Uri caused, in any part, Brazos Electric to file its voluntary petition for relief under chapter 11 of the Bankruptcy Code.
- Request for Admission No. 24 - Please admit or deny that it is ERCOT's understanding that the protocols govern the pricing of wholesale energy in ERCOT.
- Request for Admission No. 34 - Please admit or deny that ERCOT did not follow Protocol 21.5, or any other change procedure provided under the protocols, when it adjusted the calculation of the Real-Time On-Line Reliability Deployment Price Adder to account for firm load shed during the period February 15-19, 2021.
- Request for Admission No. 40 - Admit or deny that it is ERCOT's understanding that Section 8 of the SFA provides that if, due to a Force Majeure Event (as defined in the SFA), Brazos Electric is in breach with respect to any obligations under the SFA, such breach shall not result in a Default (as defined in the SFA) by Brazos Electric.
- Request for Admission No. 43 - Admit or deny that ERCOT attempted to mitigate the amounts invoiced to Brazos Electric that are included in the ERCOT Claim.
- Request for Admission No. 44 - Admit or deny that it is ERCOT's understanding that the SFA or other applicable Texas law impose a duty on ERCOT to mitigate damages.
- Request for Admission No. 45 - Admit or deny that it is ERCOT's understanding that ERCOT could not have reduced its claim without undue risk, burden, or humiliation.