# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>BRAZOS ELECTRIC POWER COOPERATIVE, INC.,[1]<br><br>  Debtor. | Chapter 11<br><br>Case No. 21-30725 (DRJ) |
| BRAZOS ELECTRIC POWER COOPERATIVE, INC., *et al.*,[2]<br><br>  Plaintiffs,<br><br>v.<br><br>ELECTRIC RELIABILITY COUNCIL OF TEXAS, INC., *et al*.,[3]<br><br>  Defendants. | Adv. Proc. No. 21-03863 (DRJ) |

## ELECTRIC RELIABILITY COUNCIL OF TEXAS, INC.'S RESPONSE IN OPPOSITION TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' MOTION FOR SUMMARY JUDGMENT

[Relates to Adv. Dkt. No. 281]

---

[1] The Debtor in this chapter 11 case, along with the last four digits of its federal tax identification number is: Brazos Electric Power Cooperative, Inc. (4729). Additional information regarding this case may be obtained on the website of the Debtor's proposed claims and noticing agent at http://cases.stretto.com/Brazos. The Debtor's address is 7616 Bagby Avenue, Waco, TX 76712.

[2] The Plaintiff-Intervenors in this Adversary Proceeding are: the Official Committee of Unsecured Creditors, Mid-South Electric Cooperative Association; Denton County Electric Cooperative, Inc., d/b/a CoServ Electric; United Electric Cooperative Services, Inc., d/b/a United Cooperative Services; Tri-County Electric Cooperative, Inc.; Bartlett Electric Cooperative, Inc.; Comanche County Electric Cooperative Association; Cooke County Electric Cooperative Association, Inc. d/b/a PenTex Energy; Hamilton County Electric Cooperative Association; Heart of Texas Electric Cooperative, Inc.; J-A-C Electric Cooperative, Inc.; Navasota Valley Electric Cooperative, Inc.; and Wise Electric Cooperative, Inc.

[3] The Defendant-Intervenors in this Adversary Proceeding are: Calpine Corporation; Tenaska Power Services Co.; NRG Energy, Inc.; ENGIE Energy Marketing NA, Inc.; Talen Energy Supply, LLC; Golden Spread Electric Cooperative, Inc.; South Texas Electric Cooperative; and NextEra Energy Marketing, LLC.

Electric Reliability Council of Texas, Inc. ("ERCOT") files this *Response in Opposition to the Official Committee of Unsecured Creditors' Motion for Summary Judgment* [Dkt. No. 281].[4]

## I. SUMMARY OF ARGUMENT

1. The Committee of Unsecured Creditors ("UCC") has not met its burden to obtain summary judgment on Count 8, ordinary course of business. The UCC, mistakenly labeling the ordinary-course-of-business inquiry as a "pure question of law," fails to point out any relevant, binding authority demonstrating it is entitled to judgment as a matter of law. And to the extent it relies on facts, it has failed to adduce competent summary-judgment evidence in support of its position.

2. Ordinary course of business is a factual inquiry. ERCOT has identified unrebutted and undisputed evidence demonstrating that Brazos did indeed incur the charges forming the ERCOT claim in the ordinary course of its business. The Court should deny the UCC's motion.

## II. BACKGROUND

3. ███████████████████████████████████████████████████████

██████████████████████████████ Brazos does so by, among other things, participating in the ERCOT wholesale electricity market.

---

[4] Brazos joined the UCC's motion for summary judgment [Dkt. No. 288]. It also filed its own motion for summary judgment [Dkt. No. 287]. Now, as now part of its response to ERCOT's motion for summary judgment, Brazos also supports its and the UCC's motions for summary judgment. This is procedurally improper because the deadline to file motions for summary judgment (and briefs in support) was January 6, 2022. ERCOT will respond to the arguments raised by Brazos in its reply in support of its motion for summary judgment.

[5] ███████████████████████████████████████████

[6] ███████████████████

4. 

5.



### III. ARGUMENT AND AUTHORITIES

6. The Court should deny the UCC's motion for summary judgment because the UCC fails to meet its summary-judgment burden and because unrebutted facts in the record demonstrate the transactions at issue were in the ordinary course of Brazos's business. Moreover, the Court should grant ERCOT summary judgment on Count 8 for the reasons stated in *ERCOT's Motion for Partial Summary Judgment* [Dkt. No. 279].

**A.     The UCC fails to meet its summary-judgment burden.**

7. The UCC seeks summary judgment on a claim brought by Brazos in its amended complaint, but this is an issue on which ERCOT ultimately bears the burden of proof. If the party seeking summary judgment "does not bear the burden of proof" on the claim or defense at issue, "he should be able to obtain summary judgment simply by disproving the existence of any essential element of the opposing party's claim or affirmative defense."[15] Only then does the burden shift to the nonmovant to demonstrate that summary judgment should not be granted.[16] But a summary-judgment motion cannot be supported by unsubstantiated assertions.[17] Rather, the summary-judgment movant must inform the court of the basis for its motion and identify "those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any," that demonstrate there are no issues of material fact and that there is an absence of evidence to support the nonmovant's case.[18]

8. The UCC does not meet this burden. The UCC cites no evidence in support of its motion, because—according to the UCC—"Count 8 presents a pure question of law."[19] But in the

---

[15] *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original).

[16] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[17] *Id.*

same breath, the UCC relies on the "undisputed" *facts* that Winter Storm Uri itself and the loss of power, load shed, and energy pricing during it were "extraordinary" and "unprecedented."[20] In suggesting these facts are undisputed, the UCC relies on argument contained in *ERCOT's Motion to Dismiss and for Abstention* [Dkt. No. 23], *ERCOT's Motion for Partial Summary Judgment* [Dkt. No. 279], and *Appellants' Motion for Certification of Direct Appeal* [Appeal Dkt. No. 20].[21] But arguments of counsel are not evidence.[22]

9. The UCC's legal support is likewise unhelpful. Claiming that its motion presents a pure question of law, the UCC argues that the transactions at issue fall outside the ordinary course of business because (1) the circumstances precipitating the price of energy and (2) the price of energy itself were both extraordinary.[23] But the case law the UCC cites to support this proposition falls flat.[24]

---

[18] *Royal Surplus Lines Ins. Co. v. Brownsville Indep. Sch. Dist.*, 404 F. Supp. 2d 942, 948 (S.D. Tex. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

[19] Mot. ¶ 23.

[20] *Id.* ¶¶ 23, 33.

[21] *See Celotex*, 477 U.S. at 324 (a nonmovant may not defeat a summary-judgment motion by reference to pleadings).

[22] *Highland Cap. Mgmt., LP v. Bank of Am., Nat'l Ass'n.*, 2013 U.S. Dist. LEXIS 119935, at *21–22 (N.D. Tex. Aug. 23, 2013) ("Highland's pleadings and any statements by counsel relied on by Ms. Taylor constitute arguments by counsel, not evidence.").

[23] *See, e.g.*, Mot. ¶ 28.

[24] *See In re Hechinger Inv. Co. of Del., Inc.,* 489 F.3d 568, 577 (3d Cir. 2007); *In re Seawinds, Ltd.*, 91 B.R. 88, 91–92 (Bankr. N.D. Cal. 1988); *In re Valley Steel Products Co.*, 166 B.R. 1017 (Bankr. E.D. Mo. 1993); *In re Essential Fin. Educ.*, 629 B.R. 401, 450 (Bankr. N.D. Tex. 2021); *Huennekens v. Marx,* 154 B.R. 214, 224 (Bankr. E.D. Va. 1993).

10. Most of the UCC's cases involve conscious, unilateral conduct of a creditor—during a debtor's slide toward bankruptcy—to obtain payment prepetition.[25] And one of them deals with a "special" purchase that "exceeded the scope of" the parties' prior dealings.[26]

11. There has been no drastic change of credit terms, no special purchase, no demands inconsistent with the preexisting relationship between Brazos and ERCOT. Rather, the things the UCC argues bring the transactions outside the ordinary course—the demand for and the range of prices of energy—are part of the ERCOT wholesale electricity market. This is not a scenario involving a creditor that, seeing the debtor headed for bankruptcy, changed the terms of the relationship or raised its prices to ensure it received its money prepetition. Rather, Brazos would have ERCOT's claim relegated to non-priority status on the ground that *Brazos* made purchases in a wholesale marketplace during a period of high demand and price. The UCC has neither established that demand and pricing are factors utilized in determining the ordinary course of business nor has it brought Brazos's transactions outside ordinary course of business as a matter of law.[27] The UCC fails to meet its burden on summary judgment.

---

[25] *Hechinger*, 489 F.3d at 577 (transfers at issue were avoidable because they were made after the transferee drastically changed the credit terms that generally applied between the parties); *Seawinds*, 91 B.R. at 92 (a creditor "terminat[ed] its contracts with a struggling debtor, demand[ed] immediate payments and return of [leased] equipment, and then rais[ed] rates on any remaining equipment" thus "using economic pressure to obtain payment as soon as possible"); *Essential*, 629 B.R. at 450 (debtor sold all its assets and distributed the proceeds to a creditor where it had never done this before, and the creditor controlled almost all aspects of the sale); *Springfield*, 154 B.R. at 224 (creditor, director of debtor corporation, reimbursed himself for expenses from the debtor's checking account in the months prior to bankruptcy in amounts greater than normal).

[26] *Valley Steel*, 166 B.R. at 1020–21.

[27] Moreover, the UCC's argument that the price of energy renders the transactions extraordinary conflates ordinary course with value—a separate element of ERCOT's § 503(b)(9) claim. Brazos has asserted a separate cause of action premised on the value of ERCOT's claim. Am. Compl. ¶¶ 166–69. The UCC has not moved on this Count.

**B.  Ordinary course of business is a factual inquiry, and the undisputed facts entitle *ERCOT* to judgment on Count 8.**

12. As the UCC points out, there is no test for what constitutes ordinary course of business under § 503(b)(9). However, the tests developed under other sections of the Bankruptcy Code and under the Uniform Commercial Code follow a common theme and are instructive: what is the ordinary course of business depends upon what is commonplace for the debtor or for the debtor's industry as a whole.[28] Ordinary course of business is, in fact, a factual inquiry.[29]

13. Under the Uniform Commercial Code, a person buys goods in the ordinary course "if the sale to the person comports with the usual or customary practices *in the kind of business* in which the seller is engaged or with the *seller's own usual or customary practices*."[30]

14. Similarly, as it relates to claims under § 503(b)(1), allowing the administrative expenses necessary to preserve the estate, and under §§ 363 and 364, permitting the debtor to

---

[28] ERCOT notes that § 503(b)(9) only requires that the "goods have been sold to the debtor in the ordinary course of such *debtor's* business," but the record nonetheless reflects that the transactions at issue are both within Brazos's normal business affairs and commonplace for wholesale energy purchasers at the time. *Compare* 11 U.S.C. § 503(b)(9), *with* 11 U.S.C. § 547(c)(2) (enumerating elements of ordinary-course defense to preference action, including both that the transfer was "made in the ordinary course of business or financial affairs of the debtor and the transferee" *or* "made according to ordinary business terms").

[29] *See, e.g., Orix Credit All., Inc. v. Young Express, Inc.*, 43 F. App'x 650, 655 (4th Cir. 2002); *In re M. Fabrikant & Sons, Inc.*, 2010 Bankr. LEXIS 3941, at *6 (Bankr. S.D.N.Y. Nov. 4, 2010); *In re Air S. Airlines, Inc.*, 2000 Bankr. LEXIS 2027, at *13 (Bankr. D.S.C. Mar. 3, 2000); *In re marchFirst, Inc.*, 381 B.R. 689, 697 (Bankr. N.D. Ill. 2008).

[30] *In re SemCrude, L.P.*, 504 B.R. 39, 64 (Bankr. D. Del. 2013) ("*SemCrude II*") (emphasis added) (citing U.C.C. § 1-201(b)(9) (defining buyer in the ordinary course of business)); *see also In re SemCrude, L.P.*, 416 B.R. 399, 405 (Bankr. D. Del. 2009) ("*SemCrude I*") (noting that the UCC may be consulted for definitions of terms not defined by the Bankruptcy Code); *In re PMC Mktg. Corp.*, 517 B.R. 386, 392 (1st Cir. BAP 2014) (noting that the meaning of "goods" under § 503(b)(9) is primarily informed by the meaning of *goods* under Article 2 of the UCC and collecting cases).

conduct certain business postpetition, courts have developed the "horizontal" and "vertical" dimension tests for determining the ordinary course of a debtor's business.[31]

15. Under the vertical dimension test, courts "focus . . . on the debtor's internal operation and workings" and its "prepetition business practices and conduct."[32] The vertical dimension test asks whether the estate's creditors would reasonably expect the debtor to make the transaction at issue.[33] The focus of the horizontal dimension test, on the other hand, is industry wide: it asks whether the transaction at issue is ordinary for "this business vis-à-vis similar businesses."[34] In other words, it compares the "debtor's business to other like businesses."[35] In sum, whether a transaction is in the ordinary course of business depends upon whether it was ordinary for the debtor that made it and whether it would be ordinary in the debtor's industry.

16. Contrary to the UCC's assertion, the circumstances surrounding the transactions—the weather, the demand for electricity, etc.—only support that the transactions at issue were in the ordinary course of business for Brazos. ███████████████████████████████████████████████████████████████████████████████████████████

---

[31] *See also In re Brazos Elec. Power Coop., Inc.*, No. 21-30725 (DRJ) (Bankr. S.D. Tex.), Debtor's Obj. to ERCOT's Proof of Claim [Bankr. Dkt. No. 930] at 30 (applying this standard).

[32] *In re Johns-Manville Corp.*, 60 B.R. 612, 617 (Bankr. S.D.N.Y 1986); *see also In re Nat'l Gypsum Co.*, 1996 U.S. App. LEXIS 45187, at *2 (5th Cir. Apr. 8, 1996) (approving of *In re Johns-Manville Corp.*'s discussion of the vertical and horizontal dimension tests).

[33] *Johns-Manville*, 60 B.R. at 617.

[34] *Id.* at 618.

[35] *Id.*

[36] ███████████████████████████████████

▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ It is undisputed that demand for electricity exceeded the available supply of electricity during Winter Storm Uri.[39] It is under these types of circumstances when Brazos relies on the ERCOT markets the most. The UCC ignores this reality.

17. Similarly, the transactions were in the ordinary course for the entire ERCOT wholesale electricity market during Winter Storm Uri. The UCC and Brazos do not—and cannot—dispute that every market participant that participated in the ERCOT wholesale electricity market during Winter Storm Uri did business according to the same exact terms, under the same exact circumstances, and at the same exact price that the UCC claims to be extraordinary. For this reason, and for the reasons fully explained in *ERCOT's Motion for Partial Summary Judgment* [Dkt. No. 279], the undisputed facts demonstrate that the transactions at issue were in the ordinary course for Brazos and for all market participants.

---

[37] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

[38] 

[39] The UCC's declaration that the administrative adjustment to energy prices during the Storm is "unprecedented," Mot. ¶ 33, is of no moment. Assuming only for the sake of argument that facets of Brazos's transactions were "unprecedented," that fact does not render them outside the ordinary course of business as a matter of law. *See In re Tri-Union Dev. Corp.*, 349 B.R. 145, 151 (Bankr. S.D. Tex. 2006) ("New events arise within a business relationship. Such events are not excluded from the ordinary course of business exception [to § 547(c)] simply because they have not arisen before."); 16 TEX. ADMIN. CODE § 25.501(a) (providing that the PUCT can "otherwise direct[]" the price of energy). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

## IV. CONCLUSION

ERCOT respectfully requests the Court deny the *UCC's Motion for Summary Judgment* [Dkt. No. 281]. Moreover, the Court should grant ERCOT summary judgment on Count 8 for the reasons stated in *ERCOT's Motion for Partial Summary Judgment* [Dkt. No. 279].

Dated: January 18, 2022

Respectfully submitted,

**MUNSCH HARDT KOPF & HARR, P.C.**

By: /s/ *Jamil N. Alibhai*
Kevin M. Lippman
Texas Bar No. 00784479
klippman@munsch.com
Deborah Perry
Texas Bar No. 24002755
dperry@munsch.com
Jamil N. Alibhai
Texas Bar No. 00793248
jalibhai@munsch.com
Ross Parker
Texas State Bar No. 24007804
rparker@munsch.com

3800 Ross Tower
500 N. Akard Street
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

**COUNSEL FOR ELECTRIC RELIABILITY COUNCIL OF TEXAS, INC.**

## **CERTIFICATE OF SERVICE**

      I certify that on January 18, 202, I caused a copy of the foregoing document to be served via CM/ECF on all counsel of record in this matter.

                                      */s/ Jamil N. Alibhai*
                                      Jamil N. Alibhai