## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>BRAZOS ELECTRIC POWER,<br>COOPERATIVE, INC.[1]<br><br>     Debtor. | Chapter 11<br><br><br>Case No. 21-30725 (DRJ) |
| BRAZOS ELECTRIC POWER<br>COOPERATIVE, INC., *et al.*[2]<br><br>     Plaintiffs,<br><br>v.<br><br>ELECTRIC RELIABILITY COUNCIL OF<br>TEXAS, INC., *et al.*[3]<br><br>     Defendants. | <br><br><br><br>Adv. Proc. No. 21-03863 (DRJ) |

## DEFENDANT INTERVENORS' (I) JOINDER IN SUPPORT OF ERCOT REPLY AND (II) LIMITED REPLY BRIEF IN SUPPORT OF THE ELECTRIC RELIABILITY COUNCIL OF TEXAS, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT
[Relates to Adv. Dkt. No. 280]

---

[1] The Debtor in this chapter 11 case, along with the last four digits its federal tax identification number is: Brazos Electric Power Cooperative, Inc. (4729).  Additional information regarding this case may be obtained on the website of the Debtor's proposed claims and noticing agent at http://cases.stretto.com/Brazos.  The Debtor's address is 7616 Bagby Avenue, Waco, TX 76712.

[2] The Plaintiff Intervenors in this adversary proceeding are: the Official Committee of Unsecured Creditors, Mid-South Electric Cooperative Association; Denton County Electric Cooperative, Inc., d/b/a CoServ Electric; United Electric Cooperative Services, Inc., d/b/a United Cooperative Services; Tri-County Electric Cooperative, Inc.; Bartlett Electric Cooperative, Inc.; Comanche County Electric Cooperative Association; Cooke County Electric Cooperative Association, Inc. d/b/a PenTex Energy; Hamilton County Electric Cooperative Association; Heart of Texas Electric Cooperative, Inc.; J-A-C Electric Cooperative, Inc.; Navasota Valley Electric Cooperative, Inc.; and Wise Electric Cooperative, Inc.

[3] The Defendant Intervenors in this adversary proceeding are: Calpine Corporation; Tenaska Power Services Co.; NRG Energy, Inc.; ENGIE Energy Marketing NA, Inc.; Talen Energy Supply, LLC; Golden Spread Electric Cooperative, Inc; South Texas Electric Cooperative; and NextEra Energy Marketing, LLC.

## <u>TABLE OF CONTENTS</u>

**Page**

JOINDER ........................................................................................................................... 1

LIMITED REPLY ............................................................................................................. 1

   I.   <u>COUNT 2</u>: THERE IS NO MATERIAL DISPUTE AS TO WHETHER ERCOT
MITIGATED DAMAGES.................................................................................... 1

     A.   The Mitigation Brazos Alleges Was Required Is Neither Possible Nor Legal............... 1

     B.   There Is No Genuine Dispute as to Any Material Fact With Respect to Any Other
Purported Mitigation Step ERCOT Could Take.................................................... 4

   II.   <u>COUNTS 4 AND 5</u>:  THE DEBTOR RECEIVED REASONABLY EQUIVALENT
VALUE AS A MATTER OF LAW ....................................................................... 5

   III.   <u>COUNT 8</u>:  ELECTRICITY WAS DELIVERED IN THE ORDINARY COURSE..... 6

   IV.   <u>COUNT 1</u>:  BOTH BRAZOS AND ERCOT ARE SUBJECT TO THE PRICING
IMPOSED AS A RESULT OF GOVERNMENTAL ORDERS AND APPLICABLE LAW... 7

     A.   Parties may not contract around regulatory obligations, and the SFA should be
interpreted accordingly. ..................................................................................... 7

CONCLUSION................................................................................................................... 9

## <u>TABLE OF AUTHORITIES</u>

**Page**

**Cases**

*ASARCO, LLC v. Americas Mining Corp*., 396 B.R. 278 (S.D. Tex. 2008)..............................5, 6

*City of Corpus Christi v. Pub. Util. Comm'n of Tex.*, 572 S.W.2d 290 (Tex. 1978)..................7, 8

*Electric Reliability Council of Texas v. CPS Energy*, No. 04-12-00242-CV (Tex. App. Dec. 13, 2021)....................................................................................................................8

*Floyd v. CIBC World Markets, Inc.,* 426 B.R. 622 (S.D. Tex. 2009)...............................................7

*Lewis v. Davis*, 199 S.W.2d 146 (1947) ..........................................................................................8

*Philadelphia Indem. Ins. Co. v. White*, 490 S.W.3d 468 (Tex. 2016) ........................................7, 8

*Reese v. Anderson*, 926 F.2d 494 (5th Cir. 1991) ...........................................................................5

*Robinson v. Crown Cork & Seal Co., Inc.*, 335 S.W.3d 126 (Tex. 2010) ...................................2, 3

*Tex. Ass'n of Long Distance Tel. Cos. (TEXALTEL) v. PUC*, 798 S.W.2d 875 (Tex. App.—Austin 1990, writ denied)................................................................................................2

*Weaver v. Kellogg*, 216 B.R. 563 (S.D. Tex. 1997)........................................................................5

**Statutes**

Bankr. C. § 544 .................................................................................................................................5

Bankr. C. § 548 .................................................................................................................................5

16 Tex. Admin. Code § 25.501(a) ....................................................................................................8

16 Tex. Admin. Code § 25.505(h) ....................................................................................................8

TEX. UTIL. CODE § 39.151(d)............................................................................................................8

Pub. Util. Reg. Act § 36.111 ............................................................................................................2

Pub. Util. Reg. Act § 36.151 ............................................................................................................2

Pub. Util. Reg. Act § 43(f)................................................................................................................2

**Other Authorities**

Tex. Const., art. I, § 16 ....................................................................................................................2

Testimony of Bill Magness to Senate Committee on Jurisprudence (March 16, 2021) .................5

## JOINDER

1.      Defendant Intervenors hereby join in the arguments set forth in the Electric Reliability Council of Texas, Inc.'s ("ERCOT") brief in reply to the Debtor's opposition (the "Response") to the ERCOT motion for summary judgment (the "ERCOT Motion") and incorporate them as if set forth fully herein.  The Defendant Intervenors reserve the right to supplement or amend this joinder, submit additional briefing, and to argue and otherwise be heard at the hearing on the Motion.  Defendant Intervenors further submit the limited reply briefing below in supplement to ERCOT's and in support of the ERCOT Motion.[4]

## LIMITED REPLY

### I.      COUNT 2: THERE IS NO MATERIAL DISPUTE AS TO WHETHER ERCOT MITIGATED DAMAGES

2.      After months of discovery, the Debtor fails to point to any concrete, legally valid step ERCOT could have taken to "mitigate damages."  As such ERCOT is entitled to summary judgment on Count 2.

#### A.      The Mitigation Brazos Alleges Was Required Is Neither Possible Nor Legal

3.      The Debtor argues ERCOT should mitigate damages by repricing the ERCOT market.  Response ¶¶ 29-31.  In doing so, Brazos reverses its previous representations to the Court and implicitly makes a wholesale attack on the PUCT Orders.[5]  Under the Debtor's theory, unless ERCOT unilaterally disregards the PUCT Orders and reprices the *entire* Texas electricity market,[6]

---

[4] This joinder is subject to and without prejudice to Defendant Intervenors' position that this Court should abstain from deciding issues of state regulatory concern.

[5] Response ¶ 29 ("Under Protocol § 9, ERCOT had the ability and the authority to correct its erroneous pricing and retroactively adjust Real-Time Market prices.  Specifically, Protocol § 9.5.6(1) authorizes the ERCOT board to direct a resettlement of real-time prices . . .").

[6] ERCOT is prohibited from acting in a discriminatory manner.  Protocols § 1.2(6).  As such, any retroactive repricing would necessarily affect the entire market.  ERCOT is revenue neutral.  Any change to the prices by which Brazos *purchased* electricity in the time period at issue must by law result in a change to what ERCOT owes to those that *sold* during such time period.  Such losses, in turn, would be passed on and ultimately borne by the residential and industrial consumers.  Likewise, all market participants are party to an identical form SFA.  If this Court determines

ERCOT has failed to mitigate damages and is estopped from asserting a claim.  Leaving aside the Debtor's effort to characterize this adversary proceeding as a mere contract dispute,[7] the argument is defective on its own terms.  ERCOT has neither a duty nor the authority to unilaterally and retroactively reprice the entire market, effectively shifting billions of dollars from some market participants to others.  Retroactive repricing would have system wide effects (including on the Defendant Intervenors), was specifically considered and rejected by the Texas Legislature, and is barred by Texas law.

4.      The market-wide retroactive repricing the Debtor now seeks is unconstitutional under Texas law, so ERCOT could not have "mitigated" damages in such fashion.  ERCOT and the PUCT are prohibited from using the authority delegated to them to enact any "ex post facto law, retroactive law, or any law impairing the obligation of contracts."[8]  In determining whether to invalidate a retroactive law, the Texas Supreme Court considers: (1) "the nature and strength of the public interest served by the [law]"; (2) "the nature of the prior right impaired"; and (3) "the extent of the impairment."  *Robinson v. Crown Cork & Seal Co., Inc.*, 335 S.W.3d 126, 145 (Tex.

---

that ERCOT breached a contractual obligation to Brazos, it will implicitly also be finding that ERCOT breached its obligations to every other market participant.

[7] *See Debtor's Motion for Summary Judgement*, ¶¶ 33, 36 and 42 [Adv. Dkt. No. 285].

[8] Tex. Const., art. I, § 16.  In addition to constitutional issues, ERCOT does not have authority to retroactively reprice the market.  ERCOT has only limited authority to correct specific "pricing errors" within 30 days after the relevant transaction.  ERCOT Protocol § 6.3(6)(a).  However, such "pricing errors" are limited to technical failures such as data input or output errors, hardware or software failures, and specific circumstances that result in prices in conflict with the Protocols or PUCT substantive rules, subject to PUCT oversight.  ERCOT Protocol § 6.3(4).  The prices that the Debtor challenges were not accidental or a technical error, and the time for such corrections has long passed in any event.  ERCOT has no authority to retroactively reprice past transactions that were deliberately priced consistent with PUCT orders, rules, and ERCOT market design.

This lack of retroactive price-setting power in the ERCOT market is also consistent with PURA's plain text, which prohibits the PUCT from retroactively changing even those rates that are "unreasonable or in any way in violation of law."  *Tex. Ass'n of Long Distance Tel. Cos. (TEXALTEL) v. PUC*, 798 S.W.2d 875, 882 (Tex. App.—Austin 1990, writ denied) (quoting PURA § 43(f)); *see* PURA § 36.111 (new prospective rates to "be observed thereafter"); see also PURA § 36.151 (similar).  Although this case involves the PUCT's market pricing orders to ERCOT, rather than ratemaking, the principle is the same: even the PUCT cannot retroactively change prices that buyers and sellers paid for electricity months in the past.

2010).  Brazos offers no authority that would justify an after-the-fact reallocation of winners and losers here.

5.      Here, retroactive repricing would reverberate throughout the market, upend substantial reliance on existing law, and impede the ability of generators and regulators to respond to future crises.  When the PUCT Orders were issued during the emergency, the Defendant Intervenors and other market participants responded to them, acted in reliance on them, and transacted with commercial counterparties based on the prices they generated.  Specifically, certain of the Defendant Intervenors: (i) acquired gas at over $1,000/MMbtu (compared to $4.50/MMbtu prior to the storm); (ii) with permission from the federal government, operated outside their emissions limits; (iii) incurred costly emergency services; (iv) secured additional supplies on an emergency basis in anticipation of the storm; and (v) strained their equipment and personnel to produce maximum power for Texans in a time of crisis.  These steps, and the irreversible financial costs they required, were taken in reliance upon the scarcity pricing signals sent by ERCOT and the longstanding regulatory framework and fundamental market design of this legislatively created market-based system. Any retroactive repricing runs the real risk of bankrupting additional public power and private entities and destroying confidence in ERCOT pricing in the future.  This Court should consider the impacts of the Debtor's requested relief on  the integrity of the ERCOT market going forward, the ability and willingness of market participants to rely on ERCOT's market pricing during future emergencies, and the long-term costs imposed on Texans from increased uncertainty around the reliability of ERCOT's posted prices for commercial parties.

6.      Given the substantial harms implicated by a retroactive repricing, all three *Robinson* factors weigh against it.  *First*, repricing would not serve, and in fact would harm, the public interest.  It would impair regulators' and generators' ability to respond to future crises.  It

would reward parties who failed to adequately hedge or otherwise manage operational or financial risk, creating a moral hazard and potentially leading to future risky behavior and further financial turmoil and bankruptcies.  *Second*, retroactive repricing would destroy settled property rights backed by substantial reliance interests, as market participants like Defendant Intervenors cannot claw back the substantial financial outlays they made in reliance on the PUCT Orders.  Nor can market participants resettle or unwind transactions that were made during the emergency in reliance on ERCOT pricing, but that were outside the ERCOT wholesale electricity market and beyond the reach of ERCOT's or the PUCT's authority.  *Finally*, this impairment would be extensive, encompassing billions of dollars in transactions across the ERCOT market and related bilateral and financial markets that settled many months ago based on ERCOT prices and cannot now be repriced based on decisions made in this case.  ERCOT was without authority to retroactively reprice the market.  It could not, and should not, have done what the Debtor argues was garden variety mitigation of contractual damages.  Brazos also cannot explain how such retroactive repricing would be funded other than through the shifting of Brazos's failure to all consumers on the grid or some prospective legislative action affecting all Texans.  The Debtor has failed to show what ERCOT should have done to mitigate damages, and thus ERCOT is entitled to summary judgment on Count 2.

### B.    There Is No Genuine Dispute As To Any Material Fact With Respect To Any Other Purported Mitigation Step ERCOT Could Take

7.    The Debtor also suggested in the Complaint that ERCOT failed to mitigate in that ERCOT purportedly did not rely on Reliability Unit Commitment ("RUC") procedures to bring generation online during the emergency.  ERCOT has now produced uncontroverted evidence that RUC procedures were used, at least to some extent, during the emergency.  *See* ERCOT Motion, Ex. 32.  In fact, ERCOT considered and rejected additional RUC implementation for various

operational reasons.[9]   Nevertheless, the Debtor asserts such procedures could have been more

"effective."  Response ¶ 29.  The Debtor offers no citation to the factual record for this assertion,

which in any case must be more than a conclusory allegation in order to survive summary

judgment.  *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991).  After months of discovery the

Debtor has failed to produce a concrete and constitutionally permissible step ERCOT could take

to mitigate damages, and summary judgment for ERCOT on Count 2 is therefore appropriate.

## II.   <u>COUNTS 4 AND 5</u>:  THE DEBTOR RECEIVED REASONABLY EQUIVALENT VALUE AS A MATTER OF LAW

8.    It is undisputed that the obligations the Debtor challenges as constructively

fraudulent in Counts 4 (under section 548) and 5 (under section 544) were incurred: (i) through

the ERCOT Real-Time and Day-Ahead Markets; (ii) at a price applicable to all buyers and sellers

through such ERCOT markets at such time; and (iii) on a voluntary and arm's-length basis.  The

record is also clear that Brazos both bought and sold electricity at the price it now retroactively

attempts to challenge.[10]  It paid for and received what the market was selling, at the market price.

9.    In determining whether the Debtor received reasonably equivalent value—an

indispensable element to the Debtor's claims in Counts 4 and 5—it is necessary to consider the

"totality of the circumstances" underlying the transaction.  *See Weaver v. Kellogg*, 216 B.R. 563,

574 n. 13 (S.D. Tex. 1997) ("the Fifth Circuit has rejected the use of a mechanical mathematical

analysis" in determining reasonably equivalent value).   Courts using the "totality of the

circumstances" standard look to, *inter alia*, the price that would be paid by a willing buyer to a

willing seller in an arm's-length transaction at such time.  *ASARCO, LLC v. Americas Mining

Corp.*, 396 B.R. 278, 339, 348-49 (S.D. Tex. 2008) (applying the "totality of the circumstances"

---

[9] Ex. 1, Testimony of Bill Magness to Senate Committee on Jurisprudence (March 16, 2021) 126:12-20.
[10] Ex. 2, Deposition of Clifton Karnei, Nov. 18, 2021, 119:12-18.

standard to determine reasonably equivalent value pursuant to the Delaware Uniform Fraudulent Transfer Act).  This is the standard, even in the context of a volatile commodity market, and the Court should not consider subsequent events, including "exponential" changes in the commodity price.  *Id.* at 337.  This analysis of value should be made from the perspective of the Debtor's creditors at the time the charges were incurred and without the benefits of hindsight.  *Id*.

10.     As a matter of law, the price for electricity the Debtor voluntarily accepted, at arm's length, and alongside all other buyers and sellers participating in such market, is reasonably equivalent value.  *Id*.  The obligations the Debtor challenges were not incurred in connection with a one-off transaction between just two parties.  They were obligations incurred in connection with the participation of a market exchange, under the complete regulatory oversight of the PUCT, with pricing that applied to all participants in such market, consistent with market design and fundamental principles of supply and demand.  All such market participants were parties to the same form of Standard Form Agreement ("SFA") as the Debtor, and subject to all of the same statutes, regulations, protocols, and market oversight, including the PUCT's binding orders.  For purposes of the Debtor's receipt of reasonably equivalent value, the market-wide price incurred and sold at by hundreds of participants speaks for itself.  Summary judgement in favor of ERCOT on Counts 4 and 5 is warranted as a matter of law.

III.     <u>COUNT 8</u>:  ELECTRICITY WAS DELIVERED IN THE ORDINARY COURSE

11.     For the reasons specified in the *Response of Calpine Corporation, Tenaska Power Services Co., NRG Energy, Inc., Engie Energy Marketing NA, Inc., Talen Energy Supply, LLC, South Texas Electric Cooperative, Inc., and NextEra Energy Marketing, LLC in Opposition to Official Committee Of Unsecured Creditors' Motion For Summary Judgment* [Adv. Dkt. No. 322], which the Defendant Intervenors incorporate here by reference, summary judgment in favor of ERCOT on Count 8 is proper.

IV.    **COUNT 1:  BOTH BRAZOS AND ERCOT ARE SUBJECT TO THE PRICING IMPOSED AS A RESULT OF GOVERNMENTAL ORDERS AND APPLICABLE LAW**

    A.    **Parties May Not Contract Around Regulatory Obligations, And The SFA Should Be Interpreted Accordingly.**

12.    Defendant Intervenors expect that ample briefing is already before the Court on the issue of whether the SFA and Protocols, by their own terms, qualify and subject Brazos's obligations to ERCOT to the PUCT orders.  Apart from this question of contractual interpretation, however, the law of contract is itself limited by overriding applicable law.

13.    Brazos reasons that its relationship with ERCOT rests solely on the SFA and Protocols.  Response ¶ 16.  Of course, this is belied by the very terms of the SFA and the Protocols, which themselves expressly denote that they are subject to governmental orders, including those of the PUCT.  SFA §11(L) "In the event of a conflict between this Agreement and an applicable federal, state, and local . . . rule, regulation, [or] order of any Governmental Authority . . . the applicable federal, state, and local . . . rule, regulation, [or] order of any Governmental Authority . . . shall prevail."  But even further, freedom of contract is not boundless, and Texas law independently binds Brazos and governs Brazos's relationship and terms of transacting with ERCOT.  Parties never contract in a vacuum; rather they do so with knowledge of applicable law. *Philadelphia Indem. Ins. Co. v. White*, 490 S.W.3d 468, 483 (Tex. 2016) ("[P]arties are presumed to know the law, and are likewise presumed to intend that their agreement shall have legal effect); *Floyd v. CIBC World Markets, Inc.,* 426 B.R. 622, 647 (S.D. Tex. 2009).  This is especially so in dealing with a non-profit, state-controlled entity such as ERCOT, and in a regulated industry.  *See City of Corpus Christi v. Pub. Util. Comm'n of Tex.*, 572 S.W.2d 290, 297 (Tex. 1978) ("An administrative agency is created to centralize expertise in a certain regulatory area and, thus, is to be given a large degree of latitude by the courts in the methods by which it accomplishes its

regulatory function"). Where parties purport to contract in contravention of the State's police power, those purported obligations are void and unenforceable. *Philadelphia Indem. Ins. Co.*, 490 S.W.3d at 483 (holding that a contract to do a thing which cannot be performed without violation of the law violates public policy and is void).

14.     Under Texas law, prices for wholesale electricity are determined by ERCOT, ***except as otherwise directed by the PUCT***. 16 Tex. Admin. Code § 25.501(a) ("Except as otherwise directed by the commission, ERCOT shall determine the market clearing prices of energy and other ancillary services . . ."). The PUCT also retains supervening authority to "tak[e] actions necessary to protect the public interest, including actions that are otherwise inconsistent with the provisions" of the PUCT's rules. *Id.* § 25.505(h). This statute has force not just for ERCOT, but for all market participants, including Brazos. In contracting with ERCOT, Brazos, its creditors, and all market participants knew that ERCOT is subject to the complete authority of the PUCT. TEX. UTIL. CODE § 39.151(d). If ERCOT does not follow PUCT orders, it can be de-certified, and in effect dissolved. *Id.* It is, in fact, a "governmental unit." *See Electric Reliability Council of Texas v. CPS Energy*, No. 04-12-00242-CV at 11 (Tex. App. Dec. 13, 2021).

15.     The Protocols expressly contemplate ERCOT responding to and complying with the PUCT's orders, and those provisions, and the SFA that incorporates them, should be construed (subject to jurisdictional or prudential limitations on courts) in light of the Texas Administrative Code and Texas Utilities Code. "When two constructions of a contract are possible, preference will be given to that which does not result in violation of law." *Lewis v. Davis*, 199 S.W.2d 146, 149 (1947). Protocol 1.1(2), for example, gives ERCOT the ability to develop procedures to follow

and implement the PUCT's orders.  This provision was in effect "during the period of emergency" and nothing in the protocol revision process or SB 1580 qualifies or changes it.[11]

## **CONCLUSION**

16.     For the reasons set forth above, the Defendant Intervenors respectfully request that the Court enter an order granting the Motion and grant any other relief to which the Defendant Intervenors may be entitled, whether at law or in equity.

---

[11] The Debtor points to the protocol revision process as if it qualified all other obligations and means by which ERCOT must follow the directives of the PUCT.  That is incorrect, but in any case, the revision provisions specifically provide that such process may be rendered inapplicable upon good cause shown to the PUCT or other Governmental Authority. Protocols § 21.1.  Good cause precipitated the PUCT's Orders relating to the Winter Storm.

Dated: January 21, 2022
Dallas, TX

Respectfully submitted,

By: */s/ Judith W. Ross*
**ROSS & SMITH, PC**
Judith W. Ross
TX Bar No. 21010670
700 North Pearl Street, Suite 1610
Dallas, TX 75201
Telephone:      (214) 377-8659
Email: judith.ross@judithwross.com

*Counsel to Tenaska Power Services Co.*

By: */s/ Patrick L. Hughes*
**HAYNES AND BOONE, LLP**
Patrick L. Hughes
Texas State Bar No. 10227300
David Trausch
Texas State Bar No. 24113513
1221 McKinney, Suite 4000
Houston, TX 77010
Telephone:      (713) 547-2000
Facsimile:      (713) 547-2600
Email: patrick.hughes@haynesboone.com
Email: david.trausch@haynesboone.com

*Counsel to South Texas Electric Cooperative, Inc.*

By: */s/ Mark McKane*
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
David R. Seligman, P.C. (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email: david.seligman@kirkland.com

-and-

Mark McKane, P.C. (admitted *pro hac vice*)
555 California Street
San Francisco, California 94104
Telephone:      (415) 439-1400
Facsimile:      (212) 439-1500
Email: mark.mckane@kirkland.com

-and-

Aparna Yenamandra (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email: aparna.yenamandra@kirkland.com

*Counsel to Calpine Corporation*

10

By: /s/ Ian E. Roberts
**SHEARMAN & STERLING LLP**
C. Luckey McDowell (SBT 24034565)
Ian E. Roberts (SBT 24056217)
2828 N. Harwood Street, Suite 1800
Dallas, Texas 75201
Telephone:     (214) 271-5777
Email: luckey.mcdowell@shearman.com
Email: ian.roberts@shearman.com

-and-

Joel Moss (admitted *pro hac vice*)
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone:     (415) 616-1100
Email: joel.moss@shearman.com

-and-

Jonathan M. Dunworth (admitted *pro hac vice*)
599 Lexington Avenue
New York, NY 10022
Telephone:     (212) 848-4000
Email: jonathan.dunworth@shearman.com

***Counsel to NRG Energy, Inc., ENGIE Energy Marketing NA, Inc., Talen Energy Supply, LLC, and NextEra Energy Marketing, LLC***

## CERTIFICATE OF SERVICE

I certify that on January 21, 2022, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ Alexander Babcock
Alexander Babcock