**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>BRAZOS ELECTRIC POWER<br>COOPERATIVE, INC.,[1]<br><br>     Debtor. | Chapter 11<br><br>Case No. 21-30725 (DRJ) |
| BRAZOS ELECTRIC POWER<br>COOPERATIVE, INC., *et al.*,[2]<br><br>     Plaintiffs,<br><br>v.<br><br>ELECTRIC RELIABILITY COUNCIL OF<br>TEXAS, INC., *et al.*,[3]<br><br>     Defendants. | Adv. Proc. No. 21-03863 (DRJ) |

**ELECTRIC RELIABILITY COUNCIL OF TEXAS, INC.'S REPLY IN SUPPORT OF
ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**
[Relates to Adv. Dkt. Nos. 279 and 309]

---

[1] The Debtor in this chapter 11 case, along with the last four digits of its federal tax identification number is: Brazos Electric Power Cooperative, Inc. (4729). Additional information regarding this case may be obtained on the website of the Debtor's proposed claims and noticing agent at http://cases.stretto.com/Brazos. The Debtor's address is 7616 Bagby Avenue, Waco, TX 76712.

[2] The Plaintiff-Intervenors in this Adversary Proceeding are: the Official Committee of Unsecured Creditors, Mid-South Electric Cooperative Association; Denton County Electric Cooperative, Inc., d/b/a CoServ Electric; United Electric Cooperative Services, Inc., d/b/a United Cooperative Services; Tri-County Electric Cooperative, Inc.; Bartlett Electric Cooperative, Inc.; Comanche County Electric Cooperative Association; Cooke County Electric Cooperative Association, Inc. d/b/a PenTex Energy; Hamilton County Electric Cooperative Association; Heart of Texas Electric Cooperative, Inc.; J-A-C Electric Cooperative, Inc.; Navasota Valley Electric Cooperative, Inc.; and Wise Electric Cooperative, Inc.

[3] The Defendant-Intervenors in this Adversary Proceeding are: Calpine Corporation; Tenaska Power Services Co.; NRG Energy, Inc.; ENGIE Energy Marketing NA, Inc.; Talen Energy Supply, LLC; Golden Spread Electric Cooperative, Inc.; South Texas Electric Cooperative; and NextEra Energy Marketing, LLC.

# TABLE OF CONTENTS

I.      OBJECTIONS TO SUMMARY JUDGMENT EVIDENCE ............................................ 1

II.     SUMMARY OF ARGUMENT ................................................................................ 1

III.    ARGUMENT AND AUTHORITIES ......................................................................... 3

        A.      ERCOT is entitled to summary judgment on Count 1 because Section 11(L) of the SFA unambiguously states the SFA, and thereby the application of the Protocols, is subject to the PUCT Orders, and the Protocols are expressly subject to PUCT Substantive Rules. ........................................................................................ 3

                1.      The SFA is "subject to" the PUCT Orders, and PURA supports this .............. 4

                2.      The PUCT Orders bind Brazos as much as they bind ERCOT. ...................... 6

                3.      Brazos's proffered interpretation of Section 11(L) of the SFA is contrary to the SFA's plain language and creates an illogical result contradictory to the State's statutory framework. ........................................................................ 7

                4.      SB 1580 does not provide for re-pricing of the ERCOT market, and Brazos's proposed interpretation of SB 1580 is contrary to its plain language and legislative intent. ........................................................................................ 9

                5.      ERCOT followed the PUCT Orders by maintaining scarcity pricing through the duration of EEA3. ................................................................................ 11

        B.      Brazos fails to respond to many of ERCOT's arguments on Count 2, and it has not adduced evidence otherwise demonstrating a question of material fact. ................ 12

        C.      ERCOT is entitled to summary judgment on Count 3 because it does not seek default damages. ............................................................................................... 15

        D.      Brazos misunderstands the inquiry on Counts 4 and 5, and its arguments do not defeat ERCOT's motion for summary judgment. ................................................. 17

        E.      Brazos concedes that the facts relevant to Count 8 are undisputed; these facts demonstrate that ERCOT is entitled to summary judgment. ................................. 18

                1.      Brazos's objection to ERCOT's ordinary-course legal standard is unfounded. ............................................................................................... 19

                2.      Brazos's application of the undisputed facts is flawed. ............................... 20

IV.     CONCLUSION .................................................................................................. 23

V.      APPENDIX OF EXHIBITS .................................................................................. 23

## TABLE OF AUTHORITIES

**Cases**                                                                                                  **Page(s)**

*In re Alder, Coleman Clearing Corp.*,
   247 B.R. 51 (Bankr. S.D.N.Y. 1999) ....................................................................................17

*Bfp v. Resolution Tr. Corp.*,
   511 U.S. 531 (1994) ............................................................................................................17

*In re Century Bass Prods., Inc.*,
   107 B.R. 8 (Bankr. D. Conn. 1989) ..................................................................................20

*In re Essential Fin. Educ., Inc.*,
   629 B.R. 401 (Bankr. N.D. Tex. 2021)..............................................................................22

*In re Fairchild Aircraft Corp.*,
   6 F.3d 1119 (5th Cir. 1993) ..............................................................................................17

*In re Fitzgerald*,
   237 B.R. 252 (Bankr. D. Conn. 1999) ..............................................................................17

*Gunn Infiniti, Inc. v. O'Byrne*,
   996 S.W.2d 854 (Tex. 1999)..............................................................................................14

*In re Hayes Lemmerz Int'l, Inc.*,
   337 B.R. 49 (Bankr. D. Del. 2006) ...................................................................................21

*In re Hechinger Inv. Co. of Del., Inc.*,
   489 F.3d 568 (3d Cir. 2007)...............................................................................................22

*Highland Cap. Mgmt., LP v. Bank of Am., Nat'l Ass'n.*,
   2013 U.S. Dist. LEXIS 119935 (N.D. Tex. Aug. 23, 2013)..................................................1

*In re Leslie Fay Cos.*,
   168 B.R. 294 (Bankr. S.D.N.Y. 1994)..............................................................................20

*Luminant Energy Co., LLC v. Public Utility Comm'n of Tex.*,
   No. 3-21-00098-CV (Tex. App.—Austin).............................................................................1

*In re Magic Circle Energy Corp.*,
   64 B.R. 269 (Bankr. W.D. Okla 1986) ..............................................................................23

*In re McElroy*,
   228 B.R. 791 (Bankr. M.D. Fla. Jan 4, 1999).................................................................20

*In re Murphy*,
   331 B.R. 107 (Bankr. S.D.N.Y. 2005)..............................................................................17

*In re Patriot Place, Ltd.*,
  486 B.R. 773 (Bankr. W.D. Tex. 2013) ........................................................................20

*In re Pilgrim's Pride Corp.*,
  421 B.R. 231 (Bankr. N.D. Tex. 2009) ........................................................................17

*Provident Life & Accident Ins. Co. v. Goel*,
  274 F.3d 984 (5th Cir. 2001) .......................................................................................1

*Ragas v. Tenn. Gas Pipeline Co.*,
  136 F.3d 455 (5th Cir. 1998) ......................................................................................18

*Rivera v. PNS Stores, Inc.*,
  647 F.3d 188 (5th Cir. 2011) ......................................................................................16

*In re Vunovich*,
  74 B.R. 629 (Bankr. D. Kan. 1987) ............................................................................21

*In re Whistler Energy II, LLC*,
  608 B.R. 655 (Bankr. E.D. La. 2019) ........................................................................20

*In re Wrt Energy Corp.*,
  282 B.R. 343 (Bankr. W.D. La. 2001) ........................................................................17

**Statutes**

16 Tex. Admin. Code § 25.505(h) ....................................................................................8

11 U.S.C. § 503(b)(9) .........................................................................................18, 19, 22

Tex. Util. Code § 39.151(d) ..........................................................................................5, 8

Tex. Util. Code § 39.160 ..................................................................................................9

Tex. Util. Code § 41.151(b)(1) .........................................................................................9

Texas Government Code Chapter 418 ..............................................................................13

Electric Reliability Council of Texas, Inc. ("ERCOT") files this *Reply in Support of its Motion for Partial Summary Judgment*.[4]

## I.    OBJECTIONS TO SUMMARY JUDGMENT EVIDENCE

1.    ERCOT objects to the following exhibits to Brazos's response:

(1) Brazos's Exhibit 12 – Brief of the PUCT in *Luminant Energy Co., LLC v. Public Utility Comm'n of Tex.*, No. 3-21-00098-CV (Tex. App.—Austin) ("the Luminant Appeal"). Argument of counsel is not evidence.[5] Any argument by a nonparty in another case is not competent evidence.

(2) Brazos's Exhibit 20 – "Rule 11 Agreement." ERCOT objects to Brazos's reliance on this agreement between counsel for the PUCT and counsel for Luminant in the Luminant Appeal. This document and statements in it are hearsay.

(3) Brazos's Exhibit 23 – Expert Report of Matthew W. Tanner. ERCOT objects to Brazos's reliance on this report on summary judgment, as it is not competent summary judgment evidence.[6]

## II.    SUMMARY OF ARGUMENT

2.    Brazos admits that Count 1 raises a legal question.[7] Because ERCOT has shown that its claim against Brazos is not unenforceable based on the SFA, PUCT Rules, PUCT Orders, and PURA, ERCOT is entitled to summary judgment on this Count. The SFA states the agreement is subject to orders from a "Governmental Authority," such as the PUCT Orders, and, in the event

---

[4] Brazos's Response to ERCOT's motion also purports to respond in support of Brazos's own motion (and the UCC's previously filed motion), which is of course a procedurally improper way to buttress the evidence supporting Brazos's (and the UCC's) previously filed motions. ERCOT's response to Brazos's motion is not yet due, and ERCOT incorporates its response, and evidence.

[5] *Highland Cap. Mgmt., LP v. Bank of Am., Nat'l Ass'n.*, 2013 U.S. Dist. LEXIS 119935, at *21–22 (N.D. Tex. Aug. 23, 2013) ("Highland's pleadings and any statements by counsel relied on by Ms. Taylor constitute arguments by counsel, not evidence.").

[6] *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 1000 (5th Cir. 2001) ("Unsworn expert reports do not qualify as affidavits or otherwise admissible evidence for the purpose of Rule 56 and may be disregarded by the court when ruling on a motion for summary judgment." (citations and alterations omitted)).

[7] Brazos's Resp. ¶ 10.

of a conflict, those orders shall control. Thus, Brazos agreed to be subject to all orders from the PUCT. Brazos also agreed to be bound by the Protocol provisions that expressly require scarcity pricing and system pricing caps to be administered according to PUCT Substantive Rules.[8] Those PUCT Substantive Rules—which have the force and effect of state law and which Brazos repeatedly fails to acknowledge or address—grant the PUCT the power to "otherwise direct" ERCOT's price formations and to intervene in scarcity pricing mechanics to protect the public interest.[9] Further, SB 1580 does not alter Brazos's obligation to pay the invoices due to ERCOT because SB 1580 does not retroactively alter the amounts owed.

3. ERCOT is entitled to summary judgment on Count 2 because: (1) it would have been unreasonable for ERCOT to disregard either the PUCT Orders or the PUCT's policy decision not to reprice the 33 hours, (2) ERCOT *did* employ RUC procedures during and after the storm, and (3) Brazos's mitigation theory is flawed as a matter of law because a retroactive reduction of invoices is not mitigation. Brazos ignores two of these grounds for summary judgment and does not fully respond to the third. Moreover, the evidence that Brazos cites does not defeat ERCOT's motion.

---

[8] Protocol § 4.4.11(1), *available at* https://www.ercot.com/files/docs/2021/08/18/February_1__2021_Nodal_Protocols.pdf. ("The SWCAP shall be determined in accordance with the Public Utility Commission of Texas (PUCT) Substantive Rules."); *id.* § 4.4.11.1(1) ("ERCOT shall operate the scarcity pricing mechanism in accordance with the PUCT Substantive Rules.").

[9] 16 TEX. ADMIN. CODE.§ 25.501(a) ("Except as otherwise directed by the commission, ERCOT shall determine the market clearing prices of energy and other ancillary services that it procures through auctions and the congestion rents that it charges or credits, using economic concepts and principles such as: shadow price of a constraint, marginal cost pricing, and maximizing the sum of consumer and producer surplus."); *id.* § 25.505(h) ("Nothing in this section prevents the commission from taking actions necessary to protect the public interest, including actions that are otherwise inconsistent with the other provisions in this section.").

4.      ERCOT is entitled to summary judgment on Count 3 because it does not seek capital "D" default damages, and the force majeure provision on which Brazos relies does not excuse payment.

5.      Additionally, ERCOT is entitled to summary judgment on Counts 4 and 5. Brazos states that the energy prices at issue were inflated, but it makes no attempt to rebut that the valid PUCT Orders were designed and implemented in an emergency situation to address and remedy that the wholesale market was producing prices that were not reflecting supply scarcity. Moreover, Brazos does not argue that the energy it received during the freezing weather was not *worth* the amounts charged.

6.      Finally, ERCOT is entitled to summary judgment on Count 8. Brazos's view of the undisputed facts is legally flawed. It matters not that the PUCT has never directed ERCOT to set a scarcity price because the *price itself* is a set regulatory maximum that Brazos knew existed and had experienced before. These charges were incurred during extreme cold. But Brazos must supply its cooperatives with energy every day, regardless of the weather. Doing so via the ERCOT market is ordinary course for Brazos.

## III.    ARGUMENT AND AUTHORITIES

**A.      ERCOT is entitled to summary judgment on Count 1 because Section 11(L) of the SFA unambiguously states the SFA, and thereby the application of the Protocols, is subject to the PUCT Orders, and the Protocols are expressly subject to PUCT Substantive Rules.**

7.      Whether the amount Brazos owes ERCOT should be calculated under the PUCT Orders, or by ignoring the PUCT Orders (as Brazos requests), is a purely legal question. Brazos's various arguments that the PUCT Orders do not apply all fall flat.

8.      As a preliminary matter, Brazos makes numerous unfounded contentions regarding ERCOT's position in its this proceeding. Brazos claims that ERCOT has "equivocated" on its

stance regarding the relationship between the PUCT Orders and the Protocols,[10] but this is untrue. ERCOT has consistently maintained that the SFA (and the Protocols) are "subject to" orders from a governmental authority, such as the PUCT, and in the event of a conflict between the SFA and a PUCT Order, the PUCT Order "shall prevail."[11]  Brazos makes much of the fact that ERCOT has used different verbs throughout its various briefs to describe this relationship —*e.g.*, the PUCT Orders "superseded," "overrode," or "supplanted" the Protocols; the Protocols must "yield" to the PUCT Orders; the PUCT Orders are "incorporated" in the SFA.[12] But this language is not inconsistent or equivocal. All these phrases mean the same thing: because the parties are governed by a contract—as part of the Protocols—that is subject to a regulatory regime overseen by a governmental authority, orders by that governmental authority control.

**1.      The SFA is "subject to" the PUCT Orders, and PURA supports this.**

9.      The SFA unambiguously states that it "is subject to . . . the order of any Governmental Authority."[13] Further, "in the event of a conflict . . . the order of any Governmental Authority . . . shall prevail . . . ."[14] The Protocols define "Governmental Authority" as "[a]ny state,

---

[10] *Id.* ¶ 11.

[11] SFA § 11(L) (ERCOT's MSJ Ex. 1).

[12] Brazos's Resp. ¶ 11.

[13] SFA § 11(L) (ERCOT's MSJ Ex. 1).

[14] *Id.* Section 11(L) provides, in full: "This Agreement is subject to applicable federal, state, and local laws, ordinances, rules, regulations, orders of any Governmental Authority and tariffs. Nothing in this Agreement may be construed as a waiver of any right to question or contest any federal, state and local law, ordinance, rule, regulation, order of any Governmental Authority or tariff. In the event of a conflict between this Agreement and an applicable federal, state, and local law, ordinance, rule, regulation, order of any Governmental Authority or tariff, the applicable federal, state, and local law, ordinance, rule, regulation, order of any Governmental Authority or tariff shall prevail, provided that Participant shall give notice to ERCOT of any such conflict affecting Participant. In the event of a conflict between the ERCOT Protocols and this Agreement, the provisions expressly set forth in this Agreement shall control."

local, or municipal body having jurisdiction over a Market Participant or ERCOT."[15] The PUCT unquestionably has jurisdiction over ERCOT: the PUCT is the very body from which ERCOT derives its power, and ERCOT is subject to the PUCT's complete oversight.[16] Likewise, PURA mandates that Brazos abide by the wholesale market rules the PUCT promulgates.[17]

10.     As ERCOT explained in its motion, PURA is the highest level of the regulatory hierarchy.[18] Brazos argues the amount it owes cannot be calculated under the PUCT Orders because the Orders are hierarchically inferior to PURA and therefore cannot apply.[19] Brazos fails to acknowledge that PURA—the highest level of the hierarchy—*requires* the PUCT to adopt and enforce rules relating to the reliability of Texas's electricity grid or delegate that rulemaking function to ERCOT subject to the PUCT's oversight and review.[20] To claim that the PUCT Orders do not apply because they are "inferior" to PURA is a nonstarter. Brazos tries to marry PURA to the Protocols, leapfrog over the PUCT Orders, *and* make the PUCT's Substantive Rules "hierarchically inferior" to the Protocols. But Brazos ignores that the Protocols governing price caps and scarcity mechanics *must*—according to their terms—be administered *according to PUCT*

---

[15] Protocols § 2.

[16] TEX. UTIL. CODE §§ 39.151(d), (h).

[17] *Id*. § 39.151(j).

[18] Brazos agrees with this. Brazos's Resp. ¶ 13 (citing ERCOT's MSJ ¶ 25).

[19] *Id.*

[20] TEX. UTIL. CODE § 39.151(d) ("The commission shall adopt and enforce rules relating to the reliability of the regional electrical network and accounting for the production and delivery of electricity among generators and all other market participants, or may delegate to an independent organization responsibilities for adopting or enforcing such rules. Rules adopted by an independent organization and enforcement actions taken by the organization under delegated authority from the commission are *subject to commission oversight and review* . . . ." (emphasis added)); § 39.151(h) ("The ERCOT independent system operator may meet the criteria relating to the other functions of an independent organization provided by Subsection (a) by adopting procedures and acquiring resources needed to carry out those functions, *consistent with any rules or orders of the commission*." (emphasis added)).

*Substantive Rules*. The PUCT's Substantive Rules govern over the Protocols in the hierarchy of the wholesale market regulatory regime; they say so in Protocol sections 4.4.11(1), 4.4.11.1(1), and 22, Attachment A §11(L) (the SFA). The PUCT acted under its authority in the PUCT Substantive Rules and PURA. And the Texas Attorney General confirmed the PUCT had the authority to enter the PUCT Orders during the storm.[21]

        **2.**      **The PUCT Orders bind Brazos as much as they bind ERCOT.**

    11.    Brazos further argues that while the PUCT Orders may bind ERCOT, they cannot bind Brazos because they created no obligations for Brazos.[22] This argument fails. First, the notion that the PUCT could order ERCOT to charge a certain price for energy in the wholesale market but that ERCOT's participants—its buyers—are not required to pay that price is an absurdity. If Brazos admits that the PUCT Orders bind ERCOT, then it necessarily admits that it is required to pay ERCOT the price dictated by the PUCT.

    12.    The premise of Brazos's argument is that the PUCT Order did not "direct any market participant, including Brazos to do anything; or constitute self-executing statements applicable to market participants[.]"[23] But this is irrelevant because Brazos's obligation to be bound by PUCT Orders does not come from the language of the PUCT Orders. Rather, it comes from the language in the SFA, subjecting both parties to the SFA to orders from any Governmental Authority, and it comes from language in the Protocols binding Brazos to the administration of PUCT Substantive Rules governing price formation and regulatory caps in times of scarcity.[24]

---

[21] *Infra*. § III.B; *see also* Brazos's Ex. 18 at 8.

[22] Brazos's Resp. ¶ 15.

[23] *Id.* (quotation marks omitted).

[24] *Supra* § III.A.1.

**3.      Brazos's proffered interpretation of Section 11(L) of the SFA is contrary to the SFA's plain language and creates an illogical result contradictory to the State's statutory framework.**

13.      According to Brazos, § 11(L) is a one-sided mechanism benefiting only Brazos in the case of a conflict between a governmental order and the SFA.[25] But Brazos minimizes the primary purpose of § 11(L). It is in the name of the section: "*Conflicts.*"[26]

14.      Brazos further argues the application of Section 11(L) would "read[] the Protocols' pricing and change procedures out of Texas law."[27] That is not true. The Protocol's pricing procedures demand subservience to PUCT Substantive Rules and must be read that way.[28] As part of this argument, Brazos contends ERCOT was required to amend the Protocols—in the midst of an emergency—to implement prices required by the PUCT Orders.[29]  Based on this conclusion, Brazos claims the ERCOT invoices were "not calculated . . . in accordance with the SFA."[30] But ERCOT's interpretation of § 11(L) does not read the change procedures out of the Protocols. ERCOT's interpretation merely follows the order of authorities established by the SFA. The fact that the Protocols do not control over conflicting PUCT Orders does not render the Protocols meaningless. They would still apply in all other situations where there is no conflict with any laws, ordinances, rules, regulations, or orders from any Governmental Authority. For the same reason, Brazos's argument that ERCOT was required to amend the Protocols to charge Brazos amounts consistent with the PUCT Orders is incorrect, and the Protocol provisions cited by Brazos

---

[25] Brazos's Resp. ¶¶ 16.

[26] SFA § 11(L) (ERCOT's MSJ Ex. 1).

[27] Brazos's Resp. ¶ 19.

[28] *Supra* § III.A.1.

[29] *Id.* ¶¶ 2, 14–16.

[30] *Id.* ¶ 11.

regarding amending the Protocols are irrelevant to ERCOT's motion for summary judgment on Count 1.

15.     As already discussed, ERCOT's interpretation is further supported by the statutory framework of PUCT Substantive Rules controlling the ERCOT market. Texas gives the PUCT the authority to enact a pricing method inconsistent with the Protocols in order to protect the public interest and to otherwise direct price determinations when necessary:

> ERCOT shall use a stakeholder process to develop protocols that comply with this section. *Nothing in this section prevents the commission from taking actions necessary to protect the public interest, including actions that are otherwise inconsistent with the other provisions in this section.*[31]
>
> ***
>
> The protocols and other rules and requirements of the Electric Reliability Council of Texas (ERCOT) that implement this section shall be developed with consideration of microeconomic principles and shall promote economic efficiency in the production and consumption of electricity; support wholesale and retail competition; support the reliability of electric service; and reflect the physical realities of the ERCOT electric system. *Except as otherwise directed by the commission, ERCOT shall determine the market clearing prices of energy* and other ancillary services that it procures through auctions and the congestion rents that it charges or credits, using economic concepts and principles such as: shadow price of a constraint, marginal cost pricing, and maximizing the sum of consumer and producer surplus.[32]

16.     Brazos's argument that the PUCT Orders could only be implemented if ERCOT first amended the Protocols is contradictory to Texas law and the order of authorities established in the SFA.  Furthermore, Brazos's position would lead to an illogical result, wherein ERCOT would not be able to obey the PUCT Orders until the Protocols are amended. This would leave ERCOT subject to disciplinary action from the PUCT, potentially including decertification, and could potentially cause harm to the public in emergency situations.[33]

---

[31] 16 TEX. ADMIN. CODE § 25.505(h) (emphasis added).

[32] *Id*. § 25.501(a) (emphasis added).

[33] TEX. UTIL. CODE § 39.151(d).

17.     The Texas statutory framework makes clear that the actual purpose of Section 11(L) is to allow the PUCT and ERCOT to carry out each of their legislative directives by permitting the PUCT to implement orders necessary to protect the public interest and permitting ERCOT to implement the PUCT Orders without being forced to first amend the Protocols.[34] The PUCT and ERCOT carried out this exact process during Winter Storm Uri, and Brazos agreed to be bound by this process by agreeing to the SFA.

### 4.     SB 1580 does not provide for re-pricing of the ERCOT market, and Brazos's proposed interpretation of SB 1580 is contrary to its plain language and legislative intent.

18.     Brazos argues ERCOT should not be granted summary judgment on Count 1 because SB 1580 requires a re-pricing of the amounts owed by Brazos.[35]

19.     Not only does Brazos's proposed interpretation fail to adhere to the plain language of SB 1580, but it also defies the legislative intent behind the Legislature's enactment of SB 1580.

20.     Texas Utilities Code § 39.160 uses the phrase "amounts owed calculated solely according to the protocols in effect during the period of emergency."  The PUCT Orders overrode the pricing method in the Protocols. This interpretation is further supported by other language in SB 1580, which describes the amounts owed as the amounts "calculated solely according to the protocols of the independent organization in effect during the period of emergency promulgated *subject to the approval of the commission.*"[36]

---

[34] Brazos is well aware of the necessity of this function ████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████

[35] Brazos's Resp. ¶¶ 21–25.

[36] TEX. UTIL. CODE § 41.151(b)(1) (emphasis added).

21.     The legislative intent contradicts Brazos's interpretation. The language on which Brazos focuses was added to SB 1580 as an amendment,[37] and the House added similar language to its HB 4492.[38] Representative Paddie, the proponent of the amendment, stated the co-ops were $2 billion in default to ERCOT, and securitization would allow them to pay these costs with the least burden on ratepayers.[39] He also noted the bill's intent was to require co-ops that are in default to ERCOT to use the securitization "mechanism to pay their debts to ERCOT."[40]  Similarly, Senator Hancock stated the language was added because the drafters "heard some rumors that some might not use the tools we're giving them and look for other ways of reducing their payments."[41]

22.     Finally, Brazos's interpretation of the statute would produce an absurd result. Under Brazos's reading of the statute, if the market is repriced as Brazos suggests, market participants that did not pay their invoices to ERCOT for energy they purchased during the Storm would experience a large, discriminatory windfall compared to the market participants that did pay ERCOT.  Texas Utilities Code § 39.160 requires ERCOT and the PUCT to collect default amounts from market participants and provides the PUCT with enforcement powers against market participants that do not pay. Interpreting this statute to provide market participants that are in default a significantly lower price than those that timely paid for energy purchased during the exact

---

[37]     Proposed      Amend.,      SB      1580,      *available*      *at* https://capitol.texas.gov/tlodocs/87R/amendments/pdf/SB01580H21.PDF.

[38]     Proposed      Amend.,      HB      4492,      *available*      *at* https://capitol.texas.gov/tlodocs/87R/amendments/pdf/HB04492S2F1.PDF.

[39]     House      Committee      Hearing,      *audio/      video      available      at* https://tlchouse.granicus.com/MediaPlayer.php?view_id=47&clip_id=20896 at 2:13:00–2:14:00.

[40] *Id*. at 2:14:20.

[41]     Senate      Committee      Hearing,      *audio      available      at* https://tlcsenate.granicus.com/MediaPlayer.php?view_id=49&clip_id=16218 at 01:40-01:50.

same period on the ERCOT wholesale market would produce an absurd result counter to legislative intent.

**5.    ERCOT followed the PUCT Orders by maintaining scarcity pricing through the duration of EEA3.**[42]

23.    ERCOT entered Emergency Energy Alert Level 3 ("EEA3") on February 15, 2021. Later that same day, the PUCT issued the first PUCT Order, which stated that because "scarcity [was] at its maximum," "the market price for the energy . . . should also [have been] at its highest."[43] The PUCT thus determined "adjustments are needed to ERCOT prices to ensure they accurately reflect the scarcity conditions in the market" and directed ERCOT to "ensure that firm load that is being shed in EEA3 is accounted for in ERCOT's scarcity pricing signals."[44]  ERCOT complied with the PUCT Orders and "implement[ed] the pricing outcomes directed by the order by making an administrative adjustment" to ERCOT's pricing mechanisms "during all intervals in which ERCOT has directed firm Load shed."[45] ERCOT announced that the change would continue "until the [PUCT] directs otherwise."[46] While ERCOT authorized restoration of previously curtailed load on February 18, many customers remained without power, and there was still a substantial amount of capacity offline. ERCOT notified the market that it would remain in EEA3 "through at least the morning peak period on Friday, February 19, 2021."[47] As a result, the price

---

[42] As noted *infra* in § III.B, ERCOT objects to this argument as it is a new allegation or theory of relief.

[43] PUCT 2/16/21 Order at 1 (ERCOT's MSJ Ex. 4).

[44] *Id.* at 2.

[45] ERCOT, *Market Notice M-C021521-01 Legal* (Feb. 15, 2021) (ERCOT's MSJ Ex. 31).

[46] *Id.*

[47] ERCOT, *Market Notice M-C021521-04* (Feb. 18, 2021) (ERCOT's MSJ Ex. 7); ███████████████████████████████████████████████ .

of electricity was \$9,000/MWh from approximately 10:15 p.m. on February 15[48] until 9:00 a.m.

on February 19, when ERCOT exited EEA3.[49]

24.     ERCOT ensured wholesale energy prices "reflect the scarcity conditions in the

market" as directed by the PUCT Orders and ceased the adjustments upon exiting EEA3. Thus,

ERCOT followed the PUCT Orders as it was required to and was not in violation of the SFA.

**B.     Brazos fails to respond to many of ERCOT's arguments on Count 2, and it has not
        adduced evidence otherwise demonstrating a question of material fact.**

25.     Brazos's mitigation claim in Count 2 is premised on (1) ERCOT's purported failure

to review, or alternatively, reprice the "last 33 hours of the storm" (the "33 hours") and

(2) ERCOT's purported failure to "employ the RUC procedure . . . to bring additional generation

online . . . ."[50] ERCOT seeks summary judgment on this Count on the grounds that (1) it would

have been unreasonable for ERCOT to disregard the PUCT Orders or the PUCT's policy decision

not to reprice the 33 hours, (2) ERCOT *did* employ RUC procedures during and after the storm,

and (3) Brazos's mitigation theory is flawed as a matter of law because a retroactive reduction of

invoices is not mitigation.[51]

26.     Brazos does not dispute ERCOT's summary judgment evidence demonstrating that

ERCOT employed the RUC procedures described in the amended complaint.[52] Nor does Brazos

attempt to rebut ERCOT's argument that Brazos's mitigation theory is misplaced. Brazos only

---

[48] *See* ERCOT, *Market Notice M-C021521-02* (Feb. 15, 2021) (ERCOT's MSJ Ex. 31).

[49] *See* ERCOT, *Market Notice M-C021521-05* (Feb. 19, 2021), *available at* https://www.ercot.com/services/comm/mkt_notices/detail?id=dba778b5-e00b-30c6-ba2e-16784af65c2d (Reply Ex. 2); ████████████

[50] Am. Compl. ¶¶ 135–36.

[51] ERCOT's MSJ ¶¶ 38–42.

[52] *See generally* Brazos's Resp. ¶¶ 28–32.

argues that there are disputes of fact as to whether ERCOT had the authority to reprice the 33 hours. There are none.

27.     First, Brazos cites Protocol § 9.5.6(1), which provides that ERCOT can "run a resettlement of any Operating Day, at any time, to address unusual circumstances."[53] In further support of this proposition, Brazos cites an opinion letter by Attorney General Ken Paxton noting that when ERCOT prices are "in need of a correction," ERCOT can correct them within 30 days after they are charged.[54] But neither Protocol § 9.5.6(1) nor the Attorney General's opinion letter consider whether there was a pricing error in need of correction.[55] Therefore, no ministerial pricing resettlement was warranted. Brazos's evidence does not raise a fact question on this Count. In fact, Brazos's reliance on the Attorney General's opinion is curious because it concludes only that Texas Utilities Code § 39.151(d) "likely could be interpreted to allow *the Public Utility Commission to order ERCOT to correct prices* for wholesale electricity and ancillary services during a specific timeframe."[56] Additionally, the Attorney General opinion on which Brazos relies found that the PUCT had the authority to intervene in the wholesale market as it did during the storm:

> In consideration of the foregoing, we conclude that the Commission has the general authority to act under the Utilities Code to take the actions set out in the above-mentioned orders during the 2021 Winter Emergency for the reasons stated above and, additionally, on the basis that (i) the 2021 Winter Emergency conditions presented a "compelling public interest" to so act; (ii) the Governor declared a disaster under Chapter 418 of the Texas Government Code with respect to the 2021 Winter Emergency; and (iii) PUC directed ERCOT to ensure that firm load that was being shed was accounted for in ERCOT's pricing signals during the 2021 Winter

---

[53] Protocols § 9.5.6(1).

[54] Brazos's Ex. 18 at 6.

[55] ████████████████████████████████████████████████████████████
███████████████████████████████████████████

[56] Brazos's Ex. 18 at 8 (emphasis added).

Emergency (as a result of the scarcity conditions in the market for the applicable period thereto).[57]

28.     There is also a legal problem with Brazos's argument. Brazos's argument and its cited evidence disregard that ERCOT could not defy the PUCT's and the Texas Legislature's policy decisions not to reprice the 33 hours. To do so would have been unreasonable, even if ERCOT had the authority Brazos claims it did.[58] Because Brazos fails to show that its proposed re-pricing mitigation would have been reasonable, summary judgment is appropriate.

29.     Second, Brazos argues that ERCOT chose to exceed the PUCT's mandate by keeping prices at $9,000/MWh during the 33 hours. Brazos cites two pieces of evidence that fail to establish this, and both fail to demonstrate a fact question. Brazos cites a portion of Bill Magness's deposition transcript in ███████████████████████████████████████████

████████████████████████████████████████████████████████████████████.[59]

Brazos does not establish that ERCOT acted contrary to the PUCT's mandate by citing testimony recounting a decision that was made in consultation with the PUCT. Next, Brazos cites a portion of Carrie Bivens's deposition transcript ████████████████████████████████████████

████████████████████████████████████████████████.[60] But, again,

---

[57] *Id.* at 5.

[58] SFA § 8(D) (ERCOT's MSJ Exhibit 1) (noting that the parties must make *reasonable* efforts to mitigate); *Gunn Infiniti, Inc. v. O'Byrne*, 996 S.W.2d 854, 857 (Tex. 1999) ("[T]he long-standing law of this state requires a claimant to mitigate damages if it can do so with trifling expense or with *reasonable* exertions." (citation and quotations omitted) (emphasis added)).

[59]



Brazos does not establish that ERCOT acted contrary to the PUCT's mandate by citing an "opinion" of a person who is not a commissioner of the PUCT. ████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████," [61]

30.     Additionally, as noted above, Brazos has not previously alleged that ERCOT exceeded the PUCT's mandate; it does so in its response for the first time. [62] It is improper for Brazos to now raise this issue having not pleaded it before. Brazos states it does not challenge the validity of the PUCT's orders. [63] And it has argued the Orders are irrelevant and do not apply. But now it argues that Bill Magness somehow violated those same orders by implementing them in consultation with—and under the direction of—the PUCT.

31.     Finally, to cast doubt upon whether the PUCT declined to reprice the 33 hours, Brazos notes that the PUCT entered a "Rule 11 Agreement" in another case stating that the PUCT "has not prejudged or made a final decision on whether to reprice." [64] To the extent this agreement is evidence (it is not), it only supports ERCOT's position that it is the PUCT, and not ERCOT, that makes the final policy decision as to whether to reprice. Brazos has not established any fact question, and it has not defeated ERCOT's summary judgment motion on Count 2.

**C.     ERCOT is entitled to summary judgment on Count 3 because it does not seek default damages.**

32.     In Count 3, Brazos alleges that it properly alerted ERCOT to a force majeure event under the SFA, and therefore "to the extent that the ERCOT Claim *asserts any amounts resulting*

---

[61] ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████

[62] *See generally* Am. Compl.

[63] Brazos's Resp. ¶13.

[64] Brazos's Ex. 20.

*from the Debtor's alleged **default** under the SFA*, such as amounts based on the default uplift process, among others, *those amounts should be disallowed in their entirety*."[65] In its response, Brazos ambiguously refers to a "claim for default damages" and recasts Count 3 as only being related to a "Default," but the Amended Complaint does not limit its breadth to a capital "D" default as Brazos now does in its response.[66] Once again, Brazos fails to identify any amount that it would be excused from paying based on a force majeure event.

33.     ERCOT has maintained throughout this litigation that the force majeure clause to which Brazos cites does not excuse Brazos from paying the overdue invoices or any obligation to make payments.[67] Brazos does not disagree. Brazos argues past ERCOT, as it has done in its response, insinuating that some unknown portion of ERCOT's claim ought to be reduced because Brazos is not in default.[68]

34.     But ERCOT's claim does not seek capital "D" default damages, and ERCOT has not brought an action for capital "D" default damages. ERCOT's claim is based upon the $1.9 billion of Brazos's outstanding invoices for energy Brazos purchased during Winter Storm Uri.[69]

35.     The force majeure notice does not exempt Brazos from paying ERCOT.[70] Accordingly, Count 3 fails. ERCOT is entitled to summary judgment dismissing this Count.[71]

---

[65] Am. Compl. ¶ 144 (emphasis added).

[66] *Compare* Brazos's Resp. ¶ 33, *with* Am. Compl. ¶¶ 144.

[67] *E.g.* Motion to Dismiss and for Abstention [Dkt. No. 23] ¶¶ 42–45; ERCOT's MSJ ¶¶ 44–46.

[68] *E.g.*, Brazos's Resp. ¶ 33.

[69] Am. Proof of Claim [Claim No. 115].

[70] SFA § 8(c)(2) (ERCOT's MSJ Ex. 1).

[71] Brazos states that ERCOT has been "unclear" about what it "really wants from the Court on Count 3" because in its summary judgment motion ERCOT seeks "dismiss[al] with prejudice" of this Count. Brazos's Resp. ¶ 33 n.75. But "a grant of summary judgment necessarily results in a dismissal with prejudice." *Rivera v. PNS Stores, Inc.*, 647 F.3d 188, 191 (5th Cir. 2011). ERCOT's request for summary judgment is not inconsistent with a request for dismissal.

**D.**     **Brazos misunderstands the inquiry on Counts 4 and 5, and its arguments do not defeat ERCOT's motion for summary judgment.**

36.     In Counts 4 and 5, Brazos alleges that it received less than reasonably equivalent value for the wholesale electricity it bought during Winter Storm Uri.[72] Despite the fact that the prices about which Brazos complains were set precisely because "anomal[y]" market prices did not adequately reflect scarcity of supply,[73] Brazos suggests that it did not receive reasonably equivalent value because proper market forces were not at play. Brazos's reasoning is flawed. The facts necessary for adjudicating Counts 4 and 5 are not in dispute, and they establish ERCOT is entitled to judgment.

37.     Brazos cites multiple out-of-district and out-of-circuit cases for the proposition that reasonably equivalent value is derived only from a "functioning, competitive market."[74] But Brazos ignores that, per the Supreme Court of the United States, the inquiry "for all transfers" "under § 548(a)(2)(A)" is "whether the debtor has received value that is substantially comparable to the worth of the transferred property."[75] Brazos makes no argument that the energy it purchased during Winter Storm Uri—that it, its member cooperatives, and the ultimate consumers *needed* during the cold weather—was not *worth* the purchase price.[76]

---

[72] Am. Compl. ¶ 146–53.

[73] PUCT 2/16/21 Order at 1 (ERCOT's MSJ Exhibit 4).

[74] *E.g.*, Brazos's Resp. ¶ 40 & n.89 (citing *In re Murphy*, 331 B.R. 107, 120 (Bankr. S.D.N.Y. 2005); *In re Fitzgerald*, 237 B.R. 252, 266 (Bankr. D. Conn. 1999)); *see also id.* ¶ 41 & n.91 (citing *In re Pilgrim's Pride Corp.*, 421 B.R. 231, 244 (Bankr. N.D. Tex. 2009); *In re Alder, Coleman Clearing Corp.*, 247 B.R. 51, 109–10 (Bankr. S.D.N.Y. 1999)).

[75] *Bfp v. Resolution Tr. Corp.*, 511 U.S. 531, 548 (1994).

[76] Under the "totality of the circumstances," Brazos has received reasonably equivalent value. *In re Wrt Energy Corp.*, 282 B.R. 343, 405 (Bankr. W.D. La. 2001); *see also In re Fairchild Aircraft Corp.*, 6 F.3d 1119, 1125–26 & n.7 (5th Cir. 1993).

38.     Brazos has conceded that it "is not challenging the PUCT Orders' validity."[77] And Brazos has not disputed that ERCOT priced electricity in response to those PUCT Orders. But Brazos still wants the Court to find that some "fact-finding and valuation" needs to occur.[78] Because the PUCT Orders are deemed valid for purposes of this proceeding, Brazos has not met its burden of showing that a fact issue exists with respect to the reasonably equivalent value of the electricity it purchased.[79] To the contrary, all the facts necessary for resolving these counts are in the record, and they are not disputed.

39.     Additionally, Brazos ignores that absent the PUCT Orders, the ERCOT wholesale market was achieving prices that were "anomalies" and not reflective of the scarcity of supply at the time.[80] Brazos's argument ignores that the PUCT Orders redressed that the market was not "functioning" properly and instituted pricing that the "competitive market" should have produced but did not.[81] Brazos has not defeated ERCOT's summary judgment motion on Counts 4 and 5.

**E.     Brazos concedes that the facts relevant to Count 8 are undisputed; these facts demonstrate that ERCOT is entitled to summary judgment.**

40.     In Count 8, Brazos objects to the § 503(b)(9) priority of ERCOT's claim on the ground that "the electricity and ancillary services charged to the Debtor in the ERCOT Claim were not incurred in the ordinary course of the Debtor's business."[82]

---

[77] Brazos's Resp. ¶13.

[78] *Id*. ¶ 42.

[79] *Ragas v. Tenn. Gas Pipeline Co*., 136 F.3d 455, 458 (5th Cir. 1998) ("A party opposing such a summary judgment motion may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial.")

[80] PUCT 2/16/21 Order at 1 (ERCOT's MSJ Ex. 4).

[81] Brazos's Resp. ¶ 41.

[82] Am. Compl. ¶ 164.

**1.    Brazos's objection to ERCOT's ordinary-course legal standard is unfounded.**

41.    First, Brazos criticizes ERCOT's application of an "ordinary course" test that Brazos itself invoked in the early stages of this case.[83] Brazos emphasizes that ERCOT's definition of "ordinary course" includes what is ordinary "both for the debtor and the industry as a whole,"[84] while the language of § 503(b)(9) provides only for a subjective, debtor-focused test and not an "'objective,' industry-focused" standard.[85] In other words, Brazos appears to attack ERCOT's summary judgment motion on Count 8 on the ground that ERCOT applies the incorrect legal standard.

42.    But ERCOT applies *both* tests. And ERCOT's motion should be granted based on either test. ERCOT's motion acknowledges that "Section 503(b)(9) only requires that the 'goods have been sold to the debtor in the ordinary course of such *debtor's* business.'"[86] ERCOT nonetheless analyzes the transactions with respect to the other market participants only "[t]o the extent the Court considers ordinary course for the industry relevant under § 503(b)(9)[.]"[87] ERCOT neither argues that the objective test supplants the subjective test nor that meeting the objective test obviates the subjective.[88] Rather, ERCOT begins with the subjective test for which Brazos advocates and demonstrates that summary judgment is warranted under that test.

---

[83] Brazos's Obj. to ERCOT's Proof of Claim [Bankr. Dkt. 930] ¶ 76.

[84] Brazos's Resp. ¶ 48 (emphasis omitted) (quoting ERCOT's MSJ ¶ 53)).

[85] *Id.*

[86] ERCOT's MSJ ¶ 53 n.113 (quoting 11 U.S.C. § 503(b)(9)).

[87] *Id.* ¶ 62. Other than arguing that this objective test is inapplicable, Brazos does not rebut ERCOT's conclusion that the transactions at issue were in the ordinary course of business for all market participants. *See generally* Brazos's Resp. ¶¶ 47–56.

[88] *See generally* ERCOT's MSJ.

## 2. Brazos's application of the undisputed facts is flawed.

43. Brazos's second argument in response to Count 8 does not defeat ERCOT's summary judgment motion. Brazos argues that the following circumstances render the transactions outside the ordinary course: the transactions were "premised on a PUCT price-setting order," the prices were "fixed" "based on a 'manual adjustment' to the Protocol-based algorithm," and Brazos was in the midst of "a force majeure event."[89] These circumstances do not bring the transactions outside the ordinary course of business for Brazos.

44. Brazos emphasizes that the PUCT had "never" directed a price adjustment and that ERCOT had "never" so adjusted prices. Brazos cites nonbinding cases involving transactions or conduct that had never happened in the course of the parties' relationship and argues accordingly that the transactions during the Storm were outside the ordinary course.[90] But Brazos's real dispute is with the price that ERCOT set at the PUCT's direction, not with the fact that the PUCT exercised its right and duty to oversee the market. And the price about which Brazos complains *has* occurred before.[91] The transactions at issue here were not a "radical departure"[92] from Brazos's daily transactions with ERCOT, nor were they the "first time"[93] Brazos paid for energy from ERCOT at the HCAP.[94]

---

[89] Brazos's Resp. ¶ 51.

[90] *Id.* ¶¶ 51, 54 n.123, 126 (citing *In re Patriot Place, Ltd.*, 486 B.R. 773, 793 (Bankr. W.D. Tex. 2013); *In re Leslie Fay Cos.*, 168 B.R. 294, 304 (Bankr. S.D.N.Y. 1994); *In re Century Bass Prods., Inc.*, 107 B.R. 8, 11 (Bankr. D. Conn. 1989) *In re Whistler Energy II, LLC*, 608 B.R. 655, 661 (Bankr. E.D. La. 2019)).

[91] ███████████████████████████████████████████████

[92] *Century*, 107 B.R. at 11.

[93] *Leslie Fay*, 168 B.R. at 304.

[94] Brazos's case law supporting its proposition that "payments much higher than previous" are outside the ordinary course also falls flat. Brazos cites two cases that involve oversized lump-sum payments on outstanding debts that had been routinely paid in equal monthly installments. *In re*

45.     Moreover, as discussed above, the price adjustment directed by the PUCT Orders redressed prices that were market "anomalies."[95] In other words, the PUCT Orders, and ERCOT's price adjustment in response, caused the market to behave the way it should have—and the way market participants *expected it to*[96]—given the scarcity.[97] It does not matter that the PUCT "never" before directed a price adjustment and that ERCOT had "never" so adjusted prices. The relevant inquiry is whether purchasing electricity from ERCOT is ordinary course for Brazos.

46.     Additionally, assuming for the sake of argument that the charges at issue were incurred during a force majeure event, that does not render the transactions outside the ordinary course of business. As a preliminary matter, the severity of the weather goes to the *amount* of energy Brazos needed to purchase because the cold weather caused Brazos's increased load. Yet Brazos does not dispute the ERCOT claim to the extent it is based on the *amount* of energy Brazos purchased—Brazos only disputes the price.[98]

---

*McElroy*, 228 B.R. 791, 792–93 (Bankr. M.D. Fla. Jan 4, 1999) (finding a $10,000 lump sum payment on a debt outside the ordinary course of business when debtor paid set monthly installments of "$50.00 to $60.00"); *In re Vunovich*, 74 B.R. 629, 630–31 (Bankr. D. Kan. 1987) (finding lump sum payment via personal money order outside the ordinary course of business when debtor paid monthly installments of "$94.68" by business check). These cases are irrelevant— Brazos deals in a market in which prices fluctuate. Prices are not the same day to day. Further, Brazos misrepresents the holding in *In re Hayes Lemmerz Int'l, Inc.*, 337 B.R. 49 (Bankr. D. Del. 2006). In *Hayes Lemmerz*, the court held a transaction to be outside the ordinary course of business where the debtor, at the creditor's insistence, *sped up* its invoice payments to a quicker pace than was usual between the parties. 337 B.R. at 61–62. *Hayes Lemmerz* had nothing to do with the amount paid, except that the amount was noted in support of the observation that the debtor was paying a larger group of invoices than usual to pay them quicker. *Id.* at 60.

[95] PUCT 2/16/21 Order at 1 (ERCOT's MSJ Ex. 4).

[96] ████████████████████████████████████████████████████████████

[97] Bivens Ex. 106, (Reply Exhibit 6) (The PUCT's and ERCOT's price adjustments were "essential in an energy-only market . . . [to] provide[] efficient economic signals to increase the electric generation needed to restore the load and service it reliably over the long term").

[98] Jan. 12, 2022 Hrg. Tr. at 31.

47.     Brazos must supply its member cooperatives with all their electricity needs every day regardless of the temperature or weather.[99] And inclement weather is not necessarily a precondition for scarcity pricing—███████████████████████████████████████████ ██[100]

48.     Baked into Brazos's argument is the notion that ERCOT's application of the ordinary-course test results in a *per se* rule that Brazos's transactions with ERCOT are always in the ordinary course of its business.[101] With respect to arms-length transactions for the purchase of wholesale electricity, barring the sort of predatory conduct § 503(b)(9) is designed to exempt,[102] Brazos is correct that its transactions with ERCOT are *per se* in its ordinary course. ████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████ ██ ████████

████████████████████████████████████.[104] ERCOT

---

[99] ████████████████████████████████████████████████

[100] █████████████████████████████████

[101] Brazos's Resp. ¶ 49.

[102] This case does not involve conscious, unilateral conduct of a creditor—during a debtor's slide toward bankruptcy—to obtain payment prepetition. *In re Hechinger Inv. Co. of Del., Inc.*, 489 F.3d 568, 577 (3d Cir. 2007) (transfers at issue were avoidable because they were made after the transferee drastically changed the credit terms that generally applied between the parties); *In re Essential Fin. Educ., Inc.*, 629 B.R. 401, 450 (Bankr. N.D. Tex. 2021) (debtor sold all its assets and distributed the proceeds to a creditor where it had never done this before, and the creditor controlled almost all aspects of the sale).

[103] ████████████████████████████████████████████████████

█ ████████████████████████████████████████████████████████████

████████████████████████████████████

22

has demonstrated "some consistency with other business transactions between the debtor and the creditor."[105]

49.      Brazos has not rebutted the undisputed facts that demonstrate it acted in the ordinary course of its business when it purchased the goods forming the ERCOT claim.

### IV.      CONCLUSION

ERCOT respectfully requests the Court grant its *Motion for Partial Summary Judgment*.

### V.      APPENDIX OF EXHIBITS

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| 1. | Relevant portions of Clifton Karnei's 11/18/21 deposition transcript |
| 2. | ERCOT Market Notice M-C021521-05 (Fed. 19, 2021) |
| 3. | Relevant portions of Bill Magness's deposition transcript |
| 4. | Relevant portions of Carrie Bivens's deposition transcript |
| 5. | Relevant portions of Dave Maggio's deposition transcript |
| 6. | Bivens Deposition Exhibit 106 |
| 7. | Relevant portions of Clifton Karnei's 11/19/21 deposition transcript |

---

[105] *In re Magic Circle Energy Corp.*, 64 B.R. 269, 273 (Bankr. W.D. Okla 1986).

Dated: January 21, 2022        Respectfully submitted,

**MUNSCH HARDT KOPF & HARR, P.C.**

By: */s/  Jamil N. Alibhai*
    Kevin M. Lippman
    Texas Bar No. 00784479
    klippman@munsch.com
    Deborah Perry
    Texas Bar No. 24002755
    dperry@munsch.com
    Jamil N. Alibhai
    Texas Bar No. 00793248
    jalibhai@munsch.com
    Ross Parker
    Texas State Bar No. 24007804
    rparker@munsch.com

    3800 Ross Tower
    500 N. Akard Street
    Dallas, Texas  75201-6659
    Telephone: (214) 855-7500
    Facsimile:  (214) 855-7584

**COUNSEL FOR ELECTRIC RELIABILITY COUNCIL OF TEXAS, INC.**

## CERTIFICATE OF SERVICE

I certify that on January 21, 2022, I caused a copy of the foregoing document to be served via CM/ECF on all counsel of record in this matter.


_/s/  Jamil N. Alibhai_____
Jamil N. Alibhai