IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>BRAZOS ELECTRIC POWER COOPERATIVE, INC.,<br><br>Debtor.[1] | Chapter 11<br><br>Case No. 21-30725 (DRJ) |
| BRAZOS ELECTRIC POWER COOPERATIVE, INC., *et al.*,<br><br>Plaintiff / Intervenor-Plaintiffs,<br><br>v.<br><br>ELECTRIC RELIABILITY COUNCIL OF TEXAS, INC., *et al.*,<br><br>Defendant / Intervenor-Defendants. | Adv. Proc. No. 21-03863 (DRJ) |

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS' REPLY
IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**
[Relates to Adv. Dkt. Nos. 281, 288, 320, and 322]

The Official Committee of Unsecured Creditors (the "Committee") of Brazos Electric Power Cooperative, Inc. (the "Debtor") files this reply in further support of its motion (the "Motion") for entry of an order granting summary judgment on Count 8 of the Amended Complaint in this Adversary Proceeding.[2] In support of its reply and in rejoinder to briefs ERCOT and Defendant Intervenors (collectively, "Respondents") have filed in opposition to the Motion [Adv. Dkt. Nos. 320 and 332 (the "Responses," each a "Response")], the Committee respectfully states as follows.

---

[1] The Debtor in this chapter 11 case, along with the last four digits of its federal tax identification number is: Brazos Electric Power Cooperative, Inc. (4729). Additional information regarding this case may be obtained on the website of the Debtor's claims and noticing agent at http://cases.stretto.com/Brazos. The Debtor's address is 7616 Bagby Avenue, Waco, TX 76712.

[2] Capitalized terms not otherwise defined herein have the same meanings ascribed to them in the Amended Complaint [Adv. Dkt. No. 173] or the Motion [Adv. Dkt. No. 281].

13238118

**PRELIMINARY STATEMENT**

1. The Motion states a simple argument based on unrebutted facts:

   - Winter Storm Uri was a storm of unprecedented severity.

   - The storm caused the PUCT to issue unprecedented orders purporting to "override" or "supersede" 1,800 pages of Protocols that otherwise governed how ERCOT determined the price of power.

   - ERCOT manipulated the Protocols' pricing mechanisms by inserting fictional data to set power at $9,000 per megawatt hour, which it had never done before.

   - The unprecedented storm, the unprecedented orders, and the unprecedented price manipulation are sufficient to demonstrate conclusively that ERCOT's Claim is not a claim for power sold in the ordinary course.

2. Respondents have failed to put in issue any of the foregoing facts. Either those unrebutted facts are sufficient to preclude an "ordinary course" finding or they are not, but their sufficiency under Section 503(b)(9) is a pure question of law ripe for summary judgment.

3. Respondents' legal arguments ask the Court to ignore the words of Section 503(b)(9) on the ground that there is no case on point dealing with unprecedented weather, unprecedented orders, and unprecedented price fixing. But no analogous case interpreting Section 503(b)(9) is required when the words of the statute themselves apply to the unrebutted facts. The cases Respondents cite do not (and cannot) contradict or vary the plain meaning of Section 503(b)(9), and Respondents' reliance on precedents under other provisions of the Bankruptcy Code or the Uniform Commercial Code is misplaced, as they ignore key differences between those statutes and Section 503(b)(9).

4. Accordingly, the Committee, joined by the Debtor, respectfully requests that the Court find that ERCOT's Claim is not entitled to administrative expense priority under Section 503(b)(9), and grant summary judgment in Plaintiffs' favor on Count 8.

13238118

## ARGUMENTS AND AUTHORITY

I. **The Committee Has Identified the Undisputed Factual Basis for Its Motion and Satisfied Its Burden Under the Relevant Summary Judgment Standard.**

5. As a threshold matter, ERCOT's effort to sidestep the applicable summary judgment standard, disavow its own words, and distract from the undisputed facts should be rejected.

6. ERCOT says in its Response that the Committee has "failed to adduce competent summary-judgment evidence" because it "relies on argument contained in *ERCOT's Motion to Dismiss and for Abstention*, *ERCOT's Motion for Partial Summary Judgment*, and *Appellants' Motion for Certification of Direct Appeal*" that should not be deemed evidence. Adv. Dkt. No. 320 ¶¶ 1, 6, 8 (internal citations omitted). But ERCOT also acknowledges that a summary judgment movant should identify those portions of pleadings which demonstrate there are no issues of material fact, and it is beyond dispute that the filings the Committee quotes from in its Motion are ERCOT's pleadings. *Id.* ¶¶ 7, 8. *See generally Martinez v. Bally's La., Inc.*, 244 F.3d 474, 476 (5th Cir. 2001) ("A judicial admission is a formal concession in the pleadings . . . that is binding on the party making them. Although a judicial admission is not itself evidence, it has the effect of withdrawing a fact from contention."); *City Nat'l Bank v. United States,* 907 F.2d 536, 544 (5th Cir. 1990) (whether to "treat statements in briefs as binding judicial admissions of fact" is "within [the Court's] discretion"); *White v. Arco/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir. 1983) ("Normally, factual assertions in pleadings . . . are considered to be judicial admissions conclusively binding on the party who made them.").[3]

---

[3] Puzzlingly, ERCOT cites to *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), for the proposition that "a nonmovant may not defeat a summary-judgment motion by reference to pleadings" [Adv. Dkt. No. 320. at 5 n.21], even though that principle is inapplicable because the Committee is the *movant*. ERCOT's reliance on *Highland Cap. Mgmt., L.P. v. Bank of Am., N.A.*, No. 3:10-CV-1632-L, 2013 U.S. Dist. LEXIS 1199354 (N.D. Tex. Aug. 23, 2013) (*id.* at n.22), fares no better. That case involved a motion to preclude a proffered expert from testifying about facts she knew only from her review of the pleadings and discussions with counsel; it is thus readily distinguishable.

13238118

7.      Noticeably absent from ERCOT's Response is any suggestion that the statements the Committee has identified are factually incorrect, or that ERCOT intends to challenge at trial the accuracy of statements made in its own pleadings. Thus, ERCOT does not rebut, among other things, that Winter Storm Uri was an "unprecedented public emergency," involving "extremely unusual weather conditions" that "resulted in extraordinary hardship" and "unprecedented demand for electricity." *See* Motion ¶ 29 (citations omitted).

8.      Respondents' attempts to manufacture issues of fact in their Responses boil down to the truism that "bad weather happens" and Winter Storm Uri, in particular, wasn't so bad. Such assertions are ridiculous on their face and defective as matter of procedure. ERCOT has never stated in any of its filings in this case that Winter Storm Uri was "ordinary." Quite the contrary.

9.      Respondents do not (and cannot) contest that extraordinary firm load shed during the storm resulted in the PUCT issuing extraordinary PUCT Orders addressing "significant market anomalies" and directing ERCOT to account for "load that is being shed" in "ERCOT's scarcity pricing signals." Adv. Dkt. Nos. 23-1, 23-2. Respondents also do not (and cannot) contest that ERCOT had never previously used load shed in calculating scarcity pricing adders under its Protocols. And Respondents further do not (and cannot) contest that ERCOT manipulated scarcity price adders during the storm to peg the price of power at the maximum price for far longer than ever before. Motion ¶¶ 9-15, 29 (citations omitted).[4]

---

[4] ERCOT's contention that its unprecedented "administrative adjustment to energy prices during the Storm" is "of no moment" because "Winter Storm Uri is not the first time in recent past that energy prices in ERCOT reached $9,000/MWh" [Adv. Dkt. No. 320 at 9 n.39] is untenable. There can be no serious dispute that energy prices had never reached $9,000/MWh for so many intervals or full days, let alone been artificially raised to and held at that level based on ERCOT manually overriding its then in effect Protocols' pricing algorithms.

4

13238118

10. As such, Respondents have failed to show the existence of any genuine and triable issue of fact that would preclude the Court from rendering summary judgment on Count 8 in Plaintiffs' favor.

## II. The Unrebutted Facts Are Sufficient to Establish that ERCOT's Claim Did Not Arise in the Ordinary Course of the Debtor's Business.

11. The Committee and ERCOT agree that "there is no test for what constitutes ordinary course of business under § 503(b)(9)." Adv. Dkt. No. 320 ¶ 12. And Defendant Intervenors acknowledge that the two bankruptcy cases which come closest to broaching this subject include no substantive discussion or make statements that are mere dicta. *See* Adv. Dkt. No. 322 at 11-12 & n. 39; *see also* Adv. Dkt. No. 320 at 7 n.30.

12. Having found no judicial interpretation of Section 503(b)(9) that fits the extraordinary facts of this case, Respondents instead advocate for application of (i) both "horizontal" and "vertical" dimension tests used to establish a defense to voidable preferences under Section 547(c)(2), and (ii) the Uniform Commercial Code definition of "ordinary course" in the context of the sale of goods. They argue that the Committee's request for summary judgment should be denied based on the Motion's failure to address ERCOT's pleadings under these standards. *See* Adv. Dkt. No. 320 ¶¶ 12-17; Adv. Dkt. No. 322 ¶¶ 16-21. Their position is unsustainable.

13. First, Respondents' argument is erroneous because Section 503(b)(9) focuses only on the ordinary course of business of *the debtor*. In contrast, Section 547(c)(2) focuses on "the ordinary course of business or financial affairs" of *both* the debtor *and* the non-debtor and "ordinary business terms" (i.e., general practices in the market). Likewise, the Uniform Commercial Code focuses on the business of the *seller* and the *seller's* "own usual or customary practices." TEX. BUS. & COM. CODE § 1.201(b)(9). Thus, cases applying a "horizontal" test to

or otherwise focusing on a seller's dealing with buyers generally are not legally relevant to any determination this Court is being asked to make under Section 503(b)(9),[5] and Respondents' assertions about the ordinary course of *other power buyers'* businesses are not factually relevant to what constitutes the ordinary course for *this Debtor*.[6]  *See In re Rancher's Legacy Meat Co.*, 630 B.R. 308, 317 (Bankr. D. Minn. 2021) ("courts have questioned the application of the horizontal test outside of very specific circumstances, arguing that on statutory interpretation grounds, the horizontal test is applicable only as to the ordinary course of business defense in the context of preference liability under 11 U.S.C. § 547(c)(2)(C)"); *see also Martino v. First Nat'l Bank of Harvey (In re Garofalo's Finer Foods, Inc.)*, 186 B.R. 414, 428 (N.D. Ill. 1995) (holding same).

14.  As to the "vertical" test, Respondents argue that because ERCOT always sells power to the Debtor and the Debtor always buys power from ERCOT, every sale or purchase must by definition be within the "reasonable expectation of creditors" – even if the terms of the purchase and sale are drastically changed.  That is not the law.  The Motion cites several cases demonstrating that a radical and unprecedented change in terms – such as maturity, payment, or security – is enough to disqualify a transaction from being "ordinary course" for a debtor.  Motion ¶¶ 31-32.  Respondents try to distinguish these precedents by arguing that a radical and unprecedented change in price is somehow different from a radical and unprecedented change in other terms – but they offer neither reason nor authority for the distinction.

---

[5] The Committee reserves its right to address the "horizontal" test at trial should this Motion be denied.

[6] Defendant Intervenors' Response in particular is polluted with the defect of their own situation as direct sellers of power only to ERCOT, not the Debtor.  Their course of dealing with the Debtor is irrelevant to the Claim being challenged in this Adversary Proceeding.

15. Nor does Respondents' position comport with the relevant facts. Here, the only creditor expectation which is reasonable is that the Debtor would purchase power from ERCOT at prices calculated and determined *by the Protocols*, and ERCOT has admitted that did not happen here because the PUCT Orders "overrode" or "superseded" the Protocols. *See, e.g.*, Adv. Dkt. No. 191 ¶ 122; Adv. Dkt. No. 279 ¶¶ 1, 24, 29, 33; *id*. at 11, 14. While Respondents devote inordinate argument to the expectations of *ERCOT market participants*, they have alleged no facts to show that *the Debtor's creditors* could have "reasonably expected" that an unprecedented storm, PUCT orders, and ERCOT price hikes would produce an approximately $1.9 billion claim driving an "A+" credit-rated cooperative into bankruptcy in just a matter of weeks.

16. Defendant-Intervenors' arguments based on case law interpreting Section 364(a), which allows a post-petition debtor to incur credit "in the ordinary course" without court approval, fail for essentially the same reason as their other arguments. They hypothesize that, if Winter Storm Uri had occurred during this chapter 11 case, the Debtor would have purchased power from ERCOT at $9,000/MWh without court approval. Therefore, Defendant Intervenors argue, what happened during Winter Storm Uri qualifies as "ordinary course." Setting aside the highly speculative nature of this contention, the Committee submits that if Winter Storm Uri had occurred during this chapter 11 case, if extraordinary PUCT orders were issued to address market anomalies leading to unprecedented manipulation by ERCOT of its Protocols, and if ERCOT had invoiced the Debtor for power at a price many orders of magnitude above historical averages in amounts that threatened the Debtor with liquidation, then the Debtor would have immediate recourse to this Court to challenge those invoices as reflecting power sold outside of the "ordinary course" – and compelling ERCOT to continue providing power to it at the Protocols-calculated price. And in such a case, the Committee submits that the Debtor would be right.

7

13238118

17. Respondents also claim that the Motion seeks a bespoke interpretation or application of Section 503(b)(9). Not so. The Committee is requesting that the Court apply the language of the statute to unrebutted facts.

18. Indeed, it is Respondents who seek "to fashion a new standard" or "*per se* rule." Adv. Dkt. No. 322 ¶¶ 19, 22. They are asking this Court to rule that where a creditor and a debtor have always done business, every transaction between them is by definition in the ordinary course no matter how much the creditor hikes the price of the goods being sold and no matter how that change came about or was implemented. Such a ruling would run counter to the plain meaning of Section 503(b)(9).

19. Finally, Respondents' arguments ignore the central reality of this case – that during Winter Storm Uri Brazos had no choice but to buy power from ERCOT and ERCOT had no choice but to sell power to Brazos. *See* Protocols § 1.2(1)(a). This reality informs the proper interpretation of Section 503(b)(9). Respondents say that Section 503(b)(9) should be interpreted to protect ERCOT's decision to extend credit to the Debtor, when in fact there was no decision made to protect. The only parties deciding to extend credit were the Debtor's pre-petition creditors who did so prior to Winter Storm Uri and who had no reasonable expectation of an unprecedented storm and the extraordinary orders and price hikes that ensued. The fact that other market participants paid those high prices is irrelevant. The Bankruptcy Code exists to protect the weakest businesses and its creditors. To rule that the Debtor's obligations to ERCOT were incurred "in the ordinary course" of the Debtor's business merely because other utilities incurred obligations and were able to pay them would defeat the purpose of the Bankruptcy Code in general, and the plain language of Section 503(b)(9) in particular.

## **CONCLUSION**

For the reasons set forth in the Motion and this reply, and in the Debtor's response to ERCOT's motion for partial summary judgment as joined by the Committee [Adv. Dkt. Nos. 309 and 310], the Committee respectfully requests that the Court grant summary judgment in Plaintiffs' favor on Count 8 of the Amended Complaint, and order such other and further relief as is just and appropriate under the circumstances.

*[Remainder of page intentionally left blank]*

13238118

Dated: January 25, 2022                    Respectfully submitted,

**PORTER HEDGES LLP**

*/s/ John F. Higgins*
John F. Higgins (TX 09597500)
Eric D. Wade (TX 00794802)
Heather K. Hatfield (TX 24050730)
M. Shane Johnson (TX 24083263)
Megan Young-John (TX 24088700)
PORTER HEDGES LLP
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile: (713) 228-1331
jhiggins@porterhedges.com
ewade@porterhedges.com
hhatfield@porterhedges.com
sjohnson@porterhedges.com
myoung-john@porterhedges.com

- and –

**KRAMER LEVIN NAFTALIS & FRANKEL LLP**

Thomas Moers Mayer (admitted *pro hac vice*)
Amy Caton (admitted *pro hac vice*)
Jennifer Sharret (admitted *pro hac vice*)
John P. Coffey (admitted *pro hac vice*)
Ronald S. Greenberg (admitted *pro hac vice*)
Jeffrey S. Trachtman (admitted *pro hac vice*)
Seth F. Schinfeld (admitted *pro hac vice*)
Nancy M. Bello (admitted *pro hac vice*)
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100
(212) 715-8000
tmayer@kramerlevin.com
acaton@kramerlevin.com
jsharret@kramerlevin.com
jcoffey@kramerlevin.com
rgreenberg@kramerlevin.com
jtrachtman@kramerlevin.com
sschinfeld@kramerlevin.com
nbello@kramerlevin.com

*Counsel to the Official Committee of Unsecured Creditors*

13238118

## **CERTIFICATE OF SERVICE**

    I certify that, on January 25, 2022, I caused a true and correct copy of the foregoing reply to be served via CM/ECF on counsel for all parties of record in this proceeding.

                                                  /s/ *John F. Higgins*
                                                  John F. Higgins

13238118